UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTOR H. ALVARADO BALDERRAMO and
LUIS FALQUEZ, individually and on behalf of all
other persons similarly situated,

                                      Plaintiffs,

- against -

GO NEW YORK TOURS INC. and ASEN
KOSTADINOV, jointly and severally,

                                     Defendants.

**OPINION AND ORDER**

15 Civ. 2326 (ER)

Ramos, D.J.:

        Victor H. Alvarado Balderramo and Luis Falquez (collectively, "Plaintiffs") bring this action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiffs allege that they and all similarly situated employees are entitled to unpaid minimum wages, overtime, spread-of-hours pay, and uniform maintenance pay from Go New York Tours Inc. and its President, Asen Kostadinov ("Defendants").

        Before the Court are Plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23 ("Rule 23") for a class composed of all tour bus drivers employed by Defendants within six years prior to the filing of the Complaint and Plaintiffs' motion for conditional certification of an FLSA collective action constituting all tour guides employed by Defendants within the three years prior to the filing of the Complaint. For the following reasons, Plaintiffs' motion for class certification is GRANTED and Plaintiffs' motion for conditional certification is DENIED.

## I. Background

### A. The Parties

Go New York Tours operates as a tour bus operator. Amended Complaint ("Am. Compl.") (Doc. 16) ¶ 13. Kostadinov, as its President, establishes the wages and hours of Go New York Tours' employees. *Id.* at ¶¶ 15–16.

Plaintiff Alvarado alleges that he was employed as a bus driver from August 2013 until February 2014. *Id.* at ¶¶ 18–19. He claims to have worked between seventy and eighty-seven hours per week and for more than ten hours per day for six days a week. *Id.* at ¶ 20. Plaintiff Falquez, who was also employed as a tour bus driver, worked from July 2013 until November 2013. *Id.* at ¶¶ 24–25. He claims that he worked between eleven and thirteen hours per day for five days a week. Both Plaintiffs were required to wear a uniform. *Id.* at ¶¶ 23, 29.

### B. This Action

On March 27, 2015, Plaintiff Alvarado brought this action against Defendants, alleging numerous FLSA and NYLL violations. Complaint (Doc. 1) ¶¶ 32–67. Among other things, he alleged that Defendants willfully failed to pay him the applicable minimum wage, overtime compensation of one and one-half hours, and spread-of-hours, and did not launder or maintain the required uniforms. *Id.* Alvarado brought his FLSA claims on behalf of himself and all similarly situated current and former employees during the three years preceding the filing of the Complaint. *Id.* at ¶ 10. Plaintiff Falquez filed his consent to become a party plaintiff on May 28, 2015. (Doc. 4).

On January 22, 2016, Plaintiffs filed the First Amended Complaint, adding Falquez as a named plaintiff, and including additional relevant allegations pertaining to his employment with Defendants. That same day, Plaintiffs also moved to conditionally certify the collective action

on behalf of tour bus drivers. (Doc. 18). Defendants consented to conditional certification and the Court granted Plaintiffs' motion on April 29, 2016. The parties proposed a joint order and notice, which the Court entered on May 9, 2016. (Doc. 35). The notice was sent to all individuals who were employed by Defendants as tour bus drivers since March 27, 2012, and directed such persons to submit a consent letter to become a party plaintiff within sixty days from the date of the order, or July 9, 2016. The Court also extended the discovery deadline until October 7, 2016, ninety days after the close of the collective opt-in period. (Doc. 34). Between May 9, 2016 and July 9, 2016, thirteen individuals joined Alvarado and Falquez as plaintiffs in the suit. (Docs. 39–51). Between July 15, 2016 and April 3, 2017, Alonzo Day, Andrew Wong, Lionel Briggs, Waki Roper, Delia Ortiz, Gary Nelson, and Chye Chew Kee submitted their consent to become party plaintiffs, for a total of twenty-two plaintiffs. (Docs. 52, 53, 54, 57, 58, 63, 100).

On August 3, 2016, the Court granted Plaintiffs' request for leave to file a Rule 23 motion to certify a class of tour bus drivers for Defendants' alleged NYLL violations. With Defendants' consent, Plaintiffs sought three extensions to file the motion to obtain affidavits from the newly opted-in plaintiffs. (Docs. 55, 59, 64).

Plaintiffs filed the instant motion for class certification on November 25, 2016. (Doc. 66) Plaintiffs also moved to conditionally certify a collective action on behalf of persons employed by Defendants as tour guides within the three years prior to the filing of the Complaint.

