UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTOR H. ALVARADO BALDERRAMO,
*individually and on behalf of all other persons
similarly situated, et al.*,

Plaintiffs,

– against –

GO NEW YORK TOURS INC., and ASEN
KOSTADINOV, *jointly and severally*,

Defendants.

**OPINION AND ORDER**

15 Civ. 2326 (ER)

Ramos, D.J.:

Victor H. Alvarado Balderramo ("Alvarado") brings this FLSA collective action and class action lawsuit against Go New York Tours Inc. and its president and owner, Asen Kostadinov (collectively "Defendants").  Plaintiffs have alleged violations of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA") and related violations of New York Labor Law ("NYLL").[1]  Before the Court is Defendants' motion for summary judgment, or alternatively, to stay the action pending resolution of a New York State Department of Labor ("NYSDOL") investigation pursuant to the primary jurisdiction doctrine.  For the reasons discussed below, Defendants' motion is DENIED.

I.      **BACKGROUND**

A.      **Factual and Procedural History**

Plaintiffs first brought this action on March 27, 2015.  Alvarado is a former tour bus driver for Go New York, which provides guided bus tours of New York City.  Alvarado has

---

[1] *See* 29 U.S.C. §§ 201 *et seq.*; NYLL §§ 190 *et seq.*

alleged that Defendants failed to provide appropriate minimum wage and overtime compensation, failed to provide "spread of hours" pay as required under 12 N.Y. Comp. Codes R. & Regs. ("NYCRR") § 142-2.4, did not provide uniform maintenance pay under 12 NYCRR §142-2.5(c), did not make timely payment of wages as required by NYLL § 191(d), and did not provide wage statements or wage notices as required by NYLL §§ 195(1)–(3).  Alvarado alleges that he worked between 70 and 87 hours per week, often for more than ten hours per day.  Doc. 16 at ¶¶ 18–20.

After filing an amended complaint, which added Luis Falquez as a plaintiff, Plaintiffs moved to conditionally certify this matter as a FLSA collective action on January 22, 2016.  Doc. 18.  Following Defendants' consent to this conditional certification, the Court granted Plaintiffs' motion on April 29, 2016.  Doc. 33. The Court issued an order and notice conditionally certifying this case as a collective action on May 9, 2016.  Doc. 35.  The order covered "all employees of the defendants who worked as tour bus drivers and who were employed at any time since March 27, 2012."  *Id.* at ¶ 2.  Twenty-two individuals consented to become party plaintiffs in the following months.

Plaintiffs then filed a motion seeking to certify a class under Fed. R. Civ. P. 23(b)(3), as well as to conditionally certify a collective action for tour guides (in addition to the bus drivers who were covered by the Court's May 9, 2016 order).  Doc. 66.  On June 28, 2017, the Court granted Plaintiffs' motion for class certification but denied Plaintiffs' motion to conditionally certify a class encompassing tour guides.  Doc. 104.  Following a subsequent request by the parties, the Court issued an order on January 29, 2020 clarifying the scope of the classes.  *See* Doc. 165.  The Court noted that the "Rule 23 class is composed of bus drivers employed from March 27, 2009 on—the end of the class period will be subject to an opt-out deadline."  *Id.* at 6.

Following the Court's June 2017 class certification decision, there was no activity in this case for about twenty-two months.  However, after the Court *sua sponte* dismissed this case for failure to prosecute in April 2019, Plaintiffs wrote that they had been pursuing settlement negotiations and requested that the case be re-opened.  Doc. 108.  The Court granted the request to re-open the case.  Doc. 109.  Defendants thereafter moved to dismiss on the basis of Plaintiffs' failure to prosecute.  Doc. 137.  The Court denied this motion on November 1, 2019.  Doc. 159. The parties have since been engaged in discovery.

**B.      The NYSDOL Investigations**

Defendants now move for summary judgment, arguing that this action must be dismissed or stayed due to overlapping investigations by the NYSDOL.  As described in more detail in § I.B.ii–iv., the record reflects that the NYSDOL has conducted three investigations into Defendants' labor practices, though two have been consolidated.

**i.      Background Regarding NYSDOL Investigations**

Under New York Labor Law, the NYSDOL may investigate suspected labor law violations such as those alleged by Plaintiffs.  *See generally* NYLL § 21.  The NYSDOL has the power to investigate or bring a civil suit on behalf of an employee.  *See, e.g.*, NYLL § 663(2) (authorizing the NYSDOL to bring legal action to collect unpaid wages).  However, this power is not exclusive.  As relevant here, under the NYLL an aggrieved employee with wage and hour claims may either file a complaint directly with the NYDSOL, or file a private lawsuit.  *See* § 663(1), (3) (providing for a private cause of action and noting that "[i]nvestigation by the commissioner shall not be a prerequisite to nor a bar against a person bringing a civil action under this article"); *see also* NYLL § 196-a(a) (permitting employees to file complaints directly with the NYSDOL).

At the end of the NYSDOL's investigation, it may issue an "Order to Comply," or otherwise notify the parties that the investigation has concluded. *See* NYLL § 663(3). If an Order to Comply is issued, it is appealable to the Industrial Board of Appeals ("IBA"). NYLL § 101, *see also* 12 NYCRR § 66.1; Doc. 190-2, Defs' Ex. N (website excerpts explaining the IBA appeal process). An IBA appeal approximates a judicial proceeding and the NYSDOL would appear as a party. 12 NYCRR § 66.1(c). Following the IBA's determination, a party may appeal to state court pursuant to CPLR Article 78. *Id.* § 102(2).

