**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VICTOR H. ALVARADO BALDERRAMO and LUIS FALQUEZ, Individually and on behalf of all other persons similarly situated, | 15-cv-02326 (ER) (DF) |
| Plaintiffs, | |
| -against- | |
| GO NEW YORK TOURS INC. and ASEN KOSTADINOV, jointly and severally, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT, RULE 11 SANCTIONS, AND, ALTERNATIVELY,
TO COMPEL PRODUCTION FROM PLAINTIFFS AND DISQUALIFY CLASS
<u>COUNSEL AND THE CLASS REPRESENTATIVES</u>**

**BARTON LLP**
711 Third Avenue, 14th Floor
New York, New York 10017
(212) 687-6262

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ i

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND ............................................................................................2

ARGUMENT .....................................................................................................................3

    I.    LEGAL STANDARD ON SUMMARY JUDGMENT..........................................3

    II.    PLAINTIFFS' MISCONDUCT WARRANTS SUMMARY JUDGMENT
        DISMISSAL AND OTHER SANCTIONS PURSUANT TO FED. R. CIV.
        P. 11 AND 28 U.S.C. § 1927 ..................................................................................4

        A.    The Zeller Firm Sought Out Drivers and Induced Them to Sign False
            Affidavits ..................................................................................................4

        B.    The Zeller Firm Fails To Conduct a "Reasonable Inquiry" as Required by
            Rule 11 and Therefore Engaged in Vexatious Litigation ............................9

        C.    The Zeller Firm's Misconduct Is So Egregious That Summary Judgment
            Dismissal is Warranted ..............................................................................11

    III.    SUMMARY JUDGMENT IS ALSO WARRANTED
        AS A MATTER OF LAW ......................................................................................13

    IV.    UNDER THE DOCTRINE OF UNCLEAN HANDS AND LACHES, CLASS
        MEMBERS WHO REQUESTED AND WILLINGLY ACCEPTED CASH
        PAYMENTS FOR OVERTIME AS A SUBSTITUTE FOR TIME AND A HALF
        PAYMENTS BY CHECK SHOULD NOT BE PERMITTED TO DEMAND
        ADDITIONAL COMPENSATION FOR OVERTIME.......................................15

    V.    THE COURT SHOULD IMPOSE SANCTIONS AGAINST PLAINTIFFS AND
        THEIR COUNSEL FOR THEIR ADMITTED SPOLIATION OF HIGHLY
        CRITICAL EVIDENCE ......................................................................................16

    VI.    ALTERNATIVELY, THE COURT SHOULD COMPEL PRODUCTION OF
        DISCOVERY FROM PLAINTIFFS ....................................................................19

    VII.    ALTERNATIVELY, THE COURT SHOULD DISQUALIFY ALVARDO AND
        FALQUEZ AS CLASS REPRESENTATIVES AND THE ZELLER FIRM AS
        CLASS COUNSEL................................................................................................20

CONCLUSION................................................................................................................22

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Alpine Pharmacy, Inc. v. Chas Pfizer & Co., Inc.,*
    481 F.2d 1045 (2d Cir. 1973) ................................................................. 19

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ............................................................................ 3

*Bower v. Weisman,*
    674 F. Supp. 109 (S.D.N.Y. 1987) ........................................................ 12

*C.C.S. Commc'n Control, Inc. v. Sklar,*
    1987 WL 12085 (S.D.N.Y. June 2, 1987) .............................................. 15

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ............................................................................ 3

*Eastway Const. Corp. v. City of New York,*
    762 F.2d 243 (2d Cir. 1985) ................................................................. 4

*Estate of Lennon v. Screen Creations, Ltd.,*
    939 F. Supp. 287 (S.D.N.Y. 1996) ........................................................ 15

*Healey v. Chelsea Res., Ltd.,*
    947 F.2d 611 (2d Cir. 1991) ................................................................. 12

*Kamen v. AT&T,*
    791 F.2d 1006 (2d Cir. 1986) ............................................................... 12

*Liebowitz v. Bandshell Artist Mgmt.,*
    WL 2620416 (2d Cir. June 25, 2021) ........................................... 9, 12, 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ............................................................................ 3

*Mok v. 21 Mott St. Restaurant Corp.,*
    2017 WL 3981308 (S.D.N.Y. Sept. 8, 2017) ....................................... 2, 19

*O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.,*
    1992 WL 7839 (S.D.N.Y. Jan. 10, 1992) .............................................. 11

*Ransmeirer v. Mariani,*
    718 F.3d 64 (2d Cir. 2013) ................................................................... 4

*Reich v. New York City Transit Auth.,*
    45 F.3d 646 (2d Cir. 1995) ............................................................................. 14

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,*
    682 F.3d 170 (2d Cir. 2012) ..................................................................... 11, 12

*Topps Co. v. Cadbury Stani S.A.I.C.,*
    526 F.3d 63 (2d Cir. 2008) ............................................................................... 3

*Universe Antiques, Inc. v. Vareika,*
    826 F. Supp. 2d 595 (S.D.N.Y. 2011) ............................................................ 12

*Wecare Holdings, LLC v. Bedminster Int'l Ltd.,*
    2009 WL 604877 (W.D.N.Y. Mar. 9, 2009) .................................................. 15

*Wolters Kluwer Finan. Servs., Inc. v. Scivantage,*
    564 F.3d 100 (2d Cir. 2019) ........................................................................... 13

## STATUTES

28 U.S.C. § 1927 ..................................................................................................... 1, 2

## RULES

Fed. R. Civ. P. 11 ............................................................................................... passim

Fed. R. Civ. P. 37 ................................................................................................. 1, 16

Fed. R. Civ. P. 56 ................................................................................................... 1, 3

Local Civil Rule 56.1 ................................................................................................. 1

