UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

---

VICTOR H. ALVARADO BALDERRAMO
and LUIS FALQUEZ, individually and in
behalf of all other persons similarly situated,

                    Plaintiffs,


          –against–                                    15 CV 2326 (ER)


GO NEW YORK TOURS INC. and ASEN
KOSTADINOV, jointly and severally,

                    Defendants.

---

### MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, SANCTIONS, TO COMPEL, AND TO DISQUALIFY CLASS COUNSEL AND CLASS REPRESENTATIVES AND IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## CONTENTS

Preliminary Statement.................................................................................................... 6

I.   No Basis for Imposition of Sanctions Pursuant to Rule 11, 28 U.S.C. 1927, or Inherent
     Power of Court .................................................................................................... 6

     A.   Legal Stndards for Imposition of Sanctions................................................. 6

          1.   Rule 11 of the Federal Rules of Civil procedure ........................... 6

          2.   28 U.S.C. 1927.................................................................................. 10

          3.   Inherent Power of Court................................................................. 10

     B.   Defendants Failed to Comply with Rule 11 Procedure................................11

     C.   No Basis in Conduct of Plaintiffs or Their Counsel to Warrant Sanctions................12

          1.   Allegations of Perjury and that Plaintiffs' Counsel Induced Affiants to Lie are
               Libels Devoid of Any Evidence.................................................... 12

          2.   The Zeller Firm Did Not Fail to Conduct a "Reasonable Inquiry" prior to
               Filing This Action ..................................................................... 18

II.  Defendants Have Failed to Establish that Any Relevant Evidence Was Spoliated ............ 20

III.   Court Should Not Disqualify Alvarado and Falquez as Class Representatives or Their Counsel as Class Counsel ........................................................................................23

IV.   Summary Judgment Is Not Warranted as a Matter of Law ................................... 25

V.   Plaintiffs Entitled to Partial Summary Judgment Because Doctrines of Unclean Hands and Laches are Inapplicable to Claims at Law ........................................ 28

VI.   The Court Should Not Order Production of Discovery from Plaintiffs ............................. 30

VII.   Conclusion ........................................................................................ 31

## TABLE OF AUTHORITIES

**Cases**

*Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384 (S.D.N.Y. 2007) ....................................... 8

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566 (2d Cir. 2005)...................... 29

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1974) ........................................... 10

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ..................................................... 13

*Aniero Concrete Co., Inc. v. New York City*, Nos. 94 Civ. 9111, 95 Civ. 3506, 1998 U.S. Dist. LEXIS 3938 (S.D.N.Y. Mar. 30, 1998)........................................................................................ 29

*Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93 (2d. Cir. 2001) ......................................... 21

*Campbell v. City of New York*, No. 16 CV 8719, 2021 U.S. Dist. LEXIS 40933 (S.D.N.Y. Mar. 4, 2021) ........................................................................................................................13, 19

*Centrifugal Force, Inc. v. Softnet Commun., Inc.*, 783 F. Supp. 2d 736 (2d. Cit. 2011) ........... 20, 21

*Chambers v. NASCO*, 501 U.S. 32 (1991) ...................................................................10, 11

*Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775 (2d Cir. 2003).........................................25

*E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175 (2d. Cir. 2008).................................................... 8

*EEOC v. Dresser Indus.*, 668 F.2d 1199 (11th Cir. 1992).......................................................... 29

*Fisher v. Tice*, No. 15 CV 955, 2016 U.S. Dist. LEXIS 87792 (S.D.N.Y. July 5, 2016), *adopted*, 2016 U.S. Dist. LEXIS 120001 (S.D.N.Y. Sept. 4, 2016)........................................................... 18

*Galicia v. Tobiko Rest., Inc.*, No. 16 CV 4074, 2017 U.S. Dist. LEXIS 85856 (E.D.N.Y. Jun. 3, 2017) ................................................................................................................................ 18

*Gucciardo v. Titanium Constr. Servs.*, 16 Civ. 1113 (LGS), 2017 U.S. Dist. LEXIS 109727 (S.D.N.Y. Jul. 14, 2017) ...................................................................................................... 30

*Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320 (2d. Cir. 1995) ........................................ 9

*Harold Levinson Associates, Inc. v. Chao*, 37 F. App'x 19 (2d Cir. 2002) ..................... 13

*Holcomb v. Iona Coll.*, 521 F.3d 130 (2d Cir. 2008) ........................................................ 25

*In re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14 (2d Cir. 1986) .......................... 23, 24

*In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128 (S.D.N.Y. 2007) ............................. 24

*In re NYSE Specialists,* 240 F.R.D. at 134 ...................................................................... 24

*Johnson v. Killian*, 680 F.3d 234 (2d Cir. 2012) ............................................................. 25

*Kiobel v. Millson*, 592 F.3d 78, (2d Cir. 2010) .................................................................. 7

*Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002) .......................................................... 7

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d. Cir. 2011) ......................................... 13

*Laborers Local 938 Joint Health & Welfare Tr. Fund v. B.R. Starnes Co. of Fla.*, 827 F.2d 1454 (11th Cir. 1987) ............................................................................................... 7

*Liebowitz v. Bandshell Artist Mgmt.*, 2021 U.S. App. LEXIS 18955 (2d. Cir. June 25, 2021) ........ 18

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 2006 U.S. Dist. LEXIS 71091 (S.D.N.Y. Sept. 28, 2006) ............................................................................................................ 8

*Lynch v. City of New York*, 291 F. Supp. 3d 537 (S.D.N.Y. 2018) ............................. 13, 22

*Margo v. Weiss*, 213 F.3d 55 (2d Cir. 2000) ..................................................................... 6

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995) ................... 23

*McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17 (2d. Cir. 1990) ................ 10

*Meidenbauer v. Zenith Acquisition Corp.*, 13 CV 799 (AF), 2018 U.S. Dist. LEXIS 82738 (W.D.N.Y. May 15, 2018) .............................................................................................. 30

*Murray v. Noblesville Milling Co.*, 42 F. Supp 808 (S.D. Ind. 1942) ............................ 29

*N.J. Carpenters Health Fund v. Residential Capital, LLC*, Fed. Sec. L. Rep. (CCH) (S.D.N.Y. 2013) ................................................................................................................ 24

*O'Brien v. Alexander*, 101 F.3d 1479(2d Cir. 1996) ........................................................ 7

*Oliveri v. Thompson*, 803 F.2d 1265 (2d. Cir. 1985)..............................................10, 11, 18

*Overnight Motor Transp. Co. v. Misell*, 316 U.S. 572, *reh'g denied*, 317 U.S. 706 (1942) ............25

*Park v. Seoul Broad. Sys. Co.*, No. 05 CV 8956, 2008 U.S. Dist. LEXIS 17277 (S.D.N.Y. Mar. 6, 2008).............................................................................................................. 8

*Perez v. Posse Comitatus*, 373 F.3d 321 (2d Cir. 2004) ...................................................... 8

*Perpetual Sec., Inc. v. Tang*, 290 F.3d 132 (2d Cir. 2002) .............................................. 9, 12

*Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58 (2d Cir. 1997) ...................................14, 19

*Rodick v. City of Schenectady*, 1 F.3d 1341 (2d Cir. 1993) ................................................ 8

*Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323 (2d Cir. 1999) .................................... 8

*Scott v. Whole Foods Mkt. Grp., Inc.*, No. 18 CV 86, 2019 U.S. Dist. LEXIS 61726, 2019 WL 1559424 (2d. Cir. Apr 9. 2019).................................................................................27

*SEC v. Eberhard*, No. 03 CV 813, 2006 WL 17640, 2006 U.S. Dist. LEXIS 216 (S.D.N.Y. Jan. 3, 2006) ......................................................................................................... 29

*Solis v. Wash.*, No. 08 CV 5362, 2009 WL 2855441, 2009 U.S. Dist. LEXIS 77859 (W.D. Wash. Aug 31, 2009) ............................................................................................... 29

*Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2d. Cir. 2012) ................................................................................................................ 9

*Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370 (2d Cir. 2003)............................................ 7

*Sun Life & Health Ins. Co. (U.S.) v. Colavito*, 14 F. Supp. 3d 176 (S.D.N.Y. 2014).....................25

*Tedesco v. Mishkin*, 689 F. Supp. 1327 (S.D.N.Y. .........................................................24

*Thomas v. River Greene Constr. Grp. LLC*, No. 17 CV 6954, 2018 U.S. Dist. LEXIS 209561 (S.D.N.Y. Dec. 11, 2018)..............................................................................25

*Toar v. Sushi Nomado*, No. 13 CV 1901, slip op. (S.D.N.Y. Mar. 31, 2016) ...............................30

*Torres v. Gristede's Operating Corp.*, 628 F. Supp 2d 447 (S.D.N.Y. 2008)............................. 29

*United States v. John Doe No. 1*, 272 F.3d 116 (2d Cir. 2001) ...........................................24

*United States v. Monteleone*, 257 F.3d 210 (2d Cir. 2001), *cert. denied*, 535 U.S. 1070 (2002)......17

*United States v. Rosenwasser*, 323 U.S. 360 (1945) .....................................................25

*Uto v. Job Site Servs., Inc.*, 269 F.R.D. 209 (E.D.N.Y. 2010)..................................................29, 30

*Vinuela v. S.S. Britanis*, 647 F. Supp. 1139 (S.D.N.Y. 1986)........................................................... 7

*Watkins v. Smith*, 2013, 12 Civ. 4635 (DLC), U.S. Dist. LEXIS 24712 (S.D.N.Y. Feb. 22, 2013) ... 8

*Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43 (2d Cir. 2008) ..........................................6, 9, 12

*Worley v. City of New York*, No. 17 CV 4337, 2020 U.S. Dist. LEXIS 26398 (S.D.N.Y. Feb. 12, 2020)........................................................................................................................................... 13

**Statutes**

28 U.S.C. § 1927..........................................................................................................................10

29 U.S.C. § 206(a)(1).....................................................................................................................25

29 U.S.C. § 211(c).................................................................................................................. 13, 22

N.Y. Lab. Law § 195(1) .................................................................................................................. 26

N.Y. Lab. Law § 652......................................................................................................................25

N.Y. Lab. Law §195 ............................................................................................................... 13, 22

**Rules**

Fed. R. Civ. P. 11(b)(3).................................................................................................................. 6

Fed. R. Civ. P. 11(c)(1)(A)............................................................................................................. 12

Fed. R. Civ. P. 5 ............................................................................................................................ 9

Fed. R. Civ. P. 56(a).....................................................................................................................25

Local Civil Rule 37.2 ...................................................................................................................30

**Regulations**

29 C.F.R. § 516.2 ......................................................................................................................... 13

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 ..........................................................................28

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.5(c) ......................................................................27

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4............................................................................28

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2 ......................................................................... 26

N.Y. Comp. Codes R. & Regs. tit. 12, §142-2.1 ............................................................25

## Preliminary Statement

Defendants' position that sanctions are justified relies entirely on baseless statements and claims. The evidence before the Court demonstrates that there is a genuine issue of material fact, and a *bona fide* dispute over many of the claims in this case that justifies denial of defendants' summary judgment motion.

### I.   No Basis for Imposition of Sanctions Pursuant to Rule 11, 28 U.S.C. 1927, or Inherent Power of Court

#### A.   LEGAL STANDARDS FOR IMPOSITION OF SANCTIONS

##### 1.   RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 11(b)(3) provides in pertinent part that, by presenting a complaint to the court, the attorney signing or filing the complaint "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, … the factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

Rule 11(c) allows the court to award sanctions if it determines that Rule 11(b) has been violated through "false, misleading, improper, or frivolous representations to the court." *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008).

In this case, "the standard for triggering the award of fees under Rule 11 is objective unreasonableness." *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000). Although the defendants do not identify the specific provision of Rule 11 that the complaint allegedly violated, the defendants only

reference the plaintiff's factual allegations, so the plaintiff assume the motion asserts violations of Rule 11(b)(3). "[T]he standard certification for factual allegations under Rule 11(b)(3) is that there is (or likely will be) evidentiary support for the allegation, not that the party will prevail with respect to its contention." *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) (internal quotation marks omitted) (quoting Rule 11 Advisory Committee Note). Indeed, "[t]he focus of the inquiry is the attorney's and/or party's reasonable belief at the time of filing, not at some later time when developments during discovery or trial reveal no basis for the belief." *Vinuela v. S.S. Britanis*, 647 F. Supp. 1139, 1148 (S.D.N.Y. 1986). "This construction of Rule 11 'serves to punish only those who would manipulate the federal court system for ends inimicable to those for which it was created.'" *Id.* (citation omitted).

A pleading violates Rule 11(b)(3) of the Federal Rules of Civil Procedure if, "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact." *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (citation omitted); *see also In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003). A statement of fact within a pleading "can give rise to the imposition of sanctions only when the 'particular allegation is utterly lacking in support.'" *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010) (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003)).

The Advisory Committee notes point out that Rule 11 should not be used "to emphasize the merits of a party's position, to exact an unjust settlement, [or] to intimidate an adversary into withdrawing contentions that are fairly debatable." *See Laborers Local 938 Joint Health & Welfare Tr. Fund v. B.R. Starnes Co. of Fla.*, 827 F.2d 1454, 1458 (11th Cir. 1987) (affirming the denial of sanctions where the issues were debatable and not easily resolved, and there was no clear binding precedent). Whether a claim can survive on the merits is wholly distinct from whether that claim

is frivolous. *See Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007) ("When divining the point at which an argument turns from merely losing to losing and sanctionable' courts must 'resolve all doubts in favor of the signer of the pleading.") (quoting *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993)).

Sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure should be "made with restraint." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999). Even if a court determines that Rule 11(b) has been violated, the decision whether to impose sanctions is not mandatory, but rather is a matter for the court's discretion. *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004). Sanctions are a drastic remedy reserved for only the most extraordinary circumstances. *See, e.g., E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 178 (2d. Cir. 2008); *Park v. Seoul Broad. Sys. Co.*, No. 05 CV 8956, 2008 U.S. Dist. LEXIS 17277, at *1 (S.D.N.Y. Mar. 6, 2008); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 04 CV 5316, 2006 U.S. Dist. LEXIS 71091, at *6 (S.D.N.Y. Sept. 28, 2006) ("Sanctions should always be a (very) last resort.").

