UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTOR H. ALVARADO BALDERRAMO and LUIS FALQUEZ, individually and in behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>–against–<br><br>GO NEW YORK TOURS INC. and ASEN KOSTADINOV, jointly and severally,<br><br>Defendants. | 15 CV 2326 (ER) |

**AFFIRMATION IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I, John M. Gurrieri, an attorney admitted to practice in this court, affirm under penalty of perjury under the laws of the United States of America that the following statements are true under the penalties of perjury:

1. I am associated with the Law Office of Justin A. Zeller, P.C., the attorneys for the plaintiffs in this action and, as such, am familiar with the facts and circumstances of this action.

**Settlement History**

2. The defendants offered to settle this action on behalf of the entire class but only for the unpaid overtime that defendants' disputed records show is owed prior to October 6, 2014. This offer completely ignores the class's claims that they were not paid for all hours worked, spread-of-hours claims, statutory damages claims under the Wage Theft Prevention Act, and claims for liquidated damages for late payment of wages and ignores any damages beyond October 2014, as well as prejudgment interest.

**Defendants Lied When They Claimed They Had Only 30 Employees by 2013**

3. Exhibit 1 to this Affirmation is paystubs produced in discovery in this action by defendants that show 39 different employees on payroll for the pay period November 26, 2012, to December 2, 2012. *Compare* Ex. 1 *with* Defs' Statement Mat. Facts, ECF No. 353, ¶51.

**Improper Notice of Motion for Sanctions**

4. Exhibit 2 to this affirmation is two letters that defendants sent plaintiffs regarding their demand that plaintiffs withdraw the action or they would seek sanctions.

5. Since the briefing schedule for this motion was set, defendants did not inform plaintiffs what plaintiffs could do to avoid defendants filing a sanctions motion short of withdrawing the entire action.

**Defendants' Improper Recordkeeping**

6. Exhibit 3 to this affirmation is a time record authenticated in Mr. Baran's deposition and produced by defendants in discovery that shows that defendants calculated the time it took Ms. Faccio to drive the bus back to the yard as 50 minutes on January 23, 2014, 40 minutes on January 25, and 50 minutes on January 26, 2014. *Compare* Ex. 2 to Pls' Aff. *with* Baran Dep., Defs' Ex. NN, ECF No. 356-13, 38:7-25; 39:2-15. These numbers are derived from comparing the numbers at the bottom of the document, which are the total hours compensated for, with the difference between start and end times. The times at the bottom are greater than the difference of start and end time, therefore, the difference represents the time added for bringing the bus back to the yard (based on estimates).

7. Exhibit 4 to this affirmation is time records for Jerome Drumwright from 2014. Defendants have produced no corresponding receipt for alleged cash wages paid to Mr.

Drumwright, which further demonstrates that defendants did not maintain receipts for alleged cash payments for all employees.

8. Exhibit 5 to this affirmation is defendants' August 6, 2021, responses to plaintiffs' Third Request for Production of Documents served on June 24, 2021.

9. Defendants admitted in their response that they do not have any text messages to and from supervisors. *See* Ex. 5 at p. 5. Given that defendants admitted they once had these text messages in their statement of material facts, they have admitted, hereby, that they have failed to maintain and preserve the texts. *See e.g.,* Defs' Statement Mat. Facts, ECF No. 353, ¶57.

10. Defendants also admitted that they do not have security camera footage from before October 2014. *See* Ex. 5 at p. 5. Mr. Alvarado testified that the defendants had security cameras when he worked there. *See* Alvarado Dep., Ex. Z, ECF No. 355-26, 165:5-25; 166:1-2.

11. Attached as Exhibit 6 to this Affirmation is the transcript of the August 18, 2021, conference where defendants stated to the Court that they did not have W-2s that plaintiffs were seeking, which included for Alvarado and Falquez for 2013. *See* Ex. 6 at pp. 15-16.

