UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

---

VICTOR H. ALVARADO BALDERRAMO
and LUIS FALQUEZ, individually and in
behalf of all other persons similarly situated,

Plaintiffs,

–against–

15 CV 2326 (ER)

GO NEW YORK TOURS INC. and ASEN
KOSTADINOV, jointly and severally,

Defendants.

---

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT AND SANCTIONS AND IN SUPPORT OF PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Preliminary Statement................................................................................................ 9

I.   No Basis for Imposition of Sanctions Pursuant to Rule 11, 28 U.S.C. 1927, or Inherent
     Power of Court................................................................................................ 9

     A.   Legal Standards for Imposition of Sanctions............................................. 9

          1.   Rule 11 of the Federal Rules of Civil procedure ............................ 9

          2.   28 U.S.C. 1927............................................................................ 13

          3.   Inherent Power of Court............................................................... 13

     B.   Defendants Failed to Comply with Rule 11 Procedure............................... 14

     C.   No Basis in Conduct of Plaintiffs or Their Counsel to Warrant Sanctions........ 15

          1.   Plaintiffs Provided Credible Testimony in the Face of Defendants' Incomplete
               or otherwise Inadequate Records ........................................... 17

          2.   Plaintiffs Alvarado, Briggs, and Falquez Never Received Cash Wages........ 21

          3.   Plaintiffs Alvarado and Falquez Never Received Cash Tips ................. 22

          4.   Defendants' Claims Regarding Weekly Bonuses are Inaccurate ............. 23

|  | 5. | Defendants Have Not Demonstrated That Alvarado was Reimbursed for His Purchase of Required Uniforms or that Defendants Paid Uniform Maintenance Pay ........................................................................23 |

|  | 6. | Settlement History in This Action Reveals Defendants' Refusal to Engage in Good Faith Settlement Discussions ........................................................23 |

|  | 7. | Defendants' Arguments reveal that Trial is Warranted, Not Sanctions........24 |

|  | 8. | No Evidence that Plaintiff's Counsel Failed to Conduct a "Reasonable Inquiry" prior to Filing this Action............................................................25 |

II. Summary Judgment Is Not Warranted as a Matter of Law .................................................. 28

III. Plaintiffs Entitled to Partial Summary Judgment as to Defendants' Affirmative Defenses of the Doctrines of Unclean Hands and Laches ........................................................... 31

IV. Plaintiffs Entitled to Summary Judgment Ruling That Defendants Jointly Employed the Class and are Covered by the FLSA ...............................................................33

    A. Joint Employment Standard......................................................................................33

    B. Go New York Tours Inc. ("Go New York") Jointly Employed the Class.................35

    C. Asen Kostadinov Jointly Employed the Class...........................................................38

    D. Defendants' Business Covered by the FLSA.............................................................38

V. Class Entitled to Partial Summary Judgment for Discernable Improperly Paid Wages ...... 40

    A. Class Entitled to Currently Discernable Unpaid Overtime Premium and Liquidated Damages...................................................................................................... 40

    B. Class Entitled to Unpaid Spread-of-Hours Wages .................................................. 41

    C. Class Entitled to Liquidated Damages ..................................................................... 41

        1. Liquidated Damages Owed for Failure to Pay Overtime Premium and Failure to Pay Spread-of-Hours Wages.....................................................43

        2. Liquidated Damages Owed for Failure to Timely Pay Class Members .......43

VI. Class Entitled to Statutory Damages for Violation of Wage Theft Prevention Act..............47

    A. Class Entitled to Statutory Damages for Failure to Provide Notices and Acknowledgments at the Time of Hiring.................................................................47

    B. Class Entitled to Statutory Damages for Failure to Provide Accurate Weekly Wage Statements .................................................................................................... 48

VII.  Prejudgment Interest ................................................................................ 49

VIII. Automatic Increase of Judgment ............................................................... 50

IX.   Conclusion ................................................................................................. 50

## TABLE OF AUTHORITIES

**Cases**

*Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384 (S.D.N.Y. 2007) ....................................... 11

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566 (2d Cir. 2005) ........................ 32

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1974) ........................................... 14

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ........................................................ 17

*Aniero Concrete Co., Inc. v. New York City*, Nos. 94 Civ. 9111, 95 Civ. 3506, 1998 U.S. Dist. LEXIS 3938 (S.D.N.Y. Mar. 30, 1998) .................................................................................................. 32

*Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460 (2013) ................................................................. 45

Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132 (2d Cir. 2008) ......................................... 42

*Begum v. Ariba Disc., Inc.*, No. 12 CV 6620, 2015 U.S. Dist. LEXIS 5598, 2015 WL 223780 (S.D.N.Y. Jan. 16, 2015) ................................................................................................................ 49

*Boekemeier v. Fourth Universalist Soc. in City of New York*, 86 F. Supp. 2d 280 (S.D.N.Y. 2000) ................................................................................................................................................... 39

*Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983) ............................... 33

*Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 1988) .................................................... 34, 49

*Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005) .................................................... 45

*Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697 (1945) .................................................................. 49

*Campbell v. City of New York*, No. 16 CV 8719, 2021 U.S. Dist. LEXIS 40933 (S.D.N.Y. Mar. 4, 2021) .............................................................................................................................................. 16

*Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984) .......................................................... 33

*Carter v. Frito-Lay, Inc.*, 425 N.Y.S.2d 115 (N.Y. App. Div. 1980) .............................................. 41

*Carvente-Avila v. Chaya Mushkah Rest. Corp.*, No. 12 Civ. 5359 (KBF), 2016 U.S. Dist. LEXIS 75396 (S.D.N.Y. Mar. 1, 2016) ....................................................................................45

*Caul v. Petco Animal Supplies, Inc.*, No. 20 CV 3534 (RPK) (SJB), 2021 U.S. Dist. LEXIS 184652 (E.D.N.Y. Sep. 27, 2021) .................................................................................. 46

*Chambers v. NASCO*, 501 U.S. 32 (1991) ..............................................................13, 14

*Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59 (2d. Cir. 2016) ..........................42

*Cuzco v. Orion Builders, Inc.,* No. 06-CV-2789, 2010 WL 2143662 (S.D.N.Y. May 26, 2010).....44

*Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775 (2d Cir. 2003)..........................................28

*Duverny v. Hercules Medical P.C.*, No. 18cv07652 (DLC), 2020 U.S. Dist. LEXIS 37547, 2020 WL 1033048 (S.D.N.Y. Mar. 3, 2020) ............................................................................... 46

*E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175 (2d. Cir. 2008) ......................................................11

*EEOC v. Dresser Indus.*, 668 F.2d 1199 (11th Cir. 1992) .............................................................. 31

*Fisher v. Tice*, No. 15 CV 955, 2016 U.S. Dist. LEXIS 87792 (S.D.N.Y. July 5, 2016), *adopted*, 2016 U.S. Dist. LEXIS 120001 (S.D.N.Y. Sept. 4, 2016) ...........................................................25

*Fu v. Pop Art Int'l Inc.*, Np. 10 Civ. 8562 (DLC) (AJP), 2011 U.S. Dist. LEXIS 113614 (S.D.N.Y. Sept. 19, 2011).......................................................................................................................42

*Galicia v. Tobiko Rest., Inc.*, No. 16 CV 4074, 2017 U.S. Dist. LEXIS 85856 (E.D.N.Y. Jun. 3, 2017)....................................................................................................................................25

*Gonzalez v. Gan Israel Pre-School*, No. 12 CV 6304, 2014 WL 1011070 (E.D.N.Y. Mar. 14, 2014) .............................................................................................................................................44

*Gucciardo v. Titanium Constr. Servs.*, 16 Civ. 1113 (LGS), 2017 U.S. Dist. LEXIS 109727 (S.D.N.Y. Jul. 14, 2017)...............................................................................................................32

*Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320 (2d. Cir. 1995) ....................................................12

*Harold Levinson Associates, Inc. v. Chao*, 37 F. App'x 19 (2d Cir. 2002) ....................................17

*Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132 (2d. Cir. 1999)........................................... 33, 42, 43

*Hernandez v. JRPAC Inc.*, No. 14 CV 4176, 2016 U.S. Dist. LEXIS 75430, (S.D.N.Y. June 9, 2016) ..........................................................................................................................................42, 43

*Holcomb v. Iona Coll.*, 521 F.3d 130 (2d Cir. 2008) .....................................................................28

*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013)...............................................................33, 34

*Johnson v. Killian*, 680 F.3d 234 (2d Cir. 2012) ........................................................28

*Joiner v. City of Macon*, 814 F.2d 1537 (11th Cir. 1987) ........................................ 49

*Kiobel v. Millson*, 592 F.3d 78, (2d Cir. 2010) ...................................................... 10

*Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002) ............................................... 10

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d. Cir. 2011) .............................. 17

*Laborers Local 938 Joint Health & Welfare Tr. Fund v. B.R. Starnes Co. of Fla.*, 827 F.2d 1454 (11th Cir. 1987) ..................................................................................................11

*Liebowitz v. Bandshell Artist Mgmt.*, 2021 U.S. App. LEXIS 18955 (2d. Cir. June 25, 2021)........25

*Lopez-Martinez v. Gokul Inc. of N.Y.*, No. 13-CV-467, 2013 WL 6145795 (N.D.N.Y. Nov. 21, 2013) ..................................................................................................................................44

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 2006 U.S. Dist. LEXIS 71091 (S.D.N.Y. Sept. 28, 2006).................................................................................................................11

*Lynch v. City of New York*, 291 F. Supp. 3d 537 (S.D.N.Y. 2018)............................ 16, 27

*Mabe* 2021 U.S. Dist. LEXIS at *11 ......................................................................... 46

*Mabe v. Wal-Mart Assocs.*, No. 20 CV 591, 2021 U.S. Dist. LEXIS 50954 (N.D.N.Y. Mar. 18, 2021) ..................................................................................................................................45

*Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83 (2d Cir. 1998) ........................................ 49

*Margo v. Weiss*, 213 F.3d 55 (2d Cir. 2000)............................................................. 10

*Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir. 1991)........................42

*Martin v. Spring United Mgmt. Co.*, 273 F.Supp.3d 404 (S.D.N.Y. 2017)..................... 35

*McLean v. Garage Mgmt. Corp.*, Nos. 09 CV 9325 & 10 CV 3950, 2012 U.S. Dist. LEXIS 55425 (S.D.N.Y. Apr. 19, 2012) .............................................................................................42

*McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943)....................................................... 39

*McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17 (2d. Cir. 1990)................ 13

*Meidenbauer v. Zenith Acquisition Corp.*, 13 CV 799 (AF), 2018 U.S. Dist. LEXIS 82738 (W.D.N.Y. May 15, 2018)........................................................................................32

*Murray v. Noblesville Milling Co.*, 42 F. Supp 808 (S.D. Ind. 1942)............................ 31

*O'Brien v. Alexander*, 101 F.3d 1479(2d Cir. 1996) ............................................... 10

*Oliveri v. Thompson*, 803 F.2d 1265 (2d. Cir. 1985)............................................................. 13, 14, 25

*Overnight Motor Transp. Co. v. Misell*, 316 U.S. 572, *reh'g denied*, 317 U.S. 706 (1942) ........... 29

*Park v. Seoul Broad. Sys. Co.*, No. 05 CV 8956, 2008 U.S. Dist. LEXIS 17277 (S.D.N.Y. Mar. 6, 2008)......................................................................................................................................11

*Perez v. Posse Comitatus*, 373 F.3d 321 (2d Cir. 2004) ...................................................................11

*Perpetual Sec., Inc. v. Tang*, 290 F.3d 132 (2d Cir. 2002) ........................................................12, 13, 15

*Qiu v. Shanghai Cuisine, Inc.*, 18 Civ. 5448 (ER), 2021 U.S. Dist. LEXIS 167093 (S.D.N.Y. Sept. 1, 2021)................................................................................................................................... 14

*Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58 (2d Cir. 1997) ................................ 18, 42

*Reilly v. NatWest Mkts. Grp., Inc.*, 181 F.3d 253 (2d Cir. 1999) ............................................. 41, 49

