**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VICTOR H. ALVARADO BALDERRAMO and LUIS FALQUEZ, Individually and on behalf of all other persons similarly situated, | 15-cv-02326 (Ramos, J.) |
| Plaintiffs, | |
| -against- | |
| GO NEW YORK TOURS INC. and ASEN KOSTADINOV, jointly and severally, | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND RULE 11 SANCTIONS**

**BARTON LLP**
711 Third Avenue, 14th Floor
New York, New York 10017
(212) 687-6262

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... 2

FACTUAL BAGKROUND ..................................................................................................... 2

LEGAL STANDARD ON SUMMARY JUDGMENT ............................................................ 2

ARGUMENT ............................................................................................................................ 3

   I.    Plaintiffs' Entire Case Has Always Been a Fraud on This Court ........................................ 3

   II.   Go New York Complied With NYLL § 191(1)(a)(i) .......................................................... 4

      A.  Go New York's Pay Schedule Has Always Been in Compliance With NYLL §
191(1)(a)(i) ......................................................................................................................... 5

      B.  Plaintiffs are Not Manual Workers Under NYLL ........................................................ 13

      C.  Go New York had a Good Faith Reason for When It Paid Its Wages .......................... 17

   III.  Plaintiffs' "Spread of Hours" Are Not Justiciable by This Court .................................. 22

   IV.  Defendants Complied with the WTPA ............................................................................ 23

      A.  Defendants' Notices Given to Plaintiffs Upon Hiring Complied With the WPTA ....... 23

      B.  Plaintiffs' Claims Regarding Weekly Pay Stubs are Erroneous and Barred by the
Doctrine of Unclean Hands .............................................................................................. 25

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505,  91 L. Ed. 2d 202 (1986) .......... 5

*Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008) ....................... 21

*Cabrera v. Canela*, 412 F. Supp. 3d 167 (E.D.N.Y. 2019) ......................................................... 27

*Caul v. Petco Animal Supplies, Inc.*, No. 20CV3534RPKSJB, 2021 WL 4407856 (E.D.N.Y.
   Sept. 27, 2021) .......................................................................................................................... 10

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ................. 5, 7

*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011) .......................... 23

*Feng Chen v. Patel*, No. 16CIV1130ATSDA, 2019 WL 2763836 (S.D.N.Y. July 2, 2019) ....... 21

*Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19 (E.D.N.Y. 2015) ..................... 25

*Franco v. Jubilee First Ave. Corp.*, 2016 WL 4487788 ............................................................... 23

*Franco v. Jubilee First Ave. Corp.*, No. 14-CV-07729 (SN), 2016 WL 4487788 (S.D.N.Y. Aug.
   25, 2016) .................................................................................................................................... 23

*Genao v. Blessed Sacrament Sch.*, No. 07 CV 3979 (CLP), 2009 WL 3171951 (E.D.N.Y. Oct. 1, 2009) .................................................................................................................................. 22

*Heublein, Inc. v. United States*, 996 F.2d 1455 (2d Cir. 1993) ........................................ 5

*Hudson Valley Mall Dental v. Commissioner of Labor,* State of N.Y. Indus. Brd. Of App., Docket No. PR 12-034 (August 17, 2014)................................................... 18, 19, 20

*Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490 (S.D.N.Y. 2015)................................ 21

*Maloney v. Singas*, 106 F. Supp. 3d 300 (E.D.N.Y. 2015) ............................................ 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)............................................................................................... 5

Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (U.S.1945)............................................................................................... 30

*Ream v. Hill*, No. 16-CV-7462 (VEC), 2018 WL 3579846 (S.D.N.Y. July 24, 2018) ............... 23

*Remache v. Mac Hudson Grp.*, No. 14CV3118AMDRML, 2018 WL 4573072 (E.D.N.Y. Sept. 7, 2018) ................................................................................................................. 26

*See Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 429 (S.D.N.Y. 2010)........................ 29

*Seenaraine v. Securitas Sec. Servs. USA, Inc.*, 37 A.D.3d 700, 830 N.Y.S.2d 728 (2007)......... 25

*Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008)............................ 5

*Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 107 N.Y.S.3d 286 (2019)......... 10

*Williams v. Epic Security Corp.*, 358 F.Supp.3d 284 (SDNY 2019)............................ 22

## Statutes

New York Labor Law ("NYLL") § 191(1)(a). ........................................................... 9

NYLL § 191(4) ............................................................................................... 24

NYLL § 195(1)(a) ............................................................................................ 28

NYLL § 198 (1-a). ........................................................................................... 21

NYLL § 198(1-b) ............................................................................................. 27

## Other Authorities

*Cambridge Business English Dictionary*, "Manual Worker," (2011 Edition)............................ 24

New York Dep't of Labor ("NYDOL") Counsel Opinion Letter RO-09-0066............ 9, 16, 17, 24

NYDOL Counsel Opinion Letter RO-07-0009.......................................................... 25

NYDOL Counsel Opinion Letter RO-07-0072.................................................. 16, 17, 24

NYDOL Counsel Opinion Letter RO-08-0061.......................................................... 16

NYDOL Counsel Opinion Letter RO-09-0115........................................................... 9

NYDOL Counsel Opinion Letter RO-09-0121........................................................... 9

NYDOL Counsel Opinion Letter RO-08-0061; ........................................................ 24

## Rules

Fed. R. Civ. P. 56(c) ........................................................................................ 5

**PREMINARY STATEMENT**

Defendants Go New York Tours, Inc. ("Go New York") and its President and owner, Asen Kostadinov (collectively, "Defendants"), submit this Memorandum of Law, along with the Affidavit of Asen Kostadinov, sworn to on August 8, 2022 ("Kostadinov Aff. #1"); the Affidavit of Asen Kostadinov regarding employment notices, sworn to on August 8, 2022 ("Kostadinov Aff. #2"); the Affidavit of Michael Wehbe, sworn to on August 8, 2022 ("Wehbe Aff."), and the Declaration of Laura-Michelle Horgan, sworn to on August 9, 2022, (the "Horgan Declaration"), and the exhibits annexed to each of those Affidavits ,in  further support of Defendants' Motions for Summary Judgment and Rule 11 Sanctions (ECF Doc. No. 351). By their motions, Defendants respectfully request that the Court grant the following relief:

    (i)       pursuant to Fed. R. Civ. P. 11(c)(2) for summary judgment dismissal of this case pursuant to Fed. R. Civ. P. 56(a) and/or appropriate sanctions including, but not limited to, costs and attorneys' fees based upon Plaintiffs' submission of false pleadings, affidavits, and other false representations made by Plaintiffs and their counsel to this Court;

    (ii)      in the alternative, disqualification of The Law Office of Justin A. Zeller, P.C. as class counsel in this case based upon their ongoing pattern of misconduct;

    (iii)     in the alternative, disqualification of Plaintiffs Victor H. Alvarado Balderramo and Luis Falquez as class representatives, and

    (iv)    and such other and further relief as this Court may deem just and appropriate given the years of vexatious litigation and misconduct by Plaintiffs and their counsel in this case.

Defendants also respectfully request that the Court deny Plaintiffs' Motion for Partial Summary Judgment (ECF Doc. No. 363) in full.

