UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

VICTOR H. ALVARADO BALDERRAMO and LUIS
FALQUEZ, Individually and on behalf of all others
similarly situated,

                                    Plaintiffs,

                            – against –

GO NEW YORK TOURS INC. and ASEN
KOSTADINOV, jointly and severally,

                                    Defendants.

**OPINION & ORDER**

15-cv-2326

RAMOS, D.J.:

        Victor H. Alvarado Balderramo and Luis Falquez ("Plaintiffs") bring this putative class

action pursuant to the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), the

Minimum Wage Act ("MWA"), and the Wage Theft Protection ACT ("WTPA") against Go New

York Tours, Inc. ("Go New York"), and its president and owner, Asen Kostadinov

("Defendants").[1]  Go New York provides guided bus tours of New York City.  Plaintiffs, who

worked as bus drivers for Defendants, allege they are entitled to unpaid minimum wages,

overtime compensation, spread–of–hours pay, and uniform maintenance fees.  Before the Court

are three motions:  (1) Defendants' motion for summary judgment, (2) Defendants' motion for

sanctions, and (3) Plaintiffs' cross-motion for partial summary judgment.  For the reasons

---

[1] The Minimum Wage Act and the Wage Theft Prevention Act are codified in the New York Labor Law.  *See* N.Y.
Lab. Law § 650 *et seq.*, N.Y. Lab. Law §§ 198.

discussed below, the Court grants in part and denies in part the Defendants' motion for summary judgment, denies Defendants' motion for sanctions, and grants in part and denies in part the Plaintiffs' cross-motion for partial summary judgment.

I.      **BACKGROUND**

      **A.  Factual Background**

Go New York is a tour bus operator located at 348 57th Street, New York, New York. Doc. 16 ¶ 13.  At all relevant times Asen Kostadinov was the President and owner and had the capacity to establish the wages and hours of Go New York's employees.  *Id.* ¶¶ 14, 16.  Go New York's tour bus drivers' primary responsibilities were driving the assigned tour route in Manhattan and narrating the tour when a tour guide was not present.  Part of their duties included visually inspecting the busses, picking up or dropping off busses from the yard in Brooklyn, and refueling the busses before returning them to the yard.  *See* Doc. 379-5; *see also* Alvarado Dep. 1 at 108:24–109:2, 93:9–16.  Bus drivers were required to wear a uniform consisting of black pants, black shoes, a green shirt with a company logo, a cap with a company logo, and a jacket with a company logo for colder weather.  Doc. 378-15.

Victor H. Alvarado Balderramo worked as a tour bus driver for Defendants from August 2013 to February 2014 and worked approximately between seventy and eighty-seven hours per week.  Doc. 16  ¶¶ 18–20.  Alvarado was paid $13.00 an hour until September 2013, and thereafter $15.00 an hour.  *Id.* ¶ 21.  Luis Falquez worked as a tour bus driver from July 2013 until November 2013,[2] *id.* ¶¶ 24–25, and worked between eleven and thirteen hours per day, five days a week.  *Id.* ¶ 26.  Falquez was paid $13.00 per hour for the hours he worked up to forty hours per week.  *Id.* ¶ 27.  Neither Plaintiff was paid any wages for the hours they worked over

---

[2] On November 1, 2013, Go New York issued a letter to Falquez stating that "[y]our employment with Go New York Tours Inc. will be officially terminated on October 28, 2013."  Doc. 356-15 at 12.

forty hours each week.  *Id.* ¶¶ 21, 27.  Go New York supervisors communicated the schedule to the bus drivers via text message.  Doc. 376 at 27; *see also* Briggs Dep. 29:13–30:17.

Effective September 2014, Go New York offered weekly cash bonuses of $3 per hour for every hour worked when drivers met specific conditions, such as being in compliance with the dress code, reporting to work on time, stopping at the designated bus route stop for at least 30 seconds before departing, and greeting all customers.  Doc. 378-27.  It also offered a $100 bonus for tour drivers who kept an accident free record for each four-month period, starting in January 2015.  Doc. 378-26.  According to Go New York, tour bus drivers also received cash tips from passengers.  Doc. 354 at 18.

Plaintiffs allege that Defendants willfully failed to pay them the applicable minimum wage and overtime compensation of one and one-half times their regular rate of pay for hours worked in excess of forty hours each week.  Doc. 16 ¶ 31.  Additionally, Plaintiffs contend that they worked a spread-of-hours in excess of ten hours each day, and were not paid the spread-of-hours compensation.  *Id.* ¶ 32.  Moreover, Defendants failed to provide the Plaintiffs with a proper wage and hour notice when they were hired, a statement with each payment of wages, and failed to post notices explaining the minimum wage rights of employees under FLSA and NYLL. *Id.* ¶¶ 34–36.  Lastly, Plaintiffs allege that Defendants failed to pay them an allowance for uniform maintenance.  *Id.* ¶ 33.

On October 6, 2014, Go New York retained a company called Time Force to install biometric clocks for the drivers to punch in and out each day with their thumbprint.  Doc. 354 at 9.  Accordingly, it has only been since October 6, 2014, that the drivers' time was tracked, and they received checks or direct deposits for the full amount of their pay, including time and a half rate for overtime.  *See* Plaintiffs' Rule 56.1 St. Reply, Doc. 361 ¶¶ 78–80.

### B. Procedural Background

On March 27, 2015, Alvarado commenced this action on behalf of himself and all similarly situated employees alleging that they were entitled to unpaid minimum wages, overtime, spread–of–hours pay, and uniform maintenance fees under the FLSA and NYLL.  Doc. 1.  Falquez filed his consent to become a party plaintiff on May 28, 2015.  Doc. 4.  On June 18, 2015, Defendants filed their answer.  Doc. 11.  Since that time, this case has had a long and torturous procedural history, as documented below.

The complaint was amended on January 22, 2016, adding Luis Falquez as a named plaintiff and including additional relevant allegations pertaining to his employment.  Doc. 16. On the same day, Plaintiffs moved to conditionally certify the collective action under the FLSA. Docs. 18.  The FLSA class was conditionally certified by this Court on April 29, 2016.  Doc. 33. The collective action includes all employees of Go New York who worked as tour bus drivers and who were employed any time since March 27, 2012.  Doc. 35.  On May 9, 2016, the Court approved the proposed notice of collective action.  *Id.*  The notice of collective action was sent to all individuals who met the class definition, and directed such persons to submit a consent letter to become a party plaintiff within sixty days from the date of the order, which issued on May 9, 2016.  Between May 9, 2016 and April 3, 2017, twenty individuals joined as party plaintiffs in the suit.[3]  *See* Docs. 39–54, 57–58, 63, 100.

On June 28, 2017, the Court certified a Rule 23 class composed of all tour bus drivers employed by Defendants within six years prior to the filing of the complaint (since March 27,

---

[3] There are a total of 22 tour bus driver plaintiffs in the collective:  Victor H. Alvarado Balderramo, Luis Falquez, Ronald McQueen, Daniel Wright, William Ubiles, William T. Steward, Sheldon Hampton, Arthur Jenkins, David H. Brown, Lawrence Atkinson, Carlton Grady, Terrence Young, Darryl A. Williams, Kyle Robinson, Keith Burton, Alonzo Day, Andrew Wong, Lionel Briggs, Waki Roper, Delia Ortiz, Gary Nelson, and Chye Chew Kee.

2009), and denied Plaintiffs' motion for a conditional certification of a FLSA collective action constituting all non-driver tour guides.  Doc 104.

Nearly two years of inactivity followed, and on April 4, 2019, the Court *sua sponte* dismissed this case for failure to prosecute.  Doc. 107.  Plaintiffs wrote that they had been pursuing settlement negotiations and requested that the case be re-opened.  Doc. 108.  The Court granted the request and directed the parties to submit a status report no later than May 15, 2019. Doc. 109.  On May 16, 2019, one day past the Court-imposed deadline, the parties filed a joint letter advising the Court that they had conferred on discovery, case management, and other pretrial matters and expected to continue settlement negotiations.  Doc. 114.

On May 22, 2019, the Court held a status conference at which Plaintiffs' counsel represented that the parties were in the midst of settlement negotiations.  The next day, the Court issued an amended civil case discovery plan and scheduling order (the "Amended Scheduling Order") and referred the case to Magistrate Judge Debra C. Freeman for settlement.   Docs. 116–17.  Defendants answered the Amended Complaint on June 6, 2019.  Doc. 118.  The parties appeared telephonically before Judge Freeman on June 12, 2019 for a settlement conference that was unsuccessful.

On July 10, 2019, Plaintiffs filed a letter motion for a conference, requesting leave to file a motion to compel pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(iii)–(iv), for Defendants' failure to answer interrogatories or produce documents.  Doc. 123.  However, pursuant to the Amended Scheduling Order, requests for interrogatories and document requests were due by July 15, 2019, and responses by August 15, 2019.  Doc. 117.  Thus, Defendants were still within their time to respond.  On the other hand, Defendants timely served their

interrogatories and document requests, but Plaintiffs failed to respond on time.[4]  Doc. 138 ¶ 18.

On July 17, 2019, Defendants opposed Plaintiffs' motion to compel, particularly because

Plaintiffs had taken no steps to prosecute the case for approximately two years.  Doc. 128.

Defendants also submitted their own request for leave to file a motion to dismiss for failure to

prosecute or a motion to compel discovery responses.  *Id.*  During a July 19, 2019 pre-motion

conference, Defendants were granted leave to file a motion to dismiss for lack of prosecution,

and Plaintiffs were granted leave to file a cross-motion for substitution of counsel.

On November 1, 2019, the motion to dismiss for lack of prosecution was denied.  Doc.

159.  However, the Court warned Plaintiffs that failure to comply with any subsequent Court

order, or further unreasonable or unexcused delays in prosecuting the case, may result in adverse

action including dismissal.  *Id.*

The parties continued to engage in discovery, and on June 23, 2020, the case was again

referred to Magistrate Judge Freedman for settlement.  Doc. 171.  On June 30, 2020, a settlement

conference was held.  Thereafter, on July 17, 2020, the parties informed the Court, via letter, that

settlement discussions would no longer be productive at this time, and that the best course of

action was to amend the discovery schedule and finish litigating the case.  Doc. 172.  The Court

adopted the parties' proposed scheduling order on July 24, 2020.  Doc. 175.