## II. CLASS CERTIFICATION

Plaintiffs seek to bring their NYLL claims as a class action on behalf of all employees of the Defendants who worked as tour bus drivers and tour guides within six years prior to the filing

of the Complaint (the "Class"). Memorandum of Law in Support of Motion to Certify Class Action ("Pls. Memo.") (Doc. 67) at 5.

### A. Legal Standard

One or more members of a class are permitted to sue on behalf of the class if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). The four requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.* (internal quotation marks omitted).

The putative class must also satisfy at least one of the three requirements listed in Rule 23(b). Here, Plaintiffs seek class certification under Rule 23(b)(3), which requires them to demonstrate, in addition to the prerequisites of Rule 23(a), that "the questions of law or fact common to class members predominate over any questions affecting only individual members," and that a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

A party seeking class certification must affirmatively demonstrate his compliance with Rule 23. *Wal-Mart*, 564 U.S. at 350. In other words, the Rule "does not set forth a mere pleading standard." *Id.* A district court must undertake a "rigorous analysis" in order to determine whether the requirements have been met. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). In making such determinations, the court "should not assess any aspect of the merits unrelated to a Rule 23 requirement." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659

F.3d 234, 251 (2d Cir. 2011) (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)). However, the court's analysis will inevitably "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351.

**B. Analysis**

**1. Numerosity**

The numerosity requirement is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although "numerosity is presumed at a level of 40 members," *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995), "[d]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers," *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). Relevant considerations include "judicial economy arising from the avoidance of a multiplicity of actions … financial resources of class members, [and] the ability of claimants to institute individual suits." *Robidoux*, 987 F.2d at 936.

Although much of the information going to the size of the Class is within Defendants' control, nineteen[1] Plaintiffs submitted sworn declarations, identifying by name, over twenty additional individuals (who had not submitted affidavits or consent letters) who they claim were subjected to the same wage and hour policies. *See* Docs. 69–87. Adding the twenty-two individuals who submitted a consent letter and/or an affidavit to the individuals identified in the affidavits, it is clear that the class exceeds forty members. Additionally, many of the Plaintiffs claimed that Defendants employed more than twenty bus drivers at a time and that many of the employees worked for only for a short period. Plaintiffs' counsel also affirmed that Defendants

---

[1] Twenty-two individuals filed a consent letter to become a party plaintiff. Of these twenty-two, only eighteen submitted affidavits in support of the motion for class certification. An additional individual, Manuel Jose Sanchez, submitted an affidavit, but did not consent to be a party plaintiff. (Doc. 82).

5

furnished information identifying ninety-five tour bus drivers during the Class period. Although Defendants claim that the Court cannot consider the affidavits for the individuals who filed a consent letter after the opt-in period in its determination of numerosity, this contention is unfounded. Courts in this Circuit can consider all potential class members in its assessment of whether the numerosity requirement is met. *See Guan Ming Lin v. Benihana N.Y. Corp.*, No. 10 Civ. 1335 (RA) (JCF), 2012 WL 7620734, at *4 (S.D.N.Y. Oct. 23, 2012), *report and recommendation adopted*, No. 10 Civ. 1335 (RA) (JCF), 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013) ("[C]ourts in the Second Circuit . . . continue to assess the numerosity requirement based on the size of the proposed class rather than the number of opt-in plaintiffs."). Accordingly, the Court finds that Plaintiffs have thus submitted sufficient evidence to reasonably infer that the Class exceeds forty members, the threshold at which numerosity is presumed.

The Court finds that joinder of all Class members is also impracticable in light of their limited resources. *See* Docs. 69–87; *see also Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85–86 (S.D.N.Y. 2001) (considering that members of a class "would not be likely to file individual suits" because of "[t]heir lack of adequate financial resources or access to lawyers, their fear of reprisals (especially in relation to the immigrant status of many), the transient nature of their work, and other similar factors"). Plaintiffs have thus satisfied the numerosity requirement.

### 2. Commonality

Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." *Wal-Mart*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). However, "[t]his does not mean merely that they have all suffered a violation of the same provision of law." *Id.* at 350. Their claims must instead "depend on a

common contention" that is "of such a nature that it is capable of classwide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* In other words, what matters is not really "the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Here, because all of Plaintiffs' claims derive from the same wage and hour policies, the Court easily finds a number of questions common to the Class, including:

- whether Defendants compensated the Class members at an overtime rate of one and one-half times their hourly rates for the hours they worked above forty each week;
- whether Defendants paid the Class members uniform maintenance pay;
- whether Defendants in practice failed to pay spread of hours compensation; and
- whether Defendants in practice failed to provide employees with proper wage notices and statements.