### ii.    Investigation 1185

At an unidentified date, the NYSDOL began investigation number LS012012011185 ("Investigation 1185"), which examined Defendants' treatment of several employees during the time period of March 19, 2012 to April 6, 2014. Doc. 191-1, Defs' Ex. L, at D010570.[2] This investigation resulted in a settlement on or about March 24, 2017, in which Defendants paid $18,066.89 to nine employees, three of whom—Michael Ray, Rory Friday, and Erick Espinosa—were bus drivers. *See id.* at D010597–98; D010629–30, 36–38.[3] A fourth driver, Juan Peralta, was identified as part of the investigation, but does not appear to have been included in the ultimate settlement. *Id.* at D010596, D010629–30. The four bus drivers included in the NYSDOL investigation are also included in the instant collective action. *Compare* Doc. 213 at ¶ 24 *with* Doc. 191-1 at D010629–30.

The NYSDOL settlement was based on the agency's finding that Defendants "failed to provide the correct wages for overtime hours worked and failed to pay workers their complete

---

[2] The Court will cite to the Bates numbers utilized by the parties.

[3] The settlement agreement in the record is unexecuted by the NYSDOL. However, neither party contests the existence of a settlement agreement.

regular wages." *Id.* at D010570.  The settlement also imposed penalties for Defendants' alleged failure to provide meal breaks, and failure to provide wage statements.  A letter from the NYSDOL to Defendants' former counsel also indicates that the NYSDOL found violations of NYLL § 191a, failure to timely pay wages, though the settlement does not appear to have imposed penalties based on this violation.  *Id.* at D010659.  The settlement agreement provides that the NYSDOL "will not issue future assessments against [Defendants] for unpaid wages and/or wage benefits due to any of the employees . . . for the period covered therein, but reserves the right to investigate any claims of wages and/or wage benefits due to:  other employees during any time period;  or the employees . . . for time period other than those set forth therein." *Id.* at D010637.  The agreement also provided that no party could seek further redress at the IBA or in court regarding "such matter . . . except as may be necessary to enforce the terms of this Stipulation." *Id.* at D010638.  However, Plaintiffs have taken the position that because Ray, Friday and Espinosa did not execute any waiver of rights in connection with the NYSDOL investigation—and because the parties to the settlement were the NYSDOL and Defendants (as opposed to the drivers themselves)—nothing prevents these drivers from pursuing this action. Doc. 215, Pls. Opp. at 5.

### iii.    Investigations 7786 and 1502

On undisclosed dates in 2014 and 2015, the NYSDOL instituted two additional investigations of Defendants, investigation numbers LS202014007786 ("Investigation 7786") and LS20215001502 ("Investigation 1502").  Doc. 187, Defs' 56.1 at ¶¶ 22–23.  The investigations covered violations of minimum wage and overtime laws, unlawful deductions, the denial of meal breaks and failure to furnish pay statements, and were eventually consolidated. Doc. 192-1, Defs' Ex. K, at P281.  Following several site visits and inspection of Defendants'

records, the NYSDOL issued a Notice of Labor Law Violation on June 17, 2016. *Id.* at P289. As part of this Notice, the NYSDOL sought to impose $6,062,890.74 in unpaid wages and other damages for violations incurred during a March 2012 to March 2015 audit period. *Id.* at P288. The parties have not described in detail the activity in this investigation between summer 2016 and summer 2019. However, the record suggests that the NYSDOL was in touch with Defendants' former counsel regarding the NYSDOL's computations, both in the time period leading up to the Notice of Labor Law Violation and following that date. These discussions included the exchange of "recapitulation sheets," which reflect the NYSDOL's preliminary calculations regarding money owed, as well as references to a compliance conference, which is akin to a settlement conference. *See Id.* at P280–81.[4]

On August 21, 2019, the NYSDOL issued a letter notifying Defendants of a change in the NYSDOL's calculations of the amount due. Doc. 190-1, Defs' Ex. M, at D000132.[5] As amended, the NYSDOL sought $2,903,875.45 in restitution through Investigation 7786 and $2,963,384.53 for Investigation 1502, for a total penalty of $5,867,259.98. *Id.* at D000132–33. This amount was delineated in amended recapitulation sheets, which provide calculations for damages incurred during the March 2012–March 2015 audit period. Defendants state that they are waiting for the NYSDOL to issue an Order to Comply. Doc. 188 at 9. The record reveals no further activity in this investigation since the NYSDOL's August 21, 2019 letter.

---

[4] It is unclear from the record whether a compliance conference was ultimately held.

[5] The August 21, 2019 letter suggests that there was an intervening change in the damages owed "based on private lawsuits and payments [Defendants] remitted," which was set forth in a letter dated October 9, 2018. Doc. 190-1 at D000132. The parties have not addressed the October 9, 2018 letter and it does not appear to be included in the record before the Court.

### iv.    Overlap and Similarities Between the Investigations and this Case

There is some overlap between the subject matter of the NYSDOL investigations and the claims in this case.  Regarding Investigation 1185, three of the class members were involved in a NYSDOL settlement for claims arising at various times between June 4, 2012 and April 3, 2014. Doc. 191-1 at 10634–36.  These included minimum wage and overtime claims, as well as penalties for violations of NYLL § 661 and failure to furnish a wage statement pursuant to 12 NYCRR § 142-2.7.  Investigation 1185 does not appear to have addressed any of the Plaintiffs' spread of hours claims or claims for uniform maintenance pay, nor does the settlement cover other individuals or time periods.  Because Investigation 1185 resulted in a settlement, the NYSDOL never issued an Order to Comply regarding this investigation; thus, there was also no IBA or Article 78 proceeding.