## OTHER AUTHORITIES

7 A C. Wright & A. Miller, *Federal Practice and Procedure*, § 1803 (1972 Supp.) .................. 19

## PRELIMINARY STATEMENT

Defendants Go New York Tours, Inc. ("Go New York") and its President and owner, Asen Kostadinov ("Mr. Kostadinov") (collectively "Defendants"), submit this memorandum of law, Statement of Material Facts with supporting evidence pursuant to Local Civil Rule 56.1 (hereinafter the "Rule 56.1 Statement"), and the Declaration of Laura-Michelle Horgan, Esq., sworn to on July 7, 2021 (hereinafter the "Horgan Declaration"), with annexed exhibits in support of their motions:

(i)     pursuant to Fed. R. Civ. P. 11(c)(2) for summary judgment dismissal of this case pursuant to Fed. R. Civ. P. 56(a) and/or appropriate sanctions including, but not limited to, costs and attorneys' fees based upon Plaintiffs' submission of false pleadings, affidavits, and other false representations made by Plaintiffs and their counsel to this Court;

(ii)    pursuant to 28 U.S.C. § 1927 and the inherent power of this Court for sanctions against Plaintiffs and their counsel including, but not limited to, costs, expenses and attorneys' fees incurred by Defendants for more than five years of litigation on the ground that they have multiplied these proceedings unreasonably and knowingly and intentionally pursued vexatious litigation;

(iii)   pursuant to Fed. R. Civ. P. 37(b), (e), or the inherent power of this Court for summary judgment dismissal of this case pursuant to Fed. R. Civ. P. 56(a) and/or appropriate sanctions including, but not limited to, costs and attorneys' fees based upon Plaintiffs' failure to preserve and collect documents and information relating to their claims, and the resulting spoliation of critical evidence in this case;

(iv)    pursuant to Fed. R. Civ. P. 56 for dismissal of Plaintiffs' claims as a matter of law;

(v)     in the alternative, to compel the production of discovery from Plaintiffs pursuant to Fed. R. Civ. P. 37(a)(3);

(vi)    in the alternative, disqualification of The Law Office of Justin A. Zeller, P.C. as class counsel in this case based upon their ongoing pattern of misconduct; and

(vii)   in the alternative, disqualification of Plaintiffs Victor H. Alvarado Balderramo ("Alvarado") and Luis Falquez ("Falquez" as class

representatives.

For the reasons set forth below, Defendants' motion for summary judgment should be granted.

## **FACTUAL BACKGROUND**

Defendants herein incorporate the facts set forth in their Statement of Material Facts Pursuant to Local Civil Rule 56.1 as if fully set forth herein as the factual background for their motion. This is not the first time that the Zeller Firm engaged in fraudulent and sanctionable conduct, concealing facts fatal to any recovery and intentionally misleading the Court on material matters. In fact, in 2017, this Court found that plaintiff had engaged in egregious misconduct in a similar wage and hours case, resulting in the imposition of sanctions pursuant to 28 U.S.C. § 1927/. In *Mok v. 21 Mott St. Restaurant Corp.*, 2017 WL 3981308 (S.D.N.Y. Sept. 8, 2017), the Court determined that Plaintiff's counsel:

> [K]new he was purporting to settle a case on behalf of a dead client without disclosing that his client was dead. He knew full well that his client had not testified at a deposition, that his client had peculiar knowledge of the hours that he had worked and that disclosure of the death would have materially affected the value of the claim. He knew that he had represented to the Court that he was one of the "Attorneys for Plaintiff" and was endeavoring to negotiate a settlement. He knew that the plaintiff could not agree to the terms of a settlement because he was dead and no lawful representative of the estate had been appointed.

*Id.* at *3. For these and other reasons, Plaintiffs' counsel's firm was sanctioned pursuant to 28 U.S.C. § 1927 for attorneys' fees expended by the Defendants. *Id. at* *5. If anything, the conduct of Plaintiff's counsel in the present case is even more egregious as they repeatedly induced class members to submit obviously false Affidavits to the Court, and then allowed witnesses to knowingly provide false testimony in their depositions. They have also stubbornly refused to withdraw baseless claims after being provided with sufficient notice under Rule 11.

2

# ARGUMENT

## I.

## LEGAL STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine issue with regard to any material fact and the moving party is entitled to judgment as a matter of law." *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008) (citing Fed. R. Civ. P. 56(c)). When deciding a summary judgment motion, the "court must construe all the evidence in the light most favorable to the nonmoving party, . . . and draw all inferences and resolve all ambiguities in that party's favor." *Id.*

Nonetheless, to prevail on summary judgment the moving party need not produce evidence showing the lack of a genuine issue of material fact. Instead, "[t]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986). "When the moving party has carried its burden under [Fed. R. Civ. P. 56(c)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Indeed, the nonmoving party cannot simply "rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986).

Pursuant to Fed. R. Civ. P. 11(c)(2) for summary judgment dismissal of this case pursuant to Fed. R. Civ. P. 56(a) and/or appropriate sanctions including, but not limited to, costs

and attorneys' fees based upon Plaintiffs' submission of false affidavits in support of class

certification, and other false representations made by Plaintiffs and their counsel to this Court.

## II.

### PLAINTIFFS' MISCONDUCT WARRANTS SUMMARY JUDGMENT DISMISSAL AND OTHER SANCTIONS PURSUANT TO FED. R. CIV. P. 11 and 28 U.S.C. Section 1927

Rule 11(b)(3) of the Federal Rules of Civil Procedure provides:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Rule 11 thus "explicitly and unambiguously imposes an affirmative duty on each attorney

to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Eastway*

*Const. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir. 1985), *superseded on other*

*grounds by rule*.  Likewise, under 28 U.S.C. Section 1927, federal courts may exercise their

inherent power to sanction an attorney or party that has "acted in bad faith, vexatiously,

wantonly, or for oppressive reasons." *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013).