Additionally, when sanctions are imposed pursuant to a motion of a party, the party seeking sanctions against another party or its counsel must comply with the "safe harbor" provision of Rule 11. *See Watkins v. Smith*, 2013, 12 Civ. 4635 (DLC), U.S. Dist. LEXIS 24712, *14 (S.D.N.Y. Feb. 22, 2013). In particular, Rule 11(c)(2) provides,

> A motion for sanctions must be made separately from any other motion and must
> describe the specific conduct that allegedly violates Rule 11(b). The motion must
> be served under Rule 5, but it must not be filed or be presented to the court if the
> challenged paper, claim, defense, contention, or denial is withdrawn or
> appropriately corrected within 21 days after service or within another time the court

sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed.R.Civ.P. 11(c)(2). The twenty-one day safe harbor period provided by the Rule permits an attorney to withdraw or correct faulty factual or legal contentions in order to avoid the imposition of sanctions. *See Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1327-28 (2d. Cir. 1995).

Because the rule requires that the motion be served under Fed. R. Civ. P. 5 before it is filed with the court, "[a]n informal warning in the form of a letter without service of a separate Rule 11 motion" does not satisfy Rule 11's procedural requirements. *See Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d. Cir. 2012). On the other hand, a party moving for sanctions need not serve a "formal fully supported motion" on the opposing party before filing the motion with the Court. *Id.* at 176 (service of notice of motion along with informal safe harbor letter was sufficient).

In the Second Circuit, Rule 11(c)(2)'s safe-harbor provision is strictly enforced. *Id.* at 176; *see also Hadges*, 48 F.3d at 1328-29. Nonetheless, the failure to follow the safe harbor provisions perfectly may be excused where there is "no indication that [a party] would have corrected or amended its frivolous arguments even had it been given the opportunity." *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 142 (2d Cir. 2002).

In addition, a Rule 11 motion must be made separately from any other sought relief. *See* Fed. R. Civ. P. 11(c)(1)(A); *Williamson*, 542 F.3d at 51 (affirming denial of defendants' Rule 11 motion where defendants "failed to make a separate motion for sanctions under Rule 11, and therefore failed to comply with the procedural requirements of the rule"); *Tang*, 290 F.3d at 142 (reversing sanctions award on grounds that motion was mot made separately from other requests).

### 2.   28 U.S.C. 1927

Another basis for imposing sanctions is 28 U.S.C. § 1927, which states "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." By its terms, § 1927 looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics. *See Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d. Cir. 1985). The purpose of this statute is "to deter unnecessary delays in litigation." *See id.*, 803 F.2d at 1273 (internal citations omitted). Bad faith is the touchstone of an award under this statute. *See McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17, 23 (2d. Cir. 1990). These sanctions—which may be imposed only on the attorneys, not the parties—are appropriate if the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose, such as delay. *See Oliveri*, 803 F.2d at 1273.

### 3.   INHERENT POWER OF COURT

Finally, a court has a third means at its disposal for sanctioning improper conduct: its inherent power. This power stems from the very nature of courts and their need to be able "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO*, 501 U.S. 32, 42 (1991) (internal citations omitted). One component of a court's inherent power is the power to assess costs and attorneys' fees against either the client or his attorney where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1974) (internal citations omitted).

The Supreme Court has cautioned that because of the "very potency" of a court's inherent power, it should be exercised "with restraint and discretion." *Chambers*, 501 U.S. at 42. To justify sanctions, defendants under the inherent powers, defendants must show with "clear evidence that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes" and "a high degree of specificity in the factual findings of [the] lower courts." *Oliveri*, 803 F.2d at 1272 (internal citations omitted).

### B.    DEFENDANTS FAILED TO COMPLY WITH RULE 11 PROCEDURE

The defendants failed to follow the requirements of Rule 11's safe harbor requirement. Defendants mailed plaintiffs letters, but these letters contained no notice of motion, and did not contain a detailed accounting of every claim that defendants believe are false. *See* Letter, Ex. BB, ECF No. 264-28; Letter, Ex. CC, ECF No. 264-29.

It is still unclear to the plaintiffs specifically which papers the defendants would have demanded the plaintiffs withdraw as an alleged violation of Rule 11, had they complied with the safe harbor provision. The defendants' letters do not specifically identify a particular paper. The defendants' memorandum discusses the contents of the original complaint, a paper the plaintiffs cannot withdraw since it has been superceded by an amended complaint. The affidavits in support of the plaintiffs' motions to certify a class and collective action have already been adjudged credible by the court in granting those motions, after the defendants had an opportunity to dispute them with the very same evidence upon which they rely for this motion (with the exception perhaps of the plaintiffs' later depositions). All that remains is the operative pleading, the first amended complaint. As discussed below, the relatively minor differences between the plaintiffs' deposition testimony and the first amended complaint would have led the plaintiffs to consider simply amending the pleading if the defendants had provided the plaintiffs the required safe harbor just to avoid the nuisance of responding to defendants' baseless sanctions motion.

The defendants also failed to move for sanctions under Rule 11 separately from other relief sought, a procedural requirement, which requires denial of their sanctions motion. *See* Fed. R. Civ. P. 11(c)(1)(A); *Williamson*, 542 F.3d at 51; *Tang*, 290 F.3d at 142.

### C.   NO BASIS IN CONDUCT OF PLAINTIFFS OR THEIR COUNSEL TO WARRANT SANCTIONS

Defendants have failed to show which actions of this firm have been egregiously inappropriate, failed to show that any plaintiff or this firm acted in bad faith in any way, and failed to show that the claims of the plaintiffs and in the first amended complaint are inaccurate. In addition, defendants have failed to cite to any authority that justifies "summary judgment dismissal" as an appropriate Rule 11 sanction, where defendants have failed to show any false statement, willful or not, exists.

### 1.   ALLEGATIONS OF PERJURY AND THAT PLAINTIFFS' COUNSEL INDUCED AFFIANTS TO LIE ARE LIBELS DEVOID OF ANY EVIDENCE

There is no evidence to support defendants' claim that the Zeller Firm actively sought drivers with advertisements and induced any class member to sign false affidavits in order to bring a fraudulent class action as defendants baselessly claim.

Before filing the complaint, this firm extensively interviewed Mr. Alvarado and collected all documents proportional to the needs of the case in his possession from him, which have since been produced to defendants and to the Court. *See* Aff. Opp. Mot., ECF No. 272, ¶11; Ex. to Aff. Supp. Mot. Cond. Cert. (Alvarado), ECF No. 19-1.