12. Attached as Exhibit 7 to this Affirmation is an affidavit from one of defendants' accountants, Ethan Klein. Mr. Klein stated that he provided the 2013 W-2s to Defendants *prior to* the August 18, 2021, conference. *See* Ex. 7 at ¶5.

13. Attached as Exhibit 8 to this Affirmation is a 2013 W-2 and financial document prepared by defendants' accountant, Ethan Klein, showing the total amount that defendants paid Alvarado in wages for the year 2013, obtained pursuant to plaintiffs' subpoena.

14. Attached as Exhibit 9 to this Affirmation is a 2013 W-2 and financial document prepared by defendants' accountant, Ethan Klein, showing that defendants did not pay Falquez cash wages for the year 2013.

**Initial Meetings with Plaintiffs and Production of Documents**

15. When this firm first met with Mr. Alvarado, this firm thoroughly interviewed Mr. Alvarado, collected all relevant documents in his possession, and produced those documents in discovery.

16. This firm met with every plaintiff and met with every party plaintiff who submitted affidavits in support of the motion to certify a class, conducted a thorough interview with each, and noted how every interview corroborated others' or came with documentary proof of some of plaintiffs' claims. This firm has never met with certain party plaintiffs who it was unable to contact such as Terrence Young, for instance.

17. This firm collected relevant documents in the possession of each named plaintiff and party plaintiff that this firm met with. This firm collected these documents either upon meeting with them to complete the affidavits or collected and produced further records from some of them in response to defendants' second set of document demands. For instance, plaintiffs produced documents on behalf of Alvarado, Atkinson, Kee Chye Chew, Nelson, Ortiz, Robinson, Roper, Ubiles, Williams, Wong, and Wright.

18. This firm collected all documents proportional to the needs of the case or that plaintiffs were ordered to produce from each Alvarado and Falquez and every party plaintiff who submitted affidavits in support of the motion to certify a class that was in their possession.

19. Prior to the class being certified, on August 19, 2016, this firm also made a Freedom of Information Law request with the New York State Department of Labor ("NYS DOL") to obtain documents relevant to this action, which led to 100s of pages being released from the NYS DOL showing that defendants were under investigation for failure to properly pay wages.

20. This firm also previously represented a driver, Manuel Sanchez, in a case against defendants, and that case resolved in an offer of judgment, case No. 14 CV 4982 (PGG). His claims were substantially similar to and corroborated Mssrs. Alvarado's and Falquez's. *See* Aff. (Sanchez), ECF No. 82.

21. The defendants' contention that plaintiffs' counsel caused any loss of or failed to collect any evidence relevant and proportional to the needs of the case is also meritless and without evidence.

22. This firm has produced all documents responsive to the unobjectionable requests of the defendants.

**Substantive Claims Must Not Be Dismissed at this Time**

23. The plaintiffs have testified in their affidavits that they did not receive proper notices and acknowledgments. *See* Aff. Pl. Supp. Mot. Certify Class (Day), ECF no. 72, ¶¶ 15-16; Aff. Pl. Supp. Mot. Certify Class (Grady), ECF no. 74, ¶9; Aff. Pl. Supp. Mot. Certify Class (Nelson), ECF no. 77, ¶11; Aff. Pl. Supp. Mot. Certify Class (Robinson), ECF no. 79, ¶12; Aff. Pl. Supp. Mot. Certify Class (Roper #1), ECF no. 80, ¶¶12-13; Aff. Pl. Supp. Mot. Certify Class (Stewart), ECF no. 83, ¶¶12-13; Aff. Pl. Supp. Mot. Class Action (Wong), ECF no. 86, ¶12; Aff. Pl. Supp. Mot. Certify Class (Wright), ECF no. 87, ¶12.