*Rodick v. City of Schenectady*, 1 F.3d 1341 (2d Cir. 1993) ...........................................................11

*Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323 (2d Cir. 1999) .......................................11

*Scott v. Whole Foods Mkt. Grp., Inc.*, No. 18 CV 86, 2019 U.S. Dist. LEXIS 61726, 2019 WL 1559424 (2d. Cir. Apr 9. 2019)................................................................................................30, 44

*Scott*, 2020 U.S. Dist. LEXIS 255455 at *3 ................................................................................ 46

*SEC v. Eberhard*, No. 03 CV 813, 2006 WL 17640, 2006 U.S. Dist. LEXIS 216 (S.D.N.Y. Jan. 3, 2006) ..............................................................................................................................................32

*Solis v. Wash.*, No. 08 CV 5362, 2009 WL 2855441, 2009 U.S. Dist. LEXIS 77859 (W.D. Wash. Aug 31, 2009) ............................................................................................................................... 31

*Sorto v. Diversified Maint. Sys., LLC*, No. 20 CV 1302(JS)(SIL), 2020 U.S. Dist. LEXIS 242856, 2020 WL 7693108 (E.D.N.Y. Dec. 28, 2020) ..................................................................................... 46

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) ...........................................................35

*Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2d. Cir. 2012) ...........................................................................................................................................................12

*Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370 (2d Cir. 2003).......................................................10

*Thomas v. River Greene Constr. Grp. LLC*, No. 17 CV 6954, 2018 U.S. Dist. LEXIS 209561 (S.D.N.Y. Dec. 11, 2018)...................................................................................................................28

*Toar v. Sushi Nomado*, No. 13 CV 1901, slip op. (S.D.N.Y. Mar. 31, 2016)...................................33

*Torralba v. Little India Stores*, 2016 U.S. Dist. LEXIS 24234, 2016 WL 771192 (S.D.N.Y. 2016)39

*Torres v. Gristede's Operating Corp.*, 628 F. Supp 2d 447 (S.D.N.Y. 2008)...........................31, 32

*United States v. Rosenwasser*, 323 U.S. 360 (1945) ................................................ 29

*Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476 (S.D.N.Y. 2012)..............................44

*Uto v. Job Site Servs., Inc.*, 269 F.R.D. 209 (E.D.N.Y. 2010).........................................32

*Vega v CM & Assoc. Constr. Mgt., LLC*, 175 A.D.3d 1144 (N.Y. App. Div. 2019).......................45

*Vega*, 175 A.D.3d at, 1145 ............................................................... 46

*Vinuela v. S.S. Britanis*, 647 F. Supp. 1139 (S.D.N.Y. 1986)......................................10

*Watkins v. Smith*, 2013, 12 Civ. 4635 (DLC), U.S. Dist. LEXIS 24712 (S.D.N.Y. Feb. 22, 2013) ...11

*Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43 (2d Cir. 2008) ........................ 10, 12, 15

*Worley v. City of New York*, No. 17 CV 4337, 2020 U.S. Dist. LEXIS 26398 (S.D.N.Y. Feb. 12, 2020)...................................................................................16

*Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d. Cir. 2003)............................................35

*Zheng v. Liberty Apparel Co.*, 355 F.3d. 72 (2d. Cir. 2003) ................................. 34, 35, 37

**Statutes**

28 U.S.C. § 1927......................................................................................... 13

29 U.S.C. § 203(s)(1)(A)(I) ...........................................................................39

29 U.S.C. § 206(a)(1)................................................................................. 29

29 U.S.C. § 207(a)(1)..............................................................................38, 40

29 U.S.C. § 211(c)...................................................................................17, 27

29 U.S.C. § 215(a)(2) ...................................................................................40

29 U.S.C. § 260 ...........................................................................................43

*Fishkill Health Related Facility by Kasin v. Whalen,* 95 A.D.2d 974 (App. Div.1983).................45

N.Y. C.P.L.R. 5001(b) ................................................................................ 49

N.Y. C.P.L.R. 5004 ..................................................................................... 49

N.Y. Lab. Law § 191(1)(a)(i) ..........................................................................44

N.Y. Lab. Law § 195(1) ........................................................................................30, 47, 48

N.Y. Lab. Law § 195(3) ..................................................................................................48

N.Y. Lab. Law § 198(1-a) ..............................................................................................45

N.Y. Lab. Law § 198(1-b) ..............................................................................................48

N.Y. Lab. Law § 198(1-d) ..............................................................................................49

N.Y. Lab. Law § 198(4) ..................................................................................................50

N.Y. Lab. Law § 652 ................................................................................................29, 41

N.Y. Lab. Law § 663(1) ............................................................................................42, 49

N.Y. Lab. Law § 663(4) ..................................................................................................50

N.Y. Lab. Law §195 ..............................................................................................17, 27

**Other Authorities**

N.Y. Dep't of Labor Counsel Opinion Letter RO-09-0066, May 21, 2009....................44

N.Y. Dep't of Labor Opinion Letter, No. RO-07-0072 (July 11, 2007) ..................44, 45

N.Y. Dep't of Labor Opinion Letter, No. RO-08-0061 (Dec. 4, 2008)..........................44

**Rules**

Fed. R. Civ. P. 11(b)(3) ................................................................................................. 9

Fed. R. Civ. P. 11(c)(1)(A) ............................................................................................15

Fed. R. Civ. P. 56(a) ......................................................................................................28

**Regulations**

29 C.F.R. § 516.2 ..........................................................................................................17

29 C.F.R. § 778.109 ......................................................................................................40

N.Y. Comp. Codes R & Regs. tit. 12 § 142-2.5(c)........................................................23

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-1.6(a) ......................................................41

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 ..........................................................41

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.7 ..........................................................48

N.Y. Comp. Codes R. & Regs. tit. 12, §142-2.1 ............................................................... 29

N.Y. Comp. Codes R. & Regs. tot. 12, § 142-2.1 .......................................................... 41

## Preliminary Statement

Defendants' position that sanctions are justified relies entirely on baseless statements and claims. The evidence before the Court demonstrates that there is a genuine issue of material fact, and a *bona fide* dispute over many of the claims in this case that justifies denial of defendants' summary judgment motion. Plaintiffs cross-move for summary judgment to dismiss some of defendants' affirmative defenses, to find partial summary judgment in favor of plaintiffs for wages and liquidated damages owed for unpaid overtime and spread-of-hours wages, liquidated damages for late wage payments, and statutory damages for failure to provide notices and acknowledgments and proper wage statements.

## I.    No Basis for Imposition of Sanctions Pursuant to Rule 11, 28 U.S.C. 1927, or Inherent Power of Court

### A.    Legal Standards for Imposition of Sanctions

#### 1.    Rule 11 of the Federal Rules of Civil procedure

Rule 11(b)(3) provides in pertinent part that, by presenting a complaint to the court, the attorney signing or filing the complaint "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, … the factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

Rule 11(c) allows the court to award sanctions if it determines that Rule 11(b) has been violated through "false, misleading, improper, or frivolous representations to the court." *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008).

In this case, "the standard for triggering the award of fees under Rule 11 is objective unreasonableness." *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000). Although the defendants do not identify the specific provision of Rule 11 that the complaint allegedly violated, the defendants only reference the plaintiff's factual allegations, so the plaintiff assume the motion asserts violations of Rule 11(b)(3). "[T]he standard certification for factual allegations under Rule 11(b)(3) is that there is (or likely will be) evidentiary support for the allegation, not that the party will prevail with respect to its contention." *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) (internal quotation marks omitted) (quoting Rule 11 Advisory Committee Note). Indeed, "[t]he focus of the inquiry is the attorney's and/or party's reasonable belief at the time of filing, not at some later time when developments during discovery or trial reveal no basis for the belief." *Vinuela v. S.S. Britanis*, 647 F. Supp. 1139, 1148 (S.D.N.Y. 1986). "This construction of Rule 11 'serves to punish only those who would manipulate the federal court system for ends inimicable to those for which it was created.'" *Id.* (citation omitted).

A pleading violates Rule 11(b)(3) of the Federal Rules of Civil Procedure if, "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact." *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (citation omitted); *see also In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003). A statement of fact within a pleading "can give rise to the imposition of sanctions only when the 'particular allegation is utterly lacking in support.'" *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010) (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003)).

Rule 11 should not be used "to emphasize the merits of a party's position, to exact an unjust settlement, [or] to intimidate an adversary into withdrawing contentions that are fairly debatable." *See Laborers Local 938 Joint Health & Welfare Tr. Fund v. B.R. Starnes Co. of Fla.*, 827 F.2d 1454, 1458 (11th Cir. 1987) (affirming the denial of sanctions where the issues were debatable and not easily resolved, and there was no clear binding precedent). Whether a claim can survive on the merits is wholly distinct from whether that claim is frivolous. *See Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007) ("When divining the point at which an argument turns from merely losing to losing and sanctionable' courts must 'resolve all doubts in favor of the signer of the pleading" (quoting *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993)).

Sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure should be "made with restraint." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999). Even if a court determines that Rule 11(b) has been violated, the decision whether to impose sanctions is not mandatory, but rather is a matter for the court's discretion. *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004). Sanctions are a drastic remedy reserved for only the most extraordinary circumstances. *See, e.g., E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 178 (2d. Cir. 2008); *Park v. Seoul Broad. Sys. Co.*, No. 05 CV 8956, 2008 U.S. Dist. LEXIS 17277, at *1 (S.D.N.Y. Mar. 6, 2008); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 04 CV 5316, 2006 U.S. Dist. LEXIS 71091, at *6 (S.D.N.Y. Sept. 28, 2006) ("Sanctions should always be a (very) last resort.").

Additionally, when sanctions are imposed pursuant to a motion of a party, the party seeking sanctions against another party or its counsel must comply with the "safe harbor" provision of Rule 11. *See Watkins v. Smith*, 2013, 12 Civ. 4635 (DLC), U.S. Dist. LEXIS 24712, *14 (S.D.N.Y. Feb. 22, 2013). In particular, Rule 11(c)(2) provides,

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed.R.Civ.P. 11(c)(2). The twenty-one-day safe harbor period provided by the rule permits an attorney to withdraw or correct faulty factual or legal contentions in order to avoid the imposition of sanctions. *See Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1327-28 (2d. Cir. 1995).

"An informal warning in the form of a letter without service of a separate Rule 11 motion" does not satisfy Rule 11's procedural requirements. *See Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d. Cir. 2012). On the other hand, a party moving for sanctions need not serve a "formal fully supported motion" on the opposing party before filing the motion. *Id.* at 176 (service of notice of motion along with informal safe harbor letter was sufficient).

In the Second Circuit, Rule 11(c)(2)'s safe-harbor provision is strictly enforced. *Id.* at 176; *see also Hadges*, 48 F.3d at 1328-29. Nonetheless, the failure to follow the safe harbor provisions perfectly may be excused where there is "no indication that [a party] would have corrected or amended its frivolous arguments even had it been given the opportunity." *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 142 (2d Cir. 2002).

In addition, a Rule 11 motion must be made separately from any other sought relief. *See* Fed. R. Civ. P. 11(c)(1)(A); *Williamson*, 542 F.3d at 51 (affirming denial of defendants' Rule 11 motion where defendants "failed to make a separate motion for sanctions under Rule 11, and

therefore failed to comply with the procedural requirements of the rule"); *Tang*, 290 F.3d at 142 (reversing sanctions award on grounds that motion was mot made separately from other requests).

### 2.  28 U.S.C. 1927

Another basis for imposing sanctions is 28 U.S.C. § 1927, which states "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." By its terms, § 1927 looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics. *See Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d. Cir. 1985). The purpose of this statute is "to deter unnecessary delays in litigation." *See id.*, 803 F.2d at 1273 (internal citations omitted). Bad faith is the touchstone of an award under this statute. *See McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17, 23 (2d. Cir. 1990). These sanctions—which may be imposed only on the attorneys, not the parties—are appropriate if the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose, such as delay. *See Oliveri*, 803 F.2d at 1273.