**FACTUAL BAGKROUND**

Defendants incorporate herein the facts set forth in their statement of Material Facts Pursuant to Local Rule previously filed with this Court as ECF No. 356 ("Def.'s Rule 56.1 St.").

**LEGAL STANDARD ON SUMMARY JUDGMENT**

Summary judgment is appropriate where "there is no genuine issue with regard to any material fact and the moving party is entitled to judgment as a matter of law." *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008) (*citing* Fed. R. Civ. P. 56(c)). When deciding a summary judgment motion, the "court must construe all the evidence in the light most favorable to the nonmoving party, . . . and draw all inferences and resolve all ambiguities in that party's favor." *Id.*

"The burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986). "When the moving party has carried its burden under [Fed. R. Civ. P. 56(c)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Indeed, the nonmoving party cannot simply "rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986).

Summary judgment is also appropriate to resolve conflicting interpretations of the same law. *See Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) ("Questions of statutory construction and legislative history present legal issues that may be resolved by summary

2

judgment.") If one party's interpretation of a foundational statute to their case is legally untenable, the other party is entitled to summary judgment. *See Maloney v. Singas*, 106 F. Supp. 3d 300, 307 (E.D.N.Y. 2015) ("Disputed issues of law that present nothing for trial may be appropriately resolved on a motion for summary judgment.").

 Plaintiffs' claims are supported primarily by false representations to this Court and misinterpretation of the relevant statutes, lack any evidentiary or legal support whatsoever, and/or are entirely refuted by substantial evidence and law produced by Go New York.  Accordingly, summary judgment should be granted for Defendants on all disputed issues.

## ARGUMENT

### I.        Plaintiffs' Entire Case Has Always Been a Fraud on This Court

Before addressing the substance of Plaintiffs' claims, Defendants want to make their position very clear – this case, from the very beginning, has been nothing more than a shameless attempt to commit a fraud on this Court. Plaintiffs Balderramo and Falquez, and numerous other class members, grossly overstated the number of hours they worked and vastly understated the amount they were paid by deliberately concealing cash payments they willingly accepted (*see* Section VI of Defendant's Rule 56.1 St., ECF No. 353,¶¶ 95-102) in order to justify a scorched-earth discovery regime in a desperate attempt to uncover nonexistent labor law violations by Defendants.

Plaintiffs' attorneys initiated this action in March of 2015, without conducting *any* due diligence whatsoever regarding the veracity of their clients' allegations. *Id*., Section XII, ¶¶ 164-180. If they had, Plaintiffs' attorneys would have known that Plaintiffs' initial baseless claims regarding the hours they worked were baseless. *See* ECF No. 355-26, Transcript of Deposition of Plaintiff Alvarado ("Avarado Dep.") 155:16-21; ECF No. 356-16, Transcript of Deposition of

Plaintiff Falquez ("Falquez Dep.") at 70:5-15, 89:20-24; ECF No. 355-25, Transcript of Deposition of Plaintiff Briggs ("Briggs Dep.") at 44:17-49:18. In addition, these meritless claims were contradicted by contemporaneous time records and receipts produced by Defendants, which were *signed by the Plaintiffs*. Def.'s Rule 56.1 St. at ¶¶134-135, 148-149, 153-154. Plaintiffs admittedly had no records of their own to challenge Defendants' records because Plaintiffs' attorneys shirked their basic duty to inform their clients that they legally had to preserve records. *Id.* at ¶¶ 148, 154, 164-180.

In response to the mountain of evidence produced by Defendants utterly disproving Plaintiffs allegations, Plaintiffs submitted bare-bones affidavits alleging Defendants' records are fraudulent and/or inaccurate. Of course, Plaintiffs had no underlying proof for their affidavits, or any other of their allegations. *Id.* at ¶ 164. According to the Supreme Court, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case…" *Celotex Corp*, 477 U.S. 317 at 322. Therefore, Plaintiffs have, as a matter of law, not sufficiently overcome the strong presumption of accuracy[1] afforded to Defendants' contemporaneous business records. Accordingly, because "[i]n such a situation, there can be "no genuine issue as to any material fact," (*id.*) this court should close the book on Plaintiffs' seven-year fishing expedition and grant summary judgment in favor of Defendants.

## II.     Go New York Complied With NYLL § 191(1)(a)(i)

---

[1] Under the Federal Rules of Evidence, contemporaneous business records, such as the ones produced by Defendants disproving Plaintiffs' wage and labor claims, are considered "self-authenticating." *See United States v. Komasa*, 767 F.3d 151, 155 (2d Cir. 2014). Plaintiffs' affidavits, absent any proof, are not enough to defeat the strong presumption of validity afforded self-authenticating evidence. !

**A.  Go New York's Pay Schedule Has Always Been in Compliance With NYLL §
191(1)(a)(i)**

After having been caught committing a fraud upon this court, Plaintiffs are now attempting to

double down on their fraud by creating a mountain of false allegations built on a house of cards

by submitting self-created spreadsheets of data in order to misrepresent the proof in this case.[2]

Plaintiffs most boldfaced deception is claiming that drivers were paid late. According to Plaintiffs,

"[p]ursuant to New York Labor Law, employers must pay manual laborers within 7 days of the

end of the last day of the workweek." ECF No. 363, Memorandum of Law in opposition to Motion

for Summary Judgment and in support of Plaintiffs' Motion for Partial Summary Judgment

("Plaintiffs' MOL"), at 44. The record, however, including Plaintiffs' own spreadsheet (*See* ECF

No. 360-25, Plaintiffs' spreadsheet of damages for alleged late payments ("Plaintiffs'

Spreadsheet")) reflects that drivers were paid on a seven day cycle, and were therefore almost

always paid within seven days of the conclusion of the Company's workweek. *See e.g.,* Transcript

of Deposition of Asen Kostadinov ("Kostadinov Dep.") at 175:8-13 ("Q. Are bus drivers paid

weekly? 9 A. Correct. Q. Since when? A. Since ever. They still to this day. Since the beginning to

this day, they still get paid weekly."); ECF No. 356-18 & 19, Go New York Pay Records; ECF No

356-8, Go New York Driver's Employment Letter ("You will be paid **weekly**…"). Plaintiff's have

produced a deceptive chart which attempts to demonstrate late payments by omitting the dates of

checks that show drivers were paid on a weekly basis. In order to highlight how deep Plaintiffs'

fraud runs, Defendants have furnished a supplemental spreadsheet which supplements Plaintiffs'

Spreadsheet with pay dates that Plaintiffs purposely omitted to make it falsely appear as if drivers

were not paid weekly by Go New York. *See*  Exhibit A to the First Affidavit of Asen Kostadinov

---

[2] *See* Exhibits 25, 26, 27, 28 and 29 to Plaintiffs' Rule 56.1 Statement at ECF Doc. 371 and Paragraph 61 (stating
"Plaintiffs' affirmation contain[ing] explanations regarding how the spreadsheets were created").

("Defendants' Supplemental Spreadsheet"). Defendants Supplemental Spreadsheet proves that drivers were nearly always paid on a seven day cycle.