On August 12, 2020, Defendants requested leave to file a motion for summary judgment

on the basis that primary jurisdiction lay with the New York State Department of Labor

("NYSDOL").  Doc. 176.  Plaintiffs responded in opposition and requested a conference in

anticipation of their motion to compel production of certain discovery responses.  Doc. 178.  On

September 17, 2020, the Court addressed both of these requests, granting Defendants leave to

---

[4] Plaintiffs eventually requested an extension of time—which the Court granted—and responded to the
interrogatories and document requests on September 27, 2019.  Docs. 140, 144, 151.

file a motion for summary judgment and denying Plaintiffs' request to file a motion to compel. Doc. 184.

Defendants filed their motion for summary judgment, or in the alternative for the case to be stayed pending the resolution of a NYSDOL investigation pursuant to the primary jurisdiction doctrine on October 8, 2020.  Doc. 186.  On October 27, 2020, Plaintiffs requested a pre-motion conference in anticipation of their motion to compel production of certain discovery requests that they alleged were necessary for them to respond to Defendants' summary judgment motion. Doc. 193.

Plaintiffs also sought to extend their deadline to respond to Defendants' summary judgment motion until after either Defendants responded to Plaintiffs' discovery demands or the Court denied Plaintiffs' motion to compel.  Doc. 196.  Defendants replied that they would respond to the discovery requests by November 2, 2020 and accordingly suggested new deadlines for the summary judgment opposition and reply briefs.  Doc. 197.  The Court adopted the deadlines requested by Defendants.  Doc. 198.  On November 10, 2020, Plaintiffs requested an additional extension of time to respond to Defendants' summary judgment motion because the discovery responses proffered by Defendants on November 3, 2020 were allegedly deficient. Doc. 208.  Plaintiffs also moved to compel production of wage and hour records on behalf of the entire class on the basis of deficient discovery responses.  *Id.*  The Court held a conference on December 1, 2020 to discuss these alleged discovery deficiencies.

The parties continued to engage in discovery and extended the discovery deadlines multiple times until July 16, 2021.  Docs. 223, 230, 234.  On May 7, 2021, Defendants requested a pre-motion conference in anticipation for their motion to dismiss and/or for sanctions.  Doc. 237.

The Plaintiffs opposed Defendants' request to file the motion to dismiss and/or for sanctions on May 13, 2021, Doc. 240, and requested a pre-motion conference in anticipation of their motion to compel production of certain discovery responses.  Doc 241.  The Court held a conference to discuss the parties' anticipated motions on June 9, 2021, and granted Defendants leave to file the motion to dismiss and/or for sanctions.

In the meantime, on May 10, 2021, the Court denied Defendants' motion for summary judgment on all claims, or in the alternative for the case to be stayed pending the resolution of a NYSDOL investigation that was filed on October 8, 2020.  Doc. 186.  The Court reasoned that the benefits of retaining complete jurisdiction over this case outweighed the costs, and would better comport with the statutory design of the FLSA and NYLL.  Doc. 239.

On July 7, 2021, Defendants filed the motion for summary judgment.  Doc. 256.  At the request of the parties, on July 14, 2021, the discovery deadline was extended until September 3, 2021.  Doc. 260.  On August 4, 2021, Defendants requested a pre-motion conference to discuss a number of documents "Plaintiffs ha[d] refused to produce."  Doc. 266.  Separately, Plaintiffs filed a motion for partial summary judgment on August 6, 2021.  Doc. 271.  On August 18, 2021, the Court held a conference and heard the parties' discovery disputes.  All of Defendants' discovery requests were denied and the Court ordered Plaintiffs to produce a privilege log by September 1, 2021.  Doc. 307.

On August 31, 2021, at the request of the parties, the discovery deadline was extended again, until October 29, 2021.  Doc. 299.  On September 16, 2021, Defendants wrote to the Court to report that Plaintiffs failed to produce the privilege log as ordered at the August 18 conference.  Doc. 306.

On October 27, 2021, Plaintiffs requested a pre-motion conference in anticipation of moving to hold certain deponents in contempt of Court.  Doc. 318.  On October 28, 2021, the Court granted the Plaintiffs' request to extend the discovery deadline from October 29, 2021 until December 31, 2021.  Doc. 320.  On November 29, 2021, Plaintiffs requested a pre-motion conference in anticipation of moving for a protective order forbidding three depositions that Defendants had noticed.  Doc. 324.  Defendants also requested a pre-motion conference in anticipation of a motion for an order holding Plaintiffs in contempt of repeated orders to produce a privilege log; directing Plaintiffs to produce all documents they previously designated as privileged; and imposing sanctions on Plaintiffs for repeated failure to comply with multiple orders.  Doc. 326.  The Court held a conference on December 3, 2021 to discuss both parties' requests.  Plaintiffs were granted leave to file a proposed order to show cause why certain deponents should not be held in contempt and were directed to turn over non-privileged documents that were responsive to Defendants' document requests.  Additionally, discovery was extended to January 31, 2022.

On December 7, 2021, Plaintiffs' motion for a protective order forbidding the deposition of former bus driver Lai La Xue[5] was granted, and the motion for a protective order forbidding the depositions of plaintiffs Kee Chye Chew and Andrew Wong was denied.  Doc. 328.  On December 20, 2021, Plaintiffs' proposed order to show cause was denied, and they were directed to re-file the proposed order to show cause, this time excluding Pedro Montero and John Littlejohn, Go New York managers who allegedly had information regarding the company's pay practices.  Doc. 335.  On January 27, 2022, Plaintiffs requested a pre-motion conference in anticipation of moving to file an amended complaint, by adding Yulia Kostadinov (Asen

---

[5] Lai La Xue was not a party plaintiff, but rather a Rule 23 class member not directly involved in the litigation.  Doc. 328 at 5.

Kostadinov's wife) as a defendant. Doc. 346. The Court held a joint case management and pre-motion conference on February 4, 2022. The Court denied Plaintiffs' request to add Yulia Kostadinov as a defendant and the parties were granted leave to file motions for summary judgment. Accordingly, Defendants' July 7, 2021 motion for summary judgment, Doc. 256, and Plaintiffs' August 6, 2021 motion for partial summary judgment, Doc. 271, were both denied as moot. Doc. 350.

On March 1, 2022, Defendants filed the instant motion for summary judgment on all claims alleged against them: (1) unpaid or underpaid minimum wages in violation of the FLSA and NYLL; (2) unpaid or underpaid overtime compensation in violation of the FLSA and NYLL; (3) spread-of-hours wages; (4) uniform maintenance pay; (5) other wages not timely paid in violation of the NYLL and the MWA; and (6) statutory damages for violations of the WTPA. Defendants also move for sanctions and assert affirmative defenses under the doctrines of unclean hands and laches. Doc. 351. Plaintiffs filed the instant cross motion for partial summary judgment on April 22, 2022, seeking: (1) judgment for currently discernable unpaid overtime premium pursuant to the FLSA and MWA; (2) judgment for currently discernable unpaid spread-of-hours wages pursuant to the MWA; (3) judgment for liquidated damages for unpaid overtime premium, unpaid spread-of-hours wages, and late payments in violation of NYLL; (4) judgment for failure to provide the required notice at the time of hiring and accurate weekly wage statements pursuant to the WTPA; and (5) a finding that the class is owed prejudgment interest for all wages found owed. Plaintiffs do not seek summary judgment for their uniform maintenance claim. Additionally, Plaintiffs seek the dismissal of Defendants' affirmative defenses of laches and unclean hands, a finding that the Defendants are joint employers of the class, and a finding that Defendants are covered by FLSA. Doc. 359.

On June 1, 2022, at the request of Defendants, the Court held a conference to discuss the Plaintiffs' Rule 56.1 statement, which was 2,240 pages long.  Doc. 364.  At the conference the Court ordered that the Plaintiffs' Rule 56.1 Statement be stricken and that they submit a revised statement by June 22, 2022.  Plaintiffs timely filed the revised statement.

On June 23, 2022, in response to a joint letter submitted by the parties, the Court clarified that pursuant to its guidance during the pre-motion conference on June 1, 2022, the parties were directed to brief the issues of liability prior to the issues of damages.  Doc. 373.  Accordingly, the Court will only decide the issues of liability.

## II.   LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (citing *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

11

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc*., 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp*., 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found*., 51 F.3d 14, 18 (2d Cir. 1995).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

For claims under New York law, the Court should determine how the New York Court of Appeals would decide them.  *Reddington v. Staten Island Univ. Hosp*., 511 F.3d 126, 133 (2d Cir. 2007) (citation omitted).  Decisions from New York's intermediate appellate courts are helpful indicators, but this Court is not bound by those decisions.  *Id.* (internal quotation marks and citations omitted).

The same standard of review that applies on a motion for summary judgment applies when a district court is faced with cross-motions for summary judgment.  *Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009).  When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits, and draws all reasonable inferences against the party whose motion is under consideration.  *Morales v. Quintel Entm't, Inc*., 249 F.3d 115, 121 (2d Cir. 2001).