Because the answers to these questions will drive the resolution of the litigation, the Court finds the commonality requirement is satisfied. *See, e.g.*, *Shahriar*, 659 F.3d at 252 (affirming grant of class certification where the plaintiffs' NYLL claims "all derive[d] from the same compensation policies").

### 3. Typicality

Typicality requires that the claims of the representative party be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). The requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality

7

requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936–37.

Here, all Class members' claims arise from the same policies and practices, namely failure to pay the overtime premium, spread-of-hours, and uniform maintenance pay, and the arguments Plaintiffs make in support of Defendants' liability are typical of those that would be made by others in the Class. Thus, the typicality requirement is satisfied.

### 4. Adequacy of Representation

The requirement that the representative parties must be able to fairly and adequately protect the interests of the class "is designed to ferret out potential conflicts between representatives and other class members." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001), *superseded by statute on other grounds as stated in Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 100 (S.D.N.Y. 2006). However, "not every potential disagreement between a representative and the class members will stand in the way of a class suit." *Id.* Instead, the conflict must be "fundamental." *Id.*

Defendants argue that Plaintiffs have not provided any information on either Alvarado or Falquez to indicate whether they are willing or able to meet the responsibilities of a class representative, nor any information regarding the Plaintiffs' background, education, availability, or personal knowledge of Defendants' policies. Defendants' Memorandum of Law in Opposition ("Defs. Memo.") (Doc. 92) at 11–12. Defendants further claim that Alvarado and Falquez were both short-term bus drivers and possessed no specialized knowledge of Defendants' policies. *Id.* at 12. In light of the deficiencies and allegedly short employment period, Defendants assert that Plaintiffs do not possess the same interest and did not suffer the same injuries as the Class. *Id.* at 13.

The Court finds that Plaintiffs can adequately represent the Class. First, Plaintiffs' counsel affirms that both Alvarado and Falquez stated that they were willing to be class representatives and to protect the interests of the class. Affirmation of Brandon D. Sherr in Support of Motion to Certify Class ("Sherr Affirmation") ¶ 2 (Doc. 68). Second, Plaintiffs also specifically claim to have knowledge of Defendants' compensation policies and practices. In their affidavits, both Alvardo and Falquez state, among other things, that Defendants did not pay them an overtime premium. *See* Affidavit of Victor H. Alvarado Balderramo (Doc. 69) at ¶ 7; Affidavit of Luis Falquez (Doc. 73) at ¶ 6. Third, Defendants have not cited—and the Court has not found—any support for their contention that Plaintiffs must provide information regarding their background and education in order to be adequate class representatives in this case. Lastly, Alvarado's and Falquez's claims mirror those of the other Class members. Although Defendants claim that they employed Alvarado and Falquez for only a short period, the affidavits of other opt-in Plaintiffs indicate that Defendants employed many individuals for brief stints of up to two-to-six months at a time. *See e.g.*, Affidavit of Lionel Briggs (Doc. 71) at ¶ 3 (employed for six months); Affidavit of Carlton Grady (Doc. 74) at ¶ 3 (employed for two months); Affidavit of Darryl Williams (Doc. 85) at ¶ 3 (employed for two months). Thus, "because [Plaintiffs'] interests are closely aligned with all putative class members," the Court is satisfied that Plaintiffs will adequately represent the class. *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010); *see also Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class."). Accordingly, Plaintiffs have satisfied the adequacy requirement.

### 5. Predominance

The predominance inquiry of Rule 23(b)(3) tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). This analysis requires courts to "give careful scrutiny to the relation between common and individual questions in a case" and ask "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* If "one or more of the central issues in the action are common to the class and can be said to predominate," the suit may be maintained as a class action under Rule 23(b)(3) "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.*

The principal issue in this case concerns Defendants' wage and hour practices, which are subject to generalized, rather than individual, proof. *See id.* at 1048 (finding that "the experiences of a subset of employees can be probative as to the experiences of all of them" where "each employee worked in the same facility, did similar work, and was paid under the same policy"). The questions that are common to all Class members therefore predominate over those questions of damages individual to each employee. *See, e.g.*, *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) ("The issues to be litigated are whether the class members (1) were supposed to be paid the minimum wage as a matter of law and were not, and (2) were supposed to be paid overtime for working more than 40 hours a week and were not. These are about the most perfect questions for class treatment. Some factual variation among the circumstances of the various class members is inevitable and does not defeat the predominance requirement."). Plaintiffs thus satisfy the predominance requirement.