The degree of overlap between this case and investigations 7786 and 1502 is less clear, and is vigorously disputed by the parties.  Defendants argue that Plaintiffs' claims largely overlap with these NYSDOL investigations, which related to (1) alleged violations of New York minimum wage and overtime law, (2) violations of NYLL § 162, requiring prescribed meal periods; (3) violations of NYLL § 193.1, prohibiting unlawful deductions; (3) violations of NYLL § 661, requiring records to be kept and made available for inspection; and (4) failure to furnish each employee a statement with every payment of wages, in violation of 12 NYCRR § 142-2.7.  Doc. 192-1 at P290.  While Plaintiffs do not dispute that they have also brought minimum wage and overtime claims, they emphasize that they are pursuing several claims not encompassed by the NYSDOL investigation, including: (1) potential "spread of hours" claims, for which Plaintiffs would be owed an additional hour's pay at minimum wage for each day in which their hours worked exceeded 10 hours, in violation of 12 NYCRR § 142-2.4; (2) claims

for failure to provide uniform maintenance pay in violation of 12 NYCRR § 142-2.5(c); (3)

failure to timely pay wages in violation of NYLL § 191[6]; and (4) wage statement and wage

notice violations pursuant to NYLL § 195(1) and §195(3).[7]  Doc. 215 at 11.  Plaintiffs also note

that their minimum wage allegations include hours for which they were allegedly not paid at all,

in contrast to the NYSDOL investigation, which they allege was limited to underpayment of

applicable overtime rates.  Doc. 215 at 12.  Plaintiffs further note that the NYSDOL has not

sought prejudgment interest.  *Id.* at 11.

The parties also dispute the status of the numerous individuals who were employed by

Defendants at some point during the audit period, but were not included in the NYSDOL's

recapitulation sheets.  Plaintiffs argue that such individuals were not subject to investigation by

the NYSDOL, while Defendants have argued that the NYSDOL's investigation considered such

claims, but simply made a determination not to bring charges.  *See* Doc. 215 at 6–11; Doc. 217 at

5–6.  This question impacts a significant portion of the class, as Plaintiffs have submitted an

affirmation stating that, out of the 243 individuals included in the NYSDOL's recapitulation

sheets, only approximately 46 are class members.  Doc. 213 at ¶ 32.  According to Plaintiffs, this

leaves approximately 90 class members hired before May 13, 2016 who were excluded from the

NYSDOL investigation.  *Id.* at ¶ 34.  There is little direct record evidence regarding whether all

of these individuals had their claims investigated, although a July 13, 2016 email from

Defendants' former counsel to an NYSDOL investigator states that the NYSDOL had

---

[6] The NYSDOL made a finding that Defendants had violated §191 in Investigation 1185, but there is no such finding in the other investigations.  *Compare* Doc. 191-1 at D010636 *with* Doc. 190-1 at D000135.

[7] In all three investigations, however, the NYSDOL has alleged violations of 12 NYCRR § 142-2.7, the implementing regulation for § 195(3), NYLL's wage statement provision.

"requested, and has received, time and payroll records for *all* individuals employed by Go NY Tours, for all job classifications, for the relevant time period."  Doc. 192-1 at P283.

In addition to these disagreements, the parties further dispute the relevant timeframe of alleged violations covered by the NYSDOL investigations.  The NYSDOL's recapitulation sheets, which include damages calculations for 243 employees, cover an audit period from March 4, 2012 to March 1, 2015.  Doc. 192-1 at P288; *see also* Doc. 190-1 at D000139. Plaintiffs thus argue that any violations occurring after March 1, 2015, the end of the audit period, are not covered by the NYSDOL investigation, and thus at least 253 drivers who were hired *after* the end of the audit period have completely non-overlapping claims.  Doc. 215 at 14.[8] In support, they cite to a June 17, 2016 correspondence in which the NYSDOL informed defendants that it had "concluded its investigation on Go New York Tours" and that it was Defendants' "responsibility to conduct an up to date self-audit and come into compliance immediately."  Doc. 192-1 at P285, 287.  Defendants have responded that the NYSDOL continued to investigate them after the audit period.  In their December 30, 2020 letter, Defendants argue that the NYSDOL decided not to bring additional charges against Defendants after reviewing its changed employment practices and conducting a "review of samples of Defendants' records to satisfy itself that Defendants [sic] new procedures were satisfactory." Doc. 226 at 2.   These samples, and the NYSDOL's response thereto, are not before the Court.

Finally, there is evidence throughout the record that that the NYSDOL may have excluded some individuals from the investigation due to their involvement in this or other lawsuits.  For example, on May 12, 2015, former counsel for Defendants requested that several

---

[8] In a letter filed December 30, 2020 in response to Plaintiffs' sur-reply brief, Defendants argued that at least three of these individuals were not actually bus drivers.  Doc. 226 at 2–3.

employees, including class representative Alvarado, be excluded from the investigations "as their claims have been resolved, or are being handled in separate DOL audits or in private litigations." Doc. 191-1 at D010590.  On February 19, 2016, Defendants' prior counsel again informed the NYSDOL that Plaintiffs in this case had filed a class certification motion, writing that "[y]ou had previously mentioned to [Defendants' counsel] that you may choose to intervene with plaintiffs' counsel should they seek class or collective certification in a private action, to avoid your investigation from potentially becoming moot." Doc. 192-1 at P336–37.  The NYSDOL has not attempted to intervene in this action.  However, in its August 21, 2019 letter, an NYSDOL investigator noted that changes to the amount due had been made "based [in part] on private lawsuits." Doc. 190-1 at D000132.