The egregious misconduct of the Zeller Firm in this case should result in both dismissal of the

claims and an award of the entirety of Go New York's attorneys' fees and costs.

### A.  The Zeller Firm Sought Out Drivers and Induced Them to Sign False Affidavits.

In this case, it has become clear that, for the purpose of generating attorneys' fees as class

counsel, the Zeller Firm actively sought out drivers with advertisements and then induced them

to sign patently false affidavits that grossly inflated the days and hours that they worked in order

to bring a fraudulant class action case against Go New York.  The Zeller Firm knew or should

have known that the assertions in the pleadings and affidavits were false and, in many cases, preposterous. For example, class representative Alvarado initially claimed in the Complaint filed in 2015 that he worked 114 ½ to 121 ½ hours a week.  (Ex. A, ¶ 19.)  The Zeller Firm knew or should have known that this assertion was preposterous. Had the Zeller Firm conducted even a cursory investigation, it would have realized that no company could have run the risk of allowing drivers of buses carrying large numbers of tourists to repeatedly work 15 to 18 hours per day. This would result in an intolerable safety risk.  This should have been obvious to the Zeller Firm, but it nonetheless signed and filed the original Complaint. Thereafter, in seeking class certification, the Zeller Firm induced numerous drivers to submit obviously false Affidavits to the Court, grossly exaggerating the hours worked by members of the class.  Had the Zeller firm conducted even a cursory investigation regarding Go New York's operations, and had the Zeller firm carefully questioned its clients, it would have realized that unsupported assertions in the Complaint and subsequent Affidavits were false, if not preposterous in the circumstances here. (Rule 56.1 St., ¶ 117.)[1]

Deposition testimony of class representatives and other class members confirms that the Zeller Firm knowingly submitted false affidavits without conducting any meaningful investigation of the truth of the allegations therein. In the Amended Complaint and Affidavit filed by the Zeller Firm and Alvarado in 2016, Alvarado claimed to have worked as many as 70 – 87 hours a week without any proof of this claim. (Ex. H, ¶ 19; Ex. I, ¶ 4.). In the circumstances here, this is no less preposterous than the original claim that Alvarado worked 114 to 121 hours

---

1 It is well to note that the Complaint against Go New York was not the only Complaint that they filed in Alvarado's name that week seeking to commence a class action.  Less than one week before filing this Complaint in this action, they commenced another action against Alvarado's prior employer, Taxi Tours Inc. d/b/a Big Taxi Tours ("Taxi Tours") and its owner.  (Ex. TT.)  That case was settled by an insurance company for $100,000.00.  (Ex. UU.) Plainly, Alvarado and the Zeller Firm hope to recover an even more substantial windfall in this case against Go New York.

per week.  At his deposition, Alvarado admitted that his sworn Affidavit was false.  Specifically, he admitted that during the time he worked at Go New York (August 2013 to February 2014) he did not regularly work between 70 – 87 hours a week for six days a week.  He testified that "*[i]t wasn't all of the weeks that I worked six days.  I would say that an average of four weeks that I worked six days.*"  (Ex. S. p. 155, line 16 – p. 156, line 21.)  (Emphasis added.)   He also admitted that he had no proof to contradict Go New York's contemporaneous time records showing that he never worked more than 46 hours and 55 minutes in a single week.  (Rule 56.1 St., ¶¶ 123-24.)  Alvarado's Affidavit in which he falsely claimed to have worked 70-87 hours per week and six days a week was submitted to the Court by the Zeller Firm not once, but twice. (*Id.*, ¶¶ 17, 24.)

When he was confronted with his time records showing that he never worked more than five days a week, and never more than 46 hours and 55 minutes in a single week, Alvarado tried to concoct a story that would explain his blatant misrepresentation to the Court in his Affidavit. He claimed that he was required to arrive at Go New York's bus yard in Brooklyn at 5:00 a.m. to pick up a tour bus and drive it into to Manhattan.  (*Id.*, ¶126.)  The evidence demonstrates that this testimony is patently false.  Since Go New York's passenger tours usually did not begin until 9:00AM, and never before 8:00 a.m., the bus yard did not open until 7:00AM, or a few minutes before 7:00AM, each day, and there would be no need for any drivers to arrive as early as 5:00 a.m.  (*Id.*, ¶ 60, 127.)  When Alvarado worked for Go New York, the yard would be opened at 7:00AM by a mechanic, a supervisor or a driver's supervisor named John Littlejohn (called "Troop" by the drivers).  (*Id.*, ¶ 60.)  Bus drivers would arrive at the bus yard to start their shifts no earlier than 7:30 a.m. and usually between 8:00 and 8:30 a.m.  (*Id.*)  Alvarado's assertion that he was required to arrive for work at 5:00 a.m. every day was a blatant falsehood.

Alvarado also claimed that he wrote down the hours that he worked in a notebook and that he had the notebook in his house. (*Id.,* ¶ 182.) Since Mr. Alvarado appeared for his deposition from home via Zoom, he was given time to search for and retrieve the notebook (over five years after he commenced this action) and claimed that it must have gotten lost.. (*Id.*, ¶¶ 182-83.) The Zeller Firm had taken no steps prior to the deposition to locate and produce Alvarado's notebook---indeed, it appears that prior to the deposition the Zeller Firm had not been aware of its existence.

Another driver, Lionel Briggs, admitted that he grossly overstated his hours in the Affidavit he signed and which was submitted to this Court by the Zeller Firm in support of class certification. In his Affidavit, Briggs stated that he "worked for the defendants approximately 60 hours per week and sometimes more." (Ex. N.) At his deposition, however, Briggs admitted that he worked a total of five weeks for Go New York and testified "***okay, I'm not saying every week but I'm saying I've worked about 60 hours a week***" and that "***I don't think nobody in their right state of mind can work 60 hours a week*** . . .". (Rule 56.1 St., ¶¶ 154-58.) (Emphasis added.)