Again, the defendants' discussion of the original complaint, *see* Memo. Supp. Mot., ECF No. 263, p. 9, is irrelevant because the operative complaint is the first amended complaint, which states that Mr. Alvarado worked approximately between 70 and 87 hours per week for defendants. *See* 1st Am. Compl., ECF No. 16, ¶20. This complaint is consistent with Mr. Alvarado's affidavit

and with his deposition testimony. *See* Aff. (Alvarado), Ex. I, ECF No. 264-9; Dep. Alvarado, Ex. S, ECF No. 264-19, 88:15-25; 152:7-20; 156:13-21; 121:18-24 144:8-10; 134:1-10; 146:6-9. Defendants claim that Mr. Alvarado provides these hours with no "proof," but ignore his testimony as such proof. *See Campbell v. City of New York*, No. 16 CV 8719, 2021 U.S. Dist. LEXIS 40933, at *4 (S.D.N.Y. Mar. 4, 2021), ("A plaintiff may show the amount and extent of that work as a matter of just and reasonable inference … solely through his own recollection.") (internal citations omitted) *Lynch v. City of New York*, 291 F. Supp. 3d 537, 549 (S.D.N.Y. 2018) (crediting the plaintiffs' "extensive evidence, primarily in the form of their depositions, that they frequently worked before and after work, as well as during their meal times, without being compensated."); *Worley v. City of New York*, No. 17 CV 4337, 2020 U.S. Dist. LEXIS 26398, at *5 (S.D.N.Y. Feb. 12, 2020) ("Courts often rely on deposition testimony from employees themselves about what their supervisors knew regarding uncompensated overtime.").

The FLSA and New York Labor Law impose a duty upon employers to "make, keep, and preserve" records of employee wages and conditions of employment. *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.2; *see also* N.Y. Lab. Law §195. It is the plaintiffs' burden to establish a violation of the FLSA. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946). Where an employer keeps "inaccurate or inadequate records," the plaintiff need only offer a reasonable estimate of his damages to meet his burden of demonstrating a violation of the FSLA. *See Harold Levinson Associates, Inc. v. Chao*, 37 F. App'x 19, 21 (2d Cir. 2002). "It is well settled among the district courts of this Circuit, and we agree, that it is possible for a plaintiff to meet this burden through estimates based on his own recollection." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d. Cir. 2011).

Here, defendants' records are inadequate, and the plaintiffs have met their burden. During Mr. Alvarado's employment, and until October 2014, the defendants admittedly did not use a time clock and, for a time, did not maintain proper records of the time it took plaintiffs to bring the tour bus back to the yard, but instead relied on "averages" to determine how much to pay for this time. *See* Defs' Statement Mat. Facts, ¶¶65; 101. The defendants have also failed to produce a Form W-2 for Mr. Alvarado to corroborate how much they claimed to have paid him in 2013, and likely have not maintained them, because they continually refuse to produce them. *See* Aff. Opp. Mot., ¶8. Further, the time records that defendants maintain are compilation sheets derived from the supervisors' written or oral reports. *See* Baran Dep., Ex. HH, ECF No. 264-34, 30:15-25; 31:2-4; 32:23-25; 33:2-5. The defendants, crucially, failed to preserve the actual timesheets that were submitted to create the compilation sheets. *See id.* Further, the defendants have formally admitted they no longer have text messages to and from supervisors regarding class members' schedules, yet earlier claimed they had these text messages. *See* Defs' Statement Mat. Facts, ECF No. 264, ¶¶178-180; Memo Supp. Mot. Summ. J., ECF No. 263, pp.19-20; Aff. Opp. Mot., ¶9. Defendants also failed to preserve all of the pay receipts they allegedly kept. *See* Aff. Opp. Mot., ¶6. Defendants also failed to preserve security camera footage that would show whether plaintiffs received cash payments. *See* Aff. Opp. Mot., ¶10. Thus, because defendants failed to keep proper records, plaintiffs' estimates are appropriate proof of hours worked prior to October 2014. *See Reich v. S. New England Telecomms. Corp.,* 121 F.3d 58, 66 (2d Cir. 1997) (When an employer fails to maintain accurate and complete records of the hours employees work and the amounts they are paid, the plaintiff-employee need only ... submit "sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred").

The minor discrepancies between Mr. Alvarado's affidavit and deposition testimony do not justify sanctions of any kind. The plaintiffs agree that Mr. Alvarado's affidavit states "I worked for the defendants approximately six days per week and between seventy and eighty-seven hours per week, except for two weeks where I only worked five days per week and worked between fifty-five and sixty-five hours per week." *See* Alvarado Aff. at Ex. I, ECF No. 264-9, ¶5. Notably, the affidavit uses approximations. The slight discrepancy between the amount of weeks Mr. Alvarado worked five rather than six days per week *in no way* supports defendants' false and unsubstantiated claim that Mr. Alvarado "admitted that he falsely inflated the hours in his Affidavit." Indeed, Mr. Alvarado testified that he worked from approximately 5:00 a.m. until he returned the bus to the yard around 8:30 p.m., which means, even if he worked five days per week, he did work between 70 and 87 hours. *See* Alvarado Dep., Ex. S, ECF No. 264-19, 88:15-22; 154:9-14; 161:14-20. The defendants wrongly assume their own records to be unassailably credible, and that any contradictory testimony must be a lie. Yet, Mr. Alvarado was presented with these documents, and he provided credible testimony that the records were inaccurate. *See* Alvarado Dep., Ex. S, ECF No. 259-19, 87:8-15; 126:8-25 to 127:1; 132:15-24; 137:7-12; 145:25 to 146:1-8; 148:11-17; and 154:9-14.

Further, defendants assert that Mr. Alvarado's testimony that he arrived to the bus yard at 5:00 a.m. is a lie based on an affidavit by a former cashier named who worked in the office, not the bus yard. *See* Baran Dep., Ex. HH, ECF No. 264-34, 7:9-25; 8:2-8; 15:7-12; 23:13-17. Mr. Alvarado, however, provided credible testimony that he arrived at 5:00 a.m. to the bus yard, and he detailed his extensive morning routine. *See* Alvarado Dep. #1, Ex. S, ECF No. 264-19, 19:14-16; 52:5-16; 88:8-25; 89:12-25; 91:2-25; 92:2-25; 93:1-25; 94:1-7; 95:21-22. Other drivers corroborated that the yard opened this early, and before 7:00 a.m., and even the defendant Mr. Kostadinov admitted that the

bus yard was open 24 hours per day for a time. *See* Falquez Dep., Ex. U, ECF No. 264-21, 65:5-12; Stewart Dep., Ex. W, ECF No. 264-24, 17:17-19; 22:5-9; 46:17-25; Atkinson Dep., Ex. V., ECF No. 264-22, 26:13-16; 37:3-10; 86:10-17; Kostadinov Dep., Ex. R, ECF No. 264-18, 103:14-23. Mr. Alvarado also described how defendants' records inaccurately reflected all the hours he worked because they were missing days and did not account for all hours spent bringing the bus to tour sites and back to the bus yard. *See* Alvarado Dep. #1, Ex. S, ECF No. 264-19, 154:8-14.

Next, defendants wrongly claim that Mr. Briggs admitted he grossly overstated his hours and admitted he only worked for defendants for five weeks. That is not true. First, Plaintiffs dispute that Briggs worked only five weeks. *See* Briggs Dep., Ex. X, ECF No. 264-24, 21:14-16; 40:17-23. Second, Mr. Briggs' affidavit never claimed he worked sixty hours in every week, and in deposition he testified that in some weeks he *did* work sixty hours. *Compare* Aff. Pl. Supp. Mot. Certify Class (Briggs) ¶5 *with* Briggs Dep., Ex. X, 49:4-8. Despite defendants' misleading allusions, Mr. Briggs never stated he gave false testimony.