24. Plaintiffs testified they did not receive accurate weekly wage statements. *See* Aff. Pl. Supp. Mot. Certify Class (Day), ECF no. 72, ¶¶15-16; Aff. Pl. Supp. Mot. Certify Class (Ortiz), ECF no. 78, ¶12; Aff. Pl. Supp. Mot. Certify Class (Robinson), ECF no. 79, ¶12; Aff. Pl. Supp. Mot. Certify Class (Roper #1), ECF no. 80, ¶¶12-13; Aff. Pl. Supp. Mot. Certify Class (Stewart), ECF no. 83, ¶¶12-13; Aff. Pl. Supp. Mot. Class Action (Wong), ECF no. 86, ¶12; Aff. Pl. Supp. Mot. Certify Class (Wright), ECF no. 87, ¶12.

25. Exhibit 10 to this affirmation are wage and hour records provided in discovery that show that defendants had a practice of failing to pay their employees within the required timeframe of within seven days from the final day of the workweek pursuant to New York Labor Law Section 191(1)(a). *See e.g.,* Ex. 10, P029 (showing check date longer than seven days after final day of workweek).

26. Exhibit 11 to this affirmation are wage and hour records provided by defendants that show that defendants had a practice of failing to pay their employees within the required timeframe of seven days from the final day of the workweek pursuant to New York Labor Law Section 191(1)(a). *See e.g.,* Ex. 11, D01820 (showing check date longer than seven days after final day of workweek).

27. Exhibit 12 to this affirmation are wage and hour records provided by defendants in discovery that show that Mr. Williams was paid minimum wages, worked over ten hours in a day, and was not paid spread-of-hours wages.

28. Defendants did not ask Alvarado about whether he paid for his uniform at Go New York and have provided no evidence that this claim in the amended complaint is untrue.

29. Exhibit 13 to this affirmation is the transcript from Alvarado's second deposition.

30. Defs' Ex. OO contains bates numbers D000017 to D000079, referenced in plaintiffs' damages calculation. D00001 to D000018 are not attached to this affirmation, but where referenced, the other bates numbers referenced contain all applicable information.

**Exhibits for Plaintiffs' Calculations**

31. Plaintiffs have created calculations in this action that rely on the exhibits introduced below.

32. Exhibit 14 to this affirmation are wage and hour records for defendants' employees, some of which are bus drivers. They are Bates numbers D000773 through D010457.

33. Exhibit 15 to this affirmation is a pdf version of an excel spreadsheet with payroll and time data for defendants' drivers produced by defendants in discovery. Plaintiffs have redacted certain columns and rows that were irrelevant. The document was produced to plaintiffs in excel format with the file name matching the Bates number "D000938," and each separate sheet was labeled with the date range. Plaintiffs have separately Bates stamped each sheet of the pdf and labeled the pdf with date ranges as indicated in the excel spreadsheet.

34. Exhibit 16 to this affirmation is a pdf version of an excel spreadsheet with payroll and time data for defendants' drivers produced by defendants in discover. Plaintiffs have redacted certain columns and rows that were irrelevant. The document was produced to plaintiffs in excel format with the file name matching the Bates number "D000946," and each separate excel sheet was labeled with the date range. Plaintiffs have separately Bates stamped each page of the pdf with D000946 for clarity and labeled the pdf with date ranges that were in the excel spreadsheet.

35. Exhibit 17 to this affirmation are wage and hour records for defendants' bus drivers. They are Bates numbers D013000 through D015035.

36. Exhibit 18 to this affirmation are wage and hour records for defendants' bus drivers. They were documents earlier produced but produced again with new Bates numbers. They contain Bates numbers D015036 through D017129.

37. Exhibit 19 to this affirmation are wage and hour records for defendants' bus drivers. It contains Bates numbers D017130 through D017908.

38. Exhibit 20 to this affirmation are wage and hour records for defendants' bus drivers. They are Bates numbers D000132 through D0001848, and "For Settlement Purposes" is indicated

7

under the Bates numbers. In plaintiffs' spreadsheet, they are referenced with "FSO" (indicating For Settlement Purposes Only) after the bates numbers (e.g., D000132 (FSO)).