### 3.  Inherent Power of Court

Finally, a court has a third means at its disposal for sanctioning improper conduct: its inherent power. This power stems from the very nature of courts and their need to be able "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO*, 501 U.S. 32, 42 (1991) (internal citations omitted). One component of a court's inherent power is the power to assess costs and attorneys' fees against either the client or his attorney where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive

reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1974) (internal citations omitted).

The Supreme Court has cautioned that because of the "very potency" of a court's inherent power, it should be exercised "with restraint and discretion." *Chambers*, 501 U.S. at 42.To justify sanctions, defendants under the inherent powers, defendants must show with "clear evidence that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes" and "a high degree of specificity in the factual findings of [the] lower courts." *Oliveri*, 803 F.2d at 1272 (internal citations omitted).

### B.    Defendants Failed to Comply with Rule 11 Procedure

The defendants failed to follow the requirements of Rule 11's safe harbor requirement. Defendants mailed plaintiffs letters, but these letters contained no notice of motion, and did not contain a detailed accounting of every claim that defendants believe are false. *See* Letters, Ex. 2 to Pls' Aff. Opp. Mot., ECF No. 360-2. Defendants' prior motion, filed in July 2020 at ECF No. 256, did not trigger the safe harbor provision, because to trigger the safe harbor provision, a notice of motion and supporting documents must be sent to plaintiffs rather than filed with the Court. *See Qiu v. Shanghai Cuisine, Inc.*, 18 Civ. 5448 (ER), 2021 U.S. Dist. LEXIS 167093, *6, (S.D.N.Y. Sept. 1, 2021). ("the motion for sanctions, made separately from any other motions, should be sent to the opposing party but not actually filed with the Court if the challenged paper or action is withdrawn or appropriately corrected within 21 days after service of the motion"). Additionally, that motion was denied as moot. *See* Order, ECF No. 350.

It is still unclear to the plaintiffs specifically which papers the defendants would have demanded the plaintiffs withdraw as an alleged violation of Rule 11, had they complied with the safe harbor provision. The defendants' letters do not specifically identify a particular paper. The defendants' memorandum discusses the contents of the original complaint, a paper the plaintiffs

cannot withdraw because it has been superceded by an amended complaint. The affidavits in support of the plaintiffs' motions to certify a class and collective action have already been adjudged credible by the court in granting those motions, after the defendants had an opportunity to dispute them with the very same evidence upon which they rely for this motion (with the exception perhaps of the plaintiffs' later depositions). All that remains is the operative pleading, the first amended complaint. As discussed below, the relatively minor differences between the plaintiffs' deposition testimony and the first amended complaint would have led the plaintiffs to consider simply amending the pleading, if the defendants had provided the plaintiffs the required safe harbor, just to avoid the nuisance of responding to defendants' baseless sanctions motion. Even after filing their July motion, defendants never indicated to plaintiffs what plaintiffs could do to avoid defendants filing a sanctions motion, short of withdrawing the entire action. *See* Pls' Aff. Opp. Mot. ¶5.

The defendants also failed to move for sanctions under Rule 11 separately from other relief sought, a procedural requirement, which separetely requires denial of their sanctions motion. *See* Fed. R. Civ. P. 11(c)(1)(A); *Williamson*, 542 F.3d at 51; *Tang*, 290 F.3d at 142.

### C.    No Basis in Conduct of Plaintiffs or Their Counsel to Warrant Sanctions

The defendants have failed to show which actions of this firm have been egregiously inappropriate, failed to show that any plaintiff or this firm acted in bad faith in any way, and failed to show that the claims of the plaintiffs and in the first amended complaint are inaccurate. In addition, defendants have failed to cite to any authority that justifies "summary judgment dismissal" as an appropriate Rule 11 sanction, where defendants have failed to show any false statement, willful or not, exists.

There is no evidence to support defendants' claim that the Zeller Firm induced any class member to sign false affidavits in order to bring a fraudulent class action, as defendants baselessly claim.

Before filing the complaint, this firm extensively interviewed Mr. Alvarado and collected all documents proportional to the needs of the case in his possession from him, which have since been produced to defendants and to the Court. *See* Pls Aff. Opp. Mot., ECF No. 360, ¶15; Ex. to Aff. Supp. Mot. Cond. Cert. (Alvarado), ECF No. 19-1.

Again, the defendants' discussion of the original complaint, *see* Memo. Supp. Mot., ECF No. 354, p. 6, is irrelevant because the operative complaint is the first amended complaint, which states that Mr. Alvarado worked approximately between 70 and 87 hours per week for defendants. *See* 1ˢᵗ Am. Compl., ECF No. 16, ¶20. This complaint is consistent with Mr. Alvarado's affidavit and with his deposition testimony. *See* Aff. (Alvarado), Ex. J, ECF No. 355-10; Dep. Alvarado, Ex. Z, ECF No. 2355-26, 88:15-25; 152:7-20; 156:13-21; 121:18-24 144:8-10; 134:1-10; 146:6-9. Defendants claim that Mr. Alvarado provides these hours with no "proof," but ignore his testimony as such proof. *See Campbell v. City of New York*, No. 16 CV 8719, 2021 U.S. Dist. LEXIS 40933, at *4 (S.D.N.Y. Mar. 4, 2021), ("A plaintiff may show the amount and extent of that work as a matter of just and reasonable inference … solely through his own recollection.") (internal citations omitted) *Lynch v. City of New York*, 291 F. Supp. 3d 537, 549 (S.D.N.Y. 2018) (crediting the plaintiffs' "extensive evidence, primarily in the form of their depositions, that they frequently worked before and after work, as well as during their meal times, without being compensated."); *Worley v. City of New York*, No. 17 CV 4337, 2020 U.S. Dist. LEXIS 26398, at *5 (S.D.N.Y. Feb. 12, 2020) ("Courts often rely on deposition testimony from employees themselves about what their supervisors knew regarding uncompensated overtime.").

### 1.   Plaintiffs Provided Credible Testimony in the Face of Defendants' Incomplete or otherwise Inadequate Records

The Fair Labor Standards Act and New York Labor Law impose a duty upon employers to "make, keep, and preserve" records of employee wages and conditions of employment. *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.2; *see also* N.Y. Lab. Law §195. It is the plaintiffs' burden to establish a violation of the Fair Labor Standards Act. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946). Where an employer keeps "inaccurate or inadequate records," the plaintiff need only offer a reasonable estimate of his damages to meet his burden of demonstrating a violation. *See Harold Levinson Associates, Inc. v. Chao*, 37 F. App'x 19, 21 (2d Cir. 2002). "It is well settled among the district courts of this Circuit, and we agree, that it is possible for a plaintiff to meet this burden through estimates based on his own recollection." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d. Cir. 2011).

Here, the defendants' records are inadequate, and the plaintiffs have met their burden of providing testimonial evidence to establish their claims. During Mr. Alvarado's employment, and until October 2014, the defendants admittedly did not use a time clock and, for a time, did not maintain proper records of the time it took plaintiffs to bring the tour bus back to the yard, but instead relied on "averages" to determine how much to pay drivers for this time. *See* Dep. Kostadinov, Ex. S, ECF No. 355-19, 85:3-23; Baran Dep., Ex. T, ECF No. 355-20, 31:8-10; Defs' Ex. EE, ECF No. 356-5 (showing that in many days, according to defendants' records, defendants allotted 30 minutes for the time spent bringing the busses back to Brooklyn, in addition to what defendants recorded); Pls' Aff. Opp. Mot., ECF No. 360, ¶6.

Further, the time records that defendants maintain are compilation sheets derived from the supervisors' written or oral reports. *See* Baran Dep., Ex. NN, ECF No. 356-14, 30:15-25; 31:2-4; 32:23-25; 33:2-5. The defendants, crucially, failed to preserve the actual timesheets that were

submitted to create the compilation sheets. *See id.* Further, the defendants have formally admitted they no longer have text messages to and from supervisors regarding class members' schedules. *See* Defs' Statement Mat. Facts, ECF No. 353, ¶57; Pls' Aff. Opp. Mot., ECF No. 360 ¶9. Defendants also failed to preserve all the pay receipts they allegedly kept. *See* Aff. Opp. Mot., ¶7. Defendants also failed to preserve security camera footage that would show whether plaintiffs received cash payments. *See id.* at ¶10. Thus, because defendants failed to keep proper records, plaintiffs' estimates are appropriate proof of hours worked prior to October 2014. *See Reich v. S. New England Telecomms. Corp.,* 121 F.3d 58, 66 (2d Cir. 1997) (When an employer fails to maintain accurate and complete records of the hours employees work and the amounts they are paid, the plaintiff-employee need only ... submit "sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred").

The minor discrepancies between Mr. Alvarado's affidavit and deposition testimony do not justify sanctions of any kind. The plaintiffs agree that Mr. Alvarado's affidavit states "I worked for the defendants approximately six days per week and between seventy and eighty-seven hours per week, except for two weeks where I only worked five days per week and worked between fifty-five and sixty-five hours per week." *See* Alvarado Aff. at Ex. J, ECF No. 355-10, ¶5. Notably, the affidavit uses approximations. The slight discrepancy between the amount of weeks Mr. Alvarado worked five rather than six days per week *in no way* supports defendants' false and unsubstantiated claim that Mr. Alvarado admitted that he falsely inflated hours in his affidavit. Indeed, Mr. Alvarado testified that he worked from approximately 5:00 a.m. until he returned the bus to the yard around 8:30 p.m., which means, even if he worked five days per week, he did work between 70 and 87 hours. *See* Alvarado Dep., Ex. Z, ECF No. 355-26, 88:15-22; 154:9-14; 161:14-20. The defendants wrongly assume their own records to be unassailably credible, and that any

contradictory testimony must be a lie. Yet, Mr. Alvarado was presented with these documents, and he provided credible testimony that the records were inaccurate. *See* Alvarado Dep., Ex. Z, ECF No. 355-26, 87:8-15; 126:8-25 to 127:1; 132:15-24; 137:7-12; 145:25 to 146:1-8; 148:11-17; and 154:9-14.

Further, defendants assert that Mr. Alvarado's testimony that he arrived to the bus yard at 5:00 a.m. is a lie, and they base this claim on an affidavit by a former cashier who worked in the office, not the bus yard. *See* Baran Dep., Ex. T, ECF No.356-14, 7:9-25; 8:2-8; 15:7-12; 23:13-17. Mr. Alvarado, however, provided credible testimony that he arrived at 5:00 a.m. to the bus yard, and he detailed his extensive morning routine. *See* Alvarado Dep. #1, Ex. Z, ECF No. 355-26, 19:14-16; 52:5-16; 88:8-25; 89:12-25; 91:2-25; 92:2-25; 93:1-25; 94:1-7; 95:21-22. Other drivers corroborated that the yard opened this early, and before 7:00 a.m., and even the defendant Mr. Kostadinov admitted that the bus yard was open 24 hours per day for a time. *See* Falquez Dep., Ex. PP, ECF No. 356-16, 65:5-12; Stewart Dep., Ex. DD, ECF No. 356-4, 17:17-19; 22:5-9; 46:17-25; Atkinson Dep., Ex. AA., ECF No. 356-1, 26:13-16; 37:3-10; 86:10-17; Wong Dep. Defs' Ex. QQ, ECF No. 356-17, at 41:2–9; Kostadinov Dep., Ex. S, ECF No. 355-19, 103:14-23. Mr. Alvarado also described how defendants' records inaccurately reflected all the hours he worked because they were missing days and did not account for all hours spent bringing the bus to tour sites and back to the bus yard. *See* Alvarado Dep. #1, Ex. Z, ECF No. 355-26, 154:8-14.

The defendants also mention a notebook that Alvarado kept while he worked for defendants and seek to blame this law firm for not uncovering its existence sooner. *See* Defs' Memo Supp. Mot., ECF No. 354, p. 7. Defendants, however, in seeking to blame this firm, completely ignore that Alvarado testified that he had lost the notebook before this case began. *See* Alvarado Deposition # 2, Pls' Ex. 13 to Pls' Aff. Opp. Mot., ECF No. 360-13, at 18:17-25.