A weekly payment schedule complies with the requirements of New York Labor Law ("NYLL") § 191(1)(a). *See* New York Dep't of Labor ("NYDOL") Counsel Opinion Letter RO-09-0066, issued May 21, 2009, at Exhibit A to the Horgan Declaration ("a prudent employer would pay any employee whose position *might* be considered to be a manual worker **not less than once a week** since such frequency would satisfy **the most stringent requirements** prescribed by New York Labor Law Section 191.") (emphasis added). *See also* NYDOL Counsel Opinion Letter RO-09-0115, issued Dec. 2, 2009, at Exhibit B to the Horgan Declaration ("manual workers" must be paid on a weekly basis"); NYDOL Counsel Opinion Letter RO-09-0121, issued Dec. 11, 2009, at Exhibit C to the Horgan Declaration.  The concept of "work week:" in NYLL § 191(1)(a) refers to the **Company's standard work week**, and does not, as plaintiff's disingenuously suggest, incorporates a separate work week for each employee. Plaintiff's chart fundamentally distorts the record by reporting check payment dates based on each driver's alleged work week rather than the Company's work week. This is nothing short of deceptive.

As is evidenced by Defendant's Supplemental Spreadsheet, drivers were always paid on a weekly schedule, with minor exceptions involving holidays or rare administrative errors. *See* Kostadinov Aff. # 1, Ex. A. The Company almost always paid drivers within seven days of the end of its work week---drivers almost always received pay checks every seven days, except in situations involving contingencies such as vacations or illness. *Id.*

The case cited by defendants for the proposition that Defendants' payments to Plaintiffs were late, *Vega v. CM & Assoc. Constr. Mgt.*, makes clear that the law requires nothing more than weekly payments based on the Company's work week: "Plaintiff alleges that… she was paid her

wages on a biweekly basis, in violation of Labor Law § 191 (1) (a), **which requires weekly payment** of manual workers." *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 107 N.Y.S.3d 286 (2019). (Emphasis added.) *See also Caul v. Petco Animal Supplies, Inc.*, No. 20CV3534RPKSJB, 2021 WL 4407856, at *1 (E.D.N.Y. Sept. 27, 2021), *motion to certify appeal denied,* No. 20CV3534RPKSJB, 2021 WL 6805889 (E.D.N.Y. Dec. 22, 2021) ("Plaintiff alleges that defendants were required to pay manual workers weekly, but instead paid her and other manual workers every two weeks."). Unlike *Vega*, biweekly payments are not at issue here. Go New York always paid its drivers on a weekly cycle. *See* Kostadinov Aff. # 1, ¶ 7. Indeed, from the beginning of this case, the drivers have admitted that they were paid on a weekly schedule. *See, e.g.*, Affidavit of Victor H. Alvarado Balderramo, sworn to on October 6, 2015, at ECF. No. 69, ¶ 5 ("The defendants paid me approximately $520 *per week* until approximately September 2013 and then approximately $600 *per week* thereafter . . .") (Emphasis added.) As has been par for the course in this case, Plaintiffs' attorneys are perpetuating an allegation so baseless it is readily disproven by Plaintiffs' own sworn declarations, the case law they cite, and the manufactured, purported "proof" in their spreadsheets in order to commit  an utter fraud on this Court.

 At all relevant times, drivers were paid on a seven day cycle and thus received pay checks every seven days, with very limited exceptions (such as national holidays or the few times that Go New York changed the way payroll was processed by using new software or hiring a third party). *See* Kostadinov Aff. #1, ¶¶ 7-20. Concurrently herewith, Defendants have corrected Plaintiff's misleading chart by adding the actual dates of weekly paychecks received by the drivers---dates omitted by Plaintiffs' counsel from their chart in a fraudulent and deceptive effort to show that the drivers did not receive weekly pay checks.  *See* Defendants' Supplemental Spreadsheet (*id.* at Ex. A).  By simply adding to the chart submitted by Plaintiffs the actual dates of the

paychecks received by the drivers, Defendants' Supplemental Spreadsheet shows that Go New York has always paid drivers on a weekly basis. *See* Defendants' Supplemental Spreadsheet. Plaintiffs' counsel should be sanctioned by the Court for their attempt to deceive the Court on this point.

For example, in the fifth entry on Plaintiffs' Spreadsheet, Plaintiffs claim $680.82 in liquidated damages because a driver was allegedly paid nine days late because his work week ended on February 26, 2017 and he was paid on March 7, 2017. However, as shown in Defendants' Supplemental Spreadsheet, the driver received a paycheck on February 28, 2017. *Compare* Plaintiffs' Spreadsheet at ECF Doc. 360-81, p. 1, row 5 with Defendants' Supplemental Spreadsheet at Ex. A, p. 1, row 5 (adding the omitted pay date in red). That paycheck is purposely omitted from Plaintiffs' Spreadsheet to give the Court the misimpression that the drivers were paid late, and were not paid on a seven day cycle.

In yet another example, in the fourteenth entry on Plaintiffs' Spreadsheet, Plaintiffs claim $724.00 in liquidated damages because a driver's work week ended on May 21, 2017 and that driver allegedly was paid nine days later on May 30, 2017. Again, however as shown in Defendants' Supplemental Spreadsheet, the driver received an intervening paycheck on May 23, 2017. That check was simply omitted from Plaintiffs' Spreadsheet. *Compare* Plaintiffs' Spreadsheet at ECF Doc. 360-81, p. 14, row 5 with Defendants' Supplemental Spreadsheet at Ex. A of Kostadinov Aff. # 1, p. 1, row 14 (adding the omitted pay date in red). Clearly, Plaintiffs have self-selected and omitted data in an attempt to deceive the Court into believing that drivers were almost always paid late and therefore they are entitled to over $25 million in punitive damages. Plaintiffs bad faith slight of hand includes their deceptive failure to recognize that the applicate statute refers to the Company's work week, not separate and individual work weeks for each driver.

In fact, the proof plainly shows that drivers were paid on a weekly basis based Go New York's standard work week (*see* Defendants' Supplemental Spreadsheet) and its resulting standard pay day – which is all that the law requires.

Plaintiff's assertion that Go New York made late payments rests on a bizarre interpretation of the applicable statute, and a failure to understand business realities, long ago accepted by the New York's Department of Labor[3], which has primary jurisdiction over this issue. As explained in Mr. Kostadinov's Affidavit, Go New York operates bus tours seven days a week and has a seven day work week. Kostadinov Aff. # 1, ¶ 12. This means that there are bus drivers working each day of the week, many of whom have different weekly schedules than the others. For example, some drivers may work Tuesday to Saturday while other drivers may work Friday, Saturday, and Sunday. *Id.* Also, the days of the week that each driver may work can change from week to week at the drivers' request or because they call in sick or are otherwise absent. *Id.* Go New York has always had a single weekly payday, but, given the staggered schedules of the drivers (unlike a typical company where all workers have a Monday to Friday schedule), there are different time spans between the dates a particular driver may work each week and the Company's standard weekly pay date. *Id.*, ¶ 13.