### B. Sanctions

Under Rule 11(b)(3), by presenting a pleading to the court, an attorney certifies to the best of her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). A motion for sanctions is required to be "made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Pursuant to the Rule, the proposed motion must first be served on the party who allegedly violated the Rule. *Id.* The non-movant is then afforded a 21-day safe harbor period to withdraw or correct the challenged paper, claim, defense, contention, or denial before the movant is allowed to file or present the motion to the court. *Id.*

Rule 11(c) allows the court to award sanctions if it determines that Rule 11(b) has been violated through "false, misleading, improper, or frivolous representations to the court." *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008). In determining whether there has been a Rule 11 violation, courts apply "an objective standard of reasonableness." *Weinraub v. Glen Rauch Sec., Inc.*, 419 F. Supp. 2d 507, 512 (S.D.N.Y. 2005). As the Second Circuit explained in *O'Brien v. Alexander*, "the standard certification for factual allegations under Rule 11(b)(3) is that there is (or likely will be) evidentiary support for the allegation, not that the party will prevail with respect to its contention." *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) (internal quotation marks omitted) (quoting Rule 11 Advisory Committee Note). Indeed, "[t]he focus of the inquiry is the attorney's and/or party's reasonable belief at the time of filing, not at some later time when developments during discovery or trial reveal no basis for the belief." *Vinuela v. S.S. Britanis*, 647 F.Supp. 1139, 1148 (S.D.N.Y. 1986). "This construction of Rule 11 'serves to punish only those who would manipulate the federal court

system for ends inimicable to those for which it was created.'" *Id.* (citation omitted). Accordingly, the Second Circuit has instructed that "sanctions may not be imposed unless a particular allegation is utterly lacking in factual support." *O'Brien*, 101 F.3d at 1489; *see also E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 181 (S.D.N.Y. 2008).

The standard for triggering an award "under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person making the statement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (quotation omitted). "With respect to legal contentions, '[t]he operative question is whether the argument is frivolous, i.e., the legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands.'" *Id.* (quoting *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011)).

Another basis for imposing sanctions is 28 U.S.C.A. § 1927, which states

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C.A. § 1927. The purpose of the statute is "to deter unnecessary delays in litigation." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986), *cert. denied*, 480 U.S. 918 (1987). Unlike Rule 11, which imposes an objective standard, § 1927 "requires a 'clear showing of bad faith.'" *Id.* (quoting *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1010 (2d Cir. 1986)). A moving party must show that the attorney's actions were "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Id.*

Sanctions "against counsel who willfully abuse judicial processes ... are within a court's powers." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766–67 (1980).  However, these sanctions "should not be assessed lightly."  *Id.* at 767.

## III.   DISCUSSION

The Court will first analyze Defendants' motion for summary judgment and Plaintiffs' related cross-motion for summary judgment.[6]

### A.  Plaintiffs' Motion for Summary Judgment and Defendants' Related Cross-Motion for Summary Judgment

*1.  Number of Hours Worked*

As a preliminary matter, Defendants acknowledge in their motion for summary judgment that they failed to pay drivers time and a half for overtime from January 1, 2013 to October 6, 2014.  Doc. 354 at 9–10.  Defendants insist, however, that they paid the drivers regular time for all hours worked.

In addition, Defendants allege that named Plaintiffs as well as other drivers have admitted to grossly overstating the hours they worked.  Specifically, Defendants compare the affidavits of four Plaintiffs, sworn to in 2015 and 2016 in connection with the motion to certify the collective, to their deposition testimony taken approximately five years later, between April and June of 2021.  Defendants claim that:  (1) Alvarado "admitted" in his deposition that his sworn affidavit was false; (2) Falquez "admitted" that he falsely claimed that he worked approximately 11–13 hours per day, approximately five days per week; (3) the deposition of Lionel Briggs

---

[6] Seventeen of the 22 Plaintiffs submitted an affidavit in support of conditionally certifying the collective action. *See* Docs. 19–20, 70–72, 74–80, 82–87.  The affidavits were sworn to between October 16, 2015 and September 28, 2016.  The five Plaintiffs who did not submit an affidavit are Chye Chew Lee, Keith Burton, Terrence Young, David Brown, and Ronal McQueen.  The depositions of six of the Plaintiffs taken during discovery were submitted:  Victor H. Alvarado Balderramo, Luis Falquez, William T. Steward, Lawrence Atkinson, Andrew Wong, and Lionel Briggs. The depositions were taken between April 15, 2021 and January 27, 2022.  All six depositions were relied upon by at least one of the parties and in this Opinion.

contradicted his affidavit in which he said he worked approximately 60 hours per week and sometimes more; and (4) Lawrence Atkinson "admitted" in his deposition to overstating in his affidavit that he worked approximately 12–13 hours per day, five days per week.  Additionally, Defendants claim that Plaintiffs have "no records whatsoever" concerning the hours they worked and that "the Zeller Firm was simply making these hours up out of thin air."  Doc. 354 at 13.

In the first instance, Defendants are wrong when they say that Plaintiffs "admitted" having provided false information.  To the contrary, Plaintiffs explain that the difference in estimates is attributable to the passage of time and the fact that their earlier testimony was based on approximations.

For example, in his October 6, 2015 affidavit, Alvarado stated that he worked six days a week and 70–87 hours per week, except for two weeks in which he only worked five days.  Doc. 19 ¶ 4.  In his deposition, taken on April 15, 2021, he said that he worked six days a week for about four weeks.  *Compare* Alvarado Aff. ¶ 4 *with* Alvarado Dep. I 156:19–22.  Falquez said in his November 9, 2015 affidavit that with the exception of three weeks, he worked 11–13 hours per day, five days a week during his employment.  In his deposition, taken on April 23, 2021, he testified that he did not remember how many hours a week he worked because a lot of time had gone by.  *Compare* Falquez Aff., ¶ 4 *with* Falquez Dep. 70:16–20.  Contrary to Defendant's argument, Briggs never claimed to have worked sixty hours every week in his affidavit.  And his statements in his deposition, that in some weeks he did work sixty hours, is by no means an "admission" that he previously provided false testimony.  *Compare* Briggs Aff. ¶ 5 *with* Briggs Dep. 49:4–8.  And lastly, while Atkinson said that he worked "between twelve and thirteen hours per day, approximately five days per week" in his August 19, 2016 affidavit, this is not at odds

with his statements at the deposition, taken on April 7, 2021, that the amount of hours he worked changed seasonally. *Compare* Atkinson Aff., ¶ 4 *with* Atkinson Dep. 95:7–18.

Plaintiffs further contend that Defendants kept inadequate records prior to October 4, 2016, when Go New York began using biometric clocks to keep track of the drivers' time. Doc. 363 at 17; *see also* Doc. 355 ¶ 62. And there are multiple disagreements between Plaintiffs and Defendants as to the accuracy of Defendants' records generally.

While Defendants do not explicitly seek summary judgment on the matter of hours worked, that question is central to the claims for which they do seek summary judgment: unpaid or underpaid wages, overtime compensation, and spread–of–hours wages. At the summary judgment stage, "if an employer's records are inaccurate or inadequate, an employee need only present 'sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference.'" *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) ("It is well settled among the district courts of this Circuit, and we agree, that it is possible for a plaintiff to meet his burden through estimates on his own recollection."). Here, Defendants failed to preserve the timesheets, text messages, or other evidence regarding class members' schedules, and Plaintiffs offered reasonable estimates of their damages through their affidavits and depositions.

The Court finds Plaintiffs' estimates of the hours worked are sufficient to survive the motion for summary judgment.

### 2. *Cash Payments for Overtime*

#### a. *Defendants' Motion for Summary Judgment*

Defendants allege that they did pay each of the Plaintiffs for the overtime they worked, though, as noted above, not at a rate of time and a half, but that they paid them in cash. In

particular, Defendants assert that, despite compensating Plaintiffs in cash for overtime hours worked, Alvarado, Falquez, and Briggs "have repeatedly lied about receiving cash payments for overtime hours" in 2013 and 2014. Doc. 354 at 15. In support of their allegation, Defendants rely on receipts signed by Alvarado, Falquez, and Briggs, the testimony of Go New York employees who claim to have given the drivers the cash payments, and the testimony of other drivers who acknowledge receiving cash payment for their overtime hours.

Eduard Baran, a Go New York employee, testified that his duties included keeping track of the hours worked by drivers. Doc. 354 at 15–16. Baran asserts that drivers were paid by check for the hours that they worked up to 40 hours, and in cash at the same rate for any overtime hours that they worked over the 40 hours. Baran Aff. ¶ 9. Defendants also provided Baran's handwritten timesheets reflecting the cash payments to Alvarado and Falquez. *See* Exhs. BB and CC, Docs. 356-2 and 356-3. Yulia Kostadinov also testified that when she helped in the office, she would distribute envelopes containing checks, and cash for overtime hours worked, to employees. *See* Yulia Kostadinov Dep. 65:21–66:3.

Defendants claim they have pages of receipts signed by drivers "confirming" that they had received a sum certain in cash as payment for the overtime hours they worked. Doc. 354 at 16. Specifically, Defendants submitted receipts signed by Alvarado. Doc. 379-8. Alvarado testified that he was "forced" to sign the "inaccurate" receipts in order to receive his pay check. Alvarado Dep. II 14:6–15, 26:7–12. Defendants claim that Briggs, who initially testified that he "was never paid for overtime in cash," confirmed it was his signature on the receipt during his deposition and that this shows he "flat out lied about this during [his] deposition." Doc. 354 at 16; *see also* Briggs Dep. 58:20–60:24. Briggs did also testify, however, that he did not recall reviewing the receipt, that the receipts were inaccurate, and that he did not receive cash. *Id.*

60:2–11.  Plaintiffs note that neither Baran nor Mrs. Kostadinov testified that they made cash payments to Alvarado or Briggs, specifically.  *See* Yulia Kostadinov Dep. 68:3–71:4.

In addition, Defendants point to multiple Plaintiffs who confirmed in their depositions that they were in fact paid in cash for overtime hours worked.  *See* Atkinson Dep. 60:20–61:11 ("I was paid 40 hours with the check, and the rest was—cash was in an envelope"); *see also* Steward Dep. 29:5–11 ("Attached to the envelope was another envelope with money inside").  Lastly, the drivers who acknowledged receiving cash payments did not testify that Alvarado, Falquez, or Briggs also received cash payments.

The Court finds that, although Alvarado, Falquez, and Briggs signed overtime receipts, there remain disputes of material fact that preclude summary judgment.  *See Kalloo v. Unlimited Mech. Co. of NY,* 977 F. Supp. 2d 187, 194 (E.D.N.Y. 2013) (finding that although a plaintiff signed timesheets to collect his paychecks, that did not reflect his actual hours worked, there was still credible evidence to find that the plaintiff was not paid his full overtime wages).  Accordingly, Defendants' motion for summary judgment for the unpaid or underpaid overtime compensation under the FLSA is denied.