### 6. Superiority

Rule 23(b)(3) requires that a class action be superior to other methods of adjudication. In making this determination, the Court may consider, among other things:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Here, Plaintiffs claim that the tour bus drivers and guides turned over often and few tour bus drivers and guides worked for significant periods of time. Pls. Memo at 17. Also, many of the tour bus drivers and guides worked long hours only occasionally, and therefore their affected workweeks may be few. *Id.* Therefore, Plaintiffs argue, a class action is superior to individual actions because the damages to which many of the class members are entitled are relatively small compared to the expenses involved in bringing an individual suit. The Court agrees. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) ("Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery."); *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 141 (S.D.N.Y. 2014) (finding that due to the modest amount of monetary damages, "class members have little interest in controlling the litigation individually" because it would be prohibitively expensive relative to the expected recovery) (quoting *Mazzei v. Money Store*, 288 F.R.D. 45, 65 (S.D.N.Y. 2012)). Accordingly, the Court finds that a class action is superior to other available methods for adjudicating this controversy.

### 7. Ascertainability

Although Rule 23 does not expressly require that a class be definite in order to be certified, "a requirement that there be an identifiable class has been implied by the courts." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 336 (S.D.N.Y. 2002). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Id.* at 337. "Where any criterion is subjective . . . the class is not ascertainable." *Id.* "In application, this means that it must be 'administratively feasible for a court to determine whether a particular individual is a member of the class [and t]he Court must be able to make this determination without having to answer numerous individualized fact-intensive questions.'" *Jankowski v. Castaldi*, No. 01 Civ. 0164 (SJF), 2006 WL 118973, at *5 (E.D.N.Y. Jan. 13, 2006) (quoting *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 181 (S.D.N.Y. 2005)).

Here, Defendants do not challenge the Class's ascertainability. Nevertheless, the Court finds that because the Class is merely comprised of Defendants' tour bus drivers and tour guides since March 27, 2009, which can be easily ascertained by reference to Defendants' own records, Plaintiffs have satisfied this implied requirement.

* * *

As Plaintiffs have established compliance with every Rule 23 requirement, their motion for class certification is GRANTED.

### C. Appointment of Class Counsel

Once certification is granted, the Court must appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). The Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable

>law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Above all else, "[c]lass counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

Counsel at The Law Office of Justin A. Zeller, P.C. (the "Firm") are experienced litigators, specializing in wage and hour disputes. *See* Sherr Affirmation ¶¶ 3–8. The Firm has also represented plaintiffs in over 300 actions with similar claims in the Southern District of New York, and many other districts. *Id.* at ¶ 8. Further, counsel has done a significant amount of work identifying and investigating the potential claims in this action, first on behalf of Alvarado and Falquez and later on behalf of the opt-in Plaintiffs. Finally, the Court is satisfied that counsel will be able to commit the resources necessary to fairly and adequately represent the Class. *See id.* at ¶ 9. Accordingly, the Court appoints The Law Office of Justin A. Zeller, P.C. as class counsel.

### III. Conditional Class Certification

Plaintiffs move to conditionally certify a collective action on behalf of all individuals employed by Defendants as tour guides within the three years prior to the filing of the Complaint ("proposed putative class"). Pls. Memo at 18–22. Defendants argue that conditional certification should not be granted because the opt-in period closed in July 2016 and discovery closed in October 2016. Defs. Memo at 5–6. They further contend that reopening the closed dates would be unduly prejudicial. *Id.* at 6.

Pursuant to the FLSA, an individual may file suit against an employer on behalf of himself and "other employees similarly situated" who give "consent in writing" to become party

13

plaintiffs. 29 U.S.C. § 216(b) (2012). "District courts have discretion to facilitate this collective action mechanism by authorizing that notice be sent to potential plaintiffs informing them of 'the pendency of the action and of their opportunity to opt-in as represented plaintiffs.'" *Mark v. Gawker Media LLC*, No. 13 Civ. 4347 (AJN), 2014 WL 4058417, at *2 (S.D.N.Y. Aug. 15, 2014) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010)).

The Second Circuit Court of Appeals has endorsed a two-step framework for determining whether a court should certify a case as a collective action under § 216(b). *See Myers*, 624 F.3d at 554–55; *see also Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). This process entails an analysis of whether prospective plaintiffs are "similarly situated" at two different stages: an early "notice stage," and again after discovery is largely complete. *See McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (citing *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009)). At stage one, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the Plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555 (citations omitted). At stage two, after additional plaintiffs have opted in, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the Plaintiffs." *Id.* If the court concludes that they are not similarly situated, the action may be "de-certified," and the opt-in plaintiffs' claims "may be dismissed without prejudice." *Id.*

Here, Plaintiffs seek an initial determination of the propriety of notice to putative opt-in plaintiffs. Typically, because minimal evidence is available at this early stage of the proceedings, and because the Court "retain[s] the ability to reevaluate whether the plaintiffs are similarly situated," Plaintiffs face a "'relatively lenient evidentiary standard.'" *McGlone*, 867 F.