## II.   LEGAL STANDARD

To prevail on summary judgment, the movant must show that the admissible evidence and pleadings leave "no genuine dispute as to any material fact."  Fed. R. Civ. P. ("FRCP") 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  "A 'material' fact is one that might 'affect the outcome of the suit under the governing law.'"  *Id.*

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where "the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."  *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d

Cir. 2009) (citing *Celotex*, 477 U.S. at 322–23).  If the moving party meets its burden, "the

nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue

of fact for trial in order to avoid summary judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d

140, 145 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the Court must "construe the facts in the

light most favorable to the non-moving party and must resolve all ambiguities and draw all

reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011)

(quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  "When . . . both

sides move for summary judgment, the district court is 'required to assess each motion on its

own merits and to view the evidence in the light most favorable to the party opposing the motion,

drawing all reasonable inferences in favor of that party.'"  *Asberry v. Hartford Life & Acc. Ins.

Co.*, No. 14 Civ. 69 (JMF), 2015 WL 857883, at *3 (S.D.N.Y. Feb. 27, 2015) (quoting *Wachovia

Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir.

2011)).  Thus, "neither side is barred from asserting that there are issues of fact, sufficient to

prevent the entry of judgment, as a matter of law, against it."  *Heublein, Inc. v. United States*,

996 F.2d 1455, 1461 (2d Cir. 1993).

## III.    DISCUSSION

### A.    The Primary Jurisdiction Doctrine

The doctrine of primary jurisdiction is an abstention doctrine that applies when a court

has jurisdiction over a claim, but "enforcement of the claim requires, or is materially aided by,

the resolution of threshold issues . . . placed within the special competence of the administrative

body."  *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58–59 (2d Cir. 1994).

The doctrine "serves two interests:  consistency and uniformity in the regulation of an area which

Congress has entrusted to a federal agency; and the resolution of technical questions of facts through the agency's specialized expertise." *Id.* at 59.

There is no "fixed formula" for the application of the doctrine, which should be applied on a case by case basis. *Ellis v. Tribune Tel. Co.*, 443 F.3d 71, 82 (2d Cir. 2006) (citations omitted).  However, courts in the Second Circuit have focused their inquiry on the balancing of four factors, "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;  (2) whether the question at issue is particularly within the agency's discretion;  (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 222 (2d Cir. 1995).  The court must also balance "the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Id.* at 223.

## B.      Application of the Four-Factor Test

Defendants' position is that *all* of Plaintiffs' class claims should be dismissed or stayed pending the resolution of the NYSDOL investigation, as their theory is that the NYSDOL's investigations were sufficiently wide-ranging and comprehensive as to cover all the claims at issue in this case.  For the reasons discussed, the Court will deny relief based on this theory. While the parties do not discuss the possibility of dismissing or staying the claims in part, the Court will also decline to do so at this stage, as discussed in § III.B.iii.

### i.      Conventional Experience of Judges and the Agency's Expertise

The primary jurisdiction doctrine will apply when a matter is not within the "conventional experiences of judges," but rather falls within the discretion of an "administrative

agency with more specialized experience, expertise, and insight." *Nat'l Commc'ns Ass'n, Inc.*, 46 F.3d at 223.  Defendants argue that this case involves "technical and policy considerations," while Plaintiffs respond that this is an ordinary FLSA action, similar to the numerous wage and hour cases that this Court regularly handles.  Doc. 188 at 13; Doc. 215 at 16–17.

This factor weighs heavily in favor of Plaintiffs.  Despite Defendants' invocation of the need for agency expertise, they have not identified any specific technical or policy considerations that make this case uniquely suited to agency resolution.  Rather, the resolution of this action will hinge on the application of well-established statutory law to Defendants' labor practices, as is the case in the numerous FLSA and NYLL cases regularly adjudicated by the Court.  Indeed, the NYSDOL's summary of its investigation as described in its June 17, 2016 letter describes routine investigatory methods, such as interviews with employees and the employer, examination of time records, and the calculation of damages based on this information.  *See* Doc. 192-1 at P285–86.  Thus, while Defendants have identified areas of overlap between the NYSDOL investigations and the claims in this action, they have not made a showing that the substantive questions in this case require the exercise of specialized policy judgment.  *Cf. Ellis*, 443 F.3d at *83–84 (applying the primary jurisdiction doctrine to permit the FCC to make a licensing determination, which required a delicate balancing of the public interest and other "difficult and unique" policy questions); *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988) (declining to stay a trademark infringement action, noting that "[a]pplication of the doctrine has been refused when the issue at stake is legal in nature and lies within the traditional realm of judicial competence.").

ii.     **The Scope of the Agency's Discretion**

Defendants have also argued that Plaintiffs' claims are "particularly within the NYSDOL's discretion."  Doc. 217 at 8–9.  However, this factor is typically met when a regulatory scheme places certain issues into the specialized discretion of an agency in the first instance, often to utilize its expertise and assist judicial decision-making.  *See Ellis*, 443 F.3d at 82 (discussing the occasional need for specialized expertise); *see also U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956) (primary jurisdiction is appropriate when "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body").  Here, while the NYSDOL is authorized to investigate violations of NYLL, the overall regulatory scheme weighs against applying the primary jurisdiction doctrine.