Another driver, Lawrence Atkinson, also admitted that he grossly overstated his hours in the Affidavit he signed and which was submitted to this Court by the Zeller Firm in support of class certification. In his Affidavit, Atkinson claims that he "work[ed] for the defendants approximately between twelve and thirteen hours per day approximately five days per week". (Ex. M, ¶4.) At his deposition, however, he admitted that the number of hours that he worked changed seasonally, and that in the winter he could work as few as six hours a day. (Rule 56.1 St., ¶ 153.)

Additionally, Alvarado and Falquez have falsely testified that they never received any wages for overtime hours that they worked for Go New York, when in fact Go New York produced receipts signed by them in which they acknowledged receiving cash payments for overtime.  (*Id.*, ¶¶ 136-38.)  During their depositions, Alvarado and Falquez confirmed that they signed the receipts. (*Id.*, ¶¶ 137, 153.)  Faced with proof that he signed receipts for the cash that he received for overtime hours, Alvarado's explanation for the receipts at his deposition was that he just signed them "[t]o receive my check." (*Id.*, ¶ 137.)

Perhaps the best example of the Zeller Firm's misconduct in this case is the fact that Go New York has readily admitted that, for a very short period of time when the company first began operating, the company did not pay tour bus drivers time and a half for overtime.  (*Id.*, ¶ 70.)  Instead, at the drivers' request, Go New York paid the drivers by check up to forty hours a week and for any additional hours in cash at the same rate for straight time.  (*Id.*, ¶ 75.) As testified by Messrs. Kostadinov and Baran, this was done at the request of drivers who wanted to be paid in cash for various reasons, including avoiding child support payments that would be automatically taken out of their paycheck by the State or in order to qualify for public benefits. (*Id.*)  In 2019, Go New York's counsel advised the Zeller Firm that it would be willing to make all of the drivers whole by paying the difference between the straight time that they were paid for overtime and time and a half for this short period of time.  (*Id.*, ¶ 36.) Go New York even calculated the total amount due to drivers and exchanged this information with the Zeller Firm. Rather than accept the fraction of wages that Go New York has acknowledged it may owe drivers because they were paid straight time instead of time and a half for approximately a year and a half, the Zeller Firm, Mr. Alvarado and Mr. Falquez doubled down on their false claims and continued their misconduct by making false representations to this Court.  Messrs, Alvarado

and Falquez, blatantly lied in their depositions, and the Zeller Firm allowed them to do so, knowing full well that these witnesses were intentionally providing false testimony on material issues in the case.

### B. *The Zeller Firm Fails To Conduct a "Reasonable Inquiry" as Required by Rule 11 and therefore Engaged in Vexatious Litigation.*

The record in this case also unequivocally establishes that the Zeller Firm failed to conduct any investigation whatsoever concerning the claims alleged in the pleadings, much less the reasonable investigation required by law. *See Liebowitz v. Bandshell Artist Mgmt*, 20-2304, 2021 WL 2620416, at * 1 (2d Cir. June 25, 2021). Instead, they simply accepted at face value the drivers' statements concerning the days and hours that they work. Most of these statements were demonstrably false, made from whole cloth. Had the Zeller Firm carefully questioned its clients about the veracity of these claims and sought evidentiary support, it would certainly have discovered that they were false and grossly exaggerated. When asked what the basis for his claim to have worked between 11 and 13 hours a day for Go New York Class Representative Falquez testified that "[f]rom what I remember, that's what I told the attorney to put down" and confirmed that he did not have any documents with him to support that claim when he met with the attorney. (Rule 56.1 St., ¶ 114.) Similarly, Briggs testified that the basis for the hours he claimed to have worked in his Affidavit was "[b]y word-of-mouth, but like I said I didn't have the papers to – I didn't have, you know, I didn't have it written down." (*Id.*, ¶ 116.) The drivers also testified that they did not bring any documents to support their claims to the meetings that they had with the Zeller Firm, nor did they send them any documents thereafter. (*See* Rule 56.1 St., ¶¶ 111-119.) Remarkably, in over five years of litigation, the Zeller Firm has produced a grand total of 572 pages of documents. (*Id.*, ¶ 169.) Of those 572 pages, documents with Bates Nos. P257-549 were obtained by the Zeller Firm from the NYSDOL pursuant to a FOIL request.

(*Id.*) Other than these documents, the only existing records reflecting hours and wages at issue in this case are Go New York's contemporaneous time records which have been authenticated by its witnesses, and which directly contradict the claims made by plaintiffs regarding the hours that they worked and for which they received no payment. (*Id.*)

The Zeller Firm's failure to conduct a reasonable inquiry in this case is so egregious that they have brought claims on behalf of a driver, William Stewart, who already settled the identical wage and hour claims two years before the Zeller Firm filed his Affidavit with this Court in support of class certification. (*Id.*, ¶¶ 159-65.) Despite a 2014 settlement entered into on his behalf by the National Labor Relations Board, the Zeller Firm has included him in the class of drivers in this case and sought to recover additional money for the claims that he had settled. On September 23, 2016, Stewart signed an Affidavit of Plaintiff in Support of Motion to Certify a Class which was notarized by Attorney Gurrieri. (*See* Ex. O.) Although his name is "William T. Stewart", the Affidavit was drafted in the name of "William T. Steward". (*Id.*) Stewart's address in the Affidavit is 9602 Glenwood Rd, Brooklyn, NY 11236, the same address in the W-2 for the settlement payment. (*See* Ex. VV.) In the face of the settlement agreement and a W-4 Form showing that the settlement had been reported as income to the IRS in 2014, Stewart simply denied knowing anything about it at his deposition. (*See* Rule 56.1 St., ¶ 165.) To this day, the Zeller Firm has not withdrawn his Affidavit to this Court by which he seeks to recover on claims that he already settled, nor has the Zeller Firm eliminated Stewart's duplicative claims from the case/

Where, as here, it is unequivocally clear that the Zeller Firm failed to conduct a "reasonable investigation into [the] veracity" of the allegations made in the Complaint, Amended Complaint and the Affidavits from the drivers submitted in support of class certification (and

instead simply made them up out of thin air) sanctions are more than warranted. *See O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.*, No. 88 CIV. 8498 (JSM), 1992 WL 7839, at *5 (S.D.N.Y. Jan. 10, 1992) (defendant ordered to pay costs resulting from the filing of a false affidavit by one of its witnesses where defendant's in-house counsel "prepared and were responsible for the false affidavit[]" and the affidavit was drafted "without conducting a reasonable investigation into its veracity").