Defendants also wrongly claim that Lawrence Atkinson admitted that he grossly oversstated his hours in his affidavit: Mr. Atkinson never stated that he did so. Indeed, Mr. Atkinson did not testify in his affidavit that he worked between 12 and 13 hours per day five days per week every single day. *See* Atkinson Aff. at Ex. M, ¶ 4. Mr. Atkinson testified at deposition that he worked as stated in his affidavit but clarified that he worked fewer hours in the winter. *See* Dep. Atkinson, Ex. V, ECF No. 264-21, 95:7-18.

Defendants also claim that Mr. Alvarado and Falquez falsely testified that they never received cash for hours worked over forty each week, but defendants provide no evidence to support this claim. Multiple drivers, not just Mr. Alvarado and Falquez, have credibly testified that the defendants did not pay cash or other wages for hours worked over forty each week. Aff. Pl.

Supp. Mot. Certify Class (Day), ECF no. 72, ¶7; Alvarado Dep., Ex. S, ECF No. 259-19, 121:18-24 144:8-10; 146:6-9; Alvarado Dep.#2,Ex. T, 13:22 to 15:5; 27:10-13; 36:4 to 37:10; Alvarado Aff. at Ex. I, ¶6; Dep. Falquez, Ex. U, ECF No. 264-21, 50:7-11; 123:15-19; 125:8-10; 159:24 to 160:2; Briggs Dep., Ex. X, ECF No. 264-24, 59:18-25 to 60:2-5. Regarding the receipts for cash wages that defendants provided, Mr. Alvarado provided credible testimony that he was forced to sign these inaccurate receipts in order to receive his paycheck. *See* Alvarado Dep. #2, Ex. T, ECF No. 264-20, 14:6-15.

Defendants baselessly claim that Mr. Alvarado and Falquez committed perjury, even though their testimony regarding hours, cash payments, being shorted hours, and arrival time to work is corroborated and has been repeatedly testified to. Perjury is established only if a witness "gives false testimony concerning a material matter with the willful intent to provide false testimony." *United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001), *cert. denied*, 535 U.S. 1070 (2002). Incorrect testimony "resulting from confusion, mistake, or faulty memory," and "simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury." *Id*. Mr. Alvarado and Mr. Falquez both testified that they were never paid cash wages, and that defendants' records that indicated same were not accurate. Defendants have not established that their records are in fact, accurate. The accuracy of records is a boilerplate FLSA wage and hour issue, and the mere existence of records does not prove their accuracy. Crucially, defendants have provided *no evidence whatsoever* that Alvarado or Falquez provided any false testimony "with the willful intent to provide false testimony." Defendants have only offered evidence that a dispute exists.

The defendants go on to then irrelevantly and falsely provide settlement history in this case. The defendants offered to settle this action on behalf of the entire class, with a presumption their contested time records are accurate, regarding underpaid time and one-half for bus drivers employed before October 2014. *See* Aff. Opp. Mot. ¶3. This offer was obviously unsatisfactory

because it ignored claims for spread-of-hours wages, liquidated damages, late payments, wages not timely paid, claims that the records are false, and any class member employed after October 2014. Accepting such an offer would have been grossly unfair to the class.

In sum, a *bona fide* dispute exists regarding the hours the plaintiffs worked, and the extent to which they were paid for all of those hours in compliance with the law. The plaintiffs have provided credible and consistent testimony on these issues. Defendants have provided *no evidence* to support their baseless claims that plaintiffs willfully provided false or inflated testimony or that any plaintiff was induced to do so by this firm.

The conflicting evidence in this case clearly shows that the parties disagree on basic elements of plaintiffs' claims, and in that regard, creates an issue of material fact for trial. *See Galicia v. Tobiko Rest., Inc.*, No. 16 CV 4074, 2017 U.S. Dist. LEXIS 85856, at *11 (E.D.N.Y. June 3, 2017). Resolving all doubts in favor of the attorney who signed the complaint, *see Oliveri v. Thompson*, 803 F.2d at 1275, the Court cannot conclude that the defendants' affidavits and challenged records make it "patently clear that" the Plaintiffs' claims "ha[ve] absolutely no chance of success under the existing precedents," *See Fisher v. Tice*, No. 15 CV 955, 2016 U.S. Dist. LEXIS 87792, at *71 (S.D.N.Y. July 5, 2016), *adopted*, 2016 U.S. Dist. LEXIS 120001 (S.D.N.Y. Sept. 4, 2016).

## 2.  THE ZELLER FIRM DID NOT FAIL TO CONDUCT A "REASONABLE INQUIRY" PRIOR TO FILING THIS ACTION

Defendants claim that this firm should be sanctioned under 27 U.S.C. 1927 or the Court's inherent powers for failure to investigate the claims alleged in the pleadings. *See Liebowitz v. Bandshell Artist Mgmt.*, No. 20 CV 2304, 2021 U.S. App. LEXIS 18955, at *1 (2d. Cir. Jun. 25, 2021).

Defendants' contention here seems to be based entirely on their belief that their version of facts is correct, and plaintiffs version is incorrect. Defendants, however, have not established that their version of the facts is correct, as opposed to plaintiffs' version. The parties have a *bona fide* dispute over the accuracy of plaintiffs' claims; this situation does not warrant sanctions, but a trial.

Defendants cite to testimony from Falquez and Briggs where they both testified that their version of their hours was based on their memories, to justify sanctions. *See* Falquez Dep., Ex. U, ECF No. 264-21, 88:22 to 89:11; Briggs Dep., Ex. X, ECF No. 263-24, 52:10-16. Where, as here, the defendants have incomplete records, this type of testimony to establish hours, is entirely appropriate, however. *Reich v. S. New England Telecomms. Corp.,* 121 F.3d 58, 66 (2d Cir. 1997); Baran Dep., Ex. HH, ECF No. 264-34, 30:15-25; 31:2-4; 32:23-25; 33:2-5; Defs' Statement Mat. Facts, ¶¶65; 101.

Defendants assert that these individuals did not bring documents to support their claims, but cite to no authority to support they are required to so; indeed, they are not. *See Campbell,* 2021 U.S. Dist. LEXIS at *4.

Defendants then claim that their time records have been authenticated but ignore that plaintiffs dispute the accuracy of those records, and many class members claim they were not paid straight time for every hour worked. *See* Alvarado Dep., Ex. S, ECF No. 259-19, 87:8-15; 126:8-25 to 127:1; 132:15-24; 137:7-12; 145:25 to 146:1-8; 148:11-17; 154:8-14; Dep. Briggs, Ex. X, ECF No. 264-24, 43:22-25 to 44:2-12; 61:13-21; Dep. Falquez, Ex. U, ECF No. 264-21, 122:7-25 to 123:2-3; Stewart Dep., Ex. W, ECF No. 264-23, 32:23-25 to 31:2-10; 52:11-25 to 53:1-3; Aff. Pl. Supp. Mot. Certify Class (Day), ECF no. 72, ¶7; Aff. Pl. Supp. Mot. Certify Class (Ortiz), ECF no. 78, ¶6; Aff. Pl. Supp. Mot. Certify Class (Robinson), ECF no. 79, ¶7; Aff. Supp. Mot. Conditionally Certify

Collective Action (Sanchez), ECF No. 82, ¶7; and Aff. Pl. Supp. Mot. Class Action (Wong), ECF no. 86, ¶7.