39.     Exhibit 21 to this affirmation are wage and hour records for defendants' bus drivers. They are Bates numbers GONY019075 through GONY019267.

40.     Exhibit 22 to this affirmation are wage and hour records for defendants' bus drivers. They are Bates numbered as GONY019268 through GONY022988.

41.     Exhibit 23 to this affirmation are wage and hour records for defendants' bus drivers. They are Bates numbered as P0691 through P3071. They indicate which employees are bus drivers.

42.     Exhibit 24 to this affirmation are wage and hour records for the party plaintiff Lawrence Atkinson. They are Bates numbers P0019 through P0135.

**Plaintiffs' Calculations**

43.     Exhibit 25 to this affirmation are plaintiffs' combined calculations for the class. They are based on inputted data along with formulae and extrapolations, described below. At this juncture, plaintiffs are only seeking hours that are undisputed minimums based on defendants' records. Plaintiffs will seek damages and make further assertions as to additional hours worked at trial. These calculations are not an admission that defendants' records regarding hours worked before October 6, 2014, are accurate. Blank cells are blank because data was unavailable or because the data in that cell was irrelevant to this motion.

44.     Exhibit 26 to this affirmation is a spreadsheet that shows just the total amounts owed per damages category per class member.

45.     Column AI of the spreadsheet, labeled "Bates Numbers" contains the Bates numbers reference for all documents used to find the data corresponding to all data inputted in that

row. Below is a table of contents that shows where each range of bates numbers exists within plaintiffs' exhibits.

| Defs' Ex. OO | D000017 to D000079 |
| Exhibit 14 | D000773 through D010457 |
| Exhibit 15 | D000938 |
| Exhibit 16 | D000946 |
| Exhibit 17 | D013000 through D015035 |
| Exhibit 18 | D015036 through D017129 |
| Exhibit 19 | D017130 through D017908 |
| Exhibit 20 | D000132 (FSO) through D0001848 (FSO) |
| Exhibit 21 | GONY019075 through GONY019267 |
| Exhibit 22 | GONY019268 through GONY022988 |
| Exhibit 23 | P0691 through P3071 |
| Exhibit 24 | P0019 through P0135 |

46. Notably, Exhibit 20 indicates "FSO" next to the Bates Number. The documents themselves say "For Settlement Purposes Only" on them, and FSO stands for this. These documents are separate from similarly bates stamped documents at Exhibit 14.

47. The calculations contain some extrapolations.

48. For instance, data in Column F that is extrapolated (rather than being directly inputted from a document) is italicized. These extrapolations were made by cross referencing check dates from other individuals of the same workweek. The bus drivers all had the same pay date as each other in nearly every workweek. *See generally* Ex. 25.

49. Column H, Hourly rate, also has extrapolations in some workweeks. These extrapolations were also reached by cribbing data from the same workweek from other drivers where hourly rate data *was* available, and assuming no bonus, and the lowest hourly rate of that week, which is a presumption that favors defendants. These extrapolations are also indicated with italics.

9

50. Column R is the total Gross payment in each workweek and was figured out based on a calculation whereby plaintiffs added the check amount from the records with the cash amount from the records and subtracted holiday pay to figure out gross wages. Where another formula was used, Column S explains that formula.

51. Column X contains the regular rate, which is relevant to calculating overtime owed in the period before defendants paid overtime. The regular rate in the spreadsheet is the total wages paid in a workweek divided by the total hours worked. *See* 29 C.F.R. § 778.109.