Next, the defendants wrongly claim that Falquez made false and "preposterous" claims in his affidavit but fail to provide any evidence that the claims were false. Falquez also testified at deposition that he worked up to 60 hours in many weeks and sometimes more and always more than forty hours, which matches his affidavit where he stated that he worked between 11 and 13 hours per day five days per week (which averages to 60 hours). *Compare id.* 50:2–6, 153:20–25, 154:2–13, *with* Falquez Aff., Defs' Ex. K, ECF No. 355-11, ¶4. The defendants again opine that Falquez has no documents to support his claim, and yet, as described above, Falquez's testimony is sufficient proof due to defendants' improper recordkeeping. Furthermore, Falquez asserts that defendants' records are false and that he was not paid for every hour that he worked. *See* Dep. Falquez, Ex. PP, ECF No. 356-16, 122:7–25, 123:2–3.

Next, defendants wrongly claim that Mr. Briggs admitted he grossly overstated his hours and admitted he only worked for defendants for five weeks. That is not true. First, Plaintiffs dispute that Briggs worked only five weeks. *See* Briggs Dep., Ex. Y, ECF No. 355-25, 21:14-16; 40:17-23. Second, Mr. Briggs' affidavit never claimed he worked sixty hours in *every* week, and in deposition he testified that in some weeks he *did* work sixty hours. *Compare* Briggs Aff., Defs' Ex. N, ECF No. 355-14, ¶5 *with* Briggs Dep., Defs' Ex. Y, ECF No. 355-25, 49:4-8. Despite defendants' misleading allusions, Mr. Briggs never stated he gave false testimony.

The defendants also wrongly claim that Lawrence Atkinson admitted that he grossly oversstated his hours in his affidavit: Mr. Atkinson never stated that he did so. Indeed, Mr. Atkinson did not testify in his affidavit that he worked between 12 and 13 hours per day five days per week every single week, but rather asserted approximations. *See* Atkinson Aff., Defs' Ex. M, ECF No. 355-13, ¶ 4. Mr. Atkinson testified at deposition that he worked as stated in his affidavit but clarified that he worked fewer hours in the winter. *See* Dep. Atkinson, Ex. AA, ECF No. 356-1, 95:7–18.

## 2.   Plantiffs Alvarado, Briggs, and Falquez Never Received Cash Wages

The defendants also claim that Mr. Alvarado and Mr. Falquez lied about never receiving cash for hours worked over forty each week, but the defendants provide no evidence to support this claim. Multiple drivers, not just Messrs. Alvarado and Falquez, have credibly testified that the defendants did not pay cash or other wages for hours worked over forty each week. Aff. Pl. Supp. Mot. Certify Class (Day), ECF no. 72, ¶7; Alvarado Dep., Ex. Z, ECF No. 259-19, 121:18–24, 144:8–10, 146:6–9; Alvarado # 2, Ex. 13 to Pls. Aff. Opp. Mot., ECF No. 360-13, 13:22–15:5, 27:10–13, 36:4–37:10; Alvarado Aff. at Ex. J, ¶ 6; Dep. Falquez, Ex. PP, ECF No. 356-16, 50:7–11, 123:15–19, 125:8–10, 159:24–160:2; Briggs Dep., Ex. Y, ECF No. 355-25, 59:18–25, 60:2–5. Regarding the receipts for cash wages that defendants provided, Mr. Alvarado provided credible testimony that he was forced to sign these inaccurate receipts in order to receive his paycheck. *See* Alvarado # 2, Ex. 13 to Pls. Aff. Opp. Mot., ECF No. 360-13, ECF No. 264-20, 14:6–15. Indeed, Mr. Briggs also confirmed that the signed receipts were inaccurate, and that he did not receive cash. See Dep. Briggs, Defs' Ex. Y, ECF No. 355-25, at 60:4–11.

Further, W2s for 2013 confirm that Messrs. Alvarado and Falquez did not receive cash payments. Earlier in this case, the defendants falsely claimed to plaintiffs and the Court that they did not have W2s for 2013. *See* Pls' Aff. Opp. Mot., ¶11. Contrary to the defendants' false claim, defendants' accountant, Ethan Klein, confirmed in an affidavit that he had produced 2013 W2s to defendants *before* plaintiffs sought them at a Local Civil Rule 37.2 conference where defendants claimed to this Court that they did not have them. *See* Ex. 7 to Pls' Aff. Opp. Mot., Aff. Klein, ECF No. 360-7. That false claim is among several during discovery. *See* Letter, ECF No. 349 (Explaining how defendants concealed the identity of Go New York's co-owner, Yulia Kostadinov). The 2013 W2s W2 for Mr. Alvarado confirm that his total wages paid for 2013 equals the check amount and does not reflect any additional cash payments. *Compare* Ex. 8 to Pls' Aff. Opp. Mot., ECF No. 360-

8, *with* Defs' Ex. O at p. 55 (showing that the total year to date payment pursuant to the check amounts equals the amound reported as wages on plaintiffs' W2). Klein's records also confirm this amount as total wages paid in 2013 and do not indicate any additional cash payments. *See Compare* Ex. 8 to Pls' Aff. Opp. Mot., ECF No. 360-8, *with* Defs' Ex. O at p. 55. Falquez's 2013 W2 shows the same. *Compare* Defs' Ex. OO, ECF No. 356-15, at p. 13 (showing year end check payment as $1,989) to Ex. 9 to Pls' Aff. Opp. Mot., ECF No. 360-9, (showing year end total on 2013 W2 and in records as matching the yeard to date check amount of $1,989).

Furthermore, the defendants claim that Ms. Kostadinov would hand drivers an envelope with cash and checks in them, and yet, Ms. Kostadinov testified that she never witnessed or otherwise did not remember ever giving cash to Mr. Alvarado or Mr. Briggs. Ms. Kostadinov. *See* Ex. U, ECF No. 355-21, 68:13–25, 69:2–14, 70:14–17, 71:2–22, 72:2–20. Mr. Baran also provided no testimony as to which drivers he provided cash wages to and when.

Defendants also provide testimony from Messrs. Atkinson, Stewart, and Wong regarding receiving cash payments, but importantly, those individuals did not provide testimony regarding Messrs. Alvarado, Falquez, or Briggs ever having received cash. Therefore, rather than justifying sanctions, the differences in factual assertions here justify denial of defendants' summary judgment motion.

### 3.  Plaintiffs Alvarado and Falquez Never Received Cash Tips

Defendants continue their pattern of faulty reasoning to conclude that Messrs. Alvarado and Falquez lied about never having received tips simply because Messrs. Atkinson, Briggs, and Stewart *did* receive tips. *See* Defs' Memo Supp. Mot., ECF No. 354, at 12. On the contrary, Falquez and Alvarado provided credible testimony that they never received cash tips. *See* Alvarado Dep., Defs' Ex. Z, ECF No. 355-26, 47:13–23; Falquez Dep, Defs' Ex. PP, ECF No. 356-16, at 157:22–24. No documentation or testimony contradicts that Messrs. Alvarado and Falquez never received cash

tips. The purported legal relevance of these tips is unclear in defendants' motion, but their claims in no way whatsoever justify sanctions of any kind.

### 4.   Defendants' Claims Regarding Weekly Bonuses are Inaccurate

Defendants also claim that the class representatives and their attorneys lied about receiving weekly bonuses, and yet provide no evidence whatsoever to support this claim. The class representatives have, however, provided ample testimony disputing the accuracy of defendants' records. *See* Pls' Opp. Statement Mat. Facts, ECF No. 361 ¶65.

### 5.   Defendants Have Not Demonstrated That Alvarado was Reimbursed for His Purchase of Required Uniforms or that Defendants Paid Uniform Maintenance Pay

The defendants further claim that Mr. Alvarado's claim that he had to purchase a required uniform is a lie but, again, provide no evidence to support this claim. The defendants did not ask Mr. Alvarado about whether he paid for his uniform at Go New York and have provided no evidence that this claim in the amended complaint is untrue. *See* Pls' Aff. Opp. Mot., ECF No. 360, ¶28. The defendants instead provide testimony from other drivers regarding their *personal* experience and provide no testimony from or about Mr. Alvarado to contradict this claim. *See* Defs' Statement Mat. Facts ¶117. Furthermore, defendants seem to imply that it is plaintiffs' burden to demonstrate that special maintenance is required to justify uniform maintenance pay, and yet the regulations impose no such burden. *See* N.Y. Comp. Codes R & Regs. tit. 12 § 142-2.5(c).

### 6.   Settlement History in This Action Reveals Defendants' Refusal to Engage in Good Faith Settlement Discussions

The defendants irrelevantly and falsely provide settlement history in this case whereby they falsely claim they have offered to make plaintiffs "whole." The defendants offered to settle this action on behalf of the entire class, with a presumption their contested time records are accurate despite the fact that the class claims that the class was not paid for all hours worked before October

2014; defendants purported offer has no regard to any of the class's other claims beyond the half-time their records show is owed. *See* Pls' Aff. Opp. Mot. ¶2, Pls' Ex. 25. This offer was obviously unsatisfactory because it ignored claims for spread-of-hours wages, liquidated damages, statutory damages for failures to provide notices and acknowledgments and accurate wage statements, liquidated damages for late payments, wages not timely paid, claims that the records are false, and all claims by class members employed after October 2014, and also prejudgment interest. Accepting such an offer would have been grossly unfair to the class. In fact, it is actually defendants, rather than plaintiffs, who are stonewalling settlement negotiations. *See* Letter, ECF No. 345 (where defendants refused to attend a settlement conference with Judge Freeman despite plaintiffs' willingness to).

### 7.   Defendants' Arguments reveal that Trial is Warranted, Not Sanctions

Defendants baselessly claim that Messrs. Alvarado and Falquez lied, even though their testimony regarding hours, cash payments, being shorted hours, and arrival time to work is corroborated and has been repeatedly testified to. The defendants have not established that their records are in fact, accurate. Instead, their records are demonstrably incomplete, and the plaintiffs have repeatedly testified to their inaccuracy. The accuracy of records is a textbook factual issue in a wage-and-hour case; the mere existence of records does not prove their accuracy. The defendants, in sum, have only offered evidence that a dispute exists.

In sum, a *bona fide* dispute exists regarding the hours the plaintiffs worked, and the extent to which they were paid for all of those hours in compliance with the law. The plaintiffs have provided credible and consistent testimony on these issues. The defendants have provided *no evidence* to support their baseless claims that plaintiffs willfully provided false or inflated testimony or that any plaintiff was induced to do so by this firm.

The conflicting evidence in this case clearly shows that the parties disagree on basic elements of plaintiffs' claims, and in that regard, creates an issue of material fact for trial. *See Galicia v. Tobiko Rest., Inc.*, No. 16 CV 4074, 2017 U.S. Dist. LEXIS 85856, at *11 (E.D.N.Y. June 3, 2017). Resolving all doubts in favor of the attorney who signed the complaint, *see Oliveri v. Thompson*, 803 F.2d at 1275, the Court cannot conclude that the defendants' affidavits and challenged records make it "patently clear that" the plaintiffs' claims "ha[ve] absolutely no chance of success under the existing precedents," *See Fisher v. Tice*, No. 15 CV 955, 2016 U.S. Dist. LEXIS 87792, at *71 (S.D.N.Y. July 5, 2016), *adopted*, 2016 U.S. Dist. LEXIS 120001 (S.D.N.Y. Sept. 4, 2016). Therefore, sanctions or summary judgment in favor of defendants must be denied.

### 8. No Evidence that Plaintiff's Counsel Failed to Conduct a "Reasonable Inquiry" prior to Filing this Action

The defendants claim that the plaintiffs' counsel should be sanctioned under 27 U.S.C. 1927 or the Court's inherent powers for failure to investigate the claims alleged in the pleadings. *See Liebowitz v. Bandshell Artist Mgmt.*, No. 20 CV 2304, 2021 U.S. App. LEXIS 18955, at *1 (2d. Cir. Jun. 25, 2021). This claim should also be denied.