Regardless of their individual schedules, however, drivers were always provided notice of the day each week that they would be paid and received a paycheck every week. *Id.*, ¶ 14; *see also* Kostadinov Aff. # 2, ¶ 13 (citing Ex. E). The payroll records that have been produced in this case confirm that drivers have always been paid weekly on a set day each week. Specifically:

---

[3] *See* NYDOL Opinion Letter RO-09-0666 (stating that weekly payment of manual workers "satisfy[ies] the most stringent interpretation of New York Labor Law Section One Nine One"), at Exhibit A to the Horgan Declaration; *see also* Exhibits B and C to the Horgan Declaration.

(i)      from November 30, 2012 to January 17, 2014, drivers were paid every Friday, with limited exceptions for special circumstances, such as national holidays[4];

(ii)     from January 23, 2014 to February 12, 2015, drivers were paid every Thursday[5];

(iii)    from February 20, 2015 to July 24, 2015, drivers were paid on Fridays[6];

(iv)    for three weeks from July 24, 2015 to August 17, 2015, there were multiple paydays per week – this was due to the fact that Go New York transferring its payroll operations to a third party paysheet printing software called Viventium,[7];

(v)     from August 17, 2015 to September 12, 2016, drivers were paid on Mondays (with the exception of a single month, July 2016)[8];

(vi)    from September 20, 2016 to the present, drivers are paid on Tuesdays (with the exception of two weeks in April 2017 when Go New York began contracting with a third party logistics provider, Southeast Personnel Leasing Company ("SPLI") to handle payroll.[9]

Plaintiffs' position that drivers were paid late is nonsensical, ignores business realities and misstates the applicable law since in Plaintiffs' view, (a) many drivers would have to be paid within one day after completing their work (rather than seven as the law requires), and (b) the Company should have different "pay days" and work weeks for every driver rather than one standard weekly

---

[4] *See e.g.,* Exhibit B to Kostadinov Aff. # 1 (examples of paychecks and paystubs at D000607, D000534, D004123, D004762, D004880, D004573, D004432, D006153, D005794, D005382, D004010, GONY019312).

[5] *See,* e.g. Exhibit C to Kostadinov Aff. # 1 (examples of paystubs at GONY019320, GONY019376, GONY019386, GONY019392, GONY019402, GONY019503, GONY019508, GONY019936, GONY021020, GONY021025, GONY021573, GONY020454).

[6] *See,* e.g., Exhibit D to the First Affidavit of Asen Kostadinov, (examples of paystubs at D014295, D014299, D014303, D014861, D013739, D013743.

[7] *See* e.g., examples of paystubs at D013744, D013745, D013746, attached as **Exhibit E**.

[8] *See* e.g., D015006, D015011, D014630, D014634, D014638, GONY020212, GONY020216, GONY020221, GONY020224, GONY020229, GONY02031, GONY021193, GONY021875, attached as **Exhibit F**.

[9] *See* e.g., collected paystubs and excerpts of an SPLI pay spreadsheet, attached as **Exhibit G**.

pay day for all employees and one standard company work week. For example, for many years, pay day at Go New York was Monday or Tuesday. Many drivers work shifts from Thursday to Sunday, with records of their time submitted on Sunday. Under Plaintiffs' theory, if Go New York fails to pay these drivers for their work from Thursday to Sunday on Monday (within one day of completion of work rather than seven), the drivers have been paid "late." *Compare* Plaintiffs' Spreadsheet, at p. 46 (alleging late payment of driver Dennis Sanders) *with* Plaintiff Sanders timesheets, showing he mostly worked from Friday to Sunday (Exhibit H to Kostadinov Aff. # 1). Plaintiffs argue that Go New York would have to pay drivers within 24 hours from the date that their work week ended. Such a position is logistically impossible and legally untenable. Since Go New York has always paid its drivers in a seven-day cycle,[10][11] and that is the most the law requires, drivers cannot be found to have been paid "late".

Plaintiffs' Spreadsheet also contains many glaring inaccuracies and egregious misrepresentations. For example, Plaintiffs repeatedly claim that checks paid on the date of August 20, 2015, are late because the drivers' work weeks ended in July or early August of 2015. However, when Plaintiffs rely upon a check dated August 20, 2015, their assertions of late payments are inevitably contradicted by the record:

(i)     Plaintiffs claim that driver Jeffrey Reed's work week ended on July 19, 2015, and that he was paid one month later on **August 20, 2015**. In fact, Mr.

---

[10] It should be noted that when a holiday falls on a work week, the seven day pay cycle would necessarily be altered. *See*, e.g., Plaintiffs' Spreadsheet at p. 114 (showing that driver Mario A Gayatgay was paid three days early, on August 31, 2018, for the week of Labor Day 2018). *See also* Plaintiffs' Spreadsheet at p. 43 (showing that driver David Williams was paid three days early, on August 30, for the week of Labor Day 2019).

[11] Also, on occasion, administrative difficulties resulted in a two to four week delay in remitting paychecks to drivers across the board. This unfortunately occurred in November 2014 (D014758-D014759), the last week of April 2016 (D017456), June 2016 (D013101-D013103), November and December 2016 (D013127-D013129) and January 2017 (D013131-D013133). *See* Exhibit I to Kostadinov Aff. # 1. However, with the exception of these five months over a more than *ten year* period, drivers were always paid on a weekly basis.

Reed was paid on July 28, 2015. This check is simply omitted by Plaintiffs, despite the fact that one of their proffered citations affirmatively states it.[12]

(ii)     [Plaintiffs claim that driver Danny Montalvo's workweek ended on July 26, 2015, and that he was paid nearly one month later, on **August 20, 2015.** The document cited by Plaintiffs, however, shows that Mr. Montalvo was paid on August 2, 2015;[13] and

(iii)     Plaintiffs' Spreadsheet states that driver David Cass was paid late because his work week ended on July 19, 2015, and he was paid one month later on **August 20, 2015**. The document cited by Plaintiffs, however, that Mr. Cass was paid on July 28, 2015.[14]

In another example, *in the very first line* of Plaintiffs' Spreadsheet, Plaintiffs cite D000938 to establish a check date. However, D000938 is a spreadsheet of hours worked that contains no check date at all. *Compare* Plaintiffs' Spreadsheet at ECF Doc. 360-81, p. 1, row 1 with D000938 (a spreadsheet comprising many pages of hours worked with no check dates whatsoever).[15]

Plaintiffs' theory of law would place employers whose employees have staggered workweeks in a no-win situation – either stagger paydays depending on drivers' individual workweeks, a logistical impossibility, or pay certain drivers without properly vetting their hours worked, practically begging them to commit hours fraud. No reasonable legislature could intend such a result, indeed, no court has found that the New York Legislature has done so. Accordingly, this Court should defer to the NYDOL and previous courts' findings that a weekly pay schedule for

---

[12] *Compare* Plaintiffs' Spreadsheet at ECF Doc. 360-81, p. 77, row 5465 (citing D014454) *with* Defendants' Supplemental Spreadsheet at Ex. A, p. 77, row 5465 (adding the omitted pay date in red and also citing D014454). A copy of D014454 is attached to the Kostadinov Aff. #1 as Exhibit J.