### b.  *Plaintiffs' cross-motion for summary judgment*

It is undisputed that before October 6, 2014, Go New York did not pay its drivers one and one half times their regular rates for hours worked greater than forty each week.  *See* Asen Kostadinov Dep., 112:17–25 ("Q. Before October 2014, did Go New York Tours, Inc. pay bus drivers one and one half time their hourly rate of pay for hours that they worked above 40 each week?  A. No.").  Thus, the Court grants summary judgment as to the unpaid overtime wages owed to class members before October 6, 2014.

Pursuant to the Court's directive issued on June 23, 2022, the Court only considers the issue of liability at this time and does not consider the issue of damages.  Doc. 373.

### 3.  Uniform Maintenance[7]

Plaintiffs allege that they maintained the uniforms that they were required to wear at their own expense.  Doc. 16 ¶ 33.  It is not disputed that the uniform was required, Doc. 379-5 at 7, or that Defendants provided the uniforms to the drivers at no cost to them.  Doc. 354 at 20.

Alvarado testified that he was not paid any compensation for uniform maintenance.  Alvarado Dep. I 68:1–4.  Defendants do not appear to contest that they did not compensate the drivers for uniform maintenance, but contend that other drivers testified that the uniform did not require any special maintenance, but rather nothing more than "just [a] regular wash," Atkinson Dep. 77:4–7, or a "regular … dry," Wong Dep. 78:15–20.  This argument is unavailing.  Under the New York Codes, Rules, and Regulations, "[w]here an employer fails to launder or maintain required uniforms for any employee, he shall pay such employee in addition to the minimum wage[.]"  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.5.  Plaintiffs are correct that they have no obligation to demonstrate that special maintenance is required to justify uniform maintenance pay.  *See* N.Y. Comp. Codes R & Regs. tit. 12 § 142-2.5(c).

Because Defendants do not argue that Go New York *did* launder the uniforms or reimburse employees in addition to the minimum wage for uniform maintenance, Defendants' motion for summary judgment on the uniform maintenance claim is denied.

---

[7] The Court notes that Plaintiffs did not include the allegation that Alvarado purchased his uniform in the Amended Complaint, instead only alleging that the Defendants did not launder or maintain the required uniform, or pay an allowance to the Plaintiffs for their maintenance.  *Compare* Complaint, Doc. 1 ¶ 27, *with* Amended Complaint, Doc. 16 ¶ 33.  Therefore, the Court will only consider the maintenance claim alleged in the operative pleading.

### B.  Minimum Wage Act Claims

In the Amended Complaint, Plaintiffs allege that Defendants willfully failed to pay them the applicable minimum wage.  Doc. 16 ¶ 30.  Defendants argue they have always paid drivers minimum wage or more.  Doc. 354 at 21.

Defendants offer contemporaneous records that establish that even before installing the biometric time clock, drivers were paid at least $12.00 per hour for each hour worked, more than the minimum wage.[8]  These records include paystubs showing a payrate of $12 an hour starting in January 2013, Doc. 356-18, and W-2 wage and tax statements that were produced to Plaintiffs.

Plaintiffs argue that some bus drivers were not always paid the minimum wage because, when calculated over all of the hours they worked, they were paid less than minimum wage.  For example, on weeks that Alvarado worked approximately 15 hours a day (or 75 hours per week) and was paid $13 per hour on only forty hours, the effective pay rate was $6.93 an hour.[9] Because whether a payment meets the minimum wage is determined by dividing the employee's wages by the hours actually worked, Alvaro's claim, taken as true, would constitute a violation of the MWA.  *See United States v. Rosenwasser*, 323 U.S. 360 (1945).

And while Defendants insist that they paid all drivers for overtime in cash, Doc. 354 at 15, three drivers insist that they were never paid overtime hours.  *See* e.g., Alvarado Dep. II. 33:16–34:16 (repeatedly denying that he received cash payment for overtime hours worked, despite his signature on receipts indicating as much).  At the summary judgment stage, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all

---

[8] The state minimum wage in 2013 was $7.25 and on December 31, 2013 the minimum wage was increased to $8.00.  Dep't of Lab., *History of the Minimum Wage in New York State*, https://dol.ny.gov/history-minimum-wage-new-york-state (last visited:  March 14, 2023).

[9] Plaintiffs arrive at this figure by dividing the total amount he was paid, $520 ($13 x 40 hours), by the hours he actually worked (75 hours).

ambiguities and draw all reasonable inferences against the movant." *Brod* 653 F.3d at 164.

Defendants have not demonstrated an absence of any genuine issue of material fact and thus their

motion for summary judgment as to the Minimum Wage Act claim is denied.

### C.  Timely Paid Wages

Defendants assert that they have always paid their employees in a timely manner, that

there is no evidence to the contrary, and therefore they are entitled to summary judgment on the

claim that wages were not paid on a timely basis.  Doc. 354 at 21–22.  Plaintiffs cross-move for

summary judgment and liquidated damages for failure to timely pay class members.  Doc. 363 at

43.

Under NYLL § 191(1)(a)(i), a "manual worker" is required to be paid weekly and not

later than seven calendar days after the end of the week in which the wages are earned.  N.Y.

Lab. Law § 191(1)(a)(i).  Thus, whether the wages were paid on a timely basis turns on the

question of whether Plaintiffs are manual workers.

A manual worker is defined as "a mechanic, workingman or laborer," *id.* § 19 (a)(4),

and the NYSDOL has interpreted the term to include  "employees who spend more than 25

percent of their working time performing physical labor," with "'physical labor' broadly

includ[ing] a wide range of physical activities undertaken by employees …. "  N.Y. Dep't of

Labor Opinion Letter, No. RO-09-0066 (May 21, 2009).[10]  In general, the NYSDOL looks at the

duties performed by an employee in order to determine whether he or she is a manual worker and

---

[10] New York courts have consistently held that the NYSDOL's "interpretation of a statute it is charged with
enforcing is entitled to deference."  *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 470 (2013); *see also State v.
GTE Valeron Corp.*, 553 N.Y.S.2d 555, 557 (1990) ("Judicial deference should therefore be accorded the
interpretation by the [New York] Department of Labor ....").  In addition, New York courts have held that
"regulations by the agency responsible for [statutory] administration, if not irrational or unreasonable, should be
upheld."  *Howard v. Wyman*, 28 N.Y.2d 434, 438 (1971).  "The judicial function is exhausted when there is found to
be a rational basis for the conclusions approved by the administrative body."  *Id.*

makes a case-by-case determination.  *See* N.Y. Dep't of Labor Counsel Opinion Letter RO–09–

0066, May 21, 2009.  The New York Industrial Board of Appeals' analysis to determine whether

an employee is a "manual worker" not only looks at the time spent performing physical labor,

but also to the type of labor performed:

> [T]he traditional notion of a manual worker, the "mechanic, workingman or
> Laborer" generally includes a sense of interchangeable physical labor that can be
> done by multiple individuals with the capacity to move material or things from
> one place to another.  A common laborer may dig a ditch, he or she may not have
> dug a ditch before but they can be shown how to do so in a matter of minutes and
> then be left to dig in the designated area… [a non-manual worker] in contrast, is
> not a lowskilled job that anyone walking into a [job site] can do.  It is a skilled
> position…. The position requires sensitive interaction…. It requires specialized
> training and attention.

*Hudson Valley Mall Dental v. Commissioner of Labor*, PR 12-034 at 5–6 (N.Y. Indus. Brd. App.

August 17, 2014).

    In *Hudson Valley Mall Dental*, the New York Industrial Board of Appeals (the "Board")

found that a dental assistant was not a manual worker because even though "the physical tasks []

exceed the [] twenty five percent threshold, the overall nature of the work in providing assistance

to the provision of dental treatment to patients outweighs any sense of the role being one of a

manual worker as a reasonable person would view it."  *Id.* at 7.

    Plaintiffs offer three Opinion Letters/decisions as examples where the NYSDOL and the

Board determined drivers can be categorized as manual workers.  In the first Opinion Letter, an

airport chauffeur was determined to be a manual worker because, while the chauffeur's main

duty was driving to and from the airport, he also refueled the vehicle, loaded and unloaded

luggage, opened and closed doors for passengers, and spent 20 minutes per day washing the

vehicle.  *See* N.Y. Dep't of Labor Opinion Letter, No. RO-07-0072 (July 11, 2007).  The

chauffeur was determined to be a manual worker because of the additional duties he performed

and the amount of time he spent on those additional duties.  *Id.*  The second case involved a

dump truck driver who performed inspections before and after trips, and refueled the truck. *Merriman v. Comm'r of Labor*, PR 16-085 slip op. at 6–7, 9 (N.Y. Indus. Brd. App. Sept. 14, 2017).  The third case involved a truck driver who made deliveries and pick-ups between New York and Pennsylvania.  *Deocharran v. Comm'r of Labor*, PR 17-024 slip op. at 4 (N.Y. Indus. Brd. App. Oct. 25, 2017).  The Board did not explain its reasoning for finding that the petitioners were manual workers in *Merriman* or *Deocharran*.

However, in the most analogous case to this one, relied on by Defendants, bus drivers transporting handicapped children were found *not* to be manual workers.  *Creative Transportation, Inc.*, PR 49-88 (August 9, 1991).  The Board found that school bus drivers transporting handicapped children were "specially trained and [had] a clear and defined employment responsibility for the health and welfare of their passengers."  The Board noted that these bus drivers were not properly categorized as manual workers because "[t]hey clearly perform no manual labor and they are not within the unskilled and menial wage work force which the statute was intended to [protect]."  In other words, the special training and health and welfare responsibilities of the bus drivers were important factors and took the drivers outside of the "common laborer" category.