14

Supp. 2d at 442 (quoting *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007)). Here, however, Plaintiffs are making this motion with the benefit of discovery. Nevertheless, Plaintiffs must only make "a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *See Glatt*, 811 F.3d at 540 (certifying question of whether a more rigorous standard applies to post-discovery motions for conditional certification but declining to decide the question); *see also Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). "The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* (citations omitted). "Accordingly, in deciding whether to grant the [p]laintiffs' motion, the Court must merely find 'some identifiable factual nexus which binds the [p]laintiffs and potential class members together as victims of a particular practice.'" *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 346 (E.D.N.Y. 2012) (quoting *Sbarro*, 982 F. Supp. at 261).

In considering Plaintiffs' motion, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (citation omitted). It merely "examines the pleadings and affidavits to determine whether the named plaintiffs and putative class members are similarly situated." *McGlone*, 867 F. Supp. 2d at 442 (citation omitted). If the Court finds that they are, it will conditionally certify the class and order that notice be sent to potential class members. *Id.* (citation omitted).

Plaintiffs argue that the Amended Complaint and Plaintiffs' affidavits "meet the modest factual showing" that Plaintiffs and the proposed putative party plaintiffs are similarly situated in

15

that they have similar duties and hours, and are also subjected to Defendants' allegedly wrongful pay practices. Pls. Memo at 22. Specifically, Plaintiffs proffer the affidavit of Gary Nelson, who was employed by Defendants as a tour guide from November 2013 to July 2015. Affidavit of Gary Nelson ¶ 3. Nelson states that he sometimes worked over forty hours per week and that Defendants did not pay him the overtime premium of one and one-half times his hourly rate for the time he worked in excess of forty hours per week. *Id.* at ¶ 7. He also claims that at all times throughout his employment, Defendants employed more than twenty tour guides, and noted that many tour guides did not work for Defendants for an extended period of time. *Id.* at ¶¶ 8–9. Nelson further contends that Defendants did not pay these tour guides the requisite overtime premium. *Id.* at ¶¶ 11.

The Court finds that this is insufficient to satisfy Plaintiffs' burden. First, Plaintiffs make no mention of tour guides in the original or Amended Complaint, thus base their motion solely on the affidavit of one former tour guide—the affidavits of other opt-in plaintiffs also do not mention tour guides. Second, though courts in this Circuit have conditionally certified classes on the basis of a single affidavit, the affidavit must include sufficient allegations to support a conclusion that other employees are similarly situated. Here, although Nelson claims that Defendants did not pay tour guides an overtime premium, he does not identify any tour guides by name, nor does he claim to have personal knowledge – through conversations or observation – that other tour guides were not adequately paid by Defendants. *See e.g.*, *Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) ("Plaintiff does not, however, provide *any* detail as to a *single* such observation or conversation. As a result, the Court does not know where or when these observations or conversations occurred, which is critical . . . to determine the appropriate scope of the proposed class and

16

notice process."); *Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 510 (S.D.N.Y. 2010) (denying conditional certification due to lack of factual allegations showing other employees similarly situated); *Qing Gu v. T.C. Chikurin, Inc.*, Nos. 14 Civ. 2013–2322 (SJ) (MDG), 2014 WL 1515877, at *3–4 (E.D.N.Y. Apr. 17, 2014) (denying conditional certification where "[p]laintiffs make only general allegations that other employees of defendants were denied minimum wage and overtime compensation."). Moreover, Defendants here have had the benefit of discovery and have not proffered additional information to support the contention that other tour guides are similarly situated. *See Romero v. H.B. Auto. Grp., Inc.*, No. 11 Civ. 386 CM, 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012) ("More importantly, Plaintiff does not make any showing about a widespread failure to pay minimum wage based on Defendants' pay records, although Plaintiff has had the benefit of class discovery and has had access to them."). Accordingly, Plaintiffs' motion for conditional certification of a class of tour guides is DENIED.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for class certification is GRANTED and Plaintiffs' motion for conditional certification is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 66.

It is SO ORDERED.

Dated: June 27, 2017
        New York, New York

                                                                                       Edgardo Ramos, U.S.D.J.