First, NYLL explicitly contemplates the possibility of simultaneous action by Plaintiffs in private lawsuits and through action by the NYSDOL.  *See* NYLL § 663 (providing for both a private cause of action and an action by the [NYSDOL], noting that "[i]nvestigation by the [NYSDOL] shall not be a prerequisite to nor a bar against a person bringing a civil action under this article"); *see also* NYLL § 198(3) (same).  This fact alone does not necessarily preclude the application of the primary jurisdiction doctrine in the wage and hour context.  However, the Court will weigh the fact that NYLL treats NYSDOL investigations and private lawsuits as co-equal mechanisms for enforcement of the labor laws.  In this way, NYLL differs from other statutory schemes cited by Plaintiffs, in which an agency has been designated with exclusive discretion over certain regulatory issues, leaving the courts with only limited judicial review.  *Cf. Ellis*, 443 F.3d at 86 (weighing the fact that the FCC has "exclusive authority" over granting licenses, over which the Courts have only limited, deferential review) (citations omitted).

Second, Plaintiffs here have brought FLSA minimum wage and overtime claims as well as claims under NYLL.  The NYSDOL does not have jurisdiction over Plaintiffs' FLSA claims, which provide the basis for this Court's original jurisdiction.  It is true that a party cannot recover the same lost wages under both the FLSA and NYLL, *see Gameroo v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. Sept. 28, 2017), and thus, in the event that Plaintiffs who are covered by the NYSDOL investigation were to ultimately recover in a case brought by the NYSDOL, these Plaintiffs would be unable to recover damages for overlapping FLSA minimum wage and overtime violations.  But Plaintiffs indicate that they are also pursuing FLSA and minimum wage violations for at least 90 individuals whose claims are not included in the NYSDOL recapitulation sheets.  Doc. 215 at 9.[9]  For these individuals, dismissal or a stay would prejudice their ability to pursue the very claims that provide a basis for this Court's jurisdiction.

Finally, Defendants cite two cases for the proposition that Courts often apply the primary jurisdiction doctrine to cases "involving labor claims under investigation by the Department of Labor."  Doc. 217 at 9.  However, neither case cited involves wage and hour claims under NYLL or FLSA; indeed, the Court is not aware of any case in this District or Circuit in which the primary jurisdiction doctrine has been applied to NYLL or FLSA wage and hour claims.[10]  The first case, *U.S. ex rel. Krol v. Arch Ins. Co.*, did not actually apply the primary jurisdiction doctrine, as neither party raised it.  *See* 46 F. Supp. 3d 347, 354 n.4 (S.D.N.Y. 2014).  While the court analogized to the doctrine in holding that the Section 3 of the Davis-Bacon Act (the "Act")

---

[9] According to Plaintiffs' sur-reply brief, the number of individuals with claims outside of these investigations could be as great as 343.  Doc. 225 at 5.

[10] Other district courts to have considered primary jurisdiction in the FLSA wage and hour context have declined to do so, however, weighing the fact that district courts regularly decide FLSA cases.  *See, e.g.*, *Archon v. Taylor & Tyler Inc.*, No. 18 Civ. 6854, 2018 WL 5084875, at *6 (E.D. La. Oct. 18, 2018) (noting that FLSA cases are common in the district); *In re Chickie's & Pete's Wage & Hour Litig.*, No. 12 Civ. 6820, 2013 WL 2434611 (E.D. Pa. June 5, 2013), at *4 (same).

required an administrative determination by the United States Department of Labor before a worker could bring suit for failure to pay prevailing wages under the Act, the court's decision was based the requirements of the Act itself.  *Id.* at 353–54 (analyzing the text, structure and implementing regulations of the Act to conclude that it requires an administrative determination before a private action could be brought).  Under any reasonable interpretation, the NYLL does exactly the opposite.  *See* NYLL § 663(3) (noting that a private action may be brought regardless of whether an investigation has occurred).

Defendants also rely on *Palmer v. Amazon.com, Inc.*, No. 20 Civ. 2468 (BMC), 2020 WL 6388599 (E.D.N.Y. Nov. 2, 2020).  In *Palmer*, the court applied the primary jurisdiction doctrine to dismiss plaintiffs' claims alleging public nuisance and breach of the duty to protect the health and safety of employees under NYLL § 200, in response to allegedly unsafe conditions in a warehouse during the COVID-19 pandemic.  *Id.* at *7.  The court found that the federal Occupational Safety and Health Administration ("OSHA") had primary jurisdiction over the plaintiffs' claims.[11]  However, the court explicitly reasoned that the relief sought by plaintiffs went beyond a simple "application of law to disputed facts," and instead implicated OSHA's unique expertise and discretion.  *Id.* at *6.  The court noted that it would have been tasked with subjective and delicate assessments regarding the adequacy of Amazon's policies in light of an evolving scientific understanding of COVID-19, and that it lacked the "training, expertise and resources" to do so.  *Id.*  The court also noted that entrusting such policy determinations to OSHA, rather than the courts, would avoid the imposition of "vastly different, costly regulatory

---

[11] The *Palmer* plaintiffs also brought a claim for failure to timely pay earned wages under NYLL § 191.  However, the Defendants do not appear to have raised a primary jurisdiction argument regarding their § 191 claim, and the court did not dismiss the § 191 claim on this basis.  *Id.* at *12–13.

schemes." *Id.*  No such policy considerations exist here, as plaintiffs' claims involve the application of statutory law that courts in this district encounter frequently.

### iii.    The Risk of Inconsistent Rulings

Defendants argue that continuing to permit Plaintiffs to prosecute this case will create an impermissible risk of contradictory rulings.  While they are correct that the unusual posture of both this case and the NYSDOL investigation does create some such risk, the risk is ultimately speculative and applies only to a subset of the claims at issue, for only a subset of the class. Moreover, for the reasons discussed herein, the prejudice to class members' ability to pursue claims or time periods *not* clearly covered by the NYSDOL audit is too great for the Court to allow, especially given the length of time that this case has been pending.[12]  Thus, despite the existence of such risk, on the whole the advantages of retaining jurisdiction over the class claims in this case outweigh the disadvantages.  *See Nat'l Commc'ns Ass'n, Inc.*, 46 F.3d at 223 (courts must weigh the relative advantages of applying the doctrine against the costs, including administrative delay).