Further, the Zeller Firm should have recognized long ago that the claims in the pleadings and affidavits submitted by class members were grossly exaggerated and false.  Go New York produced thousands of pages of contemporaneous time records that flatly contradict the claims in this case.  Go New York long ago established, for example, that after it submitted time clocks in October 2014, it complied with its obligations to pay overtime at a time and one-half rate. Yet rather than admit that their original claims had no evidentiary foundation, the Zeller Firm has doubled down, insisting that the parties proceed with costly and wasteful discovery.  In so doing, the Zeller Firm has wrongly and unnecessarily multiplied these proceedings.  This is a classic example of vexatious litigation.

C.  ***The Zeller Firm's Misconduct is So Egregious That Summary Judgment Dismissal is Warranted.***

Rule 11 provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, ***the court may impose an appropriate sanction*** on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1) (emphasis added).  "[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness and is ***not*** based on the subjective beliefs of the person making the statement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682

F.3d 170, 177 (2d Cir. 2012) (emphasis added; citation omitted).  When determining whether an

inquiry was reasonable, courts often look to the following factors:

> [W]hat constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

*Kamen v. AT & T*, 791 F.2d 1006, 1012 (2d Cir. 1986) (emphasis omitted) (quoting Fed. R. Civ.

P. 11 Advisory Committee Notes to 1983 Amendments).  The Advisory Committee Notes to the

1993 Amendments to Rule 11 further provide that an attorney's obligations with respect to the

contents of papers submitted to the court "are not measured solely as of the time they are filed

with or submitted to the court, but include reaffirming to the court and advocating positions

contained in those pleadings and motions after learning that they cease to have any merit."  The

Second Circuit has instructed that a court "is to impose sanctions against a party and/or his

attorney under Rule 11 when it appears that a pleading or other signed paper has been interposed

for an improper purpose or that after reasonable inquiry, a competent attorney could not form a

reasonable belief that the signed paper was well grounded in fact."  *Healey v.* Chelsea Res., Ltd.,

947 F.2d 611, 622 (2d Cir. 1991); *see also Universe Antiques, Inc. v. Vareika*, 826 F. Supp. 2d

595, 611 (S.D.N.Y. 2011) (awarding monetary sanctions against party when he "lied repeatedly

about issues central to this litigation, not only failing to correct his fraudulent Affidavit but

submitting additional false statements under oath."); *Bower v. Weisman*, 674 F. Supp. 109, 112

(S.D.N.Y. 1987) (awarding attorneys' fees and costs pursuant to Fed. R. Civ. P. 11 for perjury

committed during deposition testimony).  In the *Liebowitz* case decided by the Second Circuit

last month, the Court affirmed the District Court's award of  sanctions against attorney

Liebowitz holding that his conduct was not 'colorable' as required to contest the court's bad-

faith finding" based upon its finding that "[t]here exists no 'legal or factual basis' to excuse Liebowitz of his duty to reasonable investigate the claims in his complaint". *Id.* (*citing Wolters Kluwer Financial Services, Inc. v. Scivantage*, 564 F.3d 110, 112 (2d Cir. 2019).

Upon determining that Rule 11(b) and  28 U.S.C. Section 1927 have been violated, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R. Civ. P. 11(c)(1).  Additionally, "[a]bsent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."  *Id.*

### III.

### SUMMARY JUDGMENT IS ALSO WARRANTED AS A MATTER OF LAW

The indisputable proof in this case establishes that Plaintiffs always paid drivers in excess of the minimum wage (Rule 56.1 St., ¶ 87), provided notice of the wages that they would be paid upon hiring (*id.*, ¶ 86), provided drivers with statements with each payment of wages that were paid to the drivers each week (pay stubs and receipts for cash) (*id.*, ¶¶ 78-80, 88-90), posted notices of workers' rights (*id.*, ¶ 91), and maintained accurate and sufficient records (*id.*, ¶ 14). Therefore, Plaintiffs' claims under the Minimum Wage Act (Second Claim for Relief), for failure to timely pay wages (Third Claim for Relief), under the Wage Theft Prevention Act (Fourth Claim for Relief) and for declaratory relief must be dismissed as a matter of law.  (*See* Am. Comp. at Ex. H.)

Moreover, to the extent that drivers may be owned any compensation for maintaining the uniforms that were provided to them when they were hired and subsequently at their request, such amount would truly be *de minimus* since it would be the cost of putting them into the washing machine with their regular wash.  (Rule 56.1 St., ¶ 94.)  Therefore, summary judgment

should be granted on this basis as well. *See Reich v. New York City Transit Auth.*, 45 F.3d 646, 652 (2d Cir. 1995) (reversing judgment in favor of plaintiff police officers in canine unit and dismissing FLSA claims on the ground that the time spent by the officers to care for dogs during their commutes to and from work was *de minimis*).