Defendants next, illogically, claim that this firm should have uncovered a settlement that Mr. Stewart allegedly entered into, despite the fact that Mr. Stewart knows nothing of this settlement and claims he was not a party to it. *See* Stewart Dep., Ex. W, ECF No. 264-23, 34:3-6; 37:2-5; 58:5-9; 59:13-20; 60:2-4. 77:7-22; and 81:11-23.

Defendants have failed to show that any affidavit or evidence or testimony submitted by plaintiffs is false or exaggerated. Defendants failed to show that this firm did not reasonably investigate the veracity of plaintiffs' claims or that these claims are false. Each plaintiff who submitted an affidavit in support of plaintiffs' motion to certify a class was thoroughly interviewed, as evidenced by their affidavits, and documents in these plaintiffs' possession proportional to the needs of the case was collected and produced. *See* Aff. Opp. Mot., ECF No. 274, ¶2. Defendants have provided no evidence to support their claim that this case was not properly investigated, nor the willful falsity of any filings, and therefore sanctions should not be imposed.

## II.   Defendants Have Failed to Establish that Any Relevant Evidence Was Spoliated

The defendants have failed to establish that any evidence was culpably spoliated by the plaintiffs. The defendants' contention that plaintiffs' counsel caused any loss of evidence relevant and proportional to the needs of the case is also meritless and without evidence. *See* Aff. Opp. Mot., ¶16.

A party seeking sanctions for spoliation has the burden to establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed, (2) that the records were destroyed with a culpable state of mind, and (3) that the destroyed evidence was relevant to the party's claim or defense. *See Centrifugal Force, Inc. v. Softnet Commun., Inc.*, 783 F. Supp. 2d 736, 741 (2d. Cit. 2011). The obligation to preserve arises when "party has notice that

the evidence is relevant to litigation … but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." *See Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 107 (2d. Cir. 2001) (internal citations omitted). A culpable state of mind must be knowing or negligent. *See Centrifugal Force*, 783 F. Supp. 2d at 741. Finally, defendants may establish relevance through inference if they establish that the spoliator was grossly negligent or acted in bad faith, or they may establish it by "submitting evidence tending to demonstrate that the deleted email would have been favorable to it." *See id.* at 743-44. Defendants have not established any of these factors for any of the evidence they claim is spoliated.

Defendants assert that Mr. Alvarado possessed a notebook containing relevant information that was then spoliated. They also contend that plaintiffs' counsel did nothing to cause Mr. Alvarado to produce it, asserting, unsupported by law, that plaintiffs' counsel had some extraordinary duty to go searching for it themselves. *See* Defs' Memo. Supp. Mot., p. 7. First, plaintiffs' counsel produced all documents responsive to the unobjectionable requests of the defendants. *See* Aff. Opp. Mot. ¶17. Secondly, crucially, and as defendants admit, Mr. Alvarado testified that he disposed of this notebook before he met with this firm to begin this lawsuit. *See* Alvarado Dep. Ex. T, ECF No. 264-20, 18:17 to 19:7. Thirdly, there is no evidence that Mr. Alvarado did so with any culpable intent or that the notebook would support defendants' claim, rather than plaintiffs'.

Defendants claim that the plaintiffs spoliated text messages between drivers and supervisors that may be relevant to the plaintiffs' hours worked. Again, defendants offer no evidence to establish whether these text messages were lost during the litigation or even during the contemplation of the litigation. Further, the defendants' as the second party to these messages, themselves had an obligation to maintain the same and, indeed, the law obiges the employer

specifically to maintain recors such as these. *See Lynch*, 291 F. Supp. 3d at 546 ("employer's duty under the FLSA [and NYLL] to maintain accurate records of its employees' hours is non-delegable."); 29 U.S.C. § 211(c); N.Y. Lab. Law §195. Defendants' counsel also informed plaintiffs' counsel that defendants possessed these text messages, but then formally admitted they, in fact, do not. *See* Aff. Opp. Mot. ¶9.

Further, Mr. Alvarado may have sent his wife text messages when he arrived at work, but again, defendants have failed to meet their burden of demonstrating when these messages were lost, and nonetheless, they are protected by the marital privilege. *See* Alvarado Dep., Ex. S, 140:15 to 142:15; *Trammel v. United States*, 445 U.S. 40 (1980).

Defendants also lament that tax returns and pay stubs may have been lost, with no citation indicating they have been lost, but again, defendants are responsible for maintaining these records. *See id.*

Regarding notes made by drivers, again, defendants failed to show any evidence that they were lost after plaintiffs joined this action, destroyed with a culpable state of mind, or relevant to defendants' defenses.

Regarding bank records, defendants failed to establish that plaintiffs had any bank records in their possession that would be relevant to defendants' position. Indeed, given that Alvarado and Falquez claim they never received cash, it is questionable what probative value bank records would have. Banks may have had records for Mr. Alvarado's 2013 activity at one point in time, but banks typically only preserve those records for seven years. *See* Aff. Opp. Mot., ¶23. Defendants should have either subpoenaed or moved to compel these records sooner. Mr. Falquez also testified that he did not deposit his wages when he worked for defendants. *See* Falquez Dep., Ex. U, ECF No. 264-21, 55:4-23.

Regarding emails, Mr. Falquez testified he never had any relevant emails. *See* Falquez Dep., Ex. U, ECF No. 264-21, 30:11-17. Regarding Mr. Atkinson's emails, no evidence indicates that he ever used that email address to communicate with or about defendants, or that those emails have been lost, and if so, when.

Therefore, defendants have utterly failed in their burden of estasblishing that relevant documents were destroyed with a culpable state of mind after litigation was contemplated.

### III.  Court Should Not Disqualify Alvarado and Falquez as Class Representatives or Their Counsel as Class Counsel

The defendants failed to raise that they would be seeking this relief in their premotion letter or at the premotion conference. *See* Transcript, Ex. PP, ECF No. 264-42; Letter, ECF No. 266. Indeed, this section of defendants' motion seems like an afterthought as defendants cite to no case law. Plaintiffs disagree, as discussed above, with the factual allegations underlying defendants' request for this relief, and the standards for relieving class counsel and class representatives are clearly not met.

Class counsel in a class action may be removed if they have "engaged in any improper conduct" or if they have "undermined the rights of the class at large." *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995). Removal may also be justified if there is a conflict of interest but should be weighed against the best interests of the class. *In re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14, 18- 19 (2d Cir. 1986). Courts "must consider [] the costs to the class members of requiring that they obtain new counsel, taking into account such factors as the nature and value of the claim they are presenting, the ease with which they could obtain new counsel, the factual and legal complexity of the litigation, and the time that would be needed for new counsel to familiarize himself [or herself] with all that has gone before." *Id.* at 19. The Second Circuit further directs that "there must be a balancing of the interests of the various groups of cla**ss**

members and of the interest of the public and the court in achieving a just and expeditious resolution of the dispute." *Id.* Defendants have failed to show any misconduct, therefore, class counsel should not be removed.

The other factors for determining whether to remove class counsel weigh against granting the pending motion because of "the factual and legal complexity" and advanced stage of this case, "the time that would be needed for new counsel to familiarize himself [or herself] with all that has gone before" would be significant. *See id.* Removal at this late, when defendants have failed to show any misconduct, would prejudice the class, delay this case. *See United States v. John Doe No. 1*, 272 F.3d 116, 122 (2d Cir. 2001) (noting timeliness of the motion to relieve counsel as a relevant factor). Therefore, defendants' baseless motion to relieve class counsel should be denied.