52. Column AB contains statutory damages for failure to provide accurate weekly wage statements. In any workweek where defendants paid a partial amount in cash, the cash amount and total hours worked did not appear on the wage statements, and therefore, the wage statements are not accurate, and therefore there is a violation with a $100 penalty. *See* N.Y. Lab. Law § 198(1-d). Therefore, the spreadsheet checked to see if there was a cash payment in a certain week, and then instituted a $100 penalty in each workweek where there was a cash payment before October 6, 2014, with a statutory maximum of $2,500. *See id.* Plaintiffs claim that each wage statement prior to October 6, 20214, is inaccurate and should come with a penalty because defendants failed to include hours worked for picking up and dropping off the busses on the wage statements, and they are therefore inaccurate, but for purposes of this motion, plaintiffs are only seeking the damages they can prove at this juncture, which are weeks with a cash payments where plaintiffs worked greater than forty hours and only forty hours appears on their wage statements. Weeks with cash payments are weeks where defendants admit that plaintiffs worked more than forty hours, and the wage statements only show 40 hours.

53. The calculations for failure to provide notices and acknowledgments are more complicated. As explained in plaintiffs' memorandum of law, plaintiffs are claiming that

defendants failed to ever provide proper notices and acknowledgments. The statutory penalties up to February 27, 2015, are $50 per workweek and capped at $2,500.0 *See* N.Y. Lab. Law § 198(1-b). After February 27, 2015, they are $50.00 per workday, and capped at $5,000.00. *See id.* The spreadsheet has data for workweeks and uses a formula to discern workday after February 27, 2015.

54.    Column AC contains a calculation for estimated workdays worked per week, drawing all presumptions in favor of defendants (meaning making presumptions that lead to the least number of days worked each week). The formula assumes every workday matches the longest workday that a driver worked according to the records (that plaintiffs could find) of 15.82. *See* Ex. 19 at D017203. Therefore, assuming 15.82-hour days, plaintiffs discerned days worked per week (rounding up) as hours worked divided by 15.82 (with a minimum of 1 day per week and maximum of 7). Where no data was available regarding hours worked, plaintiffs discerned hours worked by using a formula to figure out hours worked (and then days worked as described above) by using the gross wages in a week (again assuming 15.82-hour workdays). Where only gross wages were available and no hourly rate, plaintiffs extrapolated to figure out hourly rate by either using an individual's hourly rate in the most recent workweek for that driver or by using the highest hourly rate available from an adjacent workweek. This method leads to the smallest possible workdays per week, which means all presumptions are in defendants' favor. The calculation used where only gross pay was discernable from the records (rather than total hours worked) was as follows "=IF Gross Pay divided by Hourly rate>40 THEN ROUNDUP(((Total Gross minus 40*Hourly rate)/(Hourly rate*1.5)+40)/15.82,0) AND IF NOT THEN ROUNDUP(Gross Pay/Hourly rate/15.82,0))." For anyone who did not obtain the maximum statutory damages after February 27,

11

2015, plaintiffs will assert additional days worked at trial. Hampton's days works are in bold and based on the days worked in the actual records.

### Additional Spreadsheets

55. Exhibit 27 to this affirmation is an edited version of the master spreadsheet that shows only undisputed overtime damages. Again, plaintiffs agree to the hours only as minimums and will assert additional hours owed at trial

56. Exhibit 28 to this affirmation is an edited version of the master spreadsheet that shows only the spread-of-hours damages.

57. Exhibit 29 to this affirmation is an edited version of the master spreadsheet that contains only the damages related to liquidated damages for late payments.

58. Exhibit 30 to this affirmation is an edited version of the master spreadsheet that contains only the damages related to the Wage Theft Prevention Act statutory damages for improper notice and acknowledgment and improper wage statements.

### Joint Employment

59. Exhibit 31 to this affirmation is a stipulation wherein defendants admitted to certain paragraphs of plaintiffs' first amended complaint.

*John M. Gurrieri*
John M. Gurrieri
Law Office of Justin A. Zeller, P.C.
277 Broadway, Suite 408
New York, N.Y. 10007-2036
Telephone: (212) 229-2249
Facsimile: (212) 229-2246

Dated: New York, New York
April 22, 2022