The defendants' contention here seems to be based entirely on their belief that their version of facts is correct, and plaintiffs version is incorrect. The defendants, however, have not established that their version of the facts is correct, as opposed to plaintiffs' version. The parties have a *bona fide* dispute over the accuracy of plaintiffs' claims; this situation does not warrant sanctions, but a trial.

The defendants rely on their records to claim plaintiffs are not telling the truth but ignore that plaintiffs dispute the accuracy of those records, and many class members claim they were not paid straight time for every hour worked. *See* Alvarado Dep., Ex. Z, ECF No. 356-26, 87:8-15, 126:8–25–127:1, 132:15–24, 137:7–12, 145:25–146:8, 148:11–17, 154:8–14; Dep. Briggs, Ex. Y, ECF No.

355-25, 43:22–25, 44:2–12, 61:13–21; Dep. Falquez, Ex. U, ECF No. 264-21, 122:7-25, 123:2–3; Stewart Dep., Ex. DD, ECF No. 356-4, 31:23-25 to 32:2-10, 52:11–53:3; Aff. Pl. Supp. Mot. Certify Class (Day), ECF no. 72, ¶7; Aff. Pl. Supp. Mot. Certify Class (Ortiz), ECF no. 78, ¶6; Aff. Pl. Supp. Mot. Certify Class (Robinson), ECF no. 79, ¶7; Aff. Supp. Mot. Conditionally Certify Collective Action (Sanchez), ECF No. 82, ¶7; and Aff. Pl. Supp. Mot. Class Action (Wong), ECF no. 86, ¶7.

The defendants have failed to show that any affidavit or evidence or testimony submitted by plaintiffs is false or exaggerated. Defendants also failed to show that this firm did not reasonably investigate the veracity of plaintiffs' claims or that these claims are false. Each plaintiff who submitted an affidavit in support of plaintiffs' motion to certify a class was thoroughly interviewed, as evidenced by their affidavits, and documents in these plaintiffs' possession proportional to the needs of the case was collected and produced. *See* Pls' Aff. Opp. Mot., ECF No. 360, ¶¶15–22. As part of their investigation, this firm also analyzed a claim by a prior client against defendants and later made a records request for documents related to an ongoing New York State Department of Labor ("NYS DOL") investigation against defendants. *See id.* Defendants have provided no evidence to support their claim that this case was not properly investigated, nor that any document was willfully falsified, and therefore there is no basis to impose sanctions.

Defendants next, illogically, claim that the plaintiff's counsel has lied to the Court regarding a settlement that Mr. Stewart allegedly entered into, despite the fact that Mr. Stewart knows nothing of this settlement, claims he was not a party to it, did not sign the agreement, and the agreement itself does not indicate which claims are waived. *See* Stewart Dep., Ex. DD, ECF No. 356-4, 34:3–6, 37:2–5, 58:5–9, 59:13–20, 60:2–4, 77:7–22, 81:11–23; Defs' Ex. UU, ECF No. 356-21. Furthermore, the defendants seem to admit that the setlement was related to interefering with union

activity rather than anything to do with unpaid wages. *See* Dep. Kostadinov, Defs' Ex. S, ECF No. 355-19 at 120:2–4, 121:2–6.

The defendants also seem to claim that this firm should have uncovered documents such as text messages, emails, and other documents that would have shown plaintiffs' affidavits were false, and yet, defendants entirely fail to establish the existence of these hypothetical documents which is necessarily a logical precursor to asserting they should have been discovered or are relevant. In so doing, defendants claim that this firm failed instruct plaintiffs to presrve documents but provide no testimony to support this claim or that plaintiffs failed to meet their obligations.

The defendants claim that this firm failed to obtain text messages between drivers and supervisors that may be relevant to the plaintiffs' hours worked. Again, defendants offer no evidence to establish whether these text messages were relevant and if so were lost during the litigation or even during the contemplation of the litigation. Further, the defendants, as the second party to these messages, themselves had an obligation to maintain them and, indeed, the law obliges the employer specifically to maintain records such as these. *See Lynch*, 291 F. Supp. 3d at 546 ("employer's duty under the FLSA [and NYLL] to maintain accurate records of its employees' hours is non-delegable."); 29 U.S.C. § 211(c); N.Y. Lab. Law §195. Defendants' formally admitted they do not possess these records. *See* Aff. Opp. Mot., ECF No. 360, ¶9. That plaintiffs texted supervisors regarding schedules is also disputed. *See* Pls' Opp. Statement Mat. Facts, ECF No. 361, ¶173. Defendants have also failed to establish, in their motion, that any other text messages to friends or family relevant to this case ever existed.

Regarding notes made by drivers, again, defendants failed to show any evidence that they were lost after plaintiffs joined this action and were relevant to defendants' defenses. The only note

that defendants identified was Alvarado's notebook which was lost before this case began. *See* Alvarado Deposition # 2, Ex. 13 to Pls' Aff. Opp. Mot., at 18:17-25.

Regarding emails, Mr. Falquez testified he never had any relevant emails. *See* Falquez Dep., Ex. U, ECF No. 264-21, 30:11–17. No evidence indicates that the other drivers used email address to communicate with or about defendants, or that those emails have been lost, and if so, when.

Therefore, defendants have utterly failed to show that this firm failed to uncover any relevant documents or failed to properly investigate claims.

## II.    Summary Judgment Is Not Warranted as a Matter of Law

To prevail on a motion for summary judgment, the movant must show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

"The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts 'in the light most favorable' to the non-moving party." *Thomas v. River Greene Constr. Grp. LLC*, No. 17 CV 6954, 2018 U.S. Dist. LEXIS 209561, at *8 (S.D.N.Y. Dec. 11, 2018) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008)).

"In determining whether there are genuine issues of material fact, the Court is 'required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" *See id.* at *9 (citing *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012)). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).

Some plaintiffs were not always paid the minimum wage. Whether a wage payment meets the minimum wage is determined by dividing the employee's wages in a workweek by the hours worked in that workweek. *See United States v. Rosenwasser*, 323 U.S. 360, 363–64 (1945); *Overnight Motor Transp. Co. v. Misell*, 316 U.S. 572, 580, *reh'g denied*, 317 U.S. 706 (1942). In 2013, the federal and state minimum wage was $7.25 per hour. 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652 and N.Y. Comp. Codes R. & Regs. tit. 12, §142-2.1.

Mr. Alvarado testified he worked approximately up to 17 hours per day and five or six days per week, and was only paid for up to forty hours. *See* Dep. Alvarado, Ex. Z, ECF No. 355-26, 88:15–25, 121:18–24, 144:8–10, 134:1–10, 146:6–9, 152:7–20, 156:13–21. This means, on a week in which Mr. Alvarado worked five days at approximately 15 hours per day, and paid $13.00 per hour for only forty hours in that week, his effective hourly rate would be $6.93 per hour (75 hours divided by his total pay (40 hours times $13.00 per hour)). *See id.*; *see also* Aff. Pl. Supp. Mot. Certify Class (Day), ECF no. 72, ¶¶5, 7, 9 (testifying that based on the hours worked and pay, his effective hourly rate fell below the minimum wage); Aff. Pl. Supp. Mot. Certify Class (Ortiz), ECF no. 78, ¶6 (testifying that she was paid no wages in her final workweek). Therefore, summary judgment should be denied on this issue.

The plaintiffs' claims that they were not timely paid wages should not be dismissed because plaintiffs have provided credible testimony that they were not paid for all hours that they worked. *See* 1st Am. Compl. ¶2; Alvardo Dep., Ex. S, ECF No. 259-19, 87:8–15, 94:2–7, 126:8–127:1, 132:15–24; 137:7–12, 145:25–146:8, 148:11–17; Dep. Falquez, Ex. U, ECF No. 264-21, 122:7-25 to 123:2-3; Dep. Briggs, Ex. X, ECF No. 264-24, 43:22–25, 44:2–12; Stewart Dep., Ex. W, ECF No. 264-23, 31:23–25 to 32:2-10, 52:11–53:3; *See* Aff. Pl. Supp. Mot. Certify Class (Day), ECF no. 72, ¶7; Aff. Pl. Supp. Mot. Certify Class (Ortiz), ECF no. 78, ¶6; Aff. Pl. Supp. Mot. Certify Class (Robinson),

ECF no. 79, ¶7; Aff. Supp. Mot. Conditionally Certify Collective Action (Sanchez), ECF No. 82, ¶7; and Aff. Pl. Supp. Mot. Class Action (Wong), ECF no. 86, ¶7. The plaintiffs also have claims of untimely paid wages for the period of time beyond October 2014 in violation of New York Labor Law §191(1)(a). *See* Pls' Aff. Opp. Mot., ECF No. 360, ¶¶10 to 11; 1st Am. Compl. ¶2, *Scott v. Whole Foods Mkt. Grp., Inc.*, No. 18 CV 86, 2019 U.S. Dist. LEXIS 61726, 2019 WL 1559424 (2d. Cir. Apr 9. 2019). Therefore, summary judgment should be denied on this issue too.

The defendants contend that they provided plaintiffs notices of their wages upon hiring, but the notices do not have addresses and phone numbers of defendants as required, the signed versions have not been produced, and the accuracy of these statements is disputed. *Compare* Defs' Ex. HH & Ex. X at pp.36–40 *with* N.Y. Lab. Law § 195(1). The defendants' handbook also does not comply with the Wage Theft Prevention Act because it does not indicate the drivers' hourly rate. *See* Defs' Ex. II, ECF No. 356-9. Indeed, plaintiffs pleaded violations of the Wage Theft Prevention Act's requirement to provide a notice and acknowledgment at the time of hiring, and many plaintiffs, including Day, Grady, Nelson, Robinson, Roper, Stewart, Wong, and Wright, testified they never received one. *See* 1st Am. Compl. ¶69; Pls' Aff. Opp. Mot., ¶23. Therefore, summary judgment should be denied on this issue.

The defendants claim they provided accurate statements with each payment of wages, but plaintiffs dispute that the records they received were accurate, and many plaintiffs, including Messrs. Day, Ortiz, Robinson, Roper, Stewart, Wong, and Wright testified they did not receive accurate weekly wage statements. *See* Alvarado Deposition # 2, Pls' Ex. 13 to Aff. Opp. Mot., 14:6-15; Dep. Falquez, Ex. PP, ECF No. 356-16, 122:7-25 to 123:2-3; Stewart Dep., Ex. DD, ECF No. 356-4, 32:23-25 to 31:2-10; 52:11-25 to 53:1-3; Aff. Opp. Mot., ¶24. The plaintiffs pleaded this failure

as a violation of the Wage Theft Prevention Act in the First Amended Complaint. *See* 1st Am. Compl. ¶71. Therefore, summary judgment should be denied on this issue too.

The plaintiffs also challenge the defendants' claims that defendants maintained accurate and sufficient records and posted notices of workers' rights. Mr. Kostadinov testified that he does not remember when they were first put up, which means at some point they were not hung up at the yard, and he indicated he did not know if Spanish posters were put up. *See* Kostadinov Dep., Ex. S, ECF No. 355-19, 161:2–25. Therefore, summary judgment should be denied on this issue.

Therefore, making all reasonable inferences in favor of the plaintiffs, summary judgment in favor of defendants is not appropriate on any issue.

### III.   Plaintiffs Entitled to Partial Summary Judgment as to Defendants' Affirmative Defenses of the Doctrines of Unclean Hands and Laches

The Court should deny summary judgment to defendants' on their affirmative defenses of laches and unclean hands, and grant partial summary judgment to the plaintiffs rejecting these affirmative defenses.