[13] *Compare* Plaintiffs' Spreadsheet at ECF Doc. 360-81 p. 35, row 2471 (citing D014318 and P0811) *with* Defendant's Supplemental Spreadsheet at Ex. A, p 35, row 2417 (adding the omitted pay date in red and also citing D014318). Copies of these Bates stamped documents are attached as Exhibit K to Kostadinov Aff. # 1.

[14] *Compare* Plaintiffs' Spreadsheet at ECF Doc. 360-81, p. 40, row 2819 (citing GONY021013 to GONY21081 and P0774) *with* Defendant's Supplemental Spreadsheet at Ex. A p. 40, row 2819 (citing GONY0201060). Copies of these Bates stamped documents are attached hereto as Exhibit L to Kostadinov Aff. # 1.

[15] *See* Exhibit M to Kostadinov Aff. # 1.

manual labors complies with the dictates of New York Labor Law (*see* Horgan Declaration (attaching same), and grant summary judgment on the issue of allegedly late payments to Defendants.

## B.  Plaintiffs Are Not Manual Workers Under NYLL

Nowhere is Plaintiffs' sheer duplicity more obvious than when they claim the Plaintiff Class are manual laborers under New York law. Plaintiffs state that "[i]n general, the New York State Department of Labor looks at the duties performed by an employee to determine whether he or she is a manual worker" and makes a case-by-case determination. *See* NYDOL Counsel Opinion Letter RO-09-0066, Def. Memo of Law in Supp of SJ, at 44.[16] While it is true that the NYDOL determines if a laborer is a "manual worker" on a case by case basis, it is extremely telling that Plaintiffs deliberately ignore the test the NYDOL uses *in the very same letter*: "[i]t has been this Department's longstanding interpretation of the term "manual workers" that the term includes employees who spend more than 25 percent of their working time performing physical labor." New York Dep't of Labor ("NYDOL") Counsel Opinion Letter RO-09-0066. at Ex. A to the Horgan Declaration.  *See also* NYDOL Counsel Opinion Letter RO-08-0061 at Ex. E to the Horgan Declaration; NYDOL Counsel Opinion Letter RO-07-0072 at Ex.  F to the Horgan Declaration.

Plaintiff bus drivers, however, are primarily customer service representatives, providing tours to customers of Go New York, most of whom are tourists who reside outside of New York. The drivers are Go New York's good will ambassadors, with direct responsibility for providing Go New York's customers a pleasant and rewarding tour experience. *See* Kostadinov Aff. #1, ¶¶ 41-43; Wehbe Aff., ¶¶ 4, 10-15. For this reason, the Company has installed tip boxes on its buses for customers to tip drivers for their customer service. Go New York's drivers are trained and

---

[16] A copy of this Opinion is annexed as Exhibit A to the Horgan Declaration for the Court's reference.

constantly evaluated on a number of customer-service based categories, divided broadly into operating the bus safety, compliance with company policy, and general interactions with the passengers. Wehbe Aff., ¶¶ 5-9. They are *never* evaluated on nor expected to perform any physical labor whatsoever, *Id.*, ¶ 4; *see also* Kostadinov Aff. #1, ¶ 43.   Unlike drivers of airport transportation vehicles, the drivers never lift, carry and store luggage and heavy bags of passengers. Heavy lifting or other such physical activity is simply not part of the duties performed by the bus drivers.  *See* Wehbe Aff., ¶ 4; Kostadinov Aff. #1, ¶ 43.  They certainly do not spend 25% of their time a work performing manual labor.

Plaintiffs' claims that the class of bus drivers are manual laborers simply falls apart when confronted with the "twenty five percent or more time spent performing physical labor" test. *See* Ex. A to Horgan Decl., p. 1. Plaintiffs' *sole* citation for the allegation that the "NYS Department of Labor's [has found] that drivers of passenger vehicles are manual laborers" (PLs' MOL, 45) was a NYDOL Counsel Opinion Letter which turned on the fact that the airport chauffeurs in question "load and unload luggage for passengers, open and close doors for them, [and] spend 20 minutes per day washing the vehicle and fueling it at the end of the day." NYDOL Opinion Letter RO-07-0072 at Ex. F to Horgan Decl. However, Plaintiff bus drivers are *never* required to lift suitcases, or any other heavy item for that matter, nor do they manually open doors. *See,* Kostadinov Aff. # 1, ¶ 26; Wehbe Aff, ¶ 4.  In fact, drivers are prohibited by Go New York policy from leaving their seat during the tours. *See* Kostadinov Aff. # 1, ¶ 26; Wehbe Aff, ¶ 12. Furthermore, the NYDOL has already determined that driving itself is *not* physical labor. *See* NYDOL Opinion Letter RO-09-0066 at Ex. A to Horgan Decl. ("With regards to drivers, since the drivers are "often required to do light to medium lifting and carrying of objects that may weigh up to 30 pounds," such position **may** be considered to be within the meaning of 'manual worker'

14

[implying that driving itself, the bulk of drivers' duties, is not manual labor]" (emphasis added)).

Again, given that Plaintiff bus drivers are *not* required to do "light to medium lifting and carrying

of objects that may weight up to thirty pounds," there is no basis for finding they are manual

laborers. *Id.*

In determining whether an employee is a "manual laborer" the Department of Labor not

only looks at the time spent performing physical labor, but also the type of labor performed:

> …the traditional notion of a manual worker, the "mechanic, workingman or
> laborer" generally includes a sense of interchangeable physical labor that can be
> done by multiple individuals with the capacity to move material or things from one
> place to another. A common laborer may dig a ditch, he or she may not have dug a
> ditch before but they can be shown how to do so in a matter of minutes and then be
> left to dig in the designated area… [a non-manual worker] in contrast, is not a low-
> skilled job that anyone walking into a [job site] can do. It is a skilled position…
> The position requires sensitive interaction… It requires specialized training and
> attention.

*Hudson Valley Mall Dental v. Commissioner of Labor,* State of N.Y. Indus. Brd. Of App., Docket

No. PR 12-034 (August 17, 2014) at Ex. D to Horgan Decl., p. 6. Similar to the non-manual worker

mentioned above, Plaintiff bus drivers have numerous tasks they are only able to perform after

specialized training, namely, giving guided tours of New York and ensuring passenger safety,

because they are the only point of contact many customers have with Go New York. Upon hiring,

they are required to attend extensive safety and tour guide training, as well as acknowledge and

accept numerous safety and customer service policies. *See* First Affidavit of Asen Kostadinov, ¶¶

34-36. Among the customer-service oriented policies drivers must abide by are greeting all

customers embarking and debarking the bus, making sure the route signage on their bus is proper,

and answering all customer inquiries, especially regarding locations of stops. Because of the nature

of hop-on, hop-off tours, passengers will often exit the bus at a different stop they entered it, then

reenter a different bus at either the same or a different stop, depending on their personal itinerary.

It is therefore absolutely critical to Go New York's success that drivers clearly and comprehensively make sure each and every passenger knows where they are getting off and where they can return to the tour. It is so important, in fact, that in order to qualify for a bonus under their contract, drivers are required to "have all hours of operations, starting/end points and separate stops of all tours and routes offered by GONY Tours [on their person]" and "must reply with correct information to each customer's question regarding the said details." *See* Exhibit AA to Kostadinov Aff. #1, "Additional Requirements for Qualifying for GONY Tours Weekly Drivers' Bonus." Finally, bus drivers are constantly being evaluated by inspectors who ride on the buses five days a week to assess drivers on their customer service and safe driving. *See* Wehbe Aff., ¶¶ 3-6 (citing to Full Loop Inspections", samples of which are annexed thereto as Ex. A).