Here, the New York Go drivers transport tourists on a "hop-on, hop-off" route in Manhattan.  Doc. 363 at 44.  As part of their job, the drivers drive the bus from the bus yard in Brooklyn to the first stop on the tour in Manhattan, and back to the bus yard at the end of the day.  *Id.*  Drivers also refuel and conduct inspections of the busses.  *See* Kostadinov Aff., Doc. 378 ¶ 32–33 (detailing the pre-trip and post-trip inspection drivers were required to complete, as well as the refueling).  Additionally, drivers give narrated tours when tour guides are not present. Drivers are not responsible for carrying any luggage for Go New York customers.

Defendants therefore argue that Plaintiffs are not manual workers.  Unlike airport chauffeurs, the Go New York drivers were not required to lift, carry or store luggage, and did not "spend more than 25 percent of their working time performing physical labor."  *See* Request for Opinion Re: Manual Workers, N.Y. Dep't of Labor Opinion Letter, No. RO-09-0066 at 1 (May 21, 2009).  Moreover, Defendants argue that the bus drivers are also "skilled and trained customer service ambassadors."  Doc. 376 at 19.  Defendants emphasize that the bus drivers "have numerous tasks they are only able to perform after specialized training, namely, giving guided tours of New York and ensuring passenger safety, because they are the only point of contact many customers have with Go New York."  *Id.* at 18.  The customer service duties include greeting all customers, making sure the route signage on the bus is proper, and answering customer questions.  *Id.*  For example, to qualify for a bonus, drivers must also be able to answer customer questions about:  the hours of operations, the starting and ending points of the tour, and all stops on all routes offered by Go New York.  *Id.* at 19; *see also* 378-27.  Defendants argue that much like the dental assistants in *Hudson Valley Mall Dental,* Plaintiffs are not mere drivers of passenger vehicles or performing "a low-skilled job that anyone walking in can do" because they are trained to give guided tours.  Doc. 376 at 6.  Lastly, Defendants emphasize that the NYSDOL has determined that driving *itself* is not physical labor, arguing that the circumstances in which the NYSDOL determined that drivers might be categorized as manual workers involved situations where they were engaged in lifting and carrying items ("*since* the drivers are 'often required to do light to medium lifting and carrying of objects that may weigh up to 30 pounds,' such position *may be considered* to be within the meaning of 'manual worker.'").  N.Y. Dep't of Labor Opinion Letter, No. RO-09-0066 at 1 (May 21, 2009) (emphasis added).

Thus, Defendants argue that under both the "twenty five percent or more time spent doing physical labor" test espoused in NYSDOL's Opinion Letter, No. RO-09-0066 and the *Hudson Valley Mall Dental* "common laborer" test, Plaintiff bus drivers are not manual workers.

Plaintiffs argue that tour bus drivers are manual workers because (1) driving itself *is* manual labor, regardless of whether their duties also include lifting heavy objects; (2) unlike the bus drivers in *Creative Transportation, Inc.* Plaintiffs are not charged with providing the same level of sensitive care to passengers; (3) like cases in which the NYSDOL has determined drivers to be manual workers, Plaintiffs do perform additional tasks other than driving, such as refueling and inspecting the busses; (4) that Plaintiffs also provide customer service by narrating the tours does not preclude an employee from being a manual worker. *See Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 482 (S.D.N.Y. 2012) (classifying wait staff as manual workers); *Spiro v. Comm'r of Labor*, PR 13-179, at 6 (N.Y. Indus. Brd. App. Aug. 30, 2013) (same); *Zhang v. Comm'r of Labor*, PR 12-180, at 13 (N.Y. Indus. Brd. App. Sept. 14, 2012) (same).

NYSDOL's "interpretation of a statute it is charged with enforcing is entitled to deference." *Carvente-Avila v. Chaya Mushkah Rest. Corp.*, No. 12 Civ. 5359 (KBF), 2016 WL 3221141, at *2 (S.D.N.Y. Mar. 1, 2016). "Whether Plaintiffs qualify as manual workers is a fact-intensive inquiry." *Liu v. Chan,* No. 18 Civ. 5044 (KAM) (SJB), 2022 WL 2903311, at *8 (E.D.N.Y. July 22, 2022). On balance, the Court finds that in this case, making all factual inferences in Plaintiffs' favor, Plaintiffs are not manual workers. The Go New York bus drivers are distinguishable from the airport chauffeurs because the chauffeurs loaded and unloaded luggage and were required to spend time washing and refueling the vehicle. This is significantly more physical labor than that required of the Go New York bus drivers, whose only physical labor is refueling and visually inspecting the busses. The vast majority of their time is spent

driving, which is not itself physical labor, and interacting with customers.  Indeed, the NYSDOL has emphasized that while drivers *may* be considered manual workers when required to do light to medium lifting and carrying of objects up to 30 pounds, they are not required to be considered manual laborers under those circumstances.  N.Y. Dep't of Labor Opinion Letter, No. RO-09-0066 (May 21, 2009).

Having found that Plaintiffs are not manual workers, this Court finds that Plaintiffs are not entitled to the protections of NYLL § 191(1)(a).  Accordingly, the Court grants the Defendants' motion for summary judgment on the timely wages claim and denies Plaintiffs' cross-motion for summary judgment on this claim.

### D.    Wage Theft Prevention Act Claims

Plaintiffs argue that by not providing them with notice of their wages upon hiring in compliance with § 195(1), or a statement with each wage payment containing specific information in compliance with § 195(3), Defendants violated the Wage Theft Prevention Act ("WTPA").  Doc. 16 ¶ 3; Doc. 363 at 47–48.  Defendants counter that Go New York's records demonstrate that bus drivers were "always on notice of and paid the wages to which they were entitled."  Doc. 354 at 23.

The WTPA is codified in N.Y. Lab. Law § 198, which provides that

(1-b) If any employee is not provided within ten business days of his or her first day of employment a notice as required by [§ 195(1)], he or she may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees.

(1-d) If any employee is not provided a statement or statements as required by [§ 195(3)], he or she shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees.

N.Y. Lab. Law § 198(1-b), (1-d).[11]

    *1.  NYLL § 195(1)*

Plaintiffs allege that they were not provided with the required notice when they were

hired.  Doc. 16 ¶ 34, 69–70.  In relevant part, § 195(1) requires the notice to include:

> in writing in English and in the language identified by each employee as the primary
> language of such employee, at the time of hiring, a notice containing the following
> information:  the rate or rates of pay and basis thereof, whether paid by the hour,
> shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as
> part of the minimum wage, including tip, meal, or lodging allowances . . . the
> regular pay day designated by the employer . . . the name of the employer; any
> "doing business as" names used by the employer; the physical address of the
> employer's main office or principal place of business, and a mailing address if
> different; the telephone number of the employer.

N.Y. Lab. Law § 195(1).

Defendants produced a hiring packet which they allege drivers were given that included a

"Go New York Tours Inc. Driver Employment Letter."  *See* Doc. 356-8 at 4–6.  The letter

contains the rate of pay, a payment schedule, and the requirements for earning a bonus.  It does

not contain the regular pay day, or the employer's address and phone number.  Defendants

submitted copies of the Driver Employment Letters signed by Plaintiffs Andrew Wong, Doc.

356-7 at 4–7, and Kee Chye Chew, Doc. 356-8 at 4–6, as examples of employees having been

given this information upon hiring.  Additionally, Defendants contend that drivers were provided

with a copy of Go New York Tours Field and Warehouse Employees' Policy and Procedure

Handbook ("Handbook") which set forth the manner in which the drivers would be paid.

Defendants provided the Handbook signed by Falquez on September 26, 2013.  *See* Doc. 356-9.

---

[11] *See also Marcelino v. 374 Food, Inc.,* No. 16 Civ. 6287 (KPF), 2018 WL 1517205, at *20 (S.D.N.Y. Mar. 27,
2018) (explaining that prior to February 27, 2015, the WTPA entitled employees to recover statutory damages for
violations of the wage statement requirement of $100 per work week, not to exceed $2,500, but after a February 27,
2015 amendment, employees can recover wage-statement statutory damages of $250 dollars "for each work day that
the violations occurred or continue to occur," not to exceed $5,000.).

Like the Employment letter, the Handbook does not contain the employer's address and phone number.

Plaintiffs argue that the Employment Letter is not in compliance with § 195(1) because it "do[es] not have addresses and phone numbers of Defendants, as required," Doc. 363 at 47, and that the Handbook is also out of compliance with § 195(1) because it does not indicate the drivers' hourly rate or have the employer's phone number. In response, Defendants argue that § 195(1) does not require that one document have all the required information; it merely requires the employer to furnish the specified information to the employee at the time of hiring. And they further contend that, in combination, the Employment Letter and the Handbook provide employees with all the required information. However, the Defendants' assertion is contradicted by the documents on the record. Indeed, neither the Employee Letter or the Handbook contain Go New York's phone number or address.

In the alternative, Defendants argue that if the Court were to find Defendants liable for failing to provide the Plaintiffs with Go New York's phone number in writing upon hiring, that deficiency was cured upon the issuance of Plaintiffs' first paycheck, as the paystubs contained their phone number and address. In support of their argument, Defendants proffer that "plaintiffs received paychecks at most nine days from their first day of employment," Doc. 376 at 27, in compliance with NYLL § 198(1-b) (requiring the notice be furnished "within ten business days of his or her first day of employment"). However, the documents proffered by Defendants do not support their assertion that Plaintiffs received paychecks at most nine days from their first day of employment. The Court notes that Defendants' own spreadsheet—which shows when employees worked and received their paychecks—reflects that ten employees, including three

Plaintiffs in this action, did not receive their first pay check within the first ten business days of employment.[12]

One of the three plaintiffs, Alonzo Day, did not receive his first paycheck until 23 days after his first day of employment. *Id.* at 5, row 355.  Defendants' Supplemental Spreadsheet shows that this first day was December 23, 2013, and yet he did not receive his first paycheck until January 17, 2014.  Even accounting for the holidays between December 23, 2013 and January 17, 2014 (Christmas and New Year's Day),[13] Defendants allowed three "paydays" to pass without furnishing to Day the required notice, either in the form of a paystub or otherwise.