The Court notes that the parties' arguments regarding this factor largely focus on the extent to which the NYSDOL investigation "overlaps" with the class claims in this case.  While Plaintiffs argue that most of the class claims in this case were not covered by the NYSDOL investigation, Defendants insist that "exact[] overlap" with the investigations is not necessary for the primary jurisdiction doctrine to apply.  Doc. 217 at 4.[13]  Defendants are correct about this principle.  However, as other courts considering primary jurisdiction arguments in the wage and

---

[12] The Court acknowledges that Plaintiffs have played a role in this delay through their past failure to prosecute this case.  However, since the Court's denial of Defendants' motion to dismiss in November 2019, *see* Doc. 159, Plaintiffs have been on notice that further unreasonable delay may result in dismissal, and have furthered the case accordingly.  Thus, regardless of the cause of prior delay, the Court does not find further delay desirable.

[13] Defendants nonetheless take the position that this case is duplicative of the NYSDOL investigation.  *See* Doc. 188 at 13–14.

hour context have observed, the extent of overlap is nevertheless relevant to assessing the risk of inconsistent rulings, because there can be no such risk regarding claims (or individuals) that were not considered by the agency. *See In re Chickie's & Pete's Wage & Hour Litig.*, 2013 WL 2434611, at *4 (finding no risk of inconsistent rulings regarding claims not covered by a Department of Labor investigation). Moreover, because the primary jurisdiction doctrine is prudential, analyzing the overlap between Plaintiffs' claims and the NYSDOL investigation is nevertheless germane to the Court's assessment of the relative advantages and disadvantages of applying the doctrine, and the prejudice to the parties if it were applied. Thus, while Defendants are certainly not obligated to establish "exact overlap," the Court will still analyze the extent to which the NYSDOL investigations may have overlapped with Plaintiffs' class claims. The Court finds that there is considerable ambiguity regarding the extent of this overlap, which must be construed in favor of Plaintiffs.

First, Defendants have not met their burden to show that several class claims falling within the audit period in this case were investigated by the NYSDOL. Only 46 of the approximately 391 class members in this case are included in the NYSDOL's August 2019 recapitulation sheets, and thus would have any chance of recovering for claims within the audit period. Doc. 213 at ¶ 32.[14] Plaintiffs argue that this means approximately 90 class members who worked at Go New York before May 13, 2016 are *not* included in the calculations, including class representative Alvarado.[15] *Id.* at ¶ 34. Drawing all reasonable inferences in Plaintiffs'

---

[14] The Court acknowledges that the 391 class member count is disputed by Defendants and subject to change as the parties continue to engage in discovery. *See* Doc. 226. However, even under the more conservative estimate set forth in Plaintiffs' opposition brief, the NYSDOL investigation would only cover approximately one-third of the class. *See* Doc. 215 at 11.

[15] At the time of Plaintiffs' opposition brief, they had not received discovery regarding class members hired after this date. *See* Doc. 213 at ¶ 25. Plaintiffs do not state how many of the 90 individuals identified in their Opposition papers were hired before the NYSDOL audit period ended on March 1, 2015, as opposed to after this date but before May 13, 2016.

favor, Defendants have not established that these plaintiffs' claims were or will be investigated

by the NYSDOL, raising the risk of significant prejudice to Plaintiffs.  Plaintiffs also allege that

the class has outstanding claims for hours they were shorted while picking up buses, and are

owed money for uniform maintenance and spread-of-hours pay—even those class members

whose minimum wage and overtime claims are reflected in the NYSDOL's recapitulation sheets.

Doc. 213 at ¶¶ 38–40; *see also* Docs. 68–87 (declarations of workers alleging, *inter alia*, hours

for which they were not paid at all and Defendants' failure to provide uniform maintenance

pay).[16]

Defendants do not dispute that numerous claims in this case fall outside the scope of the

NYSDOL's preliminary findings during the audit period, but urge the Court to treat all these

issues as either investigated or under investigation, because of the NYSDOL's wide

investigatory power, and because Investigations 7785 and 1502 were "far-ranging" and

"extremely broad and lengthy."  Doc. 217 at 5–6.  Thus, Defendants suggest that the NYSDOL

"has, and continues to have, jurisdiction over [all issues raised by the class] and the technical

expertise to bring such claims if warranted but has declined to do so [for claims outside of the

Notice to Comply and recapitulation sheets]."  Doc. 217 at 5.  However, Defendants have not

pointed to any specific part of the record that sufficiently defines the scope of the NYSDOL

investigation so as to assure the Court that relevant claims in this case adequately were

considered.[17]  While Defendants attack Plaintiffs for failing to provide sufficient proof that such

---

[16] Some of the drivers who submitted declarations making such allegations in support of Plaintiffs' class
certification motion are included in the NYSDOL's recapitulation sheets, while others are not.  *Compare* Doc. 79
(declaration of Kyle Robinson, who is included in the recapitulation sheet), *with* Doc. 71 (declaration of Lionel
Briggs, who is not included in the recapitulation sheet).