Finally, the proof establishes that the only time period at issue for non-payment of overtime wages is from 2013 when Go New York first achieved sales over $500,000.00 to October 2014 when the company changed its practices, installed biometric time clocks, and began paying drivers the time and a half rate for overtime by check. (*See* Rule 56.1 St., ¶¶ 53-110.) Moreover, the actual difference between the pre-tax cash payments of approximately $12.00 to $15.00 that the drivers were paid at their request and the post-tax time and a half rate that they were owed would be a matter of dollars and cents for each individual driver. Defendants do not dispute that Go New York paid drivers in cash for overtime at the same hourly rate as the first 40 hours that they worked until October 2014. (*Id.*, ¶¶ 70-79.) Indeed, Go New York has, on numerous occasions, offered to pay Plaintiffs the difference between the standard rate of pay and time and a half for overtime from 2013 to October 2014 to resolve Plaintiffs' claims. (*Id.*, ¶ 36.) Defendants have offered to pay this amount even though drivers were paid well over the minimum wage, compensated in cash for overtime during this time period, earned cash tips of up to $300 a week as well as bonuses, and thus received compensation well over the time and a half rate that they were owed for overtime. (*Id.*, ¶¶ 81-87.) Plaintiffs' counsel has refused this offer, plainly in the hopes of generating a windfall of attorneys' fees for themselves.

**IV.**

**UNDER THE DOCTRINES OF UNCLEAN HANDS AND LACHES, CLASS MEMBERS WHO REQUESTED AND WILLINGLY ACCEPTED CASH PAYMENTS FOR OVERTIME AS A SUBSTITUTE FOR TIME AND A HALF PAYMENTS BY CHECK SHOULD NOT BE PERMITTED TO DEMAND ADDITIONAL COMPENSATION FOR <u>OVERTIME</u>**

This case presents a unique circumstance – members of the class for a short period of time from 2013-2014 requested that in addition to their tips, they receive payments for overtime in cash. They expressed a preference for receiving cash for hours worked above forty and bonuses earned, and the company acceded to their requests, in part because in its early stages the company's owners and management were unsophisticated and had no understanding of state and federal wage law requirements. It may have been improper for both the drivers to request cash payments and the company to provide those payments. However, having willingly accepted cash payments as a substitute for payment of time and one/half by check, the class members as a matter of equity should not be permitted to come into this Court and seek additional compensation. *See Wecare Holdings, LLC v. Bedminster Int'l Ltd.*, 2009 WL 604877, at *11–12 (W.D.N.Y. Mar. 9, 2009) ("application of the unclean hands rule is appropriate 'where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party'") (quoting *Estate of Lennon v. Screen Creations, Ltd.*, 939 F. Supp. 287, 293 (S.D.N.Y. 1996); *C.C.S. Communication Control, Inc. v. Sklar*, 1987 WL 12085, at * (S.D.N.Y. June 2, 1987) ("[Plaintiff] attempted to perpetrate a fraud upon the Court in order to obtain an injunction which would put Sklar, his competitor out of business and destroy him financially. Having committed perjury, plaintiff cannot expect to obtain an equitable remedy from this Court.").

Here, the drivers induced Go New York to believe that they would accept this form of compensation, and Go New York relied to its detriment on the preferences of the drivers to receive cash payments.  Under the equitable doctrines of unclean hand and laches, the drivers who accepted these cash payments should not be permitted to change their mind and insist on additional compensation.  Tellingly, when drivers were asked whether they reported tips and cash payments to the IRS, they uniformly invoked the Fifth Amendment.  Having invoked the Fifth Amendment, an adverse inference arises that the cash payments were not reported to the IRS, in which event the equitable doctrines of laches and unclean hands should preclude the drivers from using the offices of this Court to seek additional compensation.

**V.**

**THE COURT SHOULD IMPOSE SANCTIONS AGAINST PLAINTIFFS AND
THEIR COUNSEL FOR THEIR ADMITTED SPOLIATION OF
<u>HIGHLY CRITICAL EVIDENCE</u>**

Pursuant to Fed. R. Civ. P. 37(b), (e), or the inherent power of this Cour,t this Court should grant  summary judgment dismissing this case pursuant to Fed. R. Civ. P. 56(a) and/or appropriate sanctions including, but not limited to, costs and attorneys' fees based upon Plaintiffs' failure to have preserved and collected  numerous material and relevant documents and information relating to their claims, and the resulting spoliation of critical evidence in this case.

The Zeller Firm failed to comply with its obligation to advise  its clients to preserve evidence relating to their claims and, as a result, critical evidence has been spoliated.  The critical evidence that has been destroyed includes a notebook Mr. Alvarado claims to have kept to record his hours while working at Go New York (*see* Rule 56.1 St., ¶¶ 182-84); text messages between the drivers and their supervisors about their schedules and the hours that they worked

(*id.,* ¶ 172-79), notes made by drivers concerning the time they worked, e-mail communications, bank records, tax returns, pay stubs, phone records, and numerous others (*id.*, ¶¶ 181-84.)  All of these documents were requested by Defendants as early as December 15, 2015, and prior to the Court issuing the Class Certification Order on June 28, 2017.  *Id.*, ¶¶ 6-8.

During the recent depositions of two class representatives, Messrs. Alvarado and Luis Falquez, and a class member, Lawrence Atkinson, it became clear that Plaintiffs' counsel failed to preserve and collect highly relevant evidence, including records made by the deponents that almost certainly would contradict their claims in this lawsuit.  Each witness admitted that he was never instructed by counsel to preserve evidence, nor did counsel visit with them or take any other steps to obtain relevant documents in their possession, such as e-mails text messages, time records, pay stubs, bank records and others.  While Mr. Alvarado claimed to have kept daily handwritten records of his hours of work in a notebook, he could not locate it in his home during the deposition.  Plaintiffs' counsel made no effort, whatsoever, during the more than five years that this litigation was pending, to collect and preserve this information, which was the subject of long-outstanding discovery requests by Defendants.  Plaintiffs' class representatives and their counsel did not comply with their most basic duties to preserve and collect relevant evidence relating to their claims. It is no less than shocking that both Mr. Falquez and Mr. Atkinson admitted that they had never searched for or preserved any emails, notes, text messages or other documents relating to the class's claims, that their counsel never informed them of their obligation to preserve such evidence, and that any such emails or documents had since been destroyed. Plaintiff's counsel obviously has done nothing to preserve relevant documents in possession of class representatives and class members.  This is particularly egregious because defendants strenuously dispute the claims in this case and have raised substantial affirmative

17

defenses, including the misconduct and unclean hands of class representatives and class members.