Regarding removing class representatives, it is within the authority of the Court to remove class representatives in a Rule 23 class action. *See In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 134, (S.D.N.Y. 2007). To make this determination, courts have looked for conflicts of interests while weighing the best interests of the class. *See Tedesco v. Mishkin*, 689 F. Supp. 1327, 1339, (S.D.N.Y. 1988). Also relevant is the timeliness of defendants' motion. *See In re NYSE Specialists,* 240 F.R.D. at 134. Courts have also held that where the Court has already analyzed adequacy of the representatives, as here, that removal is not appropriate where nothing changes that initial analysis. *See N.J. Carpenters Health Fund v. Residential Capital, LLC*, Fed. Sec. L. Rep. (CCH) P97 (S.D.N.Y. 2013). Here, the Court has already determined the named plaintiffs are adequate representatives. *See* Opinion and Order, ECF No. 104. The defendants have offered nothing that should change this analysis other than very slight discrepancies between affidavits and deposition testimony. Removing the representatives, at this late stage, would prejudice the class. Indeed,

defendants do not bother to suggest alternatives. The named plaintiffs have vigorously litigated this action and should not be removed.

### IV.   Summary Judgment Is Not Warranted as a Matter of Law

To prevail on a motion for summary judgment, the movant must show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

"The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts 'in the light most favorable' to the non-moving party." *Thomas v. River Greene Constr. Grp. LLC*, No. 17 CV 6954, 2018 U.S. Dist. LEXIS 209561, at *8 (S.D.N.Y. Dec. 11, 2018) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008)).

"In determining whether there are genuine issues of material fact, the Court is 'required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" *See id.* at *9 (citing *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012)). "'When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party.'" *See Sun Life & Health Ins. Co. (U.S.) v. Colavito*, 14 F. Supp. 3d 176, 180 (S.D.N.Y. 2014) quoting (*Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003)).

Plaintiffs were not always paid the minimum wage. Whether a wage payment meets the minimum wage is determined by dividing the employee's wages in a workweek by the hours worked in that workweek. *See United States v. Rosenwasser*, 323 U.S. 360, 363–64 (1945); *Overnight Motor Transp. Co. v. Misell*, 316 U.S. 572, 580, *reh'g denied*, 317 U.S. 706 (1942). In 2013, the federal and state minimum wage was $7.25 per hour. 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652 and N.Y. Comp. Codes R. & Regs. tit. 12, §142-2.1.

Mr. Alvarado testified he worked approximately up to 17 hours per day and five or six days per week, and was only paid for up to forty hours. *See* Dep. Alvarado, Ex. S, ECF No. 264-19, 88:15-25; 152:7-20; 156:13-21; 121:18-24 144:8-10; 134:1-10; 146:6-9. This means, on a week where Mr. Alvarado worked five days at approximately 15 hours per day, and paid $13.00 per hour for only forty hours in that week, his effective hourly rate would be $6.93 per hour (75 hours divided by his total pay (40 hours times $13.00 per hour)). *See id.*; *see also* Aff. Pl. Supp. Mot. Certify Class (Day), ECF no. 72, ¶¶5, 7, 9 (testifying that based on the hours worked and pay, his effective hourly rate fell below the minimum wage); Aff. Pl. Supp. Mot. Certify Class (Ortiz), ECF no. 78, ¶6 (testifying that she was paid no wages in her final workweek). Therefore, summary judgment should be denied on this issue.

Defendants claim that they provided plaintiffs notices of their wages upon hiring, but defendants provided no evidence that these notices were written or complied with the Wage Theft Prevention Act. *Compare* Defs' Statement Mat. Facts, ECF No. 264, ¶86 *with* N.Y. Lab. Law § 195(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2. Indeed, plaintiffs pleaded violations of the Wage Theft Prevention Act's requirement to provide a notice and acknowledgment at the time of hiring, and many plaintiffs, including Day, Grady, Nelson, Robinson, Roper, Stewart, Wong, and Wright, testified they never received one. *See* 1st Am. Compl. ¶69; Aff. Opp. Mot., ¶18. Therefore, summary judgment should be denied on this issue.

Defendants claim they provided accurate statements with each payment of wages, but plaintiffs dispute that the records they received were accurate, and many plaintiffs, including Day, Ortiz, Robinson, Roper, Stewart, Wong, and Wright testified they did not receive accurate weekly wage statements. *See* Alvarado Dep. #2, Ex. T, ECF No. 264-20, 14:6-15; Dep. Falquez, Ex. U, ECF No. 264-21, 122:7-25 to 123:2-3; Stewart Dep., Ex. Xx, ECF No. 264-xx, 32:23-25 to 31:2-10;

52:11-25 to 53:1-3; Aff. Opp. Mot., ¶19. Plaintiffs pleaded this failure as a violation of the Wage Theft Prevention Act in the First Amended Complaint. *See* 1st Am. Compl. ¶71. Therefore, summary judgment should be denied on this issue too.

Plaintiffs claims that they were not timely paid wages should not be dismissed because plaintiffs have provided credible testimony that they were not paid for all hours that they worked. *See* 1st Am. Compl. ¶2; Alvardo Dep., Ex. S, ECF No. 259-19, 87:8-15; 94:2-7; 126:8-25 to 127:1; 132:15-24; 137:7-12; 145:25 to 146:1-8; 148:11-17; Dep. Falquez, Ex. U, ECF No. 264-21, 122:7-25 to 123:2-3; Dep. Briggs, Ex. X, ECF No. 264-24, 43:22-25 to 44:2-12; Stewart Dep., Ex. W, ECF No. 264-23, 32:23-25 to 31:2-10; 52:11-25 to 53:1-3; *See* Aff. Pl. Supp. Mot. Certify Class (Day), ECF no. 72, ¶7; Aff. Pl. Supp. Mot. Certify Class (Ortiz), ECF no. 78, ¶6; Aff. Pl. Supp. Mot. Certify Class (Robinson), ECF no. 79, ¶7; Aff. Supp. Mot. Conditionally Certify Collective Action (Sanchez), ECF No. 82, ¶7; and Aff. Pl. Supp. Mot. Class Action (Wong), ECF no. 86, ¶7. Plaintiffs also have claims of untimely paid wages for the period of time beyond October 2014 in violation of New York Labor Law §191(1)(a). *See* Aff. Opp. Mot., ¶¶20-21; 1st Am. Compl. ¶2, *Scott v. Whole Foods Mkt. Grp., Inc.*, No. 18 CV 86, 2019 U.S. Dist. LEXIS 61726, 2019 WL 1559424 (2d. Cir. Apr 9. 2019). Therefore, summary judgment should be denied on this issue, as well.

Plaintiffs also challenge defendants' claims that defendants maintained accurate and sufficient records and posted notices of workers' rights. *See* Pls' Counterstatement of Mat. Facts, ECF No. 273, ¶¶14, 91. Therefore, summary judgment should be denied on this issue.

Further, defendants' claim that uniform maintenance pay should not be paid because those costs were allegedly "*de minimus*" has no legal basis, because uniform maintenance pay amounts owed per week are statutory and awarded even if laundering costs were "*de minimus*" *See* N.Y.