The defendants plead an affirmative defense of wavier, estoppel, laches, and release. *See* Ans., ECF No. 118, ¶88. Laches is an equitable defense to prevent unfairness to a defendant caused by a plaintiff's delay in commencing a lawsuit. *E.g.*, *EEOC v. Dresser Indus.*, 668 F.2d 1199, 1201 (11th Cir. 1992). Laches is inapplicable to claims under the Fair Labor Standards Act because the claims are statutory and the statute provides a statute of limitations. *Torres v. Gristede's Operating Corp.*, 628 F. Supp 2d 447, 464 (S.D.N.Y. 2008). Therefore, courts have specifically rejected the doctrine of laches in actions arising under the Fair Labor Standards Act to recover overtime. *Id.*, *see also Solis v. Wash.*, No. 08 CV 5362, 2009 WL 2855441, at *7, 2009 U.S. Dist. LEXIS 77859, at *19–21 (W.D. Wash. Aug 31, 2009); *Murray v. Noblesville Milling Co.*, 42 F. Supp 808, 810 (S.D. Ind. 1942), *aff'd in part, rev'd in part on other grounds*, 131 F2d 470 (7th Cir. 1942).

The defendants also plead an affirmative defense of unclean hands. Ans., ECF No. 118, ¶88 Unclean hands is an equitable defense. *Uto v. Job Site Servs., Inc.*, 269 F.R.D. 209, 213 (E.D.N.Y. 2010) (quoting *Aniero Concrete Co., Inc. v. New York City*, Nos. 94 Civ. 9111, 95 Civ. 3506, 1998 U.S. Dist. LEXIS 3938, at *33 (S.D.N.Y. Mar. 30, 1998), *aff'd by Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566 (2d Cir. 2005) (citing cases). "As such, it 'can only be asserted with respect to equitable—not legal—claims.'" *Id.* (quoting *SEC v. Eberhard*, No. 03 CV 813, 2006 WL 17640, at *3, 2006 U.S. Dist. LEXIS 216, at *11 (S.D.N.Y. Jan. 3, 2006)).

> Here, all of the claims asserted in plaintiffs' Complaint are legal claims, for which they seek damages pursuant to the FLSA and the New York Labor Law. No request for equitable relief is found anywhere in plaintiffs' Complaint. Accordingly, "because [plaintiffs] seek damages in an action at law, [defendants] cannot avail [themselves] of unclean hands as a defense." *Aniero Concrete*, 1998 U.S. Dist. LEXIS 3938, at *33; *see also* [*Torres*, 628 F. Supp. 2d at 464] (finding the defense of unclean hands "inapplicable" where "the Court need not invoke its equitable powers to adjudicate Plaintiffs' statutory claim[s]" brought pursuant to the FLSA and the New York Labor Law).

*Id.* (first, second, third, and fifth alterations in original). The claims asserted in this action can be described the same.

The Court should grant partial summary judgment to plaintiffs and dismiss these affirmative defenses because they are improperly asserted in this FLSA case. *See Meidenbauer v. Zenith Acquisition Corp.*, 13 CV 799 (AF), 2018 U.S. Dist. LEXIS 82738, at *48-50 (W.D.N.Y. May 15, 2018); *Gucciardo v. Titanium Constr. Servs.*, No. 16 CV 1113, 2017 U.S. Dist. LEXIS 109727, at *14

(S.D.N.Y. Jul. 14, 2017) *Toar v. Sushi Nomado*, No. 13 CV 1901, slip op. at 27–28, (S.D.N.Y. Mar. 31, 2016).

Plaintiffs also disagree with the factual bases behind defendants' assertions of these affirmative defenses. See e.g., Aff. Pl. Supp. Mot. Certify Class (Day), ECF no. 72, ¶7; Alvarado Dep., Ex. Z, ECF No. 355-26, 121:18–24, 144:8–10, 146:6–9; Alvarado Deposition # 2, Ex. 13 to Pls' Aff. Opp. Mot., 13:22–15:5, 27:10–13, 36:4–37:10; Alvarado Aff. at Defs' Ex. J, ¶ 6; Dep. Falquez, Ex. PP, ECF No. 356-16, 50:7–11, 123:15–19, 125:8–10, 159:24–160:2; Briggs Dep., Ex. DD, ECF No. 356-4, 59:18–25, 60:2–5, Pls' Opp. Mat. Facts, ECF No. 361, ¶65.

## IV.   Plaintiffs Entitled to Summary Judgment Ruling That Defendants Jointly Employed the Class and are Covered by the FLSA

### A.   Joint Employment Standard

The Second Circuit applies an economic reality test to determine if an employment relationship exists. *See Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013). The "'economic reality' test encompasses the totality of circumstances." *Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). Although no single factor is dispositive of the inquiry, the court will consider whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (quoting *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). "'[T]he remedial nature of the [Fair Labor Standards Act] … warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact'…." *Irizarry*, 722 F.3d at 110 (quoting *RSR Sec. Servs., Ltd.*, 172 F.3d at 139) (first omission in original).

"Ownership, or a stake in a company, is insufficient to establish that an individual is an 'employer….'" *Id.* at 111. Rather, courts must consider whether an individual exercises operational control over the plaintiffs' employment. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110. However, "[a]n employer does not need to look over his workers' shoulders every day in order to exercise control." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060 (2d Cir. 1988).

Another test requires a finding of "functional control." It was first "developed in *Zheng v. Liberty Apparel Co…* which weighed six factors in determining whether "a putative employer exercised 'functional control' over subcontracted workers, and was therefore their employer under the FLSA." *See Grenawalt v. AT&T Mobility LLC*, 642 Fed. Appx. 36, 37–38, (2d. Cir. 2016). The six factors are "(1) whether [the manufacturer's] premises and equipment were used for the [putative employees'] work; (2) whether the Contractor[s] … had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which [the putative employees] performed a discrete line-job that was integral to [the manufacturer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [manufacturer] or [its] agents supervised [the putative employers'] work; and (6) whether [the putative employees] worked exclusively or predominantly for the [manufacturer]." *Id.* (quoting *Zheng v. Liberty Apparel Co.,* 355 F.3d. 72 (2d Cir. 2003)).

"In assessing whether an entity is a joint employer, the determination of 'the historical findings of fact that underlie each of the relevant factors' and 'the findings as to the existence and degree of each factor' are 'findings of fact,' while 'the conclusion … to be drawn from applying

the factors, *i.e.*, whether an entity is a joint employer,' is a question of law." *Id.* (quoting *Zheng,* 355 F.3d at 72).

The Second Circuit "has sustained a jury verdict of joint employment when as many as three *Zheng* factors weighed against joint employment as a matter of law." *See Grenawalt,* 642 Fed. Appx. at 40.

Importantly, even where "formal control" under the *Carter* test is not found, there may still be "functional control" under the *Zheng* test, and vice versa: Therefore, meeting either test is sufficient to show employment and neither is necessary. *See Zheng,* 355 F.3d at 72.

"Courts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA." *Martin v. Spring United Mgmt. Co.*, 273 F.Supp.3d 404, 422 (S.D.N.Y. 2017) (citing *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010).

### B.   Go New York Tours Inc. ("Go New York") Jointly Employed the Class

The class in this case is comprised of Go New York's tour bus drivers. *See* Order, ECF No. 104. Go New York has been providing tours using tour buses since 2012, *see* Defs' Ex. S, A. Kostadinov Dep., ECF No. 355-19, 19:19–20:8, and has employed tour bus drivers since 2012. *See id.* at 69:7-10.

Go New York owns, controls, and provides the equipment drivers use. Go New York owns, *see id.* at 21:2–24:12, 29:6-17, 30:2–31:25, and maintains the tour buses. *See id.* at 32:2-10. Go New York controls the drivers' workplace. Go New York employees manage Go New York's tour bus yard, which is where drivers report to work to pick up buses. *See id.* at 51:5–13, 63:7–25, 76:2-24, 84:2–16; 132:2–16. Go New York employees manage the drivers. *See id.* at 181:2–17; Baran Dep., Defs' Ex. NN, ECF No. 356-14, 48:5–19, 49:3–18; *see also* Defs' Stat. Mat. Facts, ¶55.

Go New York's employees, such as Jonathan Hengal and Alon Bran, have authority to hire and fire drivers. *See* Defs' Ex. S, A. Kostadinov Dep., ECF No. 355-19 at 37:5–20, 44:10–16. Go

New York's owner, Asen Kostadinov has authority to hire and fire employees and has fired drivers. *See id.* at 37:5–8, 180:18–21. Go New York fired Lawrence Atkinson in 2021 because he did not follow company policy. *See* Defs' Ex. AA, ECF No. 356-1, 69:8–14, 70:2–15. Drivers applied to jobs directly with Go New York prior to October 2014. *See* Defs' Ex. S, A. Kostadinov Dep., ECF No. 355-19, 111:17–19. Go New York has submitted driver information to insurance companies upon hiring. *See id.* at 111:5–16. Go New York's HR manager handles onboarding for bus drivers, including providing drivers with documents and information. *See id.* at 155:9–17, 160:2–7. Therefore, Go New York has authority to hire and fire drivers.

Go New York also determines drivers' wages and handles payment of wages. Mr. Kostadinov came up with the hourly rate for Go New York's bus drivers and created their bonus structure. *See id.* at 107:2 to 108:11. Go New York also claims to manage drivers to determine how much of a bonus drivers are entitled to. *See id.* at 107:2–16. Go New York distributes wages to drivers. *See id.* at 113:15–23, 173:3–6, 174:19–25, 175:14–22. Go New York processes payroll for bus drivers. *See id.* at 146:12–19. Go New York's HR is currently in charge of payroll. *See* Baran Dep., Defs' Ex. NN, ECF No. 356-14, 50:6–10. It is Go New York's responsibility to make sure all drivers are paid properly. *See id.* at 50:11–16.

Go New York also tracks drivers' hours worked. Before October 2014, Go New York recorded at least some of the hours drivers worked (the extent to which it was done accurately during this time is disputed). *See* Defs' Ex. S, A. Kostadinov Dep., ECF No. 355-19, 81:11–16. Go New York has been using time clocks to keep track of drivers' hours worked since October 2014. *See id.* at 72:4–21; Baran Dep., Defs' Ex. NN, ECF No. 356-14, 49:21–25.

Go New York also maintains records related to bus drivers such as payroll records. *See* Defs' Ex. S, A. Kostadinov Dep., ECF No. 355-19, 82:18–25, 90:7–11, 135:12–25, pp. 137 to 139, 169:3–9.

Furthermore, defendants agreed that they would be responsible for complying with applicable wage and hour laws when they contracted with their payroll company SPLI. *See* Defs' Ex. NN, ECF No. 356-14 at Sections V.C. & IX. The contract also states that their current payroll company is not an employer and that liability for employment lawsuits would lie with Go New York. *See id.* at Sections V.D. & VI.E.

The *Carter* formal control test is clearly met because, as described above, Go New York had authority to hire and fire drivers; handles the hiring process; controls, determines, and has distributed wages; and controls schedules and keeps track of times worked. Go New York also controlled the means of employment by supervising the class, controlling the bus yard, and owning and controlling the tour busses. Finally, Go New York maintained records, and therefore the formal control test is met.

According to the above facts, the *Zheng* functional control test is also clearly met. The drivers used Go New York's premises and equipment, the drivers are clearly integral to defendants' tour bus company (*see also* Defs' Statement Mat. Facts at ¶48), Go New York supervised drivers, even determining how much of a bonus they would pay drivers week to week (according to defendants, *see* Defs' Statement Mat. Facts at ¶74), and there is no evidence drivers worked for other companies while working for Go New York (*see also* Defs' Ex. II at p. 7 (restricting drivers' ability to work for other companies). *See id.* (quoting *Zheng v. Liberty Apparel Co.,* 355 F.3d. 72 (2d Cir. 2003)).

Although either test is sufficient to show employment, both tests are clearly met. Therefore, Go New York employed the class.