Clearly, Plaintiff bus drivers are not mere drivers of passenger vehicles or performing a "low-skilled job that anyone walking in can do," (*Hudson Valley Mall Dental,* NY IBA Docket No. PR-12-034, at Ex. D to the Horgan Declaration, p. 6) but instead are skilled and trained customer service ambassadors for Go New York. If Plaintiff bus drivers are not sufficiently trained or shirk their almost entirely non-manual duties, Go New York has at the very least lost a repeat customer. They are integral members of the Go New York team performing a specialized job without which Go New York's tour bus business would fail. To that end, they are extensively evaluated on their performance of strictly customer service duties. *See* Wehbe Aff., ¶¶ 3-6. Therefore, under both the "twenty five percent or more time spent doing physical labor test,"[17] and the "common laborer"[18] test, Plaintiff bus drivers are not manual workers.

---

[17] *See, e.g.,* Ex. A-C of the Horgan Declaration (various NYDOL opinions establishing that the test used by the NYDOL to determine if one is a manual worker or not is if they spend "twenty-five percent more of their working time doing manual labor").

[18] *See Hudson Valley Mall Dental,* NY IBA Docket No. Pr-12-034, at Ex. D to the Horgan Declaration, (establishing that the NYDOL also looks at the type of work performed to establish if an employee is a manual laborer).

Defendants agree with Plaintiffs that "The Court should defer to the NYS Department of Labor's finding[s]…" PLs' MOL, at 45. Luckily, the Industrial Appeals Board of New York has considered an exactly analogous situation:

> In *Creative Transportation  Inc.,* PR-49-88 (August 9, 1991) the Board found that school bus drivers of buses transporting handicapped children were "specially trained and have a clear and defined employment responsibility for the health and welfare of their passengers….the affected workers involved in this proceeding do not properly come within the definition of 'manual worker.' They clearly perform no manual labor and they are not within the unskilled and menial wage work force which the statute was intended to project [sic (protect).]" The special training and health and welfare responsibilities of the bus drivers were important factors… in distinguishing this kind of work from manual labor.

*Hudson Valley Mall Dental v. Commissioner of Labor,* State of N.Y. Indus. Brd. Of App., Docket No. PR 12-034 (August 7, 2014), (*quoting Creative Transportation Inc.,* PR-49-88 (August 9, 1991), at Ex. D to the Horgan Declaration, p. 6-7). The NYDOL could not have been clearer – when bus drivers "[are] specially trained and have a clear and defined employment responsibility for the health and welfare of their passengers," (*Id.,* at 6-7) and "clearly perform no manual labor," (*Id.,* at 7) just like the Plaintiff bus drivers in this case, they are not manual workers.  For all the above reasons, summary judgment on the issue of alleged late payment of drivers pursuant to NYLL § 191(1)(a) should be granted to Defendant.

## C. Go New York had a Good Faith Reason for The Manner in Which It Paid Wages to Drivers

New York Labor Law § 198 (1-a), the statute under which Plaintiffs claim damages for alleged late payment of wages (Plaintiffs' MOL at 45-46), states that liquidated damages are available "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198 (1-a). Because the first case to determine that late payment of wages to manual workers under NYLL § 191 implicated the damages

provision of NYLL § 198 (1), *Vega v. CM & Assocs. Constr. Mgmt,* 175 A.D.3d 1144 (2019), was so recently decided, courts have yet to consider what "good faith" means with regard to late payment of wages. Courts have, however, considered "good faith" generally with regard to *underpayment* of wages under NYLL § 198 (1-a).

According to this district, "Courts treat the federal and state good-faith standards as analogous." *Feng Chen v. Patel*, No. 16CIV1130ATSDA, 2019 WL 2763836, at *13 (S.D.N.Y. July 2, 2019). *See also Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015)("courts have not substantively distinguished the federal standard from the current state standard of good faith"). Under Second Circuit jurisprudence, "To establish the requisite subjective 'good faith,' an employer must show that it took 'active steps to ascertain the dictates of the FLSA [or NYLL] and then act to comply with them.'" *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008). Furthermore, when, "issues surrounding how to properly compensate … are not straightforward," good faith can be established by an "objectively reasonable basis for its belief that it did not need to compensate" *Williams v. Epic Security Corp.*, 358 F.Supp.3d 284 (SDNY 2019) (declining to award liquidated damages when "The evidence offered at trial shows that Defendants acted in good faith and had objectively reasonable grounds for believing that driving time between EPIC's headquarters and worksites was not compensable.")

Defendants have shown clear active steps to ascertain the dictates of relevant New York labor laws and comply with them. Defendants have long admitted that when Go New York was a fledgling company, founded by an immigrant to the United States in August of 2012, Defendant's founder and principal, Asen Kostadinov, was unaware of certain laws, namely, time and a half for overtime. However, starting October 6, 2014, Defendants realized their deficiency and began to

pay drivers time and a half for overtime.[19] Dep. Of Asen Kostadinov, 120:32-24. Go New York also installed biometric time clocks to ensure drivers were automatically paid for each and every hour they worked, eliminating the possibility of human error. Def's Rule 56.1 St., ¶¶78-80. Shortly before that, Defendant's principal met with a labor lawyer to ascertain which relevant laws he had to follow. Dep. of Asen Kostadinov, at 12:16-19. In order to comply with NYLL § 740 and NYLL § 193, Defendants put up signs in their yard alerting their employees of minimum wage rights. *Id.,* at 161:21-22 ("Whatever was required by law at that time, I posted it…"). And finally, Go New York retained South East Personnel Leasing, Inc. ("SPLI"), to provide employee leasing services to Go New York. ECF No. 356 Defendant's Rule 56.1 Statement, ¶82.

As a matter of law, contracting with experts in labor law and payroll accounting to ensure compliance with relevant labor laws is an "active step to ascertain the dictates of the [NYLL] and follow them". *See e.g., Genao v. Blessed Sacrament Sch.*, No. 07 CV 3979 (CLP), 2009 WL 3171951, at *5, *11 (E.D.N.Y. Oct. 1, 2009) (finding good faith on summary judgment when Defendant "relied on the accountant to review the parish records" because the accountant was hired "to review the work of the Church's bookkeeper, to perform the bank reconciliations, and to file the payroll tax returns for the employees… [and] at no time did the accountant inform him that the parish was paying its employees incorrectly"); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 316–17 (S.D.N.Y. 2011) ("Ziotas's consultation with an accountant constitutes an "active step'"); *Ream v. Hill*, No. 16-CV-7462 (VEC), 2018 WL 3579846, at *4 (S.D.N.Y. July 24, 2018) (Refusing to find good faith when "There is no evidence that Defendants determined Ream's compensation in consultation with an accountant or bookkeeper or that they discussed

---

[19] Defendants have offered innumerable times to make whole bus drivers who were not paid time and a half overtime before October 6, 2014. Plaintiffs have of course declined Defendants good faith offers, because Plaintiffs' attorneys are more interested in drumming up preposterous claims in order to inflate their own fees, rather than making their clients whole.

compliance with the FLSA with a subject-matter expert," (internal citations omitted)); *Franco v. Jubilee First Ave. Corp.*, No. 14-CV-07729 (SN), 2016 WL 4487788, at *16 (S.D.N.Y. Aug. 25, 2016) (declining to award liquidated damages when "[defendants] testified that at both Jubilee locations they relied on advice from payroll companies regarding compliance with federal and state wage-and-hour laws.").