Defendants also note that "on occasion, administrative difficulties resulted in a two to four-week delay in remitting paychecks to drivers across the board."  Doc. 376 at 14 n.11. Defendants say that these delays occurred in November 2014, the last week of April 2016, June 2016, November and December 2016, and January 2017 but that "with the exception of these five months," drivers were always paid on a weekly basis.  *Id.*  That assertion is contradicted by Defendants' own documents, as Day did not receive his paycheck for three weeks in the period between December 2013 and January 2014, which was not noted as a period of administrative difficulties by Defendants.  Thus, Defendants' argument they cured the deficiency of not including their phone number or address in the Employment Letter or Handbook upon the issuance of Plaintiffs' first paycheck must fail.  In any event, the requirements under NYLL § 195(1) do not make exceptions for holidays or administrative difficulties.

---

[12] *See* Defendants' Supplemental Spreadsheet, Doc. 378-1 at 13, row 965 (showing plaintiff Arthur Jenkins' first day as June 16, 2014, but not receiving his first check until July 14, 2014, 20 business days later); *see also id.*, at 40, row 3168 (showing plaintiff Delia Ortiz's first day as October 6, 2012, but not receiving her first check until October 22, 2012, 11 business days later); *see also id.* at 1–2, 4–5, 95, rows 4, 40, 74, 93, 258, 261, 264, 266, 328, 330, 332, 387, 7602 (showing 11 other employees not receiving their checks until 11 business days after the start of their employment).

[13] Defendants assert that "drivers were always paid on a weekly schedule, with minor exceptions involving holidays or rare administrative errors."  Doc. 376 at 9.

Defendants argue that it would be contrary to the legislative intent of the New York Legislature and against public policy to penalize an employer for complying with the substantive parts of the WTPA but "forgetting ministerial information such as a phone number or physical address." Doc. 376 at 28.  But, even if that were so—a question the Court does not need to address at this time—there are other deficiencies in Defendants' notice that certainly fall squarely within the legislature's intent "to provide additional protections for employees against wage theft." *See Memorandum in Support of Legis. A8106C* (N.Y. Assemb. 2014).  For example, Plaintiffs point out that Defendants have not shown that they provided notices to class members in their primary language.  *See* Alvarado Dep. I 2:19, 44:15–20, 64:1–2 (showing Alvarado required a Spanish interpreter for his deposition, that he "speak[s] Spanish and a little English," and stating that he "understands 50 or 70 percent" when asked if he reads and writes English); *see also* Falquez Dep. 2:18, (showing that Falquez required a Spanish interpreter for his deposition, and that he "understand[s] English, but [] feel[s] more comfortable in Spanish").

Accordingly, as there is no genuine dispute as to whether Defendants violated NYLL § 195(1), Defendants' motion for summary judgment is denied and Plaintiffs' cross-motion for summary judgment is granted.

## 2. *NYLL § 195(3)*

Plaintiffs also allege that the Defendants failed to furnish payment statements that included all of the information required by §195(3):  the dates of work; the name of the employee; the name of the employer; the address and phone number of the employer; the rate of pay and the frequency of pay; the overtime rate of pay; the number of regular hours worked; the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.  *See* N.Y. Lab. Law §195(3).  Specifically, Plaintiffs

allege that prior to October 6, 2014, the alleged cash payment for overtime wages and the overtime hours worked did not appear on the drivers' wage statements.  Doc. 363 at 49.

Defendants assert that Go New York's weekly paystubs "set forth each and every one of the foregoing categories of information required" by § 195(3).  Doc. 354 at 24.  Defendants produced certain printed and handwritten paystubs for both Alvarado, Docs. 355-10 at 5–11 and 356-15 at 14–30, and Falquez, Doc. 356-15 at 2–13.

The printed Alvarado paystubs each include the dates of work; the name of the employee; the name of the employer; the address and phone number of employer; the rate of pay (hourly); the regular hourly rate; the number of regular hours worked; gross wages, deductions; allowances; and net wages.  Some include any bonus that was paid in that period.  However, none include the overtime rate of pay or number of overtime hours worked.  Doc. 355-10 at 5–11.

For example, the handwritten paystubs for pay period ending on September 1, 2013 includes the overtime hours worked, but the printed paystub for the same pay period does not. *Compare* Doc. 365-15 at 17 (handwritten paystub reflecting four hours of overtime hours worked) *with* Doc. 355-10 at 6 (printed paystub only reflecting 40 regular hours worked and no overtime).  Therefore, the number of overtime hours worked, as required by § 195(3), were not included in the wage statement.

Falquez's wage statements reflect a similar pattern of unreported overtime hours and wages.  *Compare* Doc. 356-15 at 6 (handwritten paystub for pay period ending on October 13, 2013 reflecting 6.25 hours of overtime) *with id.* at 7 (printed paystub for the same pay period only reflecting 40 regular hours worked and no overtime hours worked).

The Court finds that Defendants were in violation of § 195(3) prior to October 6, 2014, because Go New York's weekly pay stubs did not contain all of the required information, namely the overtime hours worked and the overtime rate of pay.  Accordingly, Defendants' motion for summary judgment is denied as to the NYLL § 195(3) claim.

### 3.  Spread-of-Hours Wages

Plaintiffs claim "certain" drivers are entitled to spread-of-hour wages because they worked over ten hours in a day and were paid the minimum wage, but not spread-of-hours wages.  Under NYCRR, Plaintiffs are entitled to one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required for each day the spread of hours exceeds ten.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4.  Defendants admit that some employees worked more than ten hours but were not paid spread-of-wages.  *See* Asen Kostadinov Dep. 129:9–130:11.  Plaintiffs also provide a spreadsheet which shows the spread-of-hours damages. Doc. 360-83.  The spreadsheet identifies ten drivers who are owed an additional hour at the minimum wage rate.  They worked more than ten hours and were paid the minimum wage "training" rate for their first week and not paid any spread-of-hours wages.  Doc. 363 at 41.  In addition, Plaintiffs specifically provide wage and hour records for driver Darryl Williams that show he worked ten hours in one day and 13.3 hours on another day, s*ee* Timesheet, Doc. 360-12 at 1, and was paid at a rate of $8.75 for those 23.3 hours.  *See* Personal Earning Statement, *id.* at 2.

Defendants argue that it is well settled case law that spread of hours applies only to employees paid minimum wage and that because drivers were never paid minimum wage or below, *see* Def's Rule 56.1 St., Doc. 355 ¶¶ 103–110, Plaintiffs are not eligible to recover for spread-of-hours.  Defendants are correct that a limitation upon a plaintiff's eligibility to recover

for spread-of-hours is that the plaintiff not earn more than the minimum wage.  *See Guadalupe v. Tri–State Emp't, Mgmt. & Consulting, Inc.*, No. 10 Civ. 3840 (NG)(CLP), 2013 WL 4547242, at *12–13 (E.D.N.Y. Aug. 28, 2013) (citing to NYSDOL opinion letters stating this prerequisite).

However, Plaintiffs argue that it is still disputed whether Alvarado (and other class members) were paid minimum wage, *see supra* (Alvaro's claim would constitute a violation of the Minimum Wage Act.  *See United States v. Rosenwasser*, 323 U.S. 360 (1945)).

Because there is a genuine dispute as to whether Plaintiffs were paid minimum wage and that finding is dispositive for the spread-of-hours claim, the Court denies both Plaintiffs' and Defendants' motion for summary judgment on this claim.

### E.  Unclean Hands and Laches

Defendants assert affirmative defenses under the doctrines of unclean hands and laches. Go New York alleges that it paid employees in cash for the overtime hours worked in 2013 and 2014.  Doc. 354 at 25.  Having willingly accepted these cash payments as a substitute for the time and a half wages they were owed, Defendants argue, Plaintiffs should not be permitted to seek additional compensation.  *Id.*  Plaintiffs move for summary judgment as to these affirmative defenses.

The doctrine of unclean hands holds that "the equitable powers of th[e] court can never be exerted on behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage."  *PenneCom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 493 (2d Cir. 2004) (internal quotation omitted).  It is an equitable defense and "as such, it can only be asserted with respect to equitable—not legal—claims."  *See Uto v. Job Site Servs. Inc.*, 269 F.R.D. 209, 213 (E.D.N.Y. 2010) (internal quotation omitted).  In the instant case, all claims

asserted by Plaintiffs are legal claims, for which they seek damages pursuant to the FLSA and the NYLL.

Secondly, laches "is an equitable defense that bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *Ikelionwu v. U.S.*, 150 F.3d 233, 237 (2d Cir. 1998).  Laches is inapplicable to claims made pursuant to the FLSA because the claims are statutory and provide a statute of limitations. "When a limitation on the period for bringing suit has been set by statute, laches will generally not be invoked to shorten the statutory period." *Id.* at 238. (internal quotation omitted).  Courts have specifically rejected the doctrine of laches in FLSA actions to recover overtime.  *See Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 464 (S.D.N.Y. 2008) (finding affirmative defenses, including laches and unclean hands to be "inapposite because [P]laintiffs' wage and hour claims [were] rooted in statutory, not equitable, law").

So too here, the doctrines are inapplicable because Plaintiffs' wage and hour claims are rooted in statutory law, and were raised within the applicable statutory limitations period. Defendants do not address these legal arguments, and instead maintain that the Plaintiffs signed the receipts for the cash bonuses and *wanted* the cash bonuses.  *See* Asen Kostadinov Dep. at 149:15–23.  These arguments are unavailing as the law is clear that the doctrines of unclean hands and laches are inapplicable for statutory claims.

Accordingly, Plaintiffs' motion for summary judgment is granted as to both of the affirmative defenses.

### F.  Defendants' Motion for Sanctions

Weaved throughout their briefing, Defendants assert that the Zeller firm engaged in extensive misconduct sufficient to warrant sanctions under Rule 11 and 28 U.S.C. § 1927. Defendants allege that from the commencement of this action in 2015 the Firm and class

representatives Alvarado and Falquez have "made blatantly false representations" to the Court.