[17] In its independent review of the record, the Court notes that it appears the NYSDOL may have "requested, and []
received, time and payroll records for *all* individuals employed by Go NY Tours, for all job classifications, for the
relevant time period," according to an email sent to the NYSDOL on July 13, 2016 by Defendants' former counsel.

class representatives *were not* investigated, it is Defendants' burden as the moving parties to establish the applicability of the primary jurisdiction doctrine.  Moreover, Plaintiffs have raised questions of fact through their identification of numerous class members who were excluded from the recapitulation sheets but who bring relevant claims.  *See, e.g.*, Doc. 213 at ¶ 34, 38–40, and declarations cited to therein.

Similarly, it is unclear to what extent the NYSDOL investigation has encompassed claims arising after the March 2015 audit end date.  In their sur-reply brief, Plaintiffs argue that approximately 254 individuals hired after May 13, 2016 would not have *any* of their claims covered by the NYSDOL investigation.  Doc. 225 at 4–5.  Regarding this issue, Defendants originally cited only to the August 19, 2019 letter from the NYSDOL regarding its Notice to Comply.  *See* Doc. 190-1.  This document references revisions made by the NYSDOL to the recapitulation sheets based on two data entry errors, as well as revisions made on or around October 9, 2018 based on "private lawsuits and payments [Go New York] remitted."  *Id.* at D000132.  However, while this letter evinces that the NYSDOL has continued to adjust its preliminary calculations of money owed to Plaintiffs for claims *within* the audit period, it does not establish the investigation of claims *outside* of that period; indeed, the recapitulation sheets attached to this letter are limited to the audit period.  *See generally* Doc. 190-1.  Defendants also argued for the first time in their December 30, 2020 letter requesting a sur-sur reply that the NYSDOL, on an unidentified date, "requested and reviewed a sample payroll records . . . and concluded that Go New York was in full compliance with its wage and hour obligations for

---

*See* Doc. 192-1 at P283 (emphasis in original).  However, it is far from clear that the possession of these payroll records equates to a meaningful investigation into most of the claims in this case, particularly given that Plaintiffs allege that they were "shorted" hours spent "off the clock" picking up buses from a depot, at least until Fall 2014. Doc. 215 at 11–12.

periods subsequent to the "audit period")." Doc. 226 at 2. However, Defendants have not submitted corroborating evidence, and waited until after Plaintiffs filed a sur-reply to raise this argument, despite the fact that this issue was raised in Plaintiffs' opposition brief. *See* Doc. 215 at 9–10; *see also* Doc. 213 at ¶¶ 35–37.[18] The Court therefore denied their request to file a sur-sur-reply. Doc. 227. For their part, Plaintiffs have submitted time records showing that some class members may have been paid more than seven days after the end of their work week in violation of NYLL § 191.[19] *See, e.g.*, Doc. 224-2, Pls. Ex. 8, at D012819. Drawing all reasonable inferences in Plaintiffs' favor, the Court cannot find on this record that the NYSDOL investigation sufficiently covered claims arising after the audit period.

Thus, the multiple disputes about the extent of overlap between this case and the NYSDOL investigation counsel against dismissing this case, even if doing so might avoid some risk of inconsistent rulings. This is because dismissal would leave the majority of the class with no opportunity to pursue claims outside of those clearly captured by the NYSDOL's investigation, without any definitive statement from the NYSDOL regarding why those claims may or may not be without merit. This result would not meet the primary jurisdiction doctrine's goal of "materially aid[ing]" the resolution of threshold issues. *See Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58 (2d Cir. 1994).

---

[18] While the Court granted leave for Plaintiffs to file a sur-reply in this case, Plaintiffs were permitted to do so on the basis that potentially relevant discovery was provided to them after their November 16, 2020 opposition brief deadline. *See* Doc. 221. Defendants, however, have not argued that they were not in possession of the referenced NYSDOL documents, and even state that they produced these documents to Plaintiffs on November 30, 2020. *See* Doc. 226 at 2 n.2. This predates Defendants' December 7 reply brief, which failed to cite this evidence. *See* Doc. 217.

[19] Plaintiffs have also submitted evidence purporting to show spread of hours violations post-dating the audit period, using a paystub from plaintiff Darryl Williams as an exemplar. *See* Doc. 224-3, Pls. Ex. 9. While the attached paystub *could* be consistent with a spread of hours violation, it is inconclusive because it does not indicate how many hours Williams worked per day for the week in question.

Moreover, even if Defendants were to establish that the NYSDOL *had* investigated all of Plaintiffs' claims falling outside of the recapitulation sheets and decided not to bring additional charges, the Court would risk no inconsistent rulings by adjudicating these omitted claims.  This is because the NYSDOL's preliminary findings are made in an investigatory capacity, and do not constitute a "full and fair opportunity to litigate the prior determination" for the purposes of collateral estoppel or *res judicata*.  *See Metevier v. CARR Props., Inc.*, No. 15 Civ. 3039 (ER), 2016 WL 5793742, at *5 (S.D.N.Y. Sept. 30, 2016) (*citing Jeffreys v. Griffin*, 1 N.Y.3d 34, 41 (2003)).  In *Metevier*, the court found that an individual's claims against a company were not barred when he had initiated an NYSDOL investigation by filing a complaint, attended a compliance conference with the NYSDOL, and later received a "Final Report" from the NYSDOL informing him it had concluded he was not entitled to recover wages. *Id.* *2.  The court reasoned that the parties had not had a formal hearing in front of the IBA, and that the procedures used in the compliance conference were not substantially similar to those used in a court of law.  *Id.* at 6.  While the record here shows that the parties have likely engaged in more voluminous discovery in this investigation than occurred in *Metevier*, the parties do not dispute that no Order to Comply has been issued, and thus no adversarial administrative or judicial proceedings against Defendants have begun.[20]  Thus, there is no risk of legally contradictory rulings regarding claims outside the recapitulation sheets, because at this stage any decision by the NYSDOL regarding whether to bring charges is akin to the exercise of prosecutorial discretion, and has no preclusive effect on the Court.  *Id.*; *see also Xue Hui Zhang v. Ichiban Grp., LLC*, No. 17 Civ. 148 (MAD) (TWD), 2017 WL 5991748, at *7 (N.D.N.Y. Dec. 1, 2017)