In addition, Plaintiffs' counsel continues to rely on Messrs. Alvarado and Falquez as class representatives notwithstanding overwhelming evidence that they committed perjury in their depositions (an accusation that we do not make lightly). They denied receiving any cash payments from Go New York even confronted with receipts that they signed acknowledging such payments.  To support his outrageous claim concerning the number of hours he allegedly worked, Mr. Alvarado conjured up a story involving an alleged requirement that he arrive for work at 5:00 a.m, which would have been impossible in the circumstances since the bus yard was locked at that time and passenger tours did not usually begin until about four hours later at 9:00 a.m.  Mr. Alvarado claimed that he had a notebook in his possession that would support his claim that he worked six days a week and between 70 – 87 hours per week nearly every week, and that he arrived at Go New York's bus depot at 5 a.m., but he claimed to have somehow "lost" these documents.  The flat denial by Alvarado and Falzuez that they received any of cash payments was not only contrary to the receipts that they signed, but it was also contradicted by Mr. Atkinson, who worked for the company from 2013 until last year, and admitted that the drivers not only received cash payments in the early years of the company, but that they preferred it.  *See* Atkinson Dep. at Ex. B, pp. 97-98. Mr. Baran confirmed in his deposition that they received cash payments. Accordingly, the testimony of both class representatives, Messrs. Alvarado and Falquez, was clearly perjurious. Further, plaintiff's attorneys knew or should have known that this testimony was perjurious, but did nothing to intervene.

Moreover, especially in view of the evidence that plaintiff's counsel submitted false evidence to the Court,, it  has also become abundantly clear that Plaintiffs' counsel failed to

adequately investigate Plaintiffs' claims before commencing this action or. at the very least, should have recognized more recently during the discovery process, that Plaintiffs' claims lack merit.  In any event, Plaintiffs' counsel plainly failed in their basic and fundamental duty to preserve and collect highly relevant evidence in their clients' possession, resulting in apparent destruction of evidence that almost certainly would have undermined Plaintiffs' claims. Counsel's repeated failures to diligently litigate this case are particularly egregious given their fiduciary obligations to the Court and their clients as appointed class counsel.[2]

Instead of conducting any kind of investigation or ensuring the preservation of evidence that would most certainly establish the falsity of Plaintiffs' claims, the Zeller Firm continued to pursue baseless claims for the next five years.  Had the Zeller Firm had taken reasonable steps to preserve the evidence in possession of their clients, that evidence surely would have confirmed that Plaintiffs' claims in this case are baseless and, indeed,  fraudulent.  As a result, like the defendant in the *Mok v. 21 Mott St. Restaurant Corp.*, 2017 WL 3981308, Go New York was forced to spend hundreds of thousands of dollars in legal fees to defend itself and Mr. Kostadinov and wasted this Court's precious time.

**VI.**

**ALTERNATIVELY, THE COURT SHOULD COMPEL PRODUCTION OF
DISCOVERY FROM PLANTIFFS**

In the event that the Court determines not to grant summary judgment on any of the grounds set forth above, Defendants seek an order to compel production of documents by Plaintiffs pursuant to Local Rule 37.2.  Despite Defendants' document requests (*see* Exs. C, E, F.

---

2 *See Alpine Pharmacy, Inc. v. Chas Pfizer & Co., Inc.*, 481 F.2d 1045, 1049 (2d Cir. 1973) (stating that designation of counsel in a class action comes through judicial determinations and therefore "the attorney so benefitted serves in something of a position of public trust.  Consequently, he shares with the court the burden of protecting the class action devise against public apprehensions that it encourages strike suits and excessive attorneys' fees") (*citing* 7 A C. Wright & A. Miller, *Federal Practice and Procedure*, § 1803 (1972 Supp.).

and G to Rule 56.1 Statement), Plaintiffs have failed to produce whole categories of documents such as tax returns, bank records, telephone records, text messages, and emails for the drivers that would almost certainly further refute their fraudulent claims concerning their hours of overtime work and, that would show that Plaintiffs are seeking damages for many claims that their clients have already settled prior commencement of this case.  Plaintiffs have also refused to produce highly relevant documents such as the Zeller Firm's advertisements (Ex. F), notices to the class members (*id.*), documents relating to the drivers' failure to pay child support during the time that they worked for Go New York (*id.*), documents relating to the drivers' receipt of public benefits during the time that they worked for Go New York (*id.*), and a notebook that Lionel Briggs referred to and used during his deposition (Ex. G.)  Defendants have met and conferred with Plaintiffs numerous times regarding their failure to produce these documents. These documents should have been produced years ago.  In the event that this case proceeds, Plaintiffs should be compelled to produce them immediately pursuant to Local Rule 37.2.