Comp. Codes R. & Regs. tit. 12, § 142-2.5(c). Therefore, summary judgment should be denied on this issue, as well.

Defendants' claim that overtime wages are only owed when Go New York achieved sales over $500,000.00 forgets that this case also alleges violations of New York's Minimum Wage Act which also requires payment of overtime wages and does not require a company make over $500,000.00 in sales for it to apply.. N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4. Defendants provide no evidence as to the amount of overtime wages owed or offered. Regardless, summary judgment should be granted on this issue, and the remaining hours that plaintiffs claimed they worked above what defendants' false records show, should be determined by the jury. Plaintiffs' have demanded records for 2012 and 2020, the years they deny making $500,000.00 in a year, from defendants. *See* Aff. Opp. Mot. ¶24.

In addition, there is a viable spread-of-hours wages claim for the time period after October 2014, for workers who worked greater than ten hours in any day of their first week of training in which they were paid at a minimum wage rate, such as Darryl Williams. *See* Aff. Opp. Mot., ¶22; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4; *see also* Defs' Statement Mat. Facts, ¶80. Plaintiffs will provide further examples when plaintiffs move for summary judgment.

Therefore, making all reasonable inferences in favor of the plaintiffs, summary judgment is not appropriate on any issue, except for partial summary judgment for overtime for part of the hours plaintiffs claimed they worked prior to October 2014.

**V.    Plaintiffs Entitled to Partial Summary Judgment Because Doctrines of Unclean Hands and Laches are Inapplicable to Claims at Law**

The Court should deny summary judgment to defendants' on their affirmative defenses of laches and unclean hands, and grant partial summary judgment to the plaintiffs rejecting these affirmative defenses.

The defendants plead an affirmative defense of wavier, estoppel, laches, and release. *See* Ans., ECF No. 118, ¶88. Laches is an equitable defense to prevent unfairness to a defendant caused by a plaintiff's delay in commencing a lawsuit. *E.g.*, *EEOC v. Dresser Indus.*, 668 F.2d 1199, 1201 (11th Cir. 1992). Laches is inapplicable to claims under the Fair Labor Standards Act because the claims are statutory and the statute provides a statute of limitations. *Torres v. Gristede's Operating Corp.*, 628 F. Supp 2d 447, 464 (S.D.N.Y. 2008). Therefore, courts have specifically rejected the doctrine of laches in actions arising under the Fair Labor Standards Act to recover overtime. *Id.*, *see also Solis v. Wash.*, No. 08 CV 5362, 2009 WL 2855441, at *7, 2009 U.S. Dist. LEXIS 77859, at *19–21 (W.D. Wash. Aug 31, 2009); *Murray v. Noblesville Milling Co.*, 42 F. Supp 808, 810 (S.D. Ind. 1942), *aff'd in part, rev'd in part on other grounds*, 131 F2d 470 (7th Cir. 1942).

The defendants also plead an affirmative defense of unclean hands. Ans., ECF No. 118, ¶88 Unclean hands is an equitable defense. *Uto v. Job Site Servs., Inc.*, 269 F.R.D. 209, 213 (E.D.N.Y. 2010) (quoting *Aniero Concrete Co., Inc. v. New York City*, Nos. 94 Civ. 9111, 95 Civ. 3506, 1998 U.S. Dist. LEXIS 3938, at *33 (S.D.N.Y. Mar. 30, 1998), *aff'd by Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566 (2d Cir. 2005) (citing cases). "As such, it 'can only be asserted with respect to equitable—not legal—claims.'" *Id.* (quoting *SEC v. Eberhard*, No. 03 CV 813, 2006 WL 17640, at *3, 2006 U.S. Dist. LEXIS 216, at *11 (S.D.N.Y. Jan. 3, 2006)).

Here, all of the claims asserted in plaintiffs' Complaint are legal claims, for which they seek damages pursuant to the FLSA and the New York Labor Law. No request for equitable relief is found anywhere in plaintiffs' Complaint. Accordingly, "because [plaintiffs] seek damages in an action at law, [defendants] cannot avail [themselves] of unclean hands as a defense." *Aniero Concrete*, 1998 U.S. Dist. LEXIS 3938, at *33; *see also* [*Torres*, 628 F. Supp. 2d at 464] (finding

the defense of unclean hands "inapplicable" where "the Court need not invoke its

equitable powers to adjudicate Plaintiffs' statutory claim[s]" brought pursuant to

the FLSA and the New York Labor Law).

*Id.* (first, second, third, and fifth alterations in original). The claims asserted in this action can be described the same.

The Court should grant partial summary judgment on these affirmative defenses because they are improperly asserted in this FLSA case. *See Meidenbauer v. Zenith Acquisition Corp.*, 13 CV 799 (AF), 2018 U.S. Dist. LEXIS 82738, at *48-50 (W.D.N.Y. May 15, 2018); *Gucciardo v. Titanium Constr. Servs.*, No. 16 CV 1113, 2017 U.S. Dist. LEXIS 109727, at *14 (S.D.N.Y. Jul. 14, 2017) *Toar v. Sushi Nomado*, No. 13 CV 1901, slip op. at 27–28, (S.D.N.Y. Mar. 31, 2016).

Plaintiffs also disagree with the factual bases behind defendants' assertions of these affirmative defenses. *See e.g.,* Aff. Pl. Supp. Mot. Certify Class (Day), ECF no. 72, ¶7; Alvarado Dep., Ex. S, ECF No. 259-19, 121:18-24 144:8-10; 146:6-9; Alvarado Dep.#2,Ex. T, 13:22 to 15:5; 27:10-13; 36:4 to 37:10; Alvarado Aff. at Ex. I, ¶6; Dep. Falquez, Ex. U, ECF No. 264-21, 50:7-11; 123:15-19; 125:8-10; 159:24 to 160:2; Briggs Dep., Ex. X, ECF No. 264-24, 59:18-25 to 60:2-5; Pls' Counterstatement Mat. Facts, ECF No. 273, ¶¶69-81.

## VI.   The Court Should Not Order Production of Discovery from Plaintiffs

Local Civil Rule 37.2 requires that defendants request an informal conference before moving to compel, yet defendants seek to bypass this rule in their motion. Indeed, the defendants have requested a Local Civil Rule 37.2 conference largely regarding these discovery disputes. *See* Letter, ECF No. 266.

### VII.  Conclusion

The Court should deny defendants' motion because they have failed to meet their burden of establishing that sanctions or summary judgment are appropriate and have otherwise failed to meet their procedural obligations under Rule 11. The Court should grant the plaintiffs' partial summary judgment as to the rejection of the affirmative defenses of laches and the doctrine of unclean hands.

LAW OFFICE OF JUSTIN A. ZELLER, P.C.

By:  *John M. Gurrieri*
John M. Gurrieri
jmgurrieri@zellerlegal.com
Brandon Sherr
bsherr@zellerlegal.com
Justin A. Zeller
jazeller@zellerlegal.com
277 Broadway, Suite 408
New York, N.Y. 10007-2036
Telephone: (212) 229-2249
Dated: New York, New York          Facsimile: (212) 229-2246
        August 6, 2021              **ATTORNEYS FOR PLAINTIFFS**