### C.    Asen Kostadinov Jointly Employed the Class

Asen Kostadinov has had the power to hire and fire defendants' employees since its formation. *See* Defs' Ex. S, A. Kostadinov Dep., ECF No. 355-19, at 37:5–8. He has had the power the set wages of defendants' employees since Go New York's formation. *See id.* at 37:9–12. He has had the power to set schedules of employees of defendants since Go New York's formation. *See id.* at 37:12-20. Mr. Kostadinov has hired employees for Go New York. *See id.* at 46:5–16; 49:21–25; 55:9–24. Mr. Kostadinov has fired drivers. *See id.* at 180:18–21Mr. Kostadinov decided bus drivers' rates of pay. *See id.* 107:17–20. Mr. Kostadinov has set schedules for bus drivers. *See id.* at 80:8–16. He was also authorized to hand drivers their wages. *See id.* at 173:3–6. Mr. Kostadinov is empowered to make operational decisions for Go New York. *See id.* at 50:2–8.

Mr. Kostadinov has been Go New York's owner since January 2011 and is currently a 98% owner. *See id.* at 6:2-24. Mr. Kostadinov founded Go New York. *See id.* at 6:25 to 7:2. Mr. Kostadinov purchased defendants' tour busses. *See id.* at 26:15-23. Mr. Kostadinov was also at the top of defendants' chain of command. *See* Defs' Ex. T, Baran Dep., ECF No. 355-20, at 48:2-21.

Therefore, according to the *Carter* test, and considering the totality of the circumstances, Mr. Kostadinov is a joint employer of defendants' employees and the class.

### D.    Defendants' Business Covered by the FLSA

Plaintiffs need to demonstrate coverage of the FLSA for its provisions to apply to defendants. Plaintiffs ask the Court to find that defendants' business is covered by the FLSA.

There are two major types of coverage under the FLSA: individual and enterprise.

29 U.S.C. § 207(a)(1) establishes "'Individual coverage'" [which] applies to an employee who has "'engaged in commerce' or 'engaged in the production of goods for commerce.'" *See*

*Torralba v. Little India Stores*, 2016 U.S. Dist. LEXIS 24234, at *11–12 (S.D.N.Y. 2016) (quoting *Boekemeier v. Fourth Universalist Soc. in City of New York*, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000). "This type of coverage…is implicated when 'a substantial part of the employee's work … [is] related to interstate commerce.'" *See id.* (quoting *Boekemeier*, 86 F. Supp. 2d at 287 (internal citations omitted). "Thus, under an individual theory of coverage, 'the test under this present act, … is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it.'" *See Boekemeier*, 86 F. Supp 2d at 287 (quoting *McLeod v. Threlkeld*, 319 U.S. 491 (1943).

Enterprise coverage applies when an employer:

(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 ….

29 U.S.C. § 203(s)(1)(A)(I).

Paragraphs 40 and 41 of the First Amended Complaint state:

40. The business activities of the defendants are related and performed through unified operation or common control for a common business purpose and constitute an enterprise, within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(r).

41. The enterprise of the defendants employs employees engaged in commerce or in the production of goods for commerce, or in handling, selling, or otherwise

working on goods or materials that have been moved in or produced for commerce,

within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(s)(1)(a)(i).

*See* 1st Am. Compl., ECF NO. 16, at ¶¶40-41. The defendants have stipulated admission to these

paragraphs. *See* Pls.' Ex. 27 to Aff. Opp. Mot., ECF No. 360-31. Therefore, enterprise coverage

applies to defendants' business, and it is therefore covered by the FLSA.

## V.    Class Entitled to Partial Summary Judgment for Discernable Improperly Paid Wages

### A.    Class Entitled to Currently Discernable Unpaid Overtime Premium and Liquidated Damages

An employer subject to the FLSA is required to pay its employees at a rate of not less than

one and one-half times the regular rate of pay for work performed in excess of forty hours in a

workweek. 29 U.S.C. §§ 207(a)(1), 215(a)(2). The Minimum Wage Act requires the same. N.Y.

Comp. Codes R. & Regs. tit. 12, § 142-2.2. Under the Fair Labor Standards Act, the regular rate is

generally determined by dividing the employee's wages in a workweek by the hours worked in

that workweek. 29 C.F.R. § 778.109.

Before October 6, 2014, Go New York did not pay its drivers one and one half times their

regular rates for hours worked greater than forty each week. *See* Defs' Ex. S, A. Kostadinov Dep.,

ECF No. 355-19 at 112:18 to 113:2. Plaintiffs have relied on defendants' records to produce a

calculation of half-time currently owed per class member. *See* Pls Aff. Opp. Mot., Exs. 25, 26., &

27. Plaintiffs calculated regular rate by determining total wages recorded and dividing by total

hours recorded. *See* 29 C.F.R. § 778.109. Plaintiffs dispute the accuracy of these records and claim

they were not paid for all hours worked, namely the time from arriving at the bus yard to pick up

the tour busses to the time the tours started, and, for a time, the time spent returning the busses to

the bus yard. Nonetheless, plaintiffs seek the undisputed damages currently owed to the class

members who are currently undisputedly owed unpaid overtime premium. Plaintiffs will seek a

judgment for the remaining hours that plaintiffs claim are owed at trial. Plaintiffs only agree to the hours asserted here as agreed upon minimums.

### B.    Class Entitled to Unpaid Spread-of-Hours Wages

The spread of hours is the length of time between the beginning and end of an employee's workday, regardless of total hours worked in that workday. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4. Each day the spread of hours exceeds ten, an employee must be paid an amount equal to an hour of work at the minimum wage rate. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-1.6(a). From December 13, 2013, to December 30, 2014, the applicable minimum wage was $8.00, from December 31, 2014, to December 30, 2015, $8.75, and from December 31, 2015, to December 30, 2016, $9.00. *See* N.Y. Lab. Law § 652 and N.Y. Comp. Codes R. & Regs. tot. 12, § 142-2.1.

Defendants did not pay spread-of-hours wages to drivers. *See* Defs. Ex. S, Kostadinov Dep., ECF NO. 356-19, 129:10–130:11. Certain drivers are entitled to spread-of-hours wages because they worked over ten hours in a day and were paid the minimum wage and not paid spread-of-hours wages. *See* Pls' Aff. Opp. Mot., Ex. 12. Plaintiffs' calculations show which drivers are owed an additional hour at the minimum wage rate; these drivers worked more than ten hours in one or more days in their first week, were paid the minimum wage "training" rate for their first week and were not paid any spread-of-hours wages. *See* Pls' Aff. Opp. Mot., Exs. 25, 26, & 38.

### C.    Class Entitled to Liquidated Damages

Liquidated damages under the Fair Labor Standards Act are "compensation to the employee occasioned by the delay in receiving wages caused by the employer's violation of the [Fair Labor Standards Act]." *RSR Sec. Servs., Ltd*., 172 F.3d at 142. Liquidated damages under the Minimum Wage Act are punitive. *See, e.g.*, *Reilly v. NatWest Mkts. Grp., Inc.*, 181 F.3d 253, 265 (2d Cir. 1999); *Carter v. Frito-Lay, Inc.*, 425 N.Y.S.2d 115, 115 (N.Y. App. Div. 1980). Plaintiffs are

entitled to an award of liquidated damages under one, but not both the FLSA and MWA. *See Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 60 (2d. Cir. 2016).

The plaintiffs are entitled to liquidated damages in the amount of 100% of the actual damages under the Fair Labor Standards Act, 29 U.S.C. § 216(b), and under the Minimum Wage Act are entitled to liquidated damages in the amount in the amount of 100% actual damages thereafter. N.Y. Lab. Law § 663(1); *Fu v. Pop Art Int'l Inc.*, Np. 10 Civ. 8562 (DLC) (AJP), 2011 U.S. Dist. LEXIS 113614, at *11 (S.D.N.Y. Sept. 19, 2011).

An employer who seeks to avoid liquidated damages for violating the Fair Labor Standards Act bears the burden of proving that its violation was both in good faith and predicated upon reasonable grounds. *RSR Sec. Servs., Ltd.*, 172 F.3d at 142. An employer who seeks to avoid liquidated damages for violating the Minimum Wage Act must prove "a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 663(1). The standard for "good faith" is the same under the Fair Labor Standards Act and the Minimum Wage Act. *See McLean v. Garage Mgmt. Corp.*, Nos. 09 CV 9325 & 10 CV 3950, 2012 U.S. Dist. LEXIS 55425, at *21 (S.D.N.Y. Apr. 19, 2012).

"The employer's burden to prove good faith is 'a difficult one.'" *Hernandez v. JRPAC Inc.*, No. 14 CV 4176, 2016 U.S. Dist. LEXIS 75430, at *108 (S.D.N.Y. June 9, 2016) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F. 3d 132, 150 (2d Cir. 2008)); *see also id.* at *107 ("[L]iquidated damages 'are the norm'" (quoting *SNET*, 121 F.3d at 71).) "The employer bears the burden of establishing, by 'plain and substantial' evidence, its subjective good faith and objective reasonableness." *See SNET*, 121 F.3d at 71 (quoting *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir. 1991)). "Courts may exercise discretion to deny liquidated damages where the employer shows that even in violating statutory and regulatory wage, hour, and recordkeeping

requirements, it acted in subjective 'good faith' and had objectively 'reasonable grounds' for believing that the unlawful acts did not violate the FLSA." *Hernandez*, 2016 U.S. Dist. LEXIS 75430, at *107–08 (quoting 29 U.S.C. § 260). "To establish the requisite subjective 'good faith,' an employer must show that it took 'active steps to ascertain the dictates of the FLSA and then act to comply with them.'" *Barfield*, 537 F. 3d at 150 (quoting *RSR Sec. Servs., Ltd.*, 172 F.3d at 142). Absent a showing of concrete steps taken to try to comply with the law, an employer does not meet its burden of showing good faith reliance. *See Hernandez*, 2016 U.S. Dist. LEXIS 75430, at *108.

### 1. Liquidated Damages Owed for Failure to Pay Overtime Premium and Failure to Pay Spread-of-Hours Wages

Defendants will not be able to meet their burden of showing that they relied on the statute in good faith when deciding not to pay the class the overtime premium and failure to pay spread-of-hours wages. In deciding how to compensate employees prior to October 6, 2014, defendants did not take steps to ascertain and comply with the law. *See* Defs' Ex. S, Kostadinov Dep., ECF No. 355-19, 115:17–25, 116:18–117:13, 117:17–25, 118:2–23. Rather than taking steps to ascertain and comply with the law, Mr. Kostadinov relied on such things as what he considered to be a fair market rate when deciding how to compensate his drivers. *See id.* He additionally admitted to being ignorant of the law and taking no active steps to comply with or ascertain it. *See id.*

Plaintiffs seek immediate judgment as to liquidated damages owed for unpaid discernable overtime premium and spread-of-hours liquidated damages at the rate of 100%. Plaintiffs' calculations outline how much in liquidated damages each class member is owed for unpaid overtime and unpaid spread-of-hours wages.

### 2. Liquidated Damages Owed for Failure to Timely Pay Class Members

Plaintiffs also seek liquidated damages for defendants' failure to timely pay class members their wages.

Pursuant to New York Labor Law, employers must pay manual laborers within 7 days of the end of the last day of the workweek. *See* N.Y. Lab. Law § 191(1)(a)(i).

The class were manual laborers. Manual laborer is defined as a "mechanic, workingman or laborer." *See* N.Y. Lab. Law § 190(a)(4). In general, the New York State Department of Labor looks at the duties performed by an employee to determine whether he or she is a "manual worker" and makes a case-by-case determination. *See* N.Y. Dep't of Labor Counsel Opinion Letter RO-09-0066, May 21, 2009. The term has been interpreted broadly. [C]arpentry workers, cooks, wait staff, grocery store employees, janitorial staff, hotel maids, airport chauffeurs, and pizzeria workers have been found to be "manual workers." *See Scott v. Whole Foods Mkt. Grp., Inc.*, No. 18 CV 86, 2019 U.S. Dist. LEXIS 61726, at *1-2 (2d. Cir. Apr. 9, 2019); *Gonzalez v. Gan Israel Pre-School*, No. 12 CV 6304, 2014 WL 1011070, at *12-13 (E.D.N.Y. Mar. 14, 2014); *Lopez-Martinez v. Gokul Inc. of N.Y.*, No. 13-CV-467, 2013 WL 6145795, at *1 (N.D.N.Y. Nov. 21, 2013); *Cuzco v. Orion Builders, Inc.,* No. 06-CV-2789, 2010 WL 2143662, at *4 (S.D.N.Y. May 26, 2010); N.Y. Dep't of Labor Opinion Letter, No. RO-07-0072 (July 11, 2007); N.Y. Dep't of Labor Opinion Letter, No. RO-08-0061 (Dec. 4, 2008); *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 482 (S.D.N.Y. 2012).