The homepage of SPLI's website states "[s]taying compliant is a burden that often becomes overwhelming when you don't have a trusted partner to rely on. We exist to take care of that administrative burden so that you can get back to business and thrive." https://spli.com (accessed July 7, 2022). There is no greater objectively reasonable step that Defendants could have taken to abide by the NYLL than contracting with seasoned payroll experts to absolutely ensure compliance, as "whether an employer undertook 'objectively reasonable' steps to comply with the FLSA is a factual issue that depends on several factors, including the size and sophistication of the employer and any efforts the employer made to comply with the applicable regulations." *Franco v. Jubilee First Ave. Corp.*, 2016 WL 4487788.

Further, and in any event, Defendants at all relevant time understood the applicable law to require that the drivers be paid on a seven day cycle. With rare exception drivers were paid on a seven day cycle. This good faith belief as to the applicable law, without more, is sufficient to establish that defendants at all times acted with good faith.

The reason that neither Defendants nor SPLI thought that drivers' pay dates were in violation of NYLL § 191, were their objectively reasonable beliefs that the Plaintiff bus drivers were not manual laborers, and, even if they were, Go New York's payment schedule complied with the requirements of NYLL § 191.

NYLL § 191(4) states that a "'Manual worker' means a mechanic, workingman or laborer" (NYLL § 191(4)), a definition which plainly does not include bus drivers. The NYDOL has frequently elucidated a test which requires manual workers to spend twenty-five percent or more of their time performing "physical labor," which Plaintiffs do not meet. *See e.g.,* NYDOL Counsel Opinion Letter RO-09-0066; NYDOL Opinion Letter RO-08-0061; NYDOL Opinion Letter RO-07-0072. And finally, the Cambridge Dictionary defines "manual worker" as "a person whose job involves physical work." *Cambridge Business English Dictionary*, "Manual Worker," (2011 Edition). A driver whose main tasks consist of sitting in a seat, checking tickets, and giving a narrated audio tour of New York City is not performing a "job involving physical work" in the plain meaning of the term.  Even if this Court were to find that Plaintiff bus drivers are manual workers under NYLL, it must acknowledge that an objectively reasonable interpretation of the totality of the evidence presented above could lead one to the opposite conclusion.

Similarly, Defendants' belief that their weekly pay schedule complied with NYLL § 191 was also objectively reasonable. The NYDOL has frequently elucidated that paying manual workers weekly complies with the NYLL. *See, supra*, collected NYDOL opinions at 5. And finally, common sense dictates that a reasonable interpretation of the law would allow an employer a reasonable amount of time prior to issuing pay check to ensure employee time records are proper. Plaintiffs have attempted to put Defendants into a post-hoc gordian knot – either Defendants must pay their employees in an impractically small amount of time or face severe consequences. An objectively reasonable interpretation of the law would simply not allow that. Therefore, if this court does not find that Defendants complied with NYLL § 191(1)(a), it still should find that Defendants had a "good faith reason" for the alleged underpayments of wages pursuant to NYLL § 198 and are thus not liable for liquidated damages.

### III.    Plaintiffs' "Spread of Hours" Are Not Justiciable by This Court

The history of Plaintiffs' "spread of hours" claims underscore how deep their fraud goes. In Plaintiffs' initial complaint, they alleged that "the defendants violated the plaintiff's rights by failing to pay or underpaying the plaintiff spread-of-hours compensation." ECF No. 1, Complaint, at ¶ 49. However, it is well settled New York Case law case law that spread of hours applies only to employees paid minimum wage. *See, e.g.,* NYDOL Counsel Opinion Letter RO-07-0009 (March 16, 2007) ("on a day in which an employee works a spread of twelve hours, he must be paid at least $66.95 for that day ($5.15 x 12 + $5.15). As this hypothetical employee's regular daily wage is greater than that amount ($8.00 x 12 =$72.00)… his employer is not required to pay any additional "spread of hours pay'"); *Seenaraine v. Securitas Sec. Servs. USA, Inc.*, 37 A.D.3d 700, 701, 830 N.Y.S.2d 728, 729 (2007); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 41 (E.D.N.Y. 2015). But, at no point were the class representatives paid less than $12 per hour, well above the applicable minimum wage at the time. Def.'s Rule 56.1 St. ¶¶ 103-110. Thus, Plaintiffs' initial claims that Defendants owed them spread-of-hours compensation were, as usual, nothing more than a fraud for the sole purpose of obtaining discovery, in a desperate attempt to glean something actionable.

After having been caught, Plaintiffs attempted to wheedle their way out of their fraud by slyly amending their contentions in their Motion for Summary Judgment, stating: "[c]*ertain* drivers are entitled to spread-of-hours wages… Plaintiffs' calculations show which drivers are owed an additional hour at the minimum wage rate" Pls.' MOL, 41. (Emphasis added.) Plaintiffs' spreadsheet containing their calculations for which drivers are owed spread of overtime damages claims a grand total of **$106.25** without a single one of the initial Plaintiffs being named. ECF No. 360-83. As officers of the court, upon discovering that their only remaining colorable claim did

not come close to even meeting even the State Supreme Court pleading standard for damages, much less this Federal Court, Plaintiffs' attorneys should have immediately withdrawn their claims. But because Plaintiffs' attorneys are more interested in running up legal fees and trumped up claims in order to squeeze water from a stone, they continue their charge into darkness.

## IV.   Defendants Complied with the WTPA

### A.  Defendants' Notices Given to Plaintiffs Upon Hiring Complied With the WPTA

Plaintiffs' claims that Defendants' notices given to the class of bus drivers upon hiring do not comply with NYLL § 195(1)(a) (Plaintiffs' MOL at 47) also do not stand up to scrutiny. Firstly, as a matter of law, no bus driver hired before February 27, 2015, is entitled to damages under NYLL § 195(1)(a). *See Remache v. Mac Hudson Grp.*, No. 14CV3118AMDRML, 2018 WL 4573072, at *16 (E.D.N.Y. Sept. 7, 2018), *report and recommendation adopted,* No. 14CV3118AMDRML, 2018 WL 4568860 (E.D.N.Y. Sept. 24, 2018) ("It is clear that employees who were hired prior to the effective date of the WTPA cannot recover statutory damages for an employer's failure to provide wage notices at the time of hiring, as the WTPA does not apply retroactively"). *See also Cabrera v. Canela*, 412 F. Supp. 3d 167, 184 (E.D.N.Y. 2019).