Doc. 354 at 10.  For example, Defendants allege:

- The Zeller firm failed to investigate the veracity and accuracy of Plaintiffs' representations;

- The Zeller firm failed to advise drivers of their obligation to preserve relevant evidence;

- The Zeller firm never had a reasonable basis for their claims that Go New York violated the minimum wage requirement;

- Named Plaintiffs, among other drivers, and the Zeller firm concealed the cash tips, weekly bonuses, and cash payments for overtime they received "in order to justify their false claims" that Go New York violated the FLSA and NYLL by paying their drivers less than minimum wage;

- The Zeller firm prepared and caused drivers to sign written affidavits that contained gross exaggerations and falsehoods regarding the number of hours worked;

- The Zeller firm falsely alleged that Alvarado was required to purchase his uniform, and that the Defendants failed to reimburse him the cost of the uniform;

- The Zeller firm repeatedly refused Go New York's offer to make drivers whole for the wage violations between 2013 and 2014, including penalties, and instead "pursued reckless and wasteful claims" for time periods after Go New York took reasonable steps to assure compliance with law; and

- Plaintiffs' counsel attempted to deceive the Court with the Spreadsheet submitted in the instant motion because it "purposely omitted [pay dates] to make it falsely appear as if drivers were not paid weekly by Go New York."

Overall, Defendants suggest that sanctions should be imposed on Plaintiffs for "vexatious litigation which has cost Go New York tens of thousands of dollars in attorneys' fees." *Id.* at 14. Consequently, Defendants ask that Plaintiffs be denied attorneys' fees, and be sanctioned under Rule 11 and 28 U.S.C. § 1927 for "the unnecessary fees and costs expended by the Defendants." In the alternative, Defendants ask that the Zeller firm be disqualified as class counsel, or that named Plaintiffs Alvarado and Falquez be disqualified as class representatives.  Doc. 376 at 4.

*1.  FRCP 11(b)(3)*

In response, Plaintiffs argue that Defendants failed to comply with Rule 11 procedures.

In relevant part, under FRCP 11(c)

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

Fed. R. Civ. P. 11(c)(2).  Defendants did send two letters to Plaintiffs, Doc. 360-2.  In the second letter, dated May 27, 2021, Defendants stated:  "We also write now to advise you that we also intend to seek leave to make a motion for dismissal and for sanctions against you pursuant to Rule 11 of the Federal Rules of Civil Procedure."  *Id.* at 2.  The letter went on to detail the grounds for the motion and demanded that Plaintiffs "withdraw all claims in this action."  *Id.* at 7.  Subsequently, on two separate occasions Defendants moved for summary judgment on all claims and sanctions in one filing.  The first was filed on July 7, 2021 and was denied as moot, Doc. 350, and the second is the instant motion.  Doc. 351.

When sanctions are requested by a party rather than imposed by the Court *sua sponte*, the party must comply with the so-called safe-harbor provision of Rule 11(c)(2) which is a 21-day period parties are given to withdraw or appropriately correct the challenged claim.  This "safe harbor" period begins to run only upon service of the motion.  As the Second Circuit has noted, "[t]he safe-harbor provision is a strict procedural requirement."  *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012).  Thus, "[a]n informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period."  *Id.*

The Court denies the motion for sanctions because Defendants failed to follow the procedures mandated by Rule 11. *See Williamson*, 542 F.3d at 51 (denying the Defendants' request for attorneys' fees, costs, and damages because defendants failed to make a separate motion for sanctions under Rule 11, and therefore failed to comply with the procedural requirements of the rule). *See also Perpetual Sec., Inc. v. Tang,* 290 F.3d 132, 142 (2d Cir. 2002) (reversing sanction awards because the motion for sanctions was not made separately from other motions and was not served to plaintiff prior to filing it with the court).

### 2.  *28 U.S.C. § 1927*

Defendants assert that Plaintiffs' claims that they were not paid for all of the compensation to which they were entitled are "abusive, vexatious, and fraudulent" such that they warrant sanctions.  Specifically, Defendants allege the following misconduct by the Zeller Firm was vexatious:  (1) preparing and causing drivers to sign written affidavits that contained gross exaggerations and falsehoods regarding the amount of hours worked; (2) conducting essentially no independent investigation to verify the amount of overtime alleged in the affidavits, purporting to rely exclusively on oral statements by the drivers; (3) making no efforts to collect information such as notes, text messages, and emails in the drivers' possession that would have shown actual hours worked by the drivers; (4) providing no instructions to the drivers concerning their duty to preserve relevant evidence; (5) alleging ongoing wage and hour violations even after knowing that Defendants fully complied with wage and hour laws, thereby demanding discovery for the time periods beyond 2014 for which there was no basis other than speculation; (6) repeatedly refusing Go New York's settlement offer for wage violations from 2013–2014. Doc. 354 at 27.

Defendants also list a history of professional misconduct by the Zeller firm in other cases[14] and argue that the "same exact circumstances" exist here and warrant "even more serious sanctions."  Doc. 354 at 29.

The Court finds that Defendants have not provided sufficient evidence to support a "clear showing of bad faith"  *Oliveri*, 803 F.2d at 1273 (quoting *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1010 (2d Cir.1986)), or that the Zeller firm's actions were "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  *Id.*

As noted above, there is no evidence to support Defendants' claim that the Zeller firm induced any class member to sign false affidavits.  In addition, Plaintiffs note that the Zeller firm "extensively interviewed Mr. Alvarado and collected all documents proportional to the needs of the case in his possession," and that any discussion of the original Complaint is irrelevant because the operative pleading is the Amended Complaint.  Doc. 363 at 16.

Defendants' claim that the Zeller firm failed to obtain relevant documents that would have shown actual hours worked by Plaintiffs is of no particular moment because it is Defendants that have the obligation to maintain accurate records of its employees' hours.  *See Lynch v. City of New York,* 291 F. Supp. 3d 537, 546 ("employer's duty under the FLSA [and NYLL] to maintain accurate records of its employees' hours is non-delegable.").  Defendants

---

[14] *See Rodriguez-Hernandez v. K Bread & Co., Inc.,* No. 15 Civ. 6848 (KBF), 2017 WL 2266874, at *1 (S.D.N.Y. May 23, 2017) (concluding that the settlement was likely mischaracterized because of a desire by plaintiff's counsel to receive an unreasonably high attorneys' fee award and shield such award from review by this court and noting that the court has previously condemned the behavior by plaintiff's counsel).  In *Rodriguez-Hernandez* the Court considered, but ultimately decided against, imposing sanctions.  In 2017, a court in this District sanctioned Mr. Sherr when it found that plaintiff's counsel did not disclose to the court or to opposing counsel that his client had died until eight months after the client's death and four months after he learned of it.  *Mok v. 21 Mott St. Rest. Corp.*, No. 14 Civ. 8081 (PKC), 2017 WL 3981308, at *1 (S.D.N.Y. Sept. 8, 2017).  The court ordered Sherr to pay a $3,000 sanction and defendants' legal fees from the date of the misconduct.  *Id.* at 5.  Sherr was also previously sanctioned in *Mok* for failure to comply with the court's order to file final pretrial submissions.  *Mok*, No. 14 Civ. 8081 (PKC), Doc. 46.

allege Plaintiffs failed to obtain the written notes Plaintiffs provided to Go New York concerning hours worked and Plaintiffs' text messages with family members, but have failed to show that these records even exist.  Doc. 354 at 27.  Regarding text messages with supervisors and managers showing their schedules, as the counter-party to those communications, Defendants failed to maintain the very records they accuse Plaintiffs of failing to provide.  *Id.*  Defendants also allege that the Zeller Firm took no steps to locate and produce a notebook in which Alvarado claimed that he wrote down the hours he worked.  However, in his deposition Alvarado testified that he never showed the notebook to his attorney, Alvarado Dep. I 100:20–22, and that he lost it before this lawsuit was commenced.  Alvarado Dep. II 18:17–25.

In light of Defendants' failure to keep proper records, Plaintiffs have minimally met their burden by providing estimates of how many hours they worked.  *See Reich v. S. New England Telecommunications Corp.,* 121 F.3d 58, 66 (2d Cir. 1997) ("When a defendant in a suit for lost wages under the FLSA fails to maintain employment records as required by the Act, an employee . . . may submit sufficient evidence from which violations of the Act and the amount of an award may be reasonably inferred." (internal quotations omitted).

Lastly, refusal to accept a settlement is not grounds for sanctions, as parties have "an absolute right to refuse to settle regardless of whether that position is reasonable."  *Carling v. Peters*, No. 10 Civ. 4573, 2012 WL 1071232, at *4 (S.D.N.Y. March 30, 2012).

The Defendants have not produced any evidence that the claims asserted by Plaintiffs were not "the attorney's reasonable belief at the time of filing." *Vinuela v. S.S. Britanis*, 647 F.Supp. 1139, 1148 (S.D.N.Y. 1986).  Unlike Rule 11, which imposes an objective standard, § 1927 "requires a 'clear showing of bad faith.'"  *Oliveri*, 803 F.2d at 1273 (quoting *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1010 (2d Cir. 1986)).  Defendants have not shown that Plaintiffs clearly acted in bad faith.  Accordingly, Defendants' argument for sanctions on this basis must fail and the motion is denied.

Lastly, the Court does not find that Defendants meet the high burden to disqualify the Zeller Firm as class counsel.  "Generally, disqualification motions are disfavored, as they 'are often interposed for tactical reasons, and ... even when made in the best of faith, such motions inevitably cause delay.'"  *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 281 (S.D.N.Y. 2011) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791–92 (2d Cir. 1983)).  "Accordingly, such motions are 'subjected to a high standard of proof.'"  *Id.* (citing *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 207 (S.D.N.Y. 2009)).

### G.  Plaintiffs' Motion for Partial Summary Judgment:  Defendants Jointly Employed the Class and are Covered by the FLSA

Plaintiffs seek summary judgment on their claim that Defendants jointly employed the Class and are covered by the FLSA.  Defendants do not present any arguments specific to this argument in their opposition brief.  *See generally* Doc. 376.  However, Defendants dispute that Go New York is responsible for distributing wages and processing payroll for its drivers, as they have had an agreement with SouthEast Personnel Leasing, Inc.—a company responsible for the filing of all payroll and distribution of checks—since 2017.  Doc. 381 ¶¶ 15–18; *see also* Doc. 257-40 at 2.  However, Go New York entered into this agreement after the lawsuit was filed, and

thus, the fact that certain responsibilities were outsourced to SouthEast are not relevant to the issues raised herein.