---

[20] In *Metevier*, the court weighed the fact that the parties did not appear to have had the opportunity to "engage in discovery, present testimony under oath, examine and cross-examine witnesses, or issue subpoenas." *Id.* at *6. Here, some of that has occurred.  However, this observation was not dispositive of the court's decision in *Metevier*, which was grounded in the fact that no adjudicatory or quasi-judicial proceeding had occurred.

(finding that an NYSDOL investigation and compliance conference had no preclusive effect on Plaintiffs' NYLL claims).

The Court acknowledges the possibility of inconsistent rulings for a subset of claims in this case in the event the NYSDOL (1) issues an Order to Comply and (2) Defendants challenge that Order at the IBA or in state court.  However, in such an event, Plaintiffs would be prohibited from recovering twice for overlapping claims if they prevailed in both actions.  *See Gameroo*, 272 F. Supp. 3d at 498 (plaintiffs may not recover the same unpaid wages under both the FLSA and NYLL).  Similarly, if Defendants prevailed, they could raise preclusion or estoppel arguments in this Court.  *Cf. Metevier*, 2016 WL 5793742, at *7.  Finally, in the event this case is decided first, the parties have not disputed that the NYSDOL has the discretion to remove individuals from its recapitulation sheets based on overlapping litigation.  *See, e.g.*, Doc. 190-1 at D000132 (referencing recapitulation sheet changes based in part on "private lawsuits").  The Court finds this remote risk preferable to the substantial risk of prejudice to Plaintiffs that would result if this case was further delayed.

Furthermore, it would be difficult for the Court to partially dismiss or stay this case in a way that would not prejudice Plaintiffs' ability to bring their additional class-wide claims.  Even for the claims for which preliminary damages are laid out in the NYSDOL's recapitulation sheets, there remain questions of fact regarding whether any of these violations persisted beyond the audit period, and whether Plaintiffs have additional minimum wage and overtime claims based on being "shorted" hours.  *See, e.g.*, Doc. 224 at ¶ 17 (referencing potential § 191 violations); Doc. 79 at ¶¶ 7–8, 12 (Plaintiff declaration alleging that he was shorted hours in addition to being owed unpaid overtime).  Indeed, even under a partial stay or dismissal, the Court would still be tasked with determining whether substantively similar class-wide violations

existed on behalf of the remaining class members, somewhat undermining the doctrine's benefit

to the Court.[21]  *See Goya Foods, Inc.*, 846 F.3d at 854 (primary jurisdiction was disfavored when

the outcome of an administrative proceeding would have little effect on the federal action's legal

standard or scope of fact-finding).   Finally, the available record shows that the NYSDOL has

apparently taken no action in this investigation since August 2019, raising the concerning

possibility of prolonged delay at the agency level even if only a subset of the claims were

dismissed or stayed.  *See Archon*, 2018 WL 5084875, at *3 (finding that a five-month delay in a

Department of Labor investigation weighed against staying the case).

Thus, while there is some risk of inconsistent rulings regarding a subset of claims in this

case, the Court finds that the benefits of retaining jurisdiction outweigh the potential costs.

### iv.    Prior Application to the Agency

The existence of a prior application to the agency typically weighs in favor of applying

the primary jurisdiction doctrine.  *See Ellis*, 443 F.3d at 89.  Plaintiffs concede that an

application was made to the NYSDOL, though they note that it was not made by the named

Plaintiffs, and that the initial complainants in Investigation 1502 are not class members in this

case.  Doc. 215 at 20 (citing Doc. 192-1 at P324, Doc. 213 at ¶ 24).[22]  Similarly, as discussed in

Section III.B.iii, *supra*, Defendants have not shown that the prior applications to the NYSDOL

cover several claims in this case.

Because overlapping applications to the NYSDOL have been made, this factor favors

primary jurisdiction.  However, the Court gives it reduced weight, because Defendants have not

---

[21] For this reason, the Court will retain jurisdiction over the claims of plaintiffs Ray, Friday, and Espinosa, who have apparently recovered pursuant to the settlement in Investigation 1185.  In the event these individuals show they are entitled to additional recovery through this case, the Court will apply any relevant offsets or other remedies as are necessary to avoid prejudice to Defendants.

[22] The parties have not identified who the initial complainants in Case 7786 were.

shown that the existing application to the NYSDOL will sufficiently aid the resolution of claims in this case.

v.      **The Totality of the Circumstances**

The totality of the four factor test weighs against application of the primary jurisdiction doctrine.  Although there is some risk of inconsistent rulings based on an existing investigation, the Court finds that the benefits of retaining complete jurisdiction over this case outweigh the costs, and would better comport with the FLSA and NYLL's statutory design.  The Court acknowledges that this decision imposes some burden on Defendants, who will continue to face litigation and an agency investigation.  Under the best of circumstances, this would be avoided. However, on the available record, the Court cannot be assured that staying or dismissing the case will adequately aid the resolution of claims in this case, which have already been pending for more than six years, nor would a partial stay or dismissal sufficiently narrow their scope.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 186.  The next case management conference will be held on October 6, 2021.

It is SO ORDERED.

Dated:   May 10, 2021
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.