## VII.

## ALTERNATIVELY, THE COURT SHOULD DISQUALIFY ALVARADO AND FALQUEZ AS CLASS REPRESENTATIVES AND THE ZELLER FIRM <u>AS CLASS COUNSEL</u>

Plaintiff and Class Representative Alvarado worked for Go New York for a total of six months.  (Rule 56.1 St., ¶ 17.)  Plaintiff and Class Representative Falquez worked for Go New York for a total of 31 days.  (*Id.*, ¶ 15.)  Both of them grossly exaggerated the hours that they worked for Go New York Tours in 2013 to 2014 in the Affidavits that they submitted to this Court and continued to perpetrate this false testimony for more than five years.  Based upon their false representations, the Court designated them as representatives of the class.  Alvarado and Falquez also lied about receiving cash payments from Go New York for overtime and for which

they signed receipts.  They did so because they preferred to receive cash payments so that, *inter alia*, they could evade their child support obligations.  They also lied about receiving cash tips and bonuses.  Under these circumstances, they are not competent to represent a class of drivers employed by Go New York and should not be allowed to testify about Go New York's wage and hour practices. Clearly, neither Messrs Alvarado or Falquez, nor their counsel can adequately represent the class.  Accordingly, they should be disqualified as class representatives and barred from any recovery of damages or attorneys' fees.

The Zeller Firm should be disqualified as class counsel.  They are repeat offenders in making false representations to the court and engaging in vexatious litigation to pursue baseless claims solely in an effort to generate legal fees for themselves.  Moreover, this Court previously warned them about their failure to diligently and reasonably litigate this case after they failed to prosecute the action for approximately 22 months and comply with a Court Order to provide a status report.[3]  Even after this warning from the Court, Plaintiffs' counsel still failed to comply with their most basic obligations to preserve, collect, and produce evidence and instead continued to pursue patently frivolous claims.  As a result, Plaintiffs have wasted this Court's time and cost Go New York hundreds of thousands of dollars to defend baseless claims for over five years.

---

3 *See* Court Orders at ECF Docs. Nos. 105, 107.  Although the Court ultimately restored the case to its docket and denied Defendants' motion to dismiss based upon Plaintiffs' failure to prosecute, it did so by a narrow margin. Indeed, the Court stated that it "[did] not condone Plaintiffs counsel's dilatory prosecution of their case" and could "not provide a reasonable excuse for the lengthy delay." Importantly, the Court found that there was only "scant record evidence that Plaintiffs have been 'diligently' litigating the case" and warned them that it may impose sanctions such as no award for attorneys' fees and costs.  Order at ECF Doc. No. 107 at pp. 9-10.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants Go New York and Asen Kostadinov respectfully ask

this Court to enter an Order

    (i)        pursuant to Fed. R. Civ. P. 11(c)(2) for summary judgment dismissal of this case pursuant to Fed. R. Civ. P. 56(a) and/or appropriate sanctions including, but not limited to, costs and attorneys' fees based upon Plaintiffs' submission of false pleadings, affidavits, and other false representations made by Plaintiffs and their counsel to this Court;

    (ii)       pursuant to 28 U.S.C. § 1927 and the inherent power of this Court for sanctions against Plaintiffs and their counsel including, but not limited to, costs, expenses and attorneys' fees incurred by Defendants for more than five years of litigation on the ground that they have multiplied these proceedings unreasonably and knowingly and intentionally pursued vexatious litigation;

    (iii)     pursuant to Fed. R. Civ. P. 37(b), (e), or the inherent power of this Court for summary judgment dismissal of this case pursuant to Fed. R. Civ. P. 56(a) and/or appropriate sanctions including, but not limited to, costs and attorneys' fees based upon Plaintiffs' failure to preserve and collect documents and information relating to their claims, and the resulting spoliation of critical evidence in this case;

    (iv)     in the alternative, to compel the production of discovery from Plaintiffs pursuant to Fed. R. Civ. P. 37(a)(3);

    (v)      in the alternative, disqualification of The Law Office of Justin A. Zeller, P.C. as class counsel in this case based upon their ongoing pattern of misconduct;

    (vi)     in the alternative, disqualification of Plaintiffs Victor H. Alvarado Balderramo and Luis Falquez as class representatives, and

(vii) and such other and further relief as this Court may deem just and appropriate given the years of vexatious litigation and misconduct by Plaintiffs and their counsel in this case.

Dated: New York, New York
      July 7, 2021

**BARTON LLP**

By:＿＿＿＿/s/ Laura-Michelle Horgan＿＿＿
     Maurice N. Ross (MR 6852)
     Laura-Michelle Horgan (LR 7799)

711 Third Avenue, 14th Fl.
New York, New York 10017
(212) 687-6262
mross@bartonesq.com
lmhorgan@bartonesq.com

*Attorneys for Defendants*
*GO NY TOURS INC. and*
*ASEN KOSTADINOV*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of July, 2021, I caused the foregoing (i) Notice of Defendants' Motions for Summary Judgment, Rule 11 Sanctions, and Other Relief, (ii) Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1, and the exhibits thereto, (iii) Declaration of Laura-Michelle Horgan in Support of Defendants' Motions for Summary Judgment, Rule 11 Sanctions, and, Alternatively, to Compel Production from Plaintiffs and Disqualify Class Counsel and the Class Representatives, and (iv) Defendants' Memorandum of Law in Support of Their Motions for Summary Judgment, Rule 11 Sanctions, and Alternatively, to Compel Production from Plaintiffs and Disqualify Class Counsel and the Class Representatives, to be filed with the Court on the Court's ECF Filing System, and in satisfaction of the filing and service requirements of the Local Rules and the Federal Rules of Civil Procedure, thus served upon:

> Justin Zeller, Esq.
> Brandon Sherr, Esq.
> John M. Gurrieri, Esq.
> Law Office of Justin A. Zeller, P.C.
> 277 Broadway, Ste. 408
> New York, NY 10007-2036
> (TEL) 212-229-2249
> (Fax) 212-229-2246
> jazeller@zellerlegal.com
> bsherr@zellerlegal.com
> jmguerrieri@zellerlegal.com

Dated: New York, New York
      July 7, 2021               By: _____
                                    Laura-Michelle Horgan, Esq.