Hop-on, hop-off sightseeing tour buses travel routes through areas of interest to tourists who can "hop-off" a bus at a place or attraction of interest to them, and then "hop-on" another bus of the same company to continue their tour. *See* Defs' Ex X, ECF No. 355-24, ¶ 2. The drivers would inspect the bus and drive it from the bus yard in Brooklyn to the first stop on the tour in Manhattan. *See id.* at ¶ 20. Drivers would then drive busses through the tour route, and then back to the bus yard. *See* Defs' Ex. S, Kostadinov Dep., ECF No. 355-19 at 79:2-7; Defs' Ex. HH, Employment Letter, ECF No. 356-8 at p.6. Drivers would also refuel the busses. *See* Defs' Ex X, ECF No. 355-24 at ¶ 20.

Given these job duties, the tour bus drivers are clearly manual laborers. *See* N.Y. Dep't of Labor Opinion Letter, No. RO-07-0072 (July 11, 2007) (finding airport chaffeurs whose main job duty was driving to and form the airport and who also refueled the vehicles as manual laborers). The Court should defer to the NYS Department of Labor's finding that drivers of passenger vehicles are manual laborers. *See Carvente-Avila v. Chaya Mushkah Rest. Corp.*, No. 12 Civ. 5359 (KBF), 2016 U.S. Dist. LEXIS 75396, *4 (S.D.N.Y. Mar. 1, 2016) (finding NYS DOL opinion letter entitled to deference); *see also Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 470-71 (2013) ("interpretation of a statute [a New York state agency] is charged with enforcing is entitled to deference.") *Fishkill Health Related Facility by Kasin v. Whalen,* 95 A.D.2d 974, 464 (App. Div.1983) (finding an agency has "has great latitude in interpreting its regulations").

And the class of manual laborers has a private right of action to enforce their rights to timely payments. New York State's intermediate court has found that section 191 of the New York Labor Law instills employees with a private right of action to enforce a violation. *See Vega v CM & Assoc. Constr. Mgt., LLC*, 175 A.D.3d 1144, 1146 (N.Y. App. Div. 2019). Because this issue involves a state law standard, this Court should follow *Vega*, an intermediate state court case, because there is no persuasive evidence that higher courts would find differently. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199-200 (2d Cir. 2005); *see also Mabe v. Wal-Mart Assocs.*, No. 20 CV 591, 2021 U.S. Dist. LEXIS 50954, *10 (N.D.N.Y. Mar. 18, 2021) (following *Vega* to find a private right of action under N.Y. Lab. Law section 191).

New York Labor Law § 198(1-a) states that when an employee is found to have been paid less than what he or she is owed, the penalty is "the full amount of any such underpayment, and an additional amount as liquidated damages, unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." *See* N.Y. Lab. Law §

198(1-a). A late payment is considered an "underpayment." The *Vega* Court held that the term underpayment as used in § 198(1-a) "encompasses the instances where an employer violates the frequency requirements of section 191(1)(a) but pays all wages due before the commencement of an action." *See Vega*, 175 A.D.3d at, 1145. *Vega* went on to specifically rule that "Accordingly, liquidated damages may be available under Labor Law § 198 (1-a) to provide a remedy to workers complaining of untimely payment of wages, as well as nonpayment or partial payment of wages" *See id.* at 1146.

"Since *Vega*, every court in this Circuit to consider that decision appears to have followed its construction of the New York Labor Law." *Caul v. Petco Animal Supplies, Inc.*, No. 20 CV 3534 (RPK) (SJB), 2021 U.S. Dist. LEXIS 184652 at *10-11 (E.D.N.Y. Sep. 27, 2021); *see e.g., Mabe* 2021 U.S. Dist. LEXIS at *11; *Sorto v. Diversified Maint. Sys., LLC*, No. 20 CV 1302(JS)(SIL), 2020 U.S. Dist. LEXIS 242856, 2020 WL 7693108, at *2-3 (E.D.N.Y. Dec. 28, 2020); *Duverny v. Hercules Medical P.C.*, No. 18cv07652 (DLC), 2020 U.S. Dist. LEXIS 37547, 2020 WL 1033048, at *5–6 (S.D.N.Y. Mar. 3, 2020); *Scott*, 2020 U.S. Dist. LEXIS 255455 at *3.

Defendants paid the class of manual workers late in many workweeks. Here, defendants' records indicate pay date or check date to indicate the date that the class was paid. *See* Baran Dep., Defs' Ex. NN, ECF No. 356-14 at 42:17-25; Kostadinov Dep., Defs' Ex. S, ECF No. 355-19 at 184:9 to 185:16. In many workweeks, the payment date is more than seven days after the last day of the workweek. *See, e.g.,* Pls' Aff. Opp. Mot., Ex. 20 at GONY019077 (showing workweek end date as May 14, 2017, and pay/check date as May 23, 2017). Further, defendants did not make these late payments due to good faith reliance on the statute. *See* Kostadinov Dep., Defs' Ex. S, ECF No. 355-19, 184:9–185:16.

Plaintiffs seek liquidated damages in the amount of the total wages paid for each workweek where a class member was not paid within seven days of the last day of their workweek. Plaintiffs' Exhibits 26 and 29 is Plaintiffs' calculations where plaintiffs compared check dates with final day of workweek dates for each employee for each workweek pursuant to defendants' records, only making extrapolations where data was missing and by referencing other employees within the same workweek. *See* Pls' Aff. Opp. Mot. ¶¶43-57. Plaintiffs seek immediate judgment in plaintiffs' favor in the total for this category of damages listed in plaintiffs' Exhibits 27 and 29. *See* Ex. 27 & 29 to Pls' Aff. Opp. Mot.

## VI.   Class Entitled to Statutory Damages for Violation of Wage Theft Prevention Act

### A.   Class Entitled to Statutory Damages for Failure to Provide Notices and Acknowledgments at the Time of Hiring

To be compliant, defendants' notices must contain the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; any doing business as names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law. *See* N.Y. Lab. Law § 195(1).

The documents that defendants have provided do not comply with the WTPA's notice provisions. The defendants claim that they provided plaintiffs notices of their wages upon hiring, but the notices that they claim comply with the law do not have addresses and phone numbers of defendants, as required, and the allegedly signed versions have not been produced. *Compare* Defs' Ex. HH *with* N.Y. Lab. Law § 195(1). Defendants also seemingly did not provide such documents prior to the date on the employment letter they provided (March 2014). *See id.* The defendants'

handbook also does not comply with the Wage Theft Prevention Act because it does not indicate the drivers' hourly rate or have the employer's phone number. *See* Defs' Ex. II, ECF No. 356-9. The defendants have provided all documents related to the documents defendants provided to employees at the time of hiring. *See* Kostadinov Dep., Defs' Ex. S, ECF No. 355-19, 108:16–25. The defendants have clearly failed to comply with the Wage Theft Prevention Act's Notice and Acknowledgment provisions.

Due to the defendants' violation of the Wage Theft Prevention Act, N.Y. Lab. Law § 195(1), the plaintiffs and class should be awarded of the defendants statutory damages of $50.00 per workweek that the violation occurred, up to a maximum of $2,500.00, until February 26, 2015, and statutory damages of $50.00 per workday that the violation occurred, up to a maximum of $5,000.00, thereafter, pursuant to N.Y. Lab. Law § 198(1-b). The plaintiffs seek immediate entry of judgment for the statutory damages definitively due at this time, which are extrapolated upon in plaintiffs' calculation of damages. *See* Pls' Aff. Opp. Mot. ¶¶52-54; Ex. 25, 26, & 30.

### B.   Class Entitled to Statutory Damages for Failure to Provide Accurate Weekly Wage Statements

The defendants failed to furnish to the plaintiffs and class with each wage payment a statement listing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of the Wage Theft Prevention Act, N.Y. Lab. Law § 195(3) and N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.7.

Until October 6, 2014, the cash payments that defendants furnished to employees along with the actual total amount of hours worked each week did not appear on the class's wage statements. *Compare* Pls' Ex. 20, ECF No. 360-20 at D000251 *with id.* at D000252. Therefore, because these damages occur before October 6, 2014, the class is owed $100 per week that a violation occurred up to a maximum of $2,500.00. *See* N.Y. Lab. Law § 198(1-d). Plaintiffs' calculations provide for $100 per week where a class member was paid cash and worked hours that are not reflected on the wage statements up to October 6, 2014, and with a maximum of $2,500.00, and plaintiffs ask the Court to immediately enter judgment in favor of these class members for the amounts prescribed. *See* Pls' Aff Opp. Mot, Exs. 25, 26, & 30.

## VII.  Prejudgment Interest

Under the Fair Labor Standards Act, prejudgment interest may not be awarded in addition to liquidated damages. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988) (citing *Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 714–16 (1945); *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987)). However, prejudgment interest must be awarded under the New York Labor Law in addition to liquidated damages, *Reilly*, 181 F.3d at 265; N.Y. Lab. Law § 663(1), even when liability is found under both the New York Labor Law and the Fair Labor Standards Act. *Begum v. Ariba Disc., Inc.*, No. 12 CV 6620, 2015 U.S. Dist. LEXIS 5598, at *7 (S.D.N.Y. Jan. 16, 2015). The interest rate is nine percent per annum. N.Y. C.P.L.R. 5004. "New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or 'a single reasonable intermediate date,' which can be used to simplify the calculation." *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 91 (2d Cir. 1998); *Begum*, 2015 U.S. Dist. LEXIS 5598, at *7; N.Y. C.P.L.R. 5001(b).

The plaintiffs are seeking prejudgment interest which should be calculated based on the amount of the judgment per plaintiff and based on their dates worked pursuant to plaintiffs' calculations.

## VIII. Automatic Increase of Judgment

The New York Labor Law provides that "any judgment or court order awarding remedies under this section [sections 198 and 663, as does the judgment applied for herein] shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." N.Y. Lab. Law §§ 198(4), 663(4). It further provides that costs and attorneys' fees incurred in enforcement of a judgment shall be awarded to the plaintiff. *Id.* Plaintiffs seek a judgment that automatically increases if unpaid for 90 days.

## IX.  Conclusion

The Court should deny defendants' motion because they have failed to meet their burden of establishing that sanctions or summary judgment are appropriate and have otherwise failed to meet their procedural obligations under Rule 11. The Court should grant the plaintiffs' partial summary judgment on the following grounds:

1. Dismiss Defendants' affirmative defenses of laches and unclean hands;

2. Find both Defendants as joint employers of the class;

3. Find Defendants' business as covered by the FLSA;

4. Enter judgment against defendants for currently discernable unpaid overtime premium;

5.   Enter judgment against defendans for currently discernable unpaid spread-of-hours wages;

6.   Enter judgment against defendants for liquidated damages for unpaid overtime premium, unpaid spread-of-hours wages, and late payments;

7.   Entere judgment against defendants for failure to provide compliant notices and acknowledgments and accurate weekly wage statements pursuant to the Wage Theft Prevention Act; and

8.   Find the class is owed prejudgment interest for all wages found owed.

LAW OFFICE OF JUSTIN A. ZELLER, P.C.

By:  _John M. Gurrieri_____

John M. Gurrieri
jmgurrieri@zellerlegal.com
Brandon Sherr
bsherr@zellerlegal.com
Justin A. Zeller
jazeller@zellerlegal.com
277 Broadway, Suite 408
New York, N.Y. 10007-2036
Telephone: (212) 229-2249
Facsimile: (212) 229-2246
**ATTORNEYS FOR PLAINTIFFS**

Dated:  New York, New York
        April 22, 2022