Secondly, Plaintiffs *own brief* reveals that Defendants' notices upon hiring complied with NYLL § 195(1): "the notices that they claim comply with the law do not have addresses and phone numbers of defendants… ***The defendants' handbook*** also does not comply with the Wage Theft Prevention Act because it does not indicate the drivers' hourly rate or have the employer's phone number." Pls.' MOL, 47-48. (Emphasis added.) So, Plaintiffs have already admitted that Go New York furnished documents to Plaintiff drivers contain everything required by NYLL § 195(1)(a). *See al*so Kostadinov Aff. # 2 (attesting to the documents given to drivers at the time of hiring, which reflects that drivers are given and required to sign an employment letter, a "Payment

Schedule and policies" form, a copy of "Go New York's Field and Warehouse Employees' Policy and Procedure Handbook," as well as various addenda to the preceding policies to keep them current). NYLL § 195(1) does not require *one* document to have all the information required, it merely requires the employer to furnish the specified information to the employee at the time of hiring. In fact, supervisors communicated bus drivers' schedules to them using text messages and thus, from inception Go New York provided its phone numbers to the drivers as part of the hiring process. *See* Transcript of Deposition of Plaintiff Lionel Briggs, at 29:13-30:7.

In addition, the pay stubs furnished to Plaintiffs *always* contained Defendants' address and phone number. *See, e.g.,* Kostadinov Aff. # 1, Ex. B, Examples of Weekly Pay Stubs. If this Court were to find Defendants liable for failing to give Plaintiffs employer's phone number in writing upon hiring, it must find that the deficiency was corrected once the Plaintiffs received their first respective paychecks. *See* NYLL § 198(1-b)("If any employee is not provided **within ten business days of his or her first day of employment** a notice as required by <u>subdivision one of section one hundred ninety-five</u> of this article, he or she may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur…") (emphasis added). Since, as previously proven, Plaintiffs received paychecks at most nine days from their first day of employment (*see supra*, discussion and examples of when drivers were paid at p. 6-9), any purported deficiency in the hiring notices given to Plaintiffs was corrected within their first ten days of employment, and thus, by the plain language of NYLLL § 198(1-b), Defendants are not liable for damages.  Accordingly, Summary Judgment on the issue of allegedly deficient hiring notices should be awarded to Defendants.

Furthermore, Defendants have substantially complied with the edicts of NYLL § 195(1). The purpose of the New York Wage Theft Prevention Act, which updated NYLL § 195 to reflect

its current requirements, was "to provide additional protections for employees against wage theft." *See Memorandum in Support of Legis. A8106C* (N.Y. Assemb. 2014), at Ex. G of the Horgan Declaration, p. 4. Plaintiffs have admitted, and the record reflects, that the notice given to Plaintiffs upon hiring contains the "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;  the regular pay day designated by the employer in accordance with <u>section one hundred ninety-one</u> of this article; the name of the employer;  [and] any "doing business as" names used by the employer.(NYLL § 195(1)(a))." *See* ECF No. 356-8, Example of Notice Given to Bus Driver Upon Hiring. It would be contrary to the legislative intent of the New York Legislature and against public policy to penalize an employer for complying with the substantive parts of the WPTA, namely giving drivers complete and total information regarding their rate and frequency of payment, but forgetting ministerial information such as a phone number or physical address, the latter of which is irrelevant to bus drivers constantly driving to different locations. Plaintiffs' attorneys desperate, vexatious attempts to invent a case or controversy where none exists should not be rewarded by this Court, and so summary judgment should be granted for Defendants.

### B.  Plaintiffs' Claims Regarding Weekly Pay Stubs are Erroneous and Barred by the Doctrine of Unclean Hands

Plaintiffs' claims that Defendants weekly pay stubs (most of which were prepared by professional third-party accounting companies) did not comply with NYLL § 198(1)(d) are also specious. Plaintiffs' claims are centered around negligible cash bonuses paid to drivers – their example is a $62.25 cash payment made on top of a $600 weekly wage. However, Plaintiffs fail to mention that they were given receipts *which they signed* upon receiving the cash bonuses. *See*

*e.g* Ex. H to the Kostadinov Aff. #2.[20] Again, given the nature of Defendants' business operations, namely drivers working different hours every week, it is to be expected that some post-hoc modifications of pre-printed wage statements are necessary to fully compensate drivers for their hours worked. Plaintiffs are, yet again, attempting to place Defendants in a chokehold with no way out – either give drivers purportedly improper wage statements, or underpay them. Defendants chose the honorable and proper method, which was to fully compensate drivers, even if necessitated an addition to the pre-printed wage statements.

Additionally, Plaintiffs are barred from asserting their wage statements were improper by the doctrine of unclean hands. *See Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 429 (S.D.N.Y. 2010) ("The doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.'") *(quoting Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (U.S.1945)). To wit, Plaintiffs *wanted* the cash payments in lieu of extra money in their paychecks, indeed, they even requested them. *See, e.g.,* Dep. of Asen Kostadinov, at 149:16-25 ("Q. When bus drivers asked to be paid in cash, do they ask to be paid in cash for hours before 40? A. That's what I recall. I recall that -- at least, the first drivers wanted that -- wanted for the hours above 40, and that's how it became a practice because we realized that everybody liked that -- of the drivers. I don't recall a single driver that ever complained…"); ECF No. 356-1, Transcript of the Deposition of Plaintiff Atkinson, 97:25-98:3 ("You know, I mean, looking in the envelope and seeing the cash was beautiful.").  For the preceding reasons, summary judgment on the issue of purported improper wage statements furnished to Plaintiffs should be granted to Defendants.

---

[20] Exhibit H is examples of receipts given to drivers for cash bonuses, at D00046-D00054

## **CONCLUSION**

Based on the foregoing, Defendants Go New York and Asen Kostadinov respectfully ask this Court to enter an Order

    (v)    pursuant to Fed. R. Civ. P. 11(c)(2) for summary judgment dismissal of this case pursuant to Fed. R. Civ. P. 56(a) and/or appropriate sanctions including, but not limited to, costs and attorneys' fees based upon Plaintiffs' submission of false pleadings, affidavits, and other false representations made by Plaintiffs and their counsel to this Court;

    (vi)    in the alternative, disqualification of The Law Office of Justin A. Zeller, P.C. as class counsel in this case based upon their ongoing pattern of misconduct;

    (vii)    in the alternative, disqualification of Plaintiffs Victor H. Alvarado Balderramo and Luis Falquez as class representatives, and

    (viii)    and such other and further relief as this Court may deem just and appropriate given the years of vexatious litigation and misconduct by Plaintiffs and their counsel in this case.

Defendants also respectfully request that the Court deny Plaintiffs' Motion for Partial Summary Judgment (ECF Doc. No. 363) in full.

Dated: New York, New York           **BARTON LLP**
       August 9, 2022

                                By:  ***/s/ Maurice N. Ross***
                                    Maurice N. Ross (MR 6852)
                                    Laura-Michelle Ross (LR 7799)

                                711 Third Avenue, 14th Fl.
                                New York, New York 10017
                                (212) 687-6262
                                mross@bartonesq.com
                                lmhorgan@bartonesq.com

                                *Attorneys for Defendants*
                                *GO NY TOURS INC. and*

*ASEN KOSTADINOV*