### 1. Joint Employer Standard

Courts in this Circuit use the general "economic reality" test that the Second Circuit developed to determine whether an employer-employee relationship exists. *Olvera v. Bareburger Group LLC*, 73 F. Supp. 3d 201, 206 (S.D.N.Y. 2014). Under this test, courts consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman v. RSR Sec. Servs. Ltd*., 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Carter v. Dutchess Cmty Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). While meeting these four factors, known as the *Carter* test, "can be sufficient to establish employ[ment] status, ... 'a positive finding on those four factors is [not] necessary to establish an employment relationship.'" *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 258 (S.D.N.Y. 2012) (quoting *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008)). "[C]ontrol is the key factor in determining, under the economic reality analysis, whether an entity or person qualifies as an employer." *Olvera*, 73 F. Supp. 3d at 206.

"Courts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA." *Martin v. Spring United Mgmt. Co.,* 273 F. Supp. 3d 404, 422 (S.D.N.Y. 2017).

### 2. Go New York and Kostadinov Jointly Employed the Class

The Court finds that Go New York and Kostadinov jointly employed the Class, as both meet the *Carter* test.

Mr. Kostadinov is the founder of Go New York, has been the owner since January 2011 and currently owns 98% of the business. *See* Asen Kostadinov Dep. 6:2–7:2. He has had the power to hire and fire employees since the formation of Go New York, *id.* 37:5–8, as well as the power to set wages and schedules. *Id.* 37:9–16. Considering the totality of the circumstances, the Court finds that Mr. Kostadinov is a joint employer of the class with Go New York.

Go New York tracks the hours drivers work (whether through handwritten records or the biometric clocks in use since October 2014), *id.* at 81:11–16, 72:4–21, and manages the drivers. *Id.* 181:2–17. Go New York determines drivers' wages, handles payment of wages, and distributes the wages. *Id.* 107:2–108:11, 113:15–23. Go New York also maintains employment records, such as payroll. *Id.* 82:18–25, 90:7–11, 135:12–25. Thus, under the *Carter* test Go New York has sufficient control over Plaintiffs and is a joint employer with Kostadinov.

Accordingly, the Court grants Plaintiffs' motion for summary judgment.

### 3. Defendants' Business Covered by the FLSA

In order for the provisions of FLSA to apply to Defendants, Plaintiffs must show that Go New York is covered by FLSA. There are two types of coverage under FLSA: individual[15] and enterprise. Plaintiffs argue that Go New York is an enterprise covered by the FLSA.

Enterprise coverage applies when an employer:

(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is

---

[15] Individual coverage applies to an employee who is "engaged in commerce or in the production of goods for commerce." 29 U.S.C.A. § 207(a)(1). To be engaged in commerce, substantial part of the employee's work must be related to interstate commerce. *Boekemeier v. Fourth Universalist Soc'y in City of New York*, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000) (internal quotations omitted). Under an individual theory of coverage, "[t]he test under this present act, ... is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it." *Id.* (quoting *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943)).

not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated);

29 U.S.C.A. § 203(s)(1)(A).  Enterprise coverage has been interpreted broadly by the courts. Under an "enterprise" application, the employee does not himself need to be involved in an activity that affects interstate commerce.  *See Wirtz v. First National Bank & Trust Co.*, 365 F.2d 641, 645 (10th Cir. 1966); *Archie v. Grand Central Partnership, Inc*., 997 F. Supp. 504, 528 (S.D.N.Y. 1998) (citing *Radulescu v. Moldowan*, 845 F. Supp. 1260 (N.D.Ill. 1994)).  Rather, if an enterprise meets the gross dollar volume amount, all employees are covered under the Act if some employees are (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) engaged in handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.  *See Radulescu*, 845 F. Supp. at 1262.

First, by 2013 Go New York had an annual gross volume of sales greater than $500,000.00.  Doc. 355-23 ¶ 2.  Additionally, in response to the Amended Complaint, Defendants stipulated to having employees engaged in commerce within the meaning of the FLSA.[16]  *See* Stipulation, Doc. 360-86 (admitting to paragraphs 40 and 41 of the Amended Complaint, Doc. 16).

Having met the conditions for enterprise coverage under the FLSA, the Court finds that Go New York is covered by FLSA and grants Plaintiffs' motion for summary judgment.

---

[16] The Court notes that in Defendants' response to Plaintiffs' Amended Statement of Material Facts, Defendants deny that they ever admitted to paragraphs 40 and 41 of the Amended Complaint, stating that they specifically denied the allegations in their answer to the Amended Complaint.  Docs. 381 ¶ 35, 118 ¶¶ 40–41.  While it is true that on June 6, 2019 Defendants denied the allegations in their answer to the Amended Complaint, Defendants signed a document entitled "Stipulation" on November 22, 2021 which admitted to paragraphs 40 and 41 of the Amended Complaint.  And "[a]bsent substantive unconscionability or fraud ..., parties are charged with knowing and understanding the contents of documents they knowingly sign."  *Horvath v. Banco Comercial Portugues, S.A.*, 461 Fed.Appx. 61, 63 (2d Cir. 2012).

### H. **Plaintiff's Motion for Partial Summary Judgment: Discernable Improperly Paid Wages**

*1. Discernable Unpaid Overtime Premium*

The Minimum Wage Act requires employers to pay employees at a rate of no less than and one-half times the regular rate for work performed in excess of forty hours in one week. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. Plaintiffs seek the damages that they are due from Go New York's failure to pay its drivers one and one half times their regular rates for hours worked greater than forty each week. It is undisputed that, prior to October 6, 2014, Go New York failed to pay the required overtime wages. *See* Asen Kostadinov Dep. 112:17–21 ("Q. Before October 2014, did Go New York Tours, Inc. pay bus drivers one and one half time their hourly rate of pay for hours that they worked above 40 each week? A. No."); *see also* Def's Reply to Pl's Rule 56.1 St. Reply ¶ 38 (Defendants admitting to not paying its drivers one and one half times their regular rates for overtime hours worked). Accordingly, Plaintiffs' motion for summary judgment is granted as to the undisputed damages currently owed to the collective for unpaid overtime.

### I. **Prejudgment Interest**

Under the Fair Labor Standards Act, prejudgment interest may not be awarded in addition to liquidated damages. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 64 (2d Cir. 1988) (citing *Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 714–16 (1945); *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987)). However, prejudgment interest must be awarded under the New York Labor Law in addition to liquidated damages, *Reilly v. NatWest Mkts. Grp., Inc.*, 181 F.3d 253, 265 (2d Cir. 1999); N.Y. Lab. Law § 663(1), even when liability is found under both the New York Labor Law and the Fair Labor Standards Act. *Begum v. Ariba Disc., Inc.*, No. 12 Civ. 6620 (DLC), 2015 WL 223780, at *1 (S.D.N.Y. Jan. 16, 2015). The interest rate is nine percent

per annum.  N.Y. C.P.L.R. § 5004.  "New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or 'a single reasonable intermediate date,' which can be used to simplify the calculation."  *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 91 (2d Cir. 1998); *Begum*, 2015 WL 223780, at *1; N.Y. C.P.L.R. § 5001(b).  That intermediate date is frequently the midpoint of the plaintiff's employment.  *Zheng Ming Chen v. Y Café Ave B Inc.*, No. 18 Civ. 4193, 2019 WL 2324567, at *5 (S.D.N.Y. May 30, 2019).

The Plaintiffs suggest that the prejudgment interest should be calculated based on the amount of the judgment per plaintiff and based on their dates worked pursuant to Plaintiffs' calculations.  The Court agrees and awards the Plaintiffs pre-judgment interest in that amount.

### J.  Automatic Increase in Judgment

The NYLL provides that

> any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

N.Y. Lab. Law §§ 198(4), 663(4).  It further provides that costs and attorneys' fees incurred in enforcement of a judgment shall be awarded to the plaintiff.  *Id.*  Plaintiffs seek a judgment that automatically increases if unpaid for 90 days.  The Court grants the request.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Defendants' motion for summary judgment and denies the Defendants' motion for sanctions.  The Court grants Defendants' motion for summary judgment on Plaintiffs' timely wage claim under NYLL and denies summary judgment as to all other claims.  The Court grants in part and denies in part Plaintiffs' cross motion for partial summary judgment.  Specifically:

- The Court grants Plaintiffs' motion for summary judgment on:

  o Defendants' liability for failure to provide compliant notices at the time of hiring and accurate weekly wage statements as required by the Wage Theft Prevention Act;

  o Dismissal of Defendants' affirmative defenses under the doctrines of unclean hands and laches;

  o Finding that Defendants jointly employ the Class;

  o Finding that Defendants' business is covered by the FLSA;

  o Defendants' liability for currently discernable unpaid overtime premium, prior to October 6, 2014;

  o Finding that the Class is owed prejudgment interest for all wages found owed.

- The Court denies Plaintiffs' motion for partial summary judgment on:

  o Defendants' liability for payment of untimely wages and awarding liquidated damages;

  o Defendants' liability for the unpaid spread-of-hours payments under the NYLL;

  o Defendants' liability for the liquidated damages unpaid spread-of-hours wages; and

  o Defendants' liability for liquidated damages for failure to pay overtime premium.

Plaintiff's surviving claims are for: (1) unpaid spread-of-hours wages, (2) damages for unpaid spread-of-hours wages, and (3) damages for failure to pay overtime premium. The parties are directed to appear for a telephonic conference on April 6, 2023, at 10:30 a.m. To participate, the parties are directed to call (877) 411-9748 and enter access code 3029857# when prompted. The Clerk of the Court is respectfully directed to terminate the motions, Doc. 351 and 359.

It is SO ORDERED.

Dated:   March 31, 2023
         New York, New York

_____
         EDGARDO RAMOS, U